Kevin T. Snider, CA State Bar No. 170988
 *Counsel of Record*
Matthew B. McReynolds, CA State Bar No. 234797
Milton E. Matchak, CA State Bar No. 215739
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Email: ksnider@pji.org;
        mmcreynolds@pji.org;
        mmatchak@pji.org

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JERAMIAH COOPER, et al., | ) Case No.: 3:22-cv-09193-WHA |
| | ) |
| Plaintiffs, | ) **DECLARATION OF KEVIN T.** |
| | ) **SNIDER IN SUPPORT OF MOTION** |
| v. | ) **FOR PARTIAL SUMMARY** |
| | ) **JUDGMENT** |
| SAN FRANCISCO BAY AREA RAPID | ) |
| TRANSIT DISTRICT, | ) Date: March 14, 2024 |
| | ) Time: 8:00 a.m. |
| Defendant. | ) Courtroom: 12 |
| | ) Judge: Hon. William H. Alsup |

**DECLARATION OF KEVIN T. SNIDER**

I, Kevin T. Snider, am counsel of record in the above-captioned case, and if called

upon, I could and would testify truthfully, as to my own personal knowledge, as follows:

1.      **Exhibit 1** is a true and correct copy of the deposition of transcript of

Gizelle Quinto Huynh along with exhibits used in the deposition.

2.      **Exhibit 2** is a true and correct copy of the deposition transcript of Rodney

William Maplestone along with exhibits used in the deposition.

3.      **Exhibit 3** is a true and correct copy of the deposition of transcript of Veronica Rivera Badong Thomas along with exhibits used in the deposition.

4.      **Exhibit 4** are pages from documents produced by counsel for Defendant in the Rule 26 disclosure.  These documents each contain language in correspondence to the Chavez-Plaintiffs or the EEOC which states, "an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public."  Those documents are stamped as BART: 0000976, 0001021, 0001031, 0001036, 0001073, 0001108, 0001121, 0001117, 0001168, 0001199, 0001207, 0001212, 0001245, 0001250, 0001263, 0001269, 0001284, 0001359, 0001369, 0001374, 0001417, 0001479, 0001497, 0001504, 0001507, 0001529, 0001575, 0001579, 0002849, 0003397, 0003902, 0004452, 0005376, 0005707, 0006198, 0006236, 0006333.

5.      **Exhibit 5** is the BART *Coronavirus Pandemic (COVID-19): Statement of Policy* stamped BART 000017-18.  The highlighted portion reads, "Unvaccinated employees are at greater risk of contracting and spreading COVID-I9 within the workplace and BART facilities, as well as to the public that depends on our services."

6.      Pursuant to the California Public Records Act I made a request to two state departments—the California Department of Public Health and the California Department of Industrial Relations—seeking data on (1) the number of employees in those departments which sought a religious accommodation for the COVID-19

vaccination between January 1, 2021 and December 31, 2022, and (2) the number of employees in those departments which received a religious accommodation for the COVID-19 vaccination between January 1, 2021 and December 31, 2022. Accompanying this declaration, marked as **Exhibit 6**, is a true and correct copy of the responses from those departments.

7.     At my direction through one of my staff (Desiree' Westbrook), a request for public documents was made pursuant to the California Public Records Act to the counties of Contra Costa, Solano, and Santa Clara seeking data on (1) the number of county employees which sought a religious exemption for the COVID-19 vaccination between January 1, 2021 and December 31, 2022, and (2) the number of county employees which received a religious accommodation for the COVID-19 vaccination between January 1, 2021 and December 31, 2022. Accompanying this declaration, marked as **Exhibit 7**, is a true and correct copy of the responses from those counties.

8.     At my direction through one of my staff (Desiree' Westbrook), a request for public documents was made pursuant to the California Public Records Act to the Sacramento Regional Transit District seeking data on (1) the number of District employees which sought a religious exemption for the COVID-19 vaccination between January 1, 2021 and December 31, 2022, and (2) the number of District employees which received a religious accommodation for the COVID-19 vaccination between January 1, 2021 and December 31, 2022. Accompanying this declaration, marked as **Exhibit 8**, is a true and correct copy of the response from that District.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and of my own personal knowledge.  Executed in on this Second Day of February 2024, in the County of Sacramento.

/s/ Kevin T. Snider
Kevin T. Snider

# EXHIBIT 1

1     UNITED STATES DISTRICT COURT

2       FOR THE

3   NORTHERN DISTRICT OF CALIFORNIA

4

CHAVEZ, et al.,     )  Case No.
5          )  3:22-cv-06119-WHA
    Plaintiff,  )  3:22-cv-09193-WHA
6          )
     vs.     )
7          )
SAN FRANCISCO BAY AREA RAPID )  Volume I
8 TRANSIT DISTRICT and DOES  )
1 - 100,       )
9          )
    Defendants.  )
10         )  Pages 1 - 73

11

12

13      DEPOSITION OF

14    GIZELLE QUINTO HUYNH

15   Friday, September 29, 2023

16

17

18

19 Reported by:

20 Rick Galten, CSR No. 13202

21 -------------------------------------------------------

22     JAN BROWN & ASSOCIATES

23  WORLDWIDE DEPOSITION & VIDEOGRAPHY SERVICES

24 701 Battery St., 3rd Floor, San Francisco, CA 94111

25   (415) 981-3498 or (800) 522-7096

                1

```
 1              A P P E A R A N C E S
 2      For the Plaintiff:

 3          Pacific Justice Institute
 4          BY:  Kevin T. Snider, Esq.
 5          P.O. Box 276600
 6          Sacramento, California  95827
 7          Tel: 916.857.6900
 8          Email: ksnider@pji.org

 9      For the Defendants:

10          Glynn, Finley, Mortl,
11          Hanlon & Friedenberg, LLP
12          BY:  Victoria R. Nuetzel, Esq.
13               James M. Hanlon, Jr., Esq.
14          100 Pringle Avenue, Suite 500
15          Walnut Creek, California  94596-7328
16          Tel: 925.210.2804
17          Email: vnuetzel@glynnfinley.com
18          Email: jhanlon@glynnfinley.com

19          Office of the General Counsel
20          BY:  Sam Dawood, Esq.
21          Bay Area Rapid Transit District
22          2150 Webster Street, 10th Floor
23          Oakland, California 94612-3012
24          Tel: 510.464.6019
25          Email: sdawood@bart.gov
```

2

```
 1                    I N D E X

 2                                            Page

 3    Examination by Mr. Snider                  5

 4    Reporter's Certificate                    73

 5                    ---o0o---

 6                  E X H I B I T S

 7    Exhibit No.         Description          Page

 8

 9    EXHIBIT 18   Employee Request for Religious    23

10                 Exemption (COVID-19 Vaccination)

11                 Antonio Gonzalez, III Bates BART

12                 0005639 - 5642, 5652 - 5654, 5658 - 5660

13

14    EXHIBIT 19   Employee Request for Religious    33

15                 Exemption (COVID-19 Vaccination)

16                 Clifton Harrison Bates BART 0005812 -

17                 5826, 5830 - 5832, 6052 - 6053,

18                 5835 - 5836

19

20    EXHIBIT 20   Employee Request for Religious    35

21                 Exemption (COVID-19 Vaccination)

22                 Nicholas Taylor Bates BART 0001544 -

23                 1545, 1553, 1546 - 1547, 1549 - 1552

24

25
```

                                                    3

```
1                 E X H I B I T S
2   Exhibit No.        Description              Page
3
4   EXHIBIT 21   Employee Request for Religious      40
5                Exemption (COVID-19 Vaccination) La Ron
6                Johnson Bates BART 0001318 - 1319,
7                3065 - 3066, 3057 - 3060, 1320 - 1321

8   EXHIBIT 22   Employee Request for Religious      42
9                Exemption (COVID-19 Vaccination)
10               Jim Lasovich Bates BART 0001323 - 1330

11  EXHIBIT 23   Employee Request for Religious      51
12               Exemption (COVID-19 Vaccination) Albert
13               J. Roth, Jr. Bates BART 0001519 - 1525
14               (Plus two pages not Bates stamped)

15  EXHIBIT 24   Employee Request for Religious      57
16               Exemption (COVID-19 Vaccination)
17               Tonya Lewis Williams Bates 0006356 -
18               6358, 6362 - 6363, 6359 - 6360
19               (Plus four pages not Bates stamped)

20  EXHIBIT 25   Religious Exemption Request Review   64
21               Form Adrian Gilbert Bates BART 0001195

22  EXHIBIT 26   Employee Request for Religious      65
23               Exemption  (COVID-19 Vaccination) Sergii
24               Grinchenko Bates BART 0003049 - 3051,
25               4218 - 4220, 3052 - 3053
```

4

1    BE IT REMEMBERED THAT, pursuant to Notice of

2  Deposition and on Friday, September 29, 2023, commencing

3  at the hour of 9:59 a.m., at 100 Pringle Avenue,

4  Suite 500, Walnut Creek, California, before me, RICK

5  GALTEN, a Certified Shorthand Reporter for the State of

6  California, there appeared

7                    GIZELLE QUINTO HUYNH,

8  Called as a witness by the Plaintiff, and who, having

9  been first duly sworn, was thereupon examined and

10  testified as hereinafter set forth.

11                    --o0o--

12                    EXAMINATION

13       BY MR. SNIDER:  Q.   Good morning.  Can you

14  please state and spell your full name.

15       **A.   Sure.  Gizelle Quinto Huynh, G-i-z-e-l-l-e,**

16  **Q-u-i-n-t-o, H-u-y-n-h.**

17       Q.   And do I go by Ms., Miss, or Mrs.?

18       **A.   Mrs.**

19       Q.   Mrs., okay.  Mrs. Huynh, have you ever had your

20  deposition taken before?

21       **A.   No.**

22       Q.   Okay.  Well, let me explain what it is.  Even

23  though we're in this very lovely facility in a very --

24  in a comfortable conference room, this is a formal

25  proceeding.  You've been sworn to tell the truth under

5

1   penalty of perjury, and so it's important that you give
2   us, you know, very truthful answers.
3       And this court reporter is going to be making a
4   transcript of everything that we say.  And it's going to
5   be given to you, either in a PDF or in a hard copy.
6       **A.  Okay.**
7       Q.  And you'll look at it.  You'll get a chance to
8   read it and sign it.  If there's any changes you need to
9   make, you're allowed to do that.  But if it is a
10  material change, then -- like, from a "yes" to a "no,"
11  then -- then we could -- if it comes to trial and you're
12  testifying, we could bring that to the jury or the
13  judge's attention.
14      When I say material change, let me give you an
15  example I often give.  If this was a car accident and
16  you were a witness and you saw -- and you were asked,
17  what color was the traffic signal when the car entered
18  the intersection?  And you said yellow, but then you
19  went back and you struck it out and you put amber,
20  that's not a material change.
21      **A.  Okay.**
22      Q.  But if you put red, that would be a material
23  change.
24      You understand?
25      **A.  Yes.**

6

1    Q.  Okay.  Also, we're -- we need to get your best
2    testimony.  You're allowed to give us an estimate but
3    not guess.  So let me give you what that -- the
4    difference is.  You could look at this table and I would
5    say, what do you think?  How long do you think this
6    table is?  You could give me an estimate because it's
7    right in front of you.
8        **A.  Okay.**
9    Q.  If I asked you, how long is the table in my
10   conference room, you'd have to guess.
11       **A.  Okay.**
12   Q.  Do you understand the difference between
13   estimate and guess?
14       **A.  Yes.**
15   Q.  All right.  In the last 24 hours, have you taken
16   any substances that are impairing your ability to
17   process information and give testimony?
18       **A.  No.**
19   Q.  All right.  Where do you currently work,
20   Ms. Huynh?
21       **A.  The City of Union City.**
22   Q.  Union City, what do you do?
23       **A.  I'm the HR manager.**
24   Q.  HR manager.  And have you ever worked for the
25   San Francisco Bay Area Rapid Transit District?

7

1    A.  Yes.

2    Q.  And when was that?

3    A.  November 2019 until August 2022.

4    Q.  And what did you do there?

5    A.  I was the supervisor of leave management.  So I

6    just handled, you know, disability cases, FMLA,

7    reasonable accommodations, and assisted the manager.

8    Q.  Okay.  And who was your manager?

9    A.  Rod Maplestone.

10   Q.  And do you recall in late summer of 2021 the

11   BART Board of Directors issuing a vaccination mandate

12   for COVID-19?

13   A.  Yes.

14   Q.  Okay.  And were -- do you know whether or not

15   any employees requested a religious or medical exemption

16   to vaccination?

17   A.  Yes.

18   Q.  Okay.  About -- inclusive of medical and

19   religious employees, do you have -- do you know or

20   have -- give us an estimate of how many employees

21   requested an exemption.

22   A.  An exemption?  Estimate, 150.

23   Q.  Okay.  Can you give me an estimate of how many

24   of that number were for medical reasons?

25   A.  Estimate, five or eight.

8

1    Q.  Okay.  And about how many were for religious
2  reasons?
3    **A.  I guess the rest of that, so about 130, 132.**
4    Q.  Okay.  And did you -- did these requests, did
5  they come to -- where did those go to?  How were those
6  processed?
7    **A.  They would submit a form to the e-mail.  And**
8  **that's how the request would be given.**
9    Q.  Mm-hmm.  And where would that -- where would
10  that form go, that e-mail?
11    **A.  Leave management had access to the e-mails.  So**
12  **either someone on the team would check it --**
13    Q.  So when you say the team, this is the Human
14  Resources Department?
15    **A.  No, just leave management.**
16    Q.  Leave management.
17    **A.  But typically it would be me and Rod looking out**
18  **for those.**
19    Q.  Can you explain to me.  If leave management --
20  is that part of the Human Resources Department?  Is it a
21  subdivision?
22    **A.  It's a subdivision.**
23    Q.  Okay.  Got it.  So you and Rod Maplestone would
24  receive these requests for exemption?
25    **A.  Yes.**

9

1    Q.  And you would process those?

2    A.  Yes.

3    Q.  And was there a uniform system of review of

4    those -- of those requests?

5    A.  Yes.

6    Q.  And what did that entail?

7    A.  We would put them -- we would put them on the

8    list and make sure we were tracking them.  And then we

9    would review the form and then decide if it was -- if it

10   qualified for an exemption.

11   Q.  Okay.  Did you have some sort of standard or

12   uniform criteria for these requests?

13   A.  We did.

14   Q.  And did everyone have the same type of criteria?

15   Was it -- in other words -- let me say that again, make

16   it a little more clear.

17       Was the same criteria used for all persons?

18   A.  Yes.

19   Q.  Okay.  And you tried to be equally fair to all

20   employees requesting religious exemptions?

21   A.  Yes.

22   Q.  Okay.  You treated everyone the same?

23   A.  The process?

24   Q.  Yes.

25   A.  Yes.

                                                      10

1    Q.  Okay.  And what process did you use to make

2  certain everyone was treated the same?

3    **A.  I don't remember the exact process.**

4    Q.  What do you remember of it?

5    **A.  I remember reviewing the form and then just --**

6  **there were certain standards that we're looking at.  And**

7  **we would both separately look at it, then look at -- and**

8  **then tell them what we thought, and then come to a**

9  **consensus about if it was an exempted person or not.**

10    Q.  When you say we would come to a consensus, do

11  you mean yourself and Rod Maplestone?

12    **A.  Me, Rod, and then for that part, Legal might**

13  **have an opinion.**

14    Q.  Okay.  Like an in-house attorney?

15    **A.  Yes.**

16    Q.  Okay.  And for the religious exemption paperwork

17  that was reviewed, who was that?  Was that individuals

18  you just named, yourself, Rod Maplestone, and an

19  attorney?  Or was it just you and Rod Maplestone?

20    **A.  It was the three of us.**

21    Q.  The three of you, okay.  And how about for

22  religious accommodation paperwork?  Which individuals

23  reviewed that?

24    **A.  You mean after the exemption to the -- if they**

25  **were in that part?**

1      Q.  Correct.

2      **A.  Yes, it would be the same three.**

3      Q.  And you -- and you -- and if I understand your

4  testimony, is that the three of you used the same

5  criteria for religious requests for exemption.

6          Did I get that correct?

7      **A.  I'm sorry, the three --**

8          MS. NUETZEL:  Objection.  Vague and ambiguous.

9          MR. SNIDER:  Q.   Well, let me ask, did the --

10  did you -- did the three of you use the same criteria to

11  review religious requests for exemptions?

12      **A.  The religious -- the same criteria?**

13      Q.  Yes.

14      **A.  I believe so.**

15      Q.  And how about for religious accommodations?

16      **A.  Yes, I believe so.**

17      Q.  Okay.  How many religious exemptions were

18  granted?

19      **A.  If I -- estimate?  Or --**

20      Q.  Yes.

21      **A.  90.**

22      Q.  Okay.  And of those 90, how many religious

23  accommodations were granted?

24      **A.  Zero.**

25      Q.  Zero.  As you sit here, do you have any idea as

                                                        12

1  to why there were no religious accommodations granted?

2      A.  I -- we looked at each individual case by case

3  and saw if we were able to accommodate.  So I couldn't

4  generalize of why as a whole they weren't all not

5  accommodated.

6      Q.  Do you know if BART followed the guidance from

7  the Center for Disease Control on vaccination?

8      A.  I don't remember.

9      Q.  Okay.  Do you have any recollection of your

10  review of the Center for Disease Control guidance?

11      A.  Sorry, can you say that again.

12      Q.  Do you have any recollection of you reviewing

13  the Center for Disease Control's guidance on

14  vaccination?

15          MS. NUETZEL:  At any time?

16          MR. SNIDER:  Q.   Let's go from August of 2021

17  to February of 2022.

18      A.  I mean, I don't remember specifically, but it

19  sounds like something we would have done when doing

20  the -- when looking at the accommodations request.

21          MS. NUETZEL:  And don't guess.  If you don't

22  remember --

23          THE WITNESS:  I don't recall.

24          MS. NUETZEL:  -- don't guess.

25          MR. SNIDER:  Q.   Do you know if it was BART's

                                                          13

1  view that unvaccinated employees posed an immediate
2  danger to anyone?
3      A.  I don't remember.
4      Q.  Okay.  Do you know if it would have cost BART
5  anything to accommodate a religious employee?
6          MS. NUETZEL:  Objection.  Vague and ambiguous.
7          You can answer if you understand what he's
8  asking.
9          THE WITNESS:  If it would cost BART if we
10  accommodated?
11         MR. SNIDER:  Q.  Yes.
12     A.  I think it would.
13     Q.  What would it cost?
14     A.  It depends on what the accommodation was.
15     Q.  How about working remotely?
16     A.  Working remotely?  I would have to know about
17  the specific position to know if it would cost -- about
18  working remotely.  It depends, because some people
19  provided -- yeah, I don't know about working remotely,
20  sorry.
21     Q.  Okay.  How about testing?
22     A.  Yes, it would cost for testing.
23     Q.  How much would it cost BART for testing?
24     A.  I don't remember.
25     Q.  Okay.  During that time period of August 2021

14

1  through February or March of 2022, do you have any

2  knowledge as to whether or not testing was -- was being

3  made available to the public for free?

4      **A.  I don't remember the dates.  Like, I couldn't**

5  **tell you --**

6      Q.  Okay.

7      **A.  -- based on those dates.**

8      Q.  Do you know when BART's vaccination mandate went

9  into effect?

10     **A.  I don't remember.**

11     Q.  Okay.  Do you know, from the time that the

12  vaccination mandate went into effect until employees had

13  to comply with it, was there a timespan?

14     **A.  I'm sorry, could you say that again.**

15     Q.  From the date that BART required vaccination for

16  employees --

17     **A.  Okay.**

18     Q.  -- until the date when they -- until the

19  deadline --

20     **A.  Okay.**

21     Q.  -- what -- do you know what timespan that would

22  be in days, weeks, or months?

23     **A.  I don't remember exactly.**

24     Q.  Give me an estimate.

25     **A.  Three months would be my guess.**

15

1    Q.  I'm sorry?

2    A.  **Three months would be my estimate.**

3    Q.  Three months.  And I apologize, I'm a little bit

4    challenged hearing.

5         Do you know if any employees that did not get

6    vaccinated were asked to return to work for a period of

7    time?

8    A.  **If the employees were asked -- the people who**

9    **didn't get vaccinated, if they were asked to return for**

10   **a period of time?  Yes.**

11   Q.  Did you ever understand or hear from -- or hear

12   that BART management did not wish employees to receive

13   accommodations?

14   A.  **No.**

15   Q.  Okay.  So the decision not to give

16   accommodations was entirely from the leave department;

17   is that correct?

18   A.  **Decision to not give accommodations, yes.**

19   Q.  And you received no other information from other

20   parts of BART management or the Board regarding

21   accommodations; is that correct?

22   A.  **Sorry, you asked -- not correct -- I did not --**

23   **can you repeat the question.  Sorry.**

24   Q.  You didn't receive any communications, oral or

25   otherwise, from BART management or the BART Board that

16

1    they -- that there was a preference not to give

2    accommodations?

3        **A.  No, I did not receive any verbal or written**

4    **communication.**

5        Q.  I'm going to ask a few questions about your

6    education.

7            Did you graduate from high school?

8        **A.  Yes.**

9        Q.  Have any college?

10       **A.  Yes.**

11       Q.  Any graduate school?

12       **A.  Yes.**

13       Q.  What was your college degree in?

14       **A.  My college -- I double majored in psychology and**

15   **communication and double minor in education and history.**

16       Q.  Very good.  And where was that at?

17       **A.  UC Santa Barbara.**

18       Q.  And how about graduate school?

19       **A.  Industrial organizational psychology.**

20       Q.  And did you receive a degree?

21       **A.  Yes.**

22       Q.  And what was that in?  I'm sorry --

23       **A.  That was the --**

24       Q.  Yeah, sorry.  Where was that at?

25       **A.  Argosy University.**

                                                        17

1    Q.  And what was the degree that you received?

2    **A.  The industrial organizational psychology.**

3    Q.  I'm sorry, was is it a certificate, a master's?

4    **A.  Oh, it was a master's.**

5    Q.  Okay.  And anything else above that?

6    **A.  No.**

7    Q.  Okay.  All right.  Have you done any reading or

8  other formal studies in religion or theology?

9    **A.  Could you repeat that.  Have I --**

10   Q.  Have you done any reading or other formal

11 studies in religion or theology?

12       MS. NUETZEL:  I'll object as compound.

13       MR. SNIDER:  Let me rephrase it.

14   Q.  Have you done any formal studies in religion?

15   **A.  Personally?**

16   Q.  Why don't you tell me what you've -- what

17 studies you've done in religion.  And maybe that would

18 be the best.  Tell us that way.

19   **A.  I'm in a Bible Institute.**

20   Q.  What is that Bible Institute?

21   **A.  It's -- what is it?  It's --**

22   Q.  What's it called?

23   **A.  It's a Bible Institute.  That's where you just**

24 **study the Bible.**

25   Q.  Is it -- does it have a name?

                                                      18

1    A.   That's what we call it.

2    Q.   Okay.  Is it -- who -- all right.

3         How long have you been at the Bible Institute?

4    A.   About a year and a half.

5    Q.   Does it have -- is it online, or do you have

6    teachers?

7    A.   In-person.

8    Q.   In-person.  Where is it held at?

9    A.   At Heritage Baptist Church.

10   Q.   Heritage Baptist Church.  Okay.

11        Are you a member of Heritage Baptist Church?

12   A.   Yes.

13   Q.   Other than studying at the Bible Institute of

14   Heritage Baptist Church, do you have any other studies

15   in religion?

16   A.   No.

17   Q.   Or theology?

18   A.   No.

19   Q.   Spirituality?

20   A.   No.

21   Q.   All right.  And what courses have you taken at

22   the Bible Institute?

23   A.   So far, it's, like, hermeneutics and just the

24   New Testament and -- yeah, the New Testament.  And then

25   just -- well, I guess about different religions as well,

19

1   but it's more about --

2   Q.  I'm sorry?

3   A.  It's just about different religions.  Learning

4   about different religions and understanding them.

5   Q.  Okay.  And I apologize.  You will have to speak

6   up a little bit --

7   A.  Sorry.

8   Q.  -- for me.  I had too much rock and roll when I

9   was younger.

10  MS. NUETZEL:  That explains it.

11  MR. SNIDER:  It does.

12  Q.  All right.  Did BART give you -- did BART give

13  you any training in religion or theology?

14  A.  No.

15  Q.  Okay.  In reviewing the requests for religious

16  exemptions, did you study up on any religions or

17  theology?

18  A.  No.

19  Q.  In reviewing requests for religious exemptions,

20  did you review any statements from religious leaders to

21  help you evaluate whether an employee -- I'm sorry, to

22  evaluate an employee's religious views?

23  A.  Can you -- sorry, that was a long --

24  Q.  Sure.  Did you review any statements from

25  religious leaders to help you evaluate religious

20

1  employees' requests for exemption?

2  **A.  I don't remember.**

3  Q.  Okay.  Did you review any websites to help you

4  evaluate whether -- or evaluate an employee's request

5  for religious exemption?

6  **A.  To help evaluate the --**

7  Q.  An employee's request for religious exemption.

8  **A.  I don't remember.**

9  Q.  Okay.  Do you know if you used any criteria to

10 determine the sincerity of an employee's religious

11 beliefs?

12 **A.  Yes.**

13 Q.  And what were those criteria?

14 **A.  Oh, I don't remember.**

15 Q.  Do you have a recollection of what -- if those

16 criteria were objective in nature or subjective?

17 **A.  They were given by the EEOC is what I remember.**

18 Q.  Okay.  And do you know -- but you don't -- as

19 you sit here, you don't recall if they were objective or

20 subjective criteria?

21 **A.  I would have to look at them and see.**

22 Q.  What does sincerity mean?

23     MS. NUETZEL:  Objection.  Vague and ambiguous.

24     MR. SNIDER:  Q.   What is your understanding of

25 what sincerity means?

21

1    **A.  That you really believe it and you're really**
2    **true or honest.**
3        Q.  Okay.  Is there any criteria -- criteria used to
4    determine whether a stated religious belief by an
5    employee was factually correct?
6        **A.  Can you explain that part.  Criteria?**
7        Q.  Which part did you not understand?  Is it the
8    objective criteria or belief or factually correct?
9    Which part of that?
10       **A.  Maybe the whole thing.  Yes.**
11       Q.  The whole thing.  Okay, let me repeat it again.
12   And then you tell me where you're not understanding.
13   Okay?
14       **A.  Okay.  Mm-hmm.**
15       Q.  So was there any objective criteria used to
16   determine whether a stated religious belief was
17   factually correct?
18       **A.  I guess the factually part.  It's -- that the**
19   **statements -- that the employees made were factual?**
20   **That they were true and valid?**
21       Q.  Yes.
22       **A.  I -- I don't -- I don't remember applying the**
23   **objective criteria -- well, let me think about it.**
24   **The -- because -- sorry.  No, I don't -- I don't**
25   **remember trying to -- I don't remember disputing if it**

                                                        22

1   was factual.  That wasn't --

2       Q.  Okay.

3       A.  Yeah.

4       Q.  Thank you.  All right.  In front of you -- and

5   by the way, if you need to take a break -- we'll

6   probably take one at 11:00ish.  But if you need to take

7   one before that, let me know and we'll go off the record

8   and --

9       A.  Okay.

10      Q.  All right.  I have in front of you a folder.

11  And there's some documents in there.  And you see the

12  first one says 18.

13      A.  Yes.

14          (Exhibit 18 was marked for identification.)

15          MR. SNIDER:  Q.  Okay.  Remove the paperclip

16  and the first blank page and take a look at this

17  document.  And this document is going to be marked as

18  Exhibit 18.  Look at the first page.

19          Who is the employee?

20      A.  Antonio Gonzalez, III.

21      Q.  And take a look at the top right-hand corner.

22          Can you read the title of this document?

23      A.  Employee Request for Religious Exemption

24  (COVID-19 Vaccination).

25      Q.  All right.  Have you ever seen this document

                                                          23

1    before?

2        **A.  Yes.**

3        Q.  Do you see boxes numbered 1 through 3 on that

4    page, that first page?

5        **A.  Yes.**

6        Q.  All right.  What is Mr. Gonzalez's religion or

7    belief system?

8        **A.    Christian, Catholic.**

9        Q.  Are you familiar with the Catholic church?

10       **A.  Yes.**

11       Q.  Okay.  Do you know enough about it to feel

12   confident to evaluate Roman Catholic beliefs?

13       **A.  Yes.**

14       Q.  Okay.  Look at Page -- some of these documents

15   have page numbers.  They look kind of odd.  They'll have

16   all caps, on the bottom right-hand corner, BART and then

17   you'll see some zeroes and some numbers.

18           Do you see that?

19       **A.  Yes.**

20       Q.  Okay.  Take a look -- turn to Page 5652.

21           Are you there?

22       **A.  Yes.**

23       Q.  There's a highlighted sentence in box 3.

24           Can you read that for the record.

25       **A.   "There is not a clear connection with the**

                                                          24

1    **employee's religious beliefs -- or belief**

2    **and the reason why he is not able to take**

3    **COVID-19 vaccine."**

4    Q.  Are you confident enough in your knowledge of

5    the Catholic church's teaching and practices to be able

6    to evaluate Mr. Gonzalez's request for religious

7    exemption?

8    **A.  Can you repeat that.  It's very --**

9    Q.  All right.  Sure.  Are you confident enough in

10   your knowledge of the Roman Catholic church's teachings

11   and practices to be able to evaluate Mr. Gonzalez's

12   request for a religious exemption?

13   **A.  I'm -- it's -- it's hard, because one doesn't**

14   **necessarily answer the other.**

15   Q.  One doesn't answer the other.  Well, which one?

16   I thought I had one question in there, but did you --

17   you tell me.

18   **A.  My knowledge of Catholicism doesn't necessarily**

19   **correlate with if I was -- if -- if we were going to**

20   **provide exemption or not.**

21   Q.  Okay.  Well, I think your testimony was that you

22   are familiar with the teachings of the Catholic church;

23   is that right?

24   **A.  Yes.**

25   Q.  Okay.  What is the teachings of the Catholic

25

1   church regarding vaccination?

2   **A.   From what I understand --**

3   Q.  Yes.

4   **A.   -- from the Catholic church?**

5   Q.  Yes.

6   **A.   I think it depends on the church you go to.**

7   **Because there's different -- there's different**

8   **viewpoints, depending on which Catholic church you're**

9   **talking about.**

10  Q.  Okay.  You said you remember this document.

11      Do you recall what it was about Mr. Gonzalez's

12  explanation for not wanting to be vaccinated for

13  COVID-19 that came up short?

14  **A.   I don't remember.**

15  Q.  Okay.  Do you want to take a moment to flip

16  through these pages and see if that refreshes your

17  recollection?

18  **A.   Sure.  I don't remember, just looking at the**

19  **notes and --**

20  Q.  Okay.  So as you sit here reading this, where it

21  says that there's not a clear connection with the

22  employee's religious belief and the reason why he is not

23  able to take the COVID-19 vaccine, you don't -- you

24  don't know why that was?

25  **A.   I don't remember.**

                                                        26

1      Q.  Okay.  Take a look at Page 5659.

2         And do you see a highlighted sentence?

3      **A.  Yes.**

4      Q.  Can you read that section for the record.

5      **A.  "Research on this topic has revealed some**

6         **cosmetic and over-the-counter medicines may**

7         **use the same process as the COVID-19 vaccine.**

8         **Are you aware of this?"**

9      Q.  Okay.  Did you help draft this document?

10     MS. NUETZEL:  By this document, are you

11 referring to --

12     MR. SNIDER:  The document in front of her.  And

13 I think it starts an Page 5658.

14     MS. NUETZEL:  I'm just saying, Exhibit 18 has

15 got probably five different documents in it.  So I want

16 to be clear to which one you're referring to.

17     MR. SNIDER:  Fair enough.

18      Q.  Look at Page 5658.

19         What's the name of this document?

20      **A.  Religious Exemption Interviews.**

21      Q.  And then look at Page 5659.

22      **A.  Okay.**

23      Q.  And is this part of the Religious Exemption

24 Interviews document?

25      **A.  Yes.**

1    Q.  Okay.  So did you help draft or provide input
2  into this Religious Exemption Interviews document?
3       MS. NUETZEL:  You're talking about the form
4  document, not necessarily what's -- the responses on
5  this sheet?
6       MR. SNIDER:  Q.  Yes, just the form.
7    **A.  It's been so long, I don't remember.**
8    Q.  Okay.  When it says,
9         "Research on this topic has revealed
10        some cosmetic and over-the-counter medicine
11        may use the same process that COVID-19 -- as
12        the COVID-19 vaccine."
13        Do you know what research is being referred to?
14   **A.  I don't remember.**
15   Q.  Did you ever have occasion to research this
16  issue?
17   **A.  I don't remember.**
18   Q.  Did you ever have an occasion to talk to Mr. Rod
19  Maplestone about the issue of cosmetics using the same
20  method of creation as vaccines?
21   **A.  Yes, we've talked about that.**
22   Q.  Okay.  Tell us about those conversations.
23   **A.  I -- I believe when we -- when we talked about**
24  **it, it was about the aborted fetal cells.  And then that**
25  **they could have been used in the same research, that**

1    people didn't want -- the reason why they didn't want

2    the COVID vaccine was because of the aborted fetal

3    cells, but that those fetal cells were also used in

4    over-the-counter medication.

5        Q.  Okay.  Let's stick with cosmetics first, and

6    then we'll go to over-the-counter medications.

7        A.  Okay.

8        Q.  In my mind, they're two different --

9        A.  Okay.

10       Q.  -- things.  Do you know if Mr. Maplestone

11   engaged in some sort of research --

12       A.  I don't know.

13       Q.   Okay --

14       A.   I don't remember.

15       Q.  Okay.  And you don't remember if you did?

16       A.  I don't remember.

17       Q.  And -- well, let me ask.

18           How would you know whether or not cosmetics use

19   the same type of research as vaccines?

20       A.  How would I know?

21       Q.  How would you know?

22       A.  I'm sure -- honestly, maybe Google.  If we

23   looked, about -- about some things.  But I don't

24   remember exactly.

25       Q.  So you may have -- you think you may have

29

1  Googled this?

2     **A. I don't remember.**

3     Q. What -- what cosmetics are you talking about?

4  Lipstick, rouge, eyeliner?

5     **A. I don't remember. There was a list of them, but**

6  **I don't remember.**

7     Q. There was a list. Where was that list?

8     **A. I don't remember.**

9     Q. Where'd you get the list from?

10    **A. I don't remember.**

11    Q. Uh-huh. What would make you think that a list

12 would be valid?

13    **A. What would make me think the list would be**

14 **valid?**

15    Q. Yes.

16    MS. NUETZEL: I'm going to object that is vague.

17 What list? I mean -- what do you mean by valid?

18    MR. SNIDER: Q. I'm referring to the list you

19 just mentioned. Why would you -- why can you rely on

20 that list?

21    **A. I don't remember.**

22    Q. Was the list -- was this list important enough

23 to ask employees about?

24    **A. Yes.**

25    Q. Why is it -- why was it important enough to ask

                                                    30

1    employees about?

2         A.  In the -- for the interview, we weren't

3    questioning their sincerity, but just to confirm that

4    the actions that they're taking are consistent with

5    their belief.

6         So if the aborted fetal cells -- they're saying

7    they don't take the COVID vaccine because of the aborted

8    fetal cells, but then they are used in some of the

9    things that they're using, that's what we wanted to know

10   about.

11        Q.  I guess my question is, how did you know that

12   there's aborted fetal cells used in research of cosmetic

13   products?

14             MS. NUETZEL:  Objection.  Asked and answered.

15             THE WITNESS:  I don't remember.

16             MR. SNIDER:  Okay.

17        Q.  Well, let's go with over-the-counter medicines.

18             Did you recall any research on that?

19        A.  It's the same, I don't remember.

20        Q.  Do you think these are on the same list?

21        A.  I would -- I would assume so.

22        Q.  And you don't know the source of the list; is

23   that right?

24        A.  Yes.

25        Q.  And it may have been Googled?

                                                           31

1    **A.   Maybe.   I don't remember.**

2    Q.   Okay.   Do you know what over-the-counter

3    medicines are being referred to?

4    **A.   I don't remember.**

5    Q.   Okay.   Take a look at the next page, Page 5660.

6    **A.   Okay.**

7    Q.   All right.   Do you see item 4?

8    **A.   Yes.**

9    Q.   And can you read the highlighted section into

10   the record.

11        (Reporter interruption.)

12        THE WITNESS:  "The denial is objectively

13        supported by what are one of the following

14        factors.  1, the reasons cited in the support

15        of the request were primarily for

16        secular/nonreligious reasons; 2, a clear

17        nexus between the request and the stated

18        religious belief -- beliefs were not -- was

19        not established; 3, evidence of behavior

20        inconsistent with an adherence to the

21        stated beliefs exist; and/or 4, the timing

22        of your request as it relates to the adoption

23        of the stated beliefs."

24        MR. SNIDER:  Okay, thank you.

25   Q.   Of those four items, which of those was

                                                        32

1   Mr. Gonzalez denied on?

2       **A.  I don't remember.**

3       Q.  How would -- was there -- was it ever

4   communicated to Mr. Gonzalez which of these four items

5   he fell short on?

6       **A.  Yes.**

7       Q.  Okay.  And how was that communicated to him?

8       **A.  In a letter.**

9       Q.  So there's a letter that will -- that will

10  identify which of these specific four items he fell

11  short on; is that correct?

12      **A.  That one, I'm not sure, sorry.  I don't know**

13  **about specifically.**

14      Q.  Do you know whether or not it was communicated

15  to him in writing as to which of the four items he fell

16  short on?

17      **A.  I don't remember.**

18      Q.  Do you think anyone told him orally?

19      **A.  I don't remember.**

20      Q.  How would Mr. Gonzalez know which of these four

21  items that you've read he fell short on?

22      **A.  I don't know.**

23      Q.  Okay.  All right.  Set that aside.

24          Take a look at a document marked 19.

25          (Exhibit 19 was marked for identification.)

1      MR. SNIDER:  And this will be Exhibit 19.

2      Q.  You see that this is an Employee Request for

3  Religious Exemption (COVID-19 Vaccination) --

4      **A.  Yes.**

5      Q.  -- form?  And who is the employee?

6      **A.  Clifton Harrison.**

7      Q.  Okay.  Have you seen this document before?

8      **A.  Yes.**

9      MS. NUETZEL:  And when you're asking, are you

10  specifically asking about the document or specifically

11  this one with Clifton Harrison on it?

12      MR. SNIDER:  Q.   Well, why don't you thumb

13  through and tell me if you've seen these documents that

14  consist of Exhibit 19.

15     **A.  They all look familiar.**

16     Q.  Take a look at Page 5835.

17     **A.  Oh, okay.**

18     Q.  Can you look at the portion of the letter that

19  says Subject.  Can you read that into the record.

20     **A.  "Subject:  Denial COVID-19 vaccine mandate**

21  **religious exemption request."**

22     Q.  And in the first paragraph, do you see the

23  second sentence that's highlighted and bolded?

24     **A.  Yes.**

25     Q.  Can you read that into the record.

                                                        34

1      **A.**    **"After careful review and consideration of**

2             **the information provided, the request is**

3             **denied."**

4      Q.   So is it your understanding that Mr. Harrison's

5  request for religious exemption was denied?

6      **A.  Yes.**

7      Q.  Look at box 1 of the first page of the exhibit.

8      **A.  Okay.**

9      Q.  What is Mr. Harrison's religion or belief

10  system?

11     **A.  Islamism.**

12     Q.  Okay.  Are you familiar with Islamism?

13     **A.  No.**

14     Q.  Okay.  Not being familiar with Islamism, did you

15  feel competent to be able to evaluate his request for

16  religious exemption?

17     **A.  Yes.**

18     Q.  Okay.  And why is that?

19     **A.  Because it was based on not if he sincerely held**

20  **the belief, but -- not -- not on the sincerity of the**

21  **belief, but if his actions were consistent with the**

22  **sincerely held belief.**

23     Q.  Okay.  We can put this exhibit aside.

24         Take a look at the next set of documents.

25         (Exhibit 20 was marked for identification.)

                                                  35

1          MR. SNIDER:  And we're going to mark these as

2     Exhibit 20.  Thumb through these.

3          Q.  Do you recognize these set of documents?

4          **A.  They look familiar.**

5          Q.  Okay.  And the first page, I'm seeing an

6     Employee Request for Religious Exemption (COVID-19

7     Vaccination).

8               Do you see that?

9          **A.  Yes.**

10         Q.  And who is the name of the employee requesting

11    the religious exemption?

12         **A.  Nicholas Taylor.**

13         Q.  Okay.  And take a look at Page 1551.

14              Was Mr. Taylor's request for religious exemption

15    granted or denied?

16         **A.  Denied.**

17         Q.  All right.  And going back to the first page of

18    Exhibit 20, look at the first box.

19              What is Mr. Taylor's religion or belief system?

20         **A.  Personal ethics.**

21         Q.  And after reviewing the documents that

22    Mr. Taylor submitted and interviewing him, were you able

23    to understand his religion or belief system?

24         **A.  I don't remember him specifically.**

25         Q.  Okay.  Take a look at the third page.  And I

                                                            36

1   believe it's marked as 1553.

2   **A.  Sorry, where was it?**

3   Q.  It's the third page of the exhibit.

4   **A.  Oh, okay.**

5   Q.  Do you see a paragraph there?

6   **A.  Yes.**

7   Q.  Don't read it out loud.  Just read it to

8   yourself.  Tell me if this refreshes your recollection.

9   **A.  Okay.**

10  Q.  Did you read that paragraph?

11  **A.  I did.**

12  Q.  Okay.  Then turn over two more pages.  It's

13  1547.  That's the page number.

14      Do you see that?

15  **A.  Yes.**

16  Q.  And you see some handwriting on that page?

17  **A.  Yes.**

18  Q.  And do you see boxes 4 and 5?

19  **A.  Yes.**

20  Q.  All right.  Go ahead and take a second to review

21  those.

22  **A.  Okay.**

23  Q.  So is it your understanding these -- what you've

24  just read is the -- is what Mr. Taylor submitted for his

25  request for religious exemption?

37

1      **A.  Yes.**

2      Q.  And after having read his explanation for

3  wanting a -- an exemption -- religious exemption, were

4  you able to understand his religious belief or his

5  religion or belief system?

6      **A.  Yes.**

7      Q.  Okay.  In your own words, explain why

8  Mr. Taylor's belief system failed to meet the standards

9  for religious exemption.

10     **A.  I'm trying to think back of -- back then when it**

11 **was -- when we reviewed it.  So you're asking today my**

12 **opinion or back then why he didn't --**

13         MR. SNIDER:  Mr. Court Reporter, can you read

14 back my question.

15         (Reporter read back.)

16         MS. NUETZEL:  And to follow up on her question,

17 are you asking what her understanding was at the time or

18 today?

19         MR. SNIDER:  Q.   Let's start with at the time.

20     **A.  At the time, it's harder to say the -- I don't**

21 **remember the process at the time.**

22     Q.  Would Mr. Taylor have submitted to you

23 additional documents, or is what you're looking at what

24 he submitted?

25     **A.  This is -- this is what he submitted, what I**

1  remember.

2      Q.  So as you sit here today, what is -- tell me in

3  your own words what you believe -- or I'm sorry.

4          In your own words, explain why Mr. Taylor's

5  belief system failed to meet the standards for religious

6  exemption.

7      **A.  So my own words today --**

8      Q.  Yes.

9      **A.  -- if I'm looking at it, I think it was mainly**

10 **because it was his personal values and more of, like, a**

11 **moral and ethical reason, but --**

12     Q.  And in your understanding, that personal values

13 and a moral and ethical system is insufficient; is that

14 correct?

15     **A.  From today versus, like, a sincerely held**

16 **religious belief.**

17         MR. SNIDER:  Can you read back her answer,

18 sorry.

19         THE WITNESS:  I'm sorry, instead of just, like,

20 that it's -- it's -- here it seems like it's saying that

21 I don't feel like taking it because I don't want to take

22 it.

23         MS. NUETZEL:  Can we take a short break?

24         MR. SNIDER:  Certainly.

25         (Off the record from 10:52 to 11:08.)

                                                        39

1     MR. SNIDER:  Back on the record.

2         There's in front of you some paper-clipped

3     documents.  21.

4         (Exhibit 21 was marked for identification.)

5         MR. SNIDER:  Can you take the paperclip off of

6     that and take a moment to look at that.  For the record,

7     I'll represent that this is an Employee Request for

8     Religious Exemption (COVID-19 Vaccination) form.  And it

9     looks like it's two pages.

10    Q.  Can you look at the first page and tell me the

11    employee's name.

12    **A.  La Ron Johnson.**

13    Q.  And take a look at Page 1320.

14        Was Mr. Johnson's Request for Religious

15    Exemption granted or denied?

16    **A.  Denied.**

17    Q.  Okay.  And then go back to the first page.  Look

18    at box 1.

19        Do you see that?

20    **A.  Yes.**

21    Q.  Can you read what's in box 1.

22    **A.  "My religion or belief system is enter**

23    **description.  Hebraism."**

24    Q.  And that's H-e-b-r-a-i-s-m.

25        Were you involved in the review of Mr. Johnson's

                                                    40

1  Request for Religious Exemption?

2  **A. Yes.**

3  Q. Okay. Take a look at Page 3059 -- I'm sorry,

4  not 30 -- is it 3059? One moment. Yes, 3059. Sorry.

5  **A. Okay.**

6  Q. Do you see it? It looks like some e-mails. Can

7  you look at the bottom highlighted sentences.

8  **A. Yes.**

9  Q. And this is an e-mail. Who is this e-mail from?

10 **A. La Ron Johnson.**

11 Q. And it looks like it's sent -- am I seeing

12 this -- sent to the Human Resources COVID-19 team?

13 **A. Yes.**

14 Q. And who's on that team?

15 **A. I don't remember.**

16 Q. Were you on that team?

17 **A. Yes.**

18 Q. Okay. Can you read those highlighted sentences

19 into the record for us, slowly and succinctly.

20 **A. "Can BART provide a specific reason why my**

21    **religious exemption request was denied?**

22    **With the fact that people are facing**

23    **unemployment, I think the least BART could do**

24    **is explain why a request is denied,**

25    **especially in my case, because I don't fall**

41

1    **into any of the categories for denial**

2    **mentioned in the letter."**

3    Q.  Okay.  Was an explanation -- to your knowledge,

4    was an explanation ever given to Mr. Johnson as to why

5    his request for religious exemption was denied?

6    **A.  I don't remember.**

7    Q.  Okay.  Now, if you would set that aside and pick

8    up document labeled 22.

9    (Exhibit 22 was marked for identification.)

10   MR. SNIDER:  This is going to be marked as

11   Exhibit 22.  At the -- at the top right-hand corner, can

12   you read that for us.

13   **A.  "Employee Request for Religious Exemption**

14   **(COVID-19 Vaccination)."**

15   Q.  And who is the employee?

16   **A.  Jim Lasovich.**

17   Q.  Look at Page 1329.  Can you tell me whether or

18   not Mr. Lasovich's Request for Religious Exemption was

19   granted or denied?

20   **A.  Denied.**

21   Q.  Go back to Page 1.

22   MS. NUETZEL:  You're talking about the first

23   page of the exhibit?  Not Page Number 1.

24   MR. SNIDER:  Yeah.

25   Q.  Look at first page of Exhibit 22.  I believe

1  it's marked 1323 at the bottom.

2        Can you read what is in the first box.

3     A.  "My religion or belief system is:  Enter

4        description.  I have been a Christian for a

5        long time and remember my father and my

6        godparents teaching us catechism at a young

7        age.  And as I got older, I have been an

8        advocate for pro life.  No faithful Christian

9        can be pro abortion.

10       "Therefore, it is my sincere belief that

11       abortion is murder.  Exodus 20:13.  'You

12       shall not kill.'  As such, I cannot accept

13       in good conscience a COVID-19 vaccine based

14       on this strong Christian belief.

15       "Also, the Church says a person should

16       follow their own judgment of conscience and

17       should not be coerced to go against their

18       sincere religious belief."

19    Q.  Is it your understanding from reading that, that

20 Mr. Lasovich is a Roman Catholic?

21    A.  No.

22    Q.  Turn to Page -- three pages in.  There is a

23 letter.  Do you see that?

24    A.  Yes.

25    Q.  And what is the heading on the letter?

                43

1    **A.  Priests for Life.**

2    Q.  Okay.  And do you see a sentence at the upper

3    left-hand corner starts with the word We?

4    **A.  Yes.**

5    Q.  Can you read that into the record.

6    **A.  "We are a worldwide pro life organization**

7    **based on Catholic principles and a 503 --**

8    **50(c)(3) corporation."**

9    Q.  Now, go to the body of the text of the letter.

10   **A.  Yes.**

11   Q.  Can you read that first paragraph into the

12   record.

13   **A.  "Jim Lasovich is a baptized Catholic seeking**

14   **a religious exemption from an immunization**

15   **requirement.  This letter indicates that**

16   **this decision and these circumstances is**

17   **consistent with Catholic teaching."**

18   Q.  Have you seen the documents in Exhibit 22

19   before?

20   **A.  Oh, they look familiar.**

21   Q.  Okay.  Based on the letter in front of you, from

22   Priests for Life, is it your understanding that

23   Mr. Lasovich is a Roman Catholic?

24   **A.  Yes.**

25   Q.  Okay.  And what is your understanding as to

                                                    44

1    Mr. Lasovich's reasons for requesting a religious
2    exemption to BART's COVID-19 vaccination mandate?
3        **A.  That -- from what I read from the first part is**
4    **that he's against abortion.  And as a Catholic, they**
5    **believe abortion is murder.**
6        Q.  Okay.  Now look at Page 1326 of the same
7    Exhibit 22.
8        **A.  Okay.**
9        Q.  Do you see box 3?
10       **A.  Yes.**
11       Q.  And the -- this is where it -- is the first
12   sentence in a -- is the first sentence part of the form,
13   the template?
14       **A.  Which?**
15       Q.  Of box 3.
16       **A.  The -- "is there evidence?"**
17       Q.   Yes.
18       **A.  Yes, that's part of the form.**
19       Q.  And it reads,
20           "Is there evidence the employee is
21        seeking a benefit or an exception that is
22        likely to be sought for nonreligious/secular
23        reasons?"
24           And the boxes -- which box is checked, yes or
25   no?

                                                    45

1    A.  Yes.

2    Q.  Can you read the highlighted sentences into the

3    record in box 3.

4    A.  "Acknowledges he has not heard that

5        Christians cannot take the vaccine.  But it

6        is up to his conscience and between him and

7        God.  However, he states he has had

8        vaccinations in the past and felt terrible

9        afterwards and does not care for that feeling.

10        "As a result, he made a conscious effort

11        to abstain from taking vaccines in general.

12        Also, believes in refraining from ingesting

13        unclean pharmaceutical products.  Did not

14        provide a letter from his church, but instead,

15        a letter from antiabortion political

16        organization based in Florida."

17    Q.  How important was it in the decision to deny

18    Mr. Lasovich's Request for Religious Exemption that he

19    had taken vaccines in the past?

20    A.  I don't remember.

21    Q.  If an employee had taken vaccines in the past,

22    did that tend to factor into decisions regarding

23    requests for religious exemption?

24    A.  It could have.

25        MS. NUETZEL:  Are you asking in general?

                                                        46

1       MR. SNIDER:  I'm sorry, you're both --

2       MS. NUETZEL:  I'm sorry, in general?

3       MR. SNIDER:  Q.   Yes.

4    **A.  It could have.**

5       Q.  It could have.  And why is that?

6    **A.  It could show inconsistent actions on the**

7    **employee, saying I don't take vaccines, and then they**

8    **do.**

9       Q.  Do you understand -- from reading Mr. Lasovich's

10   explanation that was put down by a reviewer --

11   **A.  Okay.**

12      Q.  -- do you -- is it -- do you understand that he

13   had a crisis of conscience for taking vaccines in the

14   past?

15   **A.  I don't remember at the time what I was**

16   **thinking.**

17      Q.  Based on reading this --

18   **A.  Okay.**

19      Q.  -- do you think Mr. Lasovich had a troubled

20   conscience about taking vaccines in the past?

21   **A.  Not necessarily.**

22      Q.  What do you think he means?

23      MS. NUETZEL:  Objection.  Calls for speculation.

24      MR. SNIDER:  Q.   Did you write this?

25   **A.  I don't remember.**

                                                        47

1    Q.  Did you read it?

2    **A.  I read it, yes.**

3    Q.  Did you and Mr. Maplestone make a decision

4  regarding whether or not to grant any religious

5  exemption for Mr. Lasovich?

6    **A.  Did we have a conversation about it?**

7    Q.  Did you participate in a decision --

8    **A.  Yes.**

9    Q.  -- regarding it?

10   **A.  Yes.**

11   Q.  What other interpretation would you give to this

12  if it's not him having a troubled conscience?

13   **A.  For today?**

14   Q.  Well, you're looking at this.

15   **A.  Yeah.**

16   Q.  And based on this -- on this writing in front of

17  you, that you had seen it at some point.

18   **A.  Mm-hmm.**

19   Q.  So tell me what is -- is there a -- any other

20  basis to believe he was facing something other than a

21  trouble conscience?

22   **A.  I just don't know if I would say that it was a**

23  **troubled conscience, that he wanted to refrain from**

24  **taking the vaccine.**

25   Q.  What would you say it was if it wasn't a

                                                           48

1   troubled conscience?

2   **A.  I don't know.**

3   Q.  He said he did not provide a letter from his

4   church, but instead, a letter from an antiabortion

5   political organization based in Florida.

6   Do you believe that is the Priests for Life

7   letter that you saw?

8   **A.  I don't remember, but I think so.**

9   Q.  Okay.  And take a look at that letter once

10   again.  Is there anything in this letter that you would

11   interpret as being political rather than religious?

12   **A.  Do you want me to read it right now?**

13   Q.  Yeah, you could take a moment and read it.  You

14   don't have to read it into the record, just scan it.

15   **A.  No.**

16   Q.  Okay.  Is it important that he -- Mr. Lasovich

17   provided a letter from a religious organization rather

18   than his church?

19   **A.  I think that was a factor that was considered.**

20   Q.  How does that factor weigh into your analysis?

21   **A.  Whether it came from a church he's regularly**

22   **attending or was able to get something -- just get**

23   **something that said his beliefs.**

24   Q.  Why does that matter?

25   **A.  In my opinion or --**

49

1      Q.  In BART's factoring into its analysis.

2      **A.  I think it showed whether or not -- if you have**

3  **this, it just supported the fact that if you have this**

4  **belief and you're consistently attending the services**

5  **versus saying you have a belief and just asking --**

6  **getting a letter from someone that you don't normally**

7  **attend.**

8      Q.  Is it your understanding that the Roman Catholic

9  church has a pro life theology?

10     **A.  I think it depends on the church.**

11     Q.  You don't have any understanding as to whether

12  or not the Roman Catholic church's teaching itself has a

13  pro life theology?

14     **A.  Currently know?**

15     Q.  Currently, no.  Okay.

16     **A.  Currently?  No, I don't -- I don't know.**

17     Q.  Oh, that's k-n-o-w?

18     **A.  Yeah, I don't know.**

19     Q.  I thought it was -- all right.

20        If an employee provided -- or attended a church

21  that was not pro life but that employee himself or

22  herself was pro life, would that matter in the

23  factoring?

24        MS. NUETZEL:  Objection.  Calls for speculation.

25  Also, incomplete hypothetical.

                                                      50

1      You can answer if you understand it.

2      THE WITNESS:  What was it again?

3      MR. SNIDER:  Can you read that questions back,

4  please.

5      (Reporter read back.)

6      THE WITNESS:  Not that the church -- I mean,

7  back then, I believe we took everything into

8  consideration.

9      MR. SNIDER:  Q.   But would you factor that in,

10  that the church that the person attended, what their

11  beliefs were?

12      A.  I'm sure we considered it.

13      Q.  Okay.  Set that Exhibit 22 aside.  And pick up

14  documents we're going to mark as Exhibit 23.

15      (Exhibit 23 was marked for identification.)

16      MR. SNIDER:  All right.

17      Q.  Do you recognize -- thumb through these and tell

18  me if you recognize these documents.

19      A.  They look familiar.

20      Q.  Okay.  And the first page, the top says Employee

21  Request for Religious Exemption (COVID-19 Vaccination).

22      Do you see that?

23      A.  Sorry, the --

24      Q.  The top of --

25      A.  Yes.

                                                    51

1     Q. -- right-hand corner of the -- of Exhibit 23.

2     **A. Yes.**

3     Q. Do you see "Employee Request for Religious

4  Exemption" and then in parens "(COVID-19 vaccination)"?

5     **A. Yes.**

6     Q. Okay. And who is the employee submitting this

7  Request for Religious Exemption?

8     **A. Albert J. Roth, Jr.**

9     Q. And take a look at Page 1524.

10    Was Mr. Roth's request for a religious exemption

11  granted or denied?

12    **A. Denied.**

13    Q. Go back to the first page of Exhibit 23.

14    Do you see the box 1 --

15    **A. Yes.**

16    Q. -- where it says "my" -- the form says, "My

17  religion or belief system is." And it says "enter

18  description" and a colon.

19    Can you write (sic) what is typed in?

20    **A. "I am a minister and hold credentials of**

21       **ministry. See my attached file for details.**

22       **A. Roth, Religious Exemption Request."**

23    Q. Is it your understanding that Mr. Roth is a

24  Christian minister?

25    **A. Yes.**

52

1      Q.  He says, "See my attached file for details."

2          Take a look at the fourth page in.  There's a

3   box -- there are three boxes I'm seeing at the top of

4   the page, 4, 5, and 6.

5          Do you see those?

6      **A.  Yes.**

7      Q.  And do you see a highlighted -- sentences in

8   box 4?

9      **A.  Yes.**

10     Q.  Can you read those into the record.

11     **A.  "Before growing my religious faith, I did**

12         **not understand the severity and the**

13         **consequence of destroying my temple.**

14         **However, because of spiritual advisors that I**

15         **am under, I have grown in my faith since**

16         **taking previous vaccines.  When I grew in my**

17         **faith, I understood how sacred my temple is**

18         **to my god."**

19     Q.  Do you have an understanding of what

20  Reverend Roth means by temple?

21     **A.  Yes.**

22     Q.  What does he mean?

23     **A.  His body.**

24     Q.  Okay.  Now take a look at -- let's see -- I

25  believe it's the next page, is marked 1521.

                                                        53

1          Do you see that?

2     A.   Yes.

3     Q.   Look at box 3.

4     A.   **Okay.**

5     Q.   Or -- and it says the -- the template says,

6          "Is there evidence the employee is seeking

7          a benefit or an exception that is likely to

8          be sought for nonreligious/secular

9          reasons?"

10         And the box is checked yes.

11         Do you see that?

12    A.   **Yes.**

13    Q.   Okay.  Can you read the highlighted explanation.

14    A.   **"Employee lists reasons that include doing**

15         **what is right.  Talks about the vaccine may**

16         **cause harm to his healthy body, which is a**

17         **secular reason.  Although he lists this as**

18         **his belief, he does not provide a reason**

19         **given stating how the COVID-19 vaccine goes**

20         **against his sincerely held religious belief."**

21    Q.   What do you understand of -- about "doing what

22    is right"?  Do you have -- you have it in quotation

23    marks.

24    A.   **What do I understand about it?**

25    Q.   Yes.  Would that be a factor for or against

                                                        54

1  granting a religious exemption?

2  **A.  I don't remember.**

3  Q.  Okay.  Well -- okay.  It's part of the

4  explanation as -- that -- for the -- that the -- that

5  the exception is for a nonreligious or secular reasons.

6  Do you think doing what is right is primarily a

7  secular or sacred reason?

8  **A.  I think it depends on what -- what it is.**

9  Q.  Okay.  You testified that you understood that

10  Reverend Roth referred to his body as -- I'm sorry, to

11  his temple as his body; is that correct?

12  **A.  Yes.**

13  Q.  And you read that he stated that before growing

14  in his religious faith, he "didn't understand the

15  consequence of destroying my temple."

16  Do you remember that?

17  **A.  Yes, I remember reading that.**

18  Q.  Okay.  And here in this highlighted section

19  where it says -- it says,

20  "Talks about the vaccine may cause harm

21  to his healthy body, which is a secular

22  reason."

23  Do you understand -- is it your understanding

24  that -- that doing harm to his body is indeed a secular

25  reason, or is it a religious reason?

1     **A.   I think it depends on the reasoning behind it.**

2     Q.   Well, look in the prior page.  Again, box 4.

3     **A.   Mm-hmm.**

4     Q.   He -- the last sentence you read,

5          "When I grew in my faith, I understood

6          how sacred my temple is to my god."

7          Is it your understanding that -- that -- that

8     his body is a temple and that it is sacred to God?

9          MS. NUETZEL:  Objection.  Calls for speculation.

10         THE WITNESS:  I didn't follow all of that.

11         MR. SNIDER:  Q.   Well, read that sentence into

12    the record again.

13    **A.   Okay.  "Before my growing religious faith, I**

14         **did not understand the severity and the**

15         **consequence of destroying my -- of my --**

16         **destroying my temple."  Okay.**

17    Q.   I'm actually wanting the third sentence.

18    **A.   Oh, sorry.**

19         **"When I grew in my faith, I understood**

20         **how sacred my temple is to God."  Okay.**

21    Q.   Okay.  In that last sentence, is there anything

22    in there which would cause you to believe that is a

23    nonreligious statement?

24    **A.   In that sentence?  No.**

25    Q.   From reviewing the documents he submitted, was

1  it your understanding that Reverend Roth thought that

2  the vaccine could cause him physical harm?

3     **A.  In reviewing it now, in the sentence --**

4     Q.  The documents before you.

5         Was it your understanding that Reverend Roth

6  thought that ingesting the vaccine for COVID-19 may

7  cause harm to his body?

8     **A.  It's -- because at the time we have more time to**

9  **review everything --**

10    Q.  Sure.

11    **A.  -- so I'm looking --**

12    Q.  Take your time.

13    **A.  From reviewing it now, it seems like it's -- he**

14 **does want to have the choice of what he puts in his body**

15 **because he wanted to be pleasing to God.**

16    Q.  Okay.  Do you think he did -- do you think

17 Reverend Roth did provide a religious reason for not

18 wanting to take the COVID-19 vaccine?

19    **A.  I don't remember our thought process at that**

20 **time.**

21    Q.  Okay.  Pick up the documents marked as 24.

22        (Exhibit 24 was marked for identification.)

23        THE WITNESS:  Okay.

24        MR. SNIDER:  Q.   And take a moment to look

25 through those.  And tell me if you recall seeing these.

                                                      57

1    **A.  Yes.  They all look familiar.**

2    Q.  And I'm seeing on the first page of Exhibit 4

3    (sic), have you seen that this is Employee Request for

4    Religious Exemption (COVID-19 Vaccination)?

5    **A.  Yes.**

6    Q.  And who is the employee?

7    **A.  Tonya Lewis Williams.**

8    Q.  And per box 1 on the same page, what is her

9    religion or belief system?

10   **A.  Christianity.**

11   Q.  And then look at the second to the last page of

12   this exhibit marked Page 6359.

13        Was Ms. Williams' Request for Religious

14   Exemption granted or denied?

15   **A.  Denied.**

16   Q.  Okay.  Look at the second page of Exhibit 24.

17   There's a box 4 and 5.

18        Do you see a highlighted section in box 4?

19   **A.  Yes.**

20   Q.  Can you read that slowly into the record.

21   **A.  "My Christian religious beliefs compel me**

22        **from accepting or injecting any of these**

23        **products into my body.  All three of the**

24        **currently available COVID-19 vaccines are**

25        **connected to aborted fetal cell lines.**

                                                      58

1           **1 Corinthians 3:17.  'If any man defile**

2           **the temple of God, him shall God destroy,**

3           **for the temple of God is holy, which temple**

4           **ye are.'**

5              **"In Revelations 13:17, 'And that no man**

6           **might buy or sell save that he had the mark**

7           **or the name of the beast or the number of**

8           **his name.'"**

9      Q.  Is it -- from that description that she wrote,

10   is it your understanding that Mrs. Williams is pro life?

11     **A.  Yes.**

12     Q.  Okay.  She also -- if I'm not mistaken, she also

13   mentions the temple of God.  Says, "The temple of God is

14   holy, which temple ye are."

15          Do you see that?

16     **A.  Yes.**

17     Q.  What do you understand her to mean by temple?

18     **A.  The body.**

19     Q.  Do you think she provides an adequate nexus

20   between being pro life and her faith?

21     **A.  Yes.**

22     Q.  Take a look at Page 6356.

23          Do you see box 3?

24     **A.  Yes.**

25     Q.  And there's a highlighted section?

59

1      A.  Yes.

2      Q.  Can you read that highlighted section into the

3  record for us.

4      A.  "List the political organization Lozier

5          Institute.  Need clarification to see if

6          belief is a part of a comprehensive belief

7          system or if it is an antiabortion personal

8          belief."

9      Q.  Is it your understanding that Lozier Institute

10  is a pro life organization?

11      A.  I don't remember.  But --

12      Q.  Would it matter --

13      A.  I don't remember the thought process at that

14  time.

15      Q.  Would it matter to BART the -- to the BART

16  reviewers if someone mentions a pro life institution?

17      A.  I think we would factor that in.

18      Q.  Okay.  Would it be factored -- strike that.

19          How would it be factored in?

20          MS. NUETZEL:  Objection.  Calls for speculation.

21          MR. SNIDER:  Q.   Well, were you --

22          MS. NUETZEL:  You're -- you're -- you're asking

23  in general versus in this specific instance, correct?

24          MR. SNIDER:  Yes, in general.

25          MS. NUETZEL:  It's ambiguous as well.

                                                        60

1          But you can answer.

2          THE WITNESS:  Can you repeat the question, then.

3  I don't --

4          MR. SNIDER:  Can you repeat the question.

5          (Reporter read back.)

6          THE WITNESS:  I think we would factor that in.

7          MR. SNIDER:  Okay.

8     Q.  And how would you factor that in?

9     **A.  I think we would consider and want more**

10  **information if it was -- if the reason behind it is**

11  **religious or if it was, like it says here, a personal**

12  **belief.**

13     Q.  But you testified that she connected her pro

14  life belief with her faith.

15          Do you remember testifying to that?

16     **A.  Yes.**

17     Q.  Okay.  Then you said it says,

18          "Need clarification to see if belief is

19          part of a comprehensive belief system or if

20          it is an antiabortion personal belief."

21          What is a comprehensive belief system?

22          MS. NUETZEL:  Objection.  Vague and ambiguous.

23          THE WITNESS:  Are you asking for her

24  specifically or --

25          MR. SNIDER:  Q.  No, I'm asking the term

                                                         61

1   comprehensive belief system.  I've seen it in a number

2   of documents.  So I'm wanting to know, what does -- what

3   is meant by that.

4      **A.  From today, 'cause I don't remember at the time**

5   **specifically, but from today, it's -- I would interpret**

6   **it as something where we're -- it's a belief where more**

7   **people believe in that specific trait.**

8      Q.  When you say more people believe in that, do you

9   mean, like, a group or religious group?  What do you

10   mean?

11      **A.  Or that it's that she -- or if a person just**

12   **follows a belief system and that's what their sincerely**

13   **held belief is versus just I -- personally, regardless**

14   **of what anyone else thinks, this is what I feel.**

15      Q.  When it says -- the term -- well, let me ask.

16      This sentence was typed in by either you or

17   someone else from BART; is that correct?

18      **A.  Yes.**

19      Q.  Okay.  And so what is meant by comprehensive in

20   that -- that's a modifier for belief system?

21      MS. NUETZEL:  Objection.  Asked and answered.

22      MR. SNIDER:  Well, I didn't quite hear an

23   explanation for comprehensive.

24      Q.  So if you could explain that to me.

25      **A.  A belief that she -- that she follows versus,**

1    **this is how -- versus her personal belief.**

2    Q.  I guess I'm trying to find out what the modifier

3    comprehensive means outside of Mrs. Williams.

4    **A.  I mean, again, this was so long ago, I -- its**

5    **hard for me to define the terms of what we determined**

6    **back then.**

7    Q.  Okay.  If a -- if a -- when you say -- well,

8    let's go to the other -- other word.  We've got

9    comprehensive belief system.

10        What does system mean?  What does BART mean by

11   that?

12        MS. NUETZEL:  Objection.  Calls for speculation.

13        MR. SNIDER:  Q.   That's BART -- that is BART's

14   words.  Someone from BART typed that, right?

15   **A.  Yes.  I'm sure back -- I mean, I -- back then,**

16   **we had an understanding of it.  But now it's hard for me**

17   **to recall our term for comprehensive belief system.**

18   Q.  Can you -- can you contrast that perhaps for me

19   with personal belief?

20        MS. NUETZEL:  Objection.  Asked and answered.

21        MR. SNIDER:  Q.   What's the difference -- if

22   someone has a -- a personal belief, is -- do you see

23   that as different than a comprehensive belief system?

24        MS. NUETZEL:  Objection.  Asked and answered.

25        THE WITNESS:  I think it depends on the main

1    reason behind it.  The main reason why you believe what
2    you believe.
3            MR. SNIDER:  Okay.
4        Q.  If an employee's personal belief is faith-based,
5    does that matter?
6        **A.  I think it does.**
7        Q.  Okay.  And why is that?
8        **A.  Because if the faith -- if your personal belief**
9    **is coming from your faith, then that's -- versus just --**
10   **I think if it's coming from your faith, then it**
11   **affects -- it does matter.  Like, that's something we**
12   **factor in, where your belief is coming from.**
13       Q.  Okay.  Take a look at -- set that exhibit aside.
14   Take a look at Exhibit 25.
15           (Exhibit 25 was marked for identification.)
16           MR. SNIDER:  Q.   Do you see a box 3?
17       **A.  Yes.**
18       Q.  And can you read what's in that box.  It's
19   highlighted for you.
20       **A.  "Is there evidence the employee is seeking**
21           **benefit or an exception that is likely to**
22           **be sought for nonreligious, secular reasons?"**
23           **The yes box is checked.**
24              **"If yes, please explain.  Refers to 'free**
25           **exercise,' no tie to comprehensive belief**

                                                    64

1           system."

2      Q.   I see "free exercise" is in quotes.

3           What is -- what -- what do you understand that

4    to mean?

5      **A.   I don't remember.**

6      Q.   Okay.  Take a look at Exhibit 26.

7           (Exhibit 26 was marked for identification.)

8           THE WITNESS:  Okay.

9           MR. SNIDER:  And I'm seeing this -- the first

10   page at the very top says Employee Request for Religious

11   Exemption (COVID-19 Vaccination).

12     Q.   Do you see that?

13     **A.   Yes.**

14     Q.   And do you see the employee's name is Sergii

15   Grinchenko?

16     **A.   Yes.**

17     Q.   All right.  And on this first page, can you

18   identify what Mr. Grinchenko's religion or belief system

19   is?

20     **A.   Christian.**

21     Q.   And look at -- I believe it will be the second

22   to the last page.  On Page 3052.

23          Can you tell me whether or not Mr. Grinchenko's

24   Request for Religious Exemption was granted or denied?

25     **A.   Denied.**

1    Q.  Do you believe you have enough knowledge of

2  Christianity to evaluate Mr. Grinchenko's Request for

3  Religious Exemption to BART's COVID-19 vaccination

4  mandate?

5    **A.  My knowledge of Christianity didn't factor in.**

6    Q.  Okay.  Look at the third page of the exhibit.

7  Look at -- there are, I believe there are eight

8  paragraphs that I'm counting on that page.

9        Can you look at the seventh -- I believe it's

10  the second to the last paragraph.

11    **A.  Sixth, okay.**

12    Q.  And it starts with the quotes, quotation marks

13  "CV-19 vaccine products."

14        Do you see that?

15    **A.  Mm-hmm.**

16    Q.  And it's highlighted.

17        Can you read the highlighted section into the

18  record.

19    **A.  "CV-19 vaccine products are genetic coding**

20       **instructions that purport to instruct human**

21       **body to produce a spiked protein that is not**

22       **natural to our own human genetic system.**

23       **The possibility of genetically changing the**

24       **human body, the body created by God in his**

25       **image, goes against my religious belief.**

1          "I believe God is my protection and healer

2          of my body.  And he created immune system

3          that help me to fight with diseases.  I am --

4          believe that injecting myself with

5          vaccination goes against God's commandment,

6          take care of my body."

7     Q.  Now, turn to Page -- the next page, which is

8  marked 4218.  And do you see box 3?

9     A.  Yes.

10     Q.  Can you read the highlighted section into the

11  record.

12     A.  "Employee states secular reasons, such as the

13          vaccine not being safe and may harm his body.

14          It is unclear if his belief is a part of a

15          comprehensive belief system."

16     Q.  From your reading of -- on the prior page, is

17  it -- is it -- do you -- do you see a connection between

18  his -- his statement about -- about protecting his body

19  and religion?  Do you see a connection there?

20     A.  Yes.  From what I just read, yes.

21     Q.  And look at the -- the paragraph above it, the

22  highlighted section.  Can you read that.

23     A.  "I believe that God, through the Holy Spirit,

24          dwells in me and guides me towards his will.

25          Because God lives in me as the Holy Spirit,

                                                      67

1        **my body is a living temple of God.  Do you**

2        **not know that your body is a temple of the**

3        **Holy Spirit, who is in you, whom you have**

4        **received from God?  You are not your own.**

5        **Thy God is in you.  That he is our healer.**

6        **Corinthians 6:19."**

7    Q.  Do you see where it mentions a temple?

8    **A.  Mm-hmm.**

9    Q.  What is your understanding of temple?

10   **A.  Your body.**

11   Q.  Okay.  What does he say the temple is?  It's

12   also what?

13   **A.  The Holy Spirit.  Is that what you're -- oh,**

14   **it's a living temple of God.**

15   Q.  Okay.  Now, going back to the prior -- to the

16   next page where it says,

17       "Employee states secular reasons, such

18       as vaccine not being safe and may harm his

19       body."

20       You said, it is -- or somebody said,

21       "It is unclear if his belief is a part of

22       a comprehensive belief systems."

23       First, let me ask, is the first sentence -- is

24   the first and second sentences, are those two related?

25   Are they talking about the same thing, or are those two

                                                          68

1    different reasons?

2        **A.  I don't remember.**

3        Q.  And you had -- did I ask you whether or not you

4    had seen these documents before, this exhibit?

5        **A.  I don't remember.**

6            MS. NUETZEL:  This specific individual?

7            MR. SNIDER:  Yeah.

8        Q.  Have you ever seen -- have you seen Mr. -- these

9    documents that Mr. Grinchenko submitted?

10       **A.  They look familiar.**

11       Q.  Okay.  You've read some of this.  Take a moment

12   to read and go over that again.  And I'm specifically

13   referring to Pages 3050 and 3051.

14       **A.  Okay.**

15       Q.  Okay.  Based on your understanding on -- I'm

16   sorry, based on what Mr. Grinchenko has provided you,

17   believe his explanation is part of a comprehensive

18   belief system?

19       **A.  Sorry, could you say that one more time.**

20           **(Reporter read back.)**

21           THE WITNESS:  Based on what I've read here,

22   that -- yes, it's a part of a belief system.

23           MR. SNIDER:  All right.  You could set that

24   aside.

25       Q.  So each employee that requested a religious

1    exemption was evaluated on an individualized basis.

2          Am I understanding that correctly?

3    **A.  Yes.**

4    Q.  Is the same true for the accommodations?

5    **A.  Yes.**

6    Q.  So when considering whether a Request for

7    Religious Exemption was granted, BART looked at the

8    particular reasons for the employee's request; is that

9    fair to say?

10   **A.  Yes.**

11   Q.  And the employee request forms and the request

12   review forms, those were the mechanism created by -- by

13   BART for granting or denying an individualized religious

14   exemption?

15   **A.  Yes, they're part of the process.**

16   Q.  Okay.  And based on these individualized -- the

17   system or this process, as you say, the reviewer had the

18   discretion on a case-by-case basis to determine whether

19   to grant a religious exemption for a given employee?

20   **A.  Yes.**

21   Q.  Okay.  And that's the same for the religious

22   accommodation?

23   **A.  Yes.**

24         MR. SNIDER:  I believe we are done.  We've gone

25   through all of the exhibits.  Unless Counsel has

70

1    questions.

2          MS. NUETZEL:  No.

3          MR. SNIDER:  Mr. Court Reporter, may I have an

4    expedited transcript?

5          DEPOSITION OFFICER:  Yes.

6          And, Counsel, would you like to order a copy of

7    the transcript?

8          MS. NUETZEL:  We'd like a copy but not the

9    expedited.

10         (Proceedings concluded at 12:04 p.m.)

11                      --o0o--

12

13

14

15

16

17    _____

18                      GIZELLE Huynh

19

20

21                      --o0o--

22

23

24

25

                                                      71

1                  **DEPOSITION OFFICER'S CERTIFICATE**

2    **STATE OF CALIFORNIA       )**

3                               **) ss.**

4    **COUNTY OF SAN FRANCISCO)**

5

6         **I, Rick Galten, hereby certify:**

7         **I am a duly qualified Certified Shorthand**

8    **Reporter in the State of California, holder of**

9    **Certificate Number CSR 13202 issued by the Court**

10   **Reporters Board of California and which is in full force**

11   **and effect.  (Fed. R. Civ. P. 28(a)).**

12        **I am authorized to administer oaths or**

13   **affirmations pursuant to California Code of Civil**

14   **Procedure, Section 2093(b) and prior to being examined,**

15   **the witness was first duly sworn by me.  (Fed. R. Civ.**

16   **P. 28(a), 30(f)(1)).**

17        **I am not a relative or employee or attorney or**

18   **counsel of any of the parties, nor am I a relative or**

19   **employee of such attorney or counsel, nor am I**

20   **financially interested in this action.  (Fed. R. Civ. P.**

21   **28).**

22        **I am the deposition officer that**

23   **stenographically recorded the testimony in the foregoing**

24   **deposition and the foregoing transcript is a true record**

25   **///**

                                                        72

1    of the testimony given by the witness.  (Fed. R. Civ. P.
2    30(f)(1)).

3         Before completion of the deposition, review of
4    the transcript [x] was [ ] was not requested.  If
5    requested, any changes made by the deponent (and
6    provided to the reporter) during the period allowed, are
7    appended hereto.  (Fe. R. Civ. P. 30(e)).

8

9    Dated: October 2, 2023

10

11

12

13

14

15    _____

16         Rick Galten, CSR No. 13202

17

18

19

20

21

22

23

24

25

73



EXHIBIT
**18**
G. Huynh - 9.29.23



**EMPLOYEE REQUEST FOR RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

| | Date of Request | 11/2/2021 |
|---|---|---|

| Employee Name | Employee ID Number |
|---|---|
| Antonio Gonzalez III | 062638 |
| **Job Title** | **Email Address** |
| QTL | Tonio8072@gmail.com |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU | Bradford Mitchell |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| |
|---|
| 1. My religion or belief system is (enter description): Christian, Catholic |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): 2005 |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): My religious belief is to not have any unwanted intrusions in my body that God has given to me. I have been given a choice to use other vaccines and have declined. I have been offered a Hepatitis vaccine through SFBart and I have declined. I have been offered a Flu vaccine through SFBart and before working with SFBart and I have declined. With this new vaccine, it is no different. My religious belief is to not have any unwanted intrusion in my body, a body that has been given to me by God to keep safe and protect. |

135325:1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

**BART 0005639**



4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

I have held my religious belief That prohibits me from participating in covid19 vaccination because God gave me the body I live in, through my parents. We were created in the image of God, so we must respect and honor whats been given. A Life. We are allowed only one and must cherish it as a Temple of the Holy Spirit. I will not defile my body with unwanted intrusions that were intended to tamper or modify my body and immune system given to me by God. I have declined other vaccines for the same religious beliefs and will continue to not defile my body with unwanted intrusions in the name of God.

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

My request for reasonable accommodation would consist of how I have been working since the beginning of covid19. I have followed the requirements of wearing a mask, distancing, cleanliness and self symptom monitoring. I have been performing My job efficiently and effectively over this past year just as you asked me to do so and it has not caused an undo hardship. There has been no threat to the health and safety of others in performing my daily work duties from the beginning of covid19 to this present time. I am able to perform all essential functions of my position without posing any threat to others health or safety.

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____          11/2/2021
Employee Signature                        Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐ **YES** ☐ **NO**

Date Documentation Received: ___/___/_____

135325.1                    Employee Request for Religious Exemption (COVID-19 vaccine) | Page 2

**BART  0005640**

Napoleon J. Contreras Jr
2559 Holly View Ct
Martinez, CA. 94553
11/03/2021

BART
Bay Area Rapid Transit


Dear BART:

My name is Napoleon J. Contreras Jr., and I am a member of St Catherine's of Sienna Church in Martinez CA. and I am writing today to verify and vouch for Antonio Gonzalez III as a good standing Catholic Cristian. I have known Antonio since 1987 where we attended St Thomas More Catholic School.

As a Catholic Cristian Antonio has held his religious beliefs side by side throughout our lives and he and his wife have passed his beliefs on to his 3 children. Both our families consult the Bible for strength and affirmation of the word of God and rely on the bible to guide us through adversity and challenges.

I have come to Antonio for help and his reference to the Bible for help in making important decisions, including my physical and mental health has made my foundation stronger.

Should you have any questions or concerns, please feel free contact me at 925-395-3508.


Blessings,

Napoleon J. Contreras Jr.

BART 0005642



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Date of Review | 12/2/2021 |
|---|---|

| **Employee Name** | **Employee ID Number** |
|---|---|
| Gonzalez III, Antonio | 062638 |

## Initial Review

1. Documents Included:
   a. Religious Exemption v.1 ☐Yes ☐No _____
   b. Religious/Medical Supplemental ☐Yes ☐No _____
   c. Religious Exemption v.2 ☒Yes ☐No _____
   d. Medical Accommodation ☐Yes ☐No _____
   e. Written Request ☐Yes ☐No _____
   f. Affidavit/Statement ☒Yes ☐No _____
   g. Other documentation ☒Yes ☐No _____

## Case Evaluation

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☐Yes ☒No

   If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☒Yes ☐No

   If "Yes," please explain:
   ==There is not clear connection with the employee's religious belief and the reason why he is not able to take the COVID-19 vaccine.==

4. Is the timing of the request considered questionable? ☐Yes ☒No

   If "Yes," please explain:

BART 0005652



| Employee Name | Employee ID Number |
|---|---|
|  |  |

5.  Is there reason to request an interview of the employee to discuss the request further? ☒Yes ☐No

   If "Yes," please explain:
   Would like to have the opportunity to have the employee express in their own words
   their sincerely held religious belief and how it prevents them from getting the COVID-19 vaccine.

### Interview

6.  Interview Conducted? ☐Yes, Date of Interview: _____   ☐No, ☐Declined by employee

   Interview assessment:

### Religious Exemption Determination

Based on the review of evidence provided, the request for a religious exemption is:
   ☐**Approved**
   ☐**Denied**

   If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an
accommodation.

**BART  0005653**



| **Employee Name** | **Employee ID Number** |
|---|---|
| | |

## Accommodation Criteria

If approved, was an accommodation identified that meets the following criteria:

7. Employee remains able to perform the essential functions of the job: ☐**Yes** ☐**No**

8. Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐**Yes** ☐**No**

9. The request does not create undue hardship for the District: ☐**Yes** ☐**No**

If "No," to any of the above questions, explain:

## Final Determination

The final determination is:

☐**Approved**; both the religious exemption and the accommodation requests are approved
☐**Denied**; either one or both requests (exemption and accommodation) were not approved

Explain:

Amelia Sandoval Smith, Senior Attorney
Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management

12/2/2021

Name/Title of Reviewer

Date

**BART 0005654**

Gonzalez III, Antonio
062638
QTL
12/13/2021 2:20 PM

## Religious Exemption Interviews

Interviewers: Gizelle Huynh, Supervisor of Leave Management
Jesse Alcantara, Senior Leave Management Analyst

EEOC factors:

☒ The reasons cited in support of the request were primarily for secular/non-religious reasons.

☒ A clear nexus between the request and the stated religious beliefs was not established.

☐ Evidence of behaviors inconsistent with adherence to the stated beliefs exists.

☐ The timing of your request as it relates to adoption of the stated beliefs.

*Introduction: We are not questioning the sincerity of your belief, just assess if the Religious Exemptions applies to you, and how it relates to the COVID-19 vaccine. We reviewed all of the documents to support your Religious Vaccination Exemption Request. We wanted to have a quick discussion with you to ask some clarifying questions, it shouldn't take longer than 10-15 minutes. We are not questioning your faith or that you have this sincerely held belief but just wanted to give you the opportunity to provide some clarification. From here: if approved, RA; if denied, then remaining options: get vaccine, retirement/resignation, if do nothing out of compliance.*

INTERVIEW QUESTIONS:

1. Can you just tell us briefly about your sincerely held belief?
2. Can you tell us in your own words why taking COVID-19 vaccine is contrary to your religious belief?

    Due to not wanting any unwanted intrusions when it is been given to him to uphold and protect and keep pure in his life.  No, nothing he would like to add.

3. What do you think will happen to you if you take the COVID-19 vaccine?

    It has a lot of parts to it.  Regarding to his religious/spiritual belief would be, it would cause a change within his body and possibly due harm.  (said that is more scientific, when asked if he could see the benefits, he thinks it would alter his blood.)

4. Can you provide us other examples of how this religious belief is demonstrated in other aspects of your life?

    To follow the way of God as in being a good person and doing the right thing and knowing what is right and what is wrong, and trying to do this non-stop and to show his children this is the right way to be and the right way to live and to have God in the process makes everything happier.

**BART  0005658**

Gonzalez III, Antonio
062638
QTL
12/13/2021 2:20 PM

5. You refuse to take the COVID-19 vaccine because of the alleged use of aborted fetal cells in the creation of the vaccine. Research on this topic has revealed some cosmetic and over-the-counter medicines may use the same process the COVID-19 vaccine. Are you aware of this? Tell me how else you demonstrate the same pre-cautions in your life.

Determination:

☐ Approved

☒ Denied



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

EDD Claim
Employee:     Antonio Gonzalez III
Job Title:      QTL
Employee ID:  062638
Respondent:   Gizelle Huynh, Supervisor of Leave Management

## Employer Response:

1. Did the claimant provide and application for exemptions?

   **Yes, the claimant provided an application for exemptions.**

2. What reason did he give for wanting the exemptions?

   **Due to not wanting any unwanted intrusions in his body when his body has been given to him to uphold and protect and keep pure in his life. If he took the COVID vaccine, he indicated it would cause a change within his body and possibly do harm; he thinks it would alter his blood.**

3. Was it granted or denied?

   **After careful review and consideration of the information provided, his request was denied.**

4. If denied why was it denied?

   **The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).**





EXHIBIT
19
G. Huynh - 9.29.23

**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| | Date of Request | 11/14/21 |
| --- | --- | --- |

| Employee Name | Employee ID Number |
| --- | --- |
| Clifton Harrison | 063189 |

| Job Title | Email Address |
| --- | --- |
| Station Agent | clifton.harrison@yahoo.com |

| Union (or Non-Rep) | Supervisor/Manager |
| --- | --- |
| ATU 1555 | Bryan Clay |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

## EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description):

   Islamism

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): 6/25/14

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): I've Attached Supporting documentation with some of the laws, tenets, & scripture that I follow. I follow the laws/tenets of my religion in All Aspects of my life to the best of my Ability. This Covid19 vaccine mandate violates my rights & goes Against my religious beliefs.

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

BART 0005812



| | |
|---|---|
| 4. | If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed). **N/A** |

| | |
|---|---|
| 5. | If requested, I can provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. ☑**YES** ☐**NO** |

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____
**Employee Signature**

11/14/21
**Date**

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

**FOR LEAVE MANAGEMENT USE ONLY**

Date Received: ___/___/_____         Documentation Included? ☐**YES** ☐**NO**

Date Documentation Received: ___/___/_____

# BART COVID-19 RELIGIOUS EXEMPTION:

## Clifton Harrison Employee Id. 063189
## Supporting information

Here is a collection of some of the Laws, Tenets, Religious scriptures, etc. that support my right to be exempt from the "BART Covid-19 vaccine mandate". Please note that this document highlights some of the laws, tenets, etc., but I adhere and believe in all of the laws, tenets, beliefs of my religion.

## *Religious scripture, tenets, etc.*

### *Holy Koran Circle 7:*
Chapter 2, Line 15; A mighty work is theirs, for carnal men want not the light; they love the dark, and when the light shines in the dark they comprehend it not.

Chapter 3, line 2: "No man lives unto himself, for every living thing is bound by cords to every other living thing.

Chapter 7, Line 25-26: Lamaas asked: "Pray, what is faith?" And Jesus said: "Faith is the surety of the omnipotence of Allah and man; the certainty that man will reach the deific life.

Chapter 8, line 7: Allah's meeting place with man is in the heart, and in a still small voice he speaks; and he who hears is still.

Chapter 8, line 14: Assist the poor, and help the weak; do harm to none, and covet not what is not yours.

Chapter 10, line 9-10: Now, men and birds and beasts and creeping things are deities, made flesh; and how dare men kill anything? It is cruelty that makes the world awry, when men have learned that when they harm a living thing, they harm themselves, they surely will not kill, nor cause a thing that Allah has made to suffer pain.

Chapter 11, line 12-13: And Jesus said: "Enlightened Arabo, are you a master mind and do not know that man knows naught by being told? Man may believe what others say, but thus he never knows. If man would know, he must, himself be what he knows".

1

Chapter 14, line 24-25: Your lawyers, doctors, scribes are useless cumberers of the ground; they are but tumors on the body of the state. They toil not, neither do they spin, yet they consume the profits of your marts of trade

Chapter 23, line 10: Teach him temperance, and he shall have health; teach him prudence, and fortune shall attend him.

Chapter 26, line 3: True wisdom is less presuming than folly. The wise man doubteth often, and changeth his mind; the fool is obstinate, and doubteth not; he knoweth all things, but his own ignorance.

Chapter 28, line 2: The honor of a servant is his fidelity; his highest virtues are submission and obedience.

Chapter 33, line 6: But receive not a favor from the hand of the proud; to the selfish and avaricious have no obligation; the vanity of pride shall expose thee to shame; the greediness of avarice shall never be satisfied.

Chapter 34, line 2: The tongue of the sincere is rooted in heart; hypocrisy and deceit have no place in his words.

Chapter 35, line 14-15: Wonderful is He in all His ways; His counsels are inscrutable; the manner of His knowledge transcendeth thy conception. Pay therefore to His wisdom, all honor and veneration; and bow down thyself in humble and submissive obedience to His supreme discretion. 16. The Father is gracious and beneficent; He hath created the world in mercy and love.

Chapter 38, line 1: The blessing, O man, of thy external part is health, vigor and proportion. The greatest of these is health. What health is to the body even that is honesty to the soul.

Chapter 38, line 27: General opinion is no proof of truth, for the generality of men are ignorant.

Chapter 39, line 11: A good death is better than an evil life; strive therefore, to live as long as thou oughtest, not as long as thou canst. While thy life is to others worth more than thy death, it is thy duty to preserve it.

BART 0005815

Chapter 41, line 9: Establish unto thyself principles of action, and see that thou ever act according to them.

Chapter 41, line 13: How should his actions be right, who hath no rule of his life? Nothing can be just which proceedeth not from reason.

Chapter 43, line 6: If the objects of thy desire demanding the lives of a thousand sayeth thou not: "I will have it." Surely thou forgetteth that He who created thee, created also these; and that their blood is as rich as thine?

Chapter 47, line 9: According to all true and divine records of the human race there is no negro, black, or colored race attached to the human family, because all the inhabitants of Africa were and are of the human race, descendants of the ancient Canaanite nation from the holy land of Canaan.

Chapter 47, line 16: Through sin and disobedience every nation has suffered slavery, due to the fact that they honored not the creed and principles of their forefathers.

Chapter 48, line 1: The last Prophet in these days is Noble Drew Ali, who was prepared divinely in due time by Allah to redeem men from their sinful ways; and to warn them of the great wrath which is sure to come upon the earth.

Chapter 48, line 11: We are trying to uplift fallen humanity. Come and link yourselves with the families of nations. We honor all the true and divine prophets.

## Quran & Hadith:

Bukhari Vol. 7 : No. 548

Narrated Abu Huraira (Radi-Allahu 'anhu):

The Prophet (Sallallahu 'Alaihi Wa Sallam) said, "There is no disease that Allah has created, except that He also has created its treatment."

Bukhari Vol. 7 : No. 583

Narrated Abu Said Al-Khudri (Radi-Allahu 'anhu):

BART 0005816

A man came to the Prophet (Sallallahu 'Alaihi Wa Sallam) and said, "My brother has some abdominal trouble." The Prophet (Sallallahu 'Alaihi Wa Sallam) said to him "Let him drink honey." The man came for the second time and the Prophet (Sallallahu 'Alaihi Wa Sallam) said to him, "Let him drink honey." He came for the third time and the Prophet (Sallallahu 'Alaihi Wa Sallam) said, "Let him drink honey." He returned again and said, "I have done that." The Prophet (Sallallahu 'Alaihi Wa Sallam) then said, "Allah has said the truth, but your brother's abdomen has told a lie. Let him drink honey." So he made him drink honey and he was cured.

Bukhari Vol. 7 : No. 588

Narrated Khalid bin Sad (Radi-Allahu 'anhu):

We went out and Ghalib bin Abjar was accompanying us. He fell ill on the way and when we arrived at Medina he was still sick. Ibn Abi 'Atiq came to visit him and said to us, "Treat him with black cumin. Take five or seven seeds and crush them (mix the powder with oil) and drop the resulting mixture into both nostrils, for 'Aisha has narrated to me that she heard"

the Prophet (Sallallahu 'Alaihi Wa Sallam) saying, "This black cumin is healing for all diseases except As-Sam." Aisha said, "What is As-Sam?" He said, "Death."

Ash-Shu'ara-80, Surah The Poets Verse-80 - And when I am ill, it is He who cures me.

## Holy Bible:

Genesis 9:6 - If anyone takes a human life, that person's life will also be taken by human hands. For God made human beings in his own image.

Romans 13:9 - The commandments, "You shall not commit adultery," "You shall not murder," "You shall not steal," "You shall not covet," and whatever other command there may be, are summed up in this one command: "Love your neighbor as yourself."

4

BART 0005817

Deuteronomy 7:15 - And the LORD will take away from thee all sickness, and will put none of the evil diseases of Egypt, which thou knowest, upon thee; but will lay them upon all *them* that hate thee.

Hosea 6:1 - "Come, let us return to the LORD. He has torn us to pieces but he will heal us; he has injured us but he will bind up our wounds."

Matthew 4:23 - And Jesus went about all Galilee, teaching in their synagogues, and preaching the gospel of the kingdom, and healing all manner of sickness and all manner of disease among the people.

Isaiah 38:21 - Isaiah had said, "Prepare a poultice of figs and apply it to the boil, and he will recover."

Acts 10:38 - How God anointed Jesus of Nazareth with the Holy Ghost and with power: who went about doing good, and healing all that were oppressed of the devil; for God was with him.

Mark 3:10 - For he had healed many, so that those with diseases were pushing forward to touch him.

Psalm 30:2 - O LORD my God, I cried unto thee, and thou hast healed me.

Proverbs 4:20-22 - My son, attend to my words; incline thine ear unto my sayings. Let them not depart from thine eyes; keep them in the midst of thine heart. For they *are* life unto those that find them, and health to all their flesh.

Ezekiel 47:11-12 - But the miry places thereof and the marishes thereof shall not be healed; they shall be given to salt. And by the river upon the bank thereof, on this side and on that side, shall grow all trees for meat, whose leaf shall not fade, neither shall the fruit thereof be consumed: it shall bring forth new fruit according to his months, because their waters they issued out of the sanctuary: and the fruit thereof shall be for meat, and the leaf thereof for medicine.

Exodus 20:13 - Thou shalt not kill.

Matthew 5:21 - Ye have heard that it was said by them of old time, Thou shalt not kill; and whosoever shall kill shall be in danger of the judgment.

5

BART 0005818

Exodus 23:7 - Keep thee far from a false matter; and the innocent and righteous slay thou not: for I will not justify the wicked.

Leviticus 24:17 - And he that killeth any man shall surely be put to death.

1 Corinthians 6:19-20 - What? know ye not that your body is the temple of the Holy Ghost *which is* in you, which ye have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.

Job 13:2-6 - What ye know, *the same* do I know also: I *am* not inferior unto you. Surely I would speak to the Almighty, and I desire to reason with God. But ye *are* forgers of lies, ye *are* all physicians of no value. O that ye would altogether hold your peace! and it should be your wisdom. Hear now my reasoning, and hearken to the pleadings of my lips.

Mark 5:25-34 - And a certain woman, which had an issue of blood twelve years, And had suffered many things of many physicians, and had spent all that she had, and was nothing bettered, but rather grew worse, When she had heard of Jesus, came in the press behind, and touched his garment. For she said, If I may touch but his clothes, I shall be whole. And straightway the fountain of her blood was dried up; and she felt in *her* body that she was healed of that plague. And Jesus, immediately knowing in himself that virtue had gone out of him, turned him about in the press, and said, Who touched my clothes? And his disciples said unto him, Thou seest the multitude thronging thee, and sayest thou, Who touched me? And he looked round about to see her that had done this thing. But the woman fearing and trembling, knowing what was done in her, came and fell down before him, and told him all the truth. And he said unto her, Daughter, thy faith hath made thee whole; go in peace, and be whole of thy plague.

Exodus 15:26 - And said, If thou wilt diligently hearken to the voice of the LORD thy God, and wilt do that which is right in his sight, and wilt give ear to his commandments, and keep all his statutes, I will put none of these diseases upon thee, which I have brought upon the Egyptians: for I *am* the LORD that healeth thee.

Revelation 22:2 - In the midst of the street of it, and on either side of the river, *was there* the tree of life, which bare twelve *manner of* fruits, *and* yielded her fruit every month: and the leaves of the tree *were* for the healing of the nations.

6

BART 0005819

James 5:15 - And the prayer offered in faith will make the sick person well; the Lord will raise them up. If they have sinned, they will be forgiven.

Jeremiah 30:17 - But I will restore you to health and heal your wounds,' declares the LORD, 'because you are called an outcast, Zion for whom no one cares.'

Luke 4:40 - At sunset, the people brought to Jesus all who had various kinds of sickness, and laying his hands on each one, he healed them.

2 Kings 20:7 - The time will surely come when everything in your palace, and all that your predecessors have stored up until this day, will be carried off to Babylon. Nothing will be left, says the LORD.

Jeremiah 33:6 - "'Nevertheless, I will bring health and healing to it; I will heal my people and will let them enjoy abundant peace and security."

1 Corinthians 2:14 - The person without the Spirit does not accept the things that come from the Spirit of God but considers them foolishness, and cannot understand them because they are discerned only through the Spirit.

Psalm 103:3 - Who forgiveth all thine iniquities; who healeth all thy diseases.

Matthew 10:1 - Jesus called his twelve disciples to him and gave them authority to drive out impure spirits and to heal every disease and sickness.

Psalm 41:3 - The LORD will strengthen him upon the bed of languishing: thou wilt make all his bed in his sickness.

Leviticus 26:14-16 - If, however, you fail to obey Me and to carry out all these commandments, and if you reject My statutes, despise My ordinances, and neglect to carry out all My commandments, and so break My covenant, then this is what I will do to you: I will bring upon you sudden terror, wasting disease, and fever that will destroy your sight and drain your life. You will sow your seed in vain, because your enemies will eat it.

Matthew 9:35 - Jesus went through all the towns and villages, teaching in their synagogues, proclaiming the good news of the kingdom and healing every disease and sickness.

Deuteronomy 5:17 - "You shall not murder."

7

BART 0005820

# Laws

*United Nations Declaration on the Rights of Indigenous Peoples:*

Article 2; Indigenous peoples and individuals are free and equal to all other peoples and individuals and have the right to be free from any kind of discrimination, in the exercise of their rights, in particular that based on their indigenous origin or identity.

Article 4: Indigenous peoples, in exercising their right to self-determination, have the right to autonomy or self-government in matters relating to their internal and local affairs, as well as ways and means for financing their autonomous functions.

Article 7: 1. Indigenous individuals have the rights to life, physical and mental integrity, liberty and security of person. 2. Indigenous peoples have the collective right to live in freedom, peace and security as distinct peoples and shall not be subjected to any act of genocide or any other act of violence, including forcibly removing children of the group to another group.

Article 8: 1. Indigenous peoples and individuals have the right not to be subjected to forced assimilation or destruction of their culture. 2. States shall provide effective mechanisms for prevention of, and redress for: (a) Any action which has the aim or effect of depriving them of their integrity as distinct peoples, or of their cultural values or ethnic identities; (b) Any action which has the aim or effect of dispossessing them of their lands, territories or resources; (c) Any form of forced population transfer which has the aim or effect of violating or undermining any of their rights; (d) Any form of forced assimilation or integration; (e) Any form of propaganda designed to promote or incite racial or ethnic discrimination directed against them.

Article 9: Indigenous peoples and individuals have the right to belong to an indigenous community or nation, in accordance with the traditions and customs of the A/RES/61/295 5 community or nation concerned. No discrimination of any kind may arise from the exercise of such a right.

Article 17: 1. Indigenous individuals and peoples have the right to enjoy fully all rights established under applicable international and domestic labour law. 2. States shall in consultation and cooperation with indigenous peoples take specific measures to protect indigenous children from economic exploitation and from performing any work that is

8

likely to be hazardous or to interfere with the child's education, or to be harmful to the child's health or physical, mental, spiritual, moral or social development, taking into account their special vulnerability and the importance of education for their empowerment. 3. Indigenous individuals have the right not to be subjected to any discriminatory conditions of labour and, inter alia, employment or salary.

## *Organization of American States Declarations of Rights of Indigenous Peoples:*

Article 1: The American Declaration on the Rights of Indigenous Peoples applies to the indigenous peoples of the Americas.

Article 3: Indigenous peoples have the right to self-determination. By virtue of that right, they freely determine their political status and freely pursue their economic, social, and cultural development.

Article 5: Indigenous peoples and individuals have the right to the full enjoyment of all human rights and fundamental freedoms, as recognized in the Charter of the United Nations, the Charter of the Organization of American States, and international human rights law.

Article 10: 1) Indigenous peoples have the right to maintain, express, and freely develop their cultural identity in all respects, free from any external attempt at assimilation. 2) States shall not carry out, adopt, support, or favor any policy of assimilation of indigenous peoples or of destruction of their cultures.

Article 13: 1) Indigenous peoples have the right to their own cultural identity and integrity and to their cultural heritage, whether tangible or intangible, including historic and ancestral heritage; and to the protection, preservation, maintenance, and development of that cultural heritage for their collective continuity and that of their members and so as to transmit that heritage to future generations. 2) States shall provide redress through effective mechanisms, which may include restitution, developed in conjunction with indigenous peoples, with respect to their cultural, intellectual, religious, and spiritual property taken without their free, prior, and informed consent or in violation of their laws, traditions, and customs. 3) Indigenous people have the right to recognition and respect for all their ways of life, cosmovisions, spirituality, uses, customs, norms, traditions, forms of social, economic, and political organization; forms of transmission of knowledge, institutions, practices, beliefs, values, dress, and languages, recognizing their inter-relationship as established in this Declaration.

9

BART 0005822

Article 16: 1) Indigenous peoples have the right freely to exercise their own spirituality and beliefs and, by virtue of that right, to practice, develop, transmit, and teach their traditions, customs, and ceremonies, and to carry them out in public and in private, whether individually or collectively. 2) No indigenous people or individual shall be subjected to pressures or impositions, or any other type of coercive measures that might impair or limit their right freely to exercise their indigenous spirituality and beliefs. 3) Indigenous peoples have the right to preserve, protect, and access their sacred sites, including their burial grounds, to use and control their sacred objects and relics, and to recover their human remains. 4) States, in conjunction with indigenous peoples, shall adopt effective measures, to promote respect for indigenous spirituality and beliefs, and to protect the integrity of the symbols, practices, ceremonies, expressions, and spiritual protocols of indigenous peoples, in accordance with international law.

Article 18: 1) Indigenous peoples have the collective and individual right to the enjoyment of the highest attainable standard of physical, mental, and spiritual health. 2) Indigenous peoples have the right to their own health systems and practices, as well as to the use and protection of their vital medicinal plants, animals and minerals, and other natural resources for medicinal use in their ancestral lands and territories. 3) States shall take measures to prevent and prohibit indigenous peoples and individuals from being subjects of research programs, biological or medical experimentation, or sterilization without their free, prior and informed consent. Likewise, indigenous peoples and individuals have the right, as appropriate, to access to their data, medical records, and documentation of research conducted by individuals and institutions, whether public or private. 4) Indigenous peoples have the right to use, without discrimination of any kind, all the health and medical care institutions and services accessible to the general population. States, in consultation and coordination with indigenous peoples, shall promote intercultural systems and practices in the medical and health services provided in indigenous communities, including training of indigenous technical and professional health care personnel. 5) States shall ensure the effective exercise of the rights contained in this article.

Article 19: 1) Indigenous peoples have the right to live in harmony with nature and to a healthy, safe, and sustainable environment, essential conditions for the full enjoyment of the rights to life and to their spirituality, cosmovision, and collective well-being. 2) Indigenous peoples have the right to conserve, restore, and protect the environment and to manage their lands, territories and resources in a sustainable way. 3) Indigenous peoples have the right to be protected against the introduction, abandonment, dispersion, transit, indiscriminate use, or deposit of any harmful substance that could adversely affect indigenous communities, lands, territories and resources. 4) Indigenous

10

BART 0005823

peoples have the right to the conservation and protection of the environment and the productive capacity of their lands or territories and resources. States shall establish and implement assistance programs for indigenous peoples for such conservation and protection, without discrimination.

Article 22: 1) Indigenous peoples have the right to promote, develop and maintain their institutional structures and their distinctive customs, spirituality, traditions, procedures, practices and, in the cases where they exist, juridical systems or customs, in accordance with international human rights standards. 2) Indigenous law and legal systems shall be recognized and respected by national, regional and international legal systems. 3) Matters concerning indigenous individuals or their rights or interests in the jurisdiction of each State shall be conducted in such a way as to afford indigenous individuals the right to full representation with dignity and equality before the law. Consequently, they are entitled, without discrimination, to equal protection and benefit of the law, including the use of linguistic and cultural interpreters. 4) States shall take effective measures in conjunction with indigenous peoples to ensure the implementation of this article.

Article 27: 1) Indigenous peoples and individuals have the rights and guarantees recognized in national and international labor law. States shall take all special measures necessary to prevent, punish and remedy any discrimination against indigenous peoples and individuals. 2) States, in conjunction with indigenous peoples, shall adopt immediate and effective measures to eliminate exploitative labor practices with regard to indigenous peoples, in particular, indigenous children, women and elderly persons. 3) Where indigenous peoples are not effectively protected by the laws applicable to workers in general, States, in conjunction with indigenous peoples, shall adopt all necessary measures to: a. protect indigenous workers and employees in relation to hiring under fair and equal conditions in both formal and informal employment; b. establish, apply, or improve labor inspection and the enforcement of rules with particular attention to, inter alia, regions, companies, and labor activities in which indigenous workers or employees participate; c. establish, apply, or enforce laws so that both female and male indigenous workers: i. enjoy equal opportunities and treatment in all terms, conditions, and benefits of employment, including training and capacity building, under national and international law; ii. enjoy the right of association, the right to form trade unions and participate in trade union activities, and the right to collective bargaining with employers through representatives of their own choosing or through workers' organizations, including traditional authorities; iii. are not subject to discrimination or harassment on the basis of, inter alia, race, sex, origin, or indigenous identity; iv. are not subject to coercive hiring systems, including debt servitude or any other form of forced or compulsory labor, regardless of whether the labor arrangement

BART 0005824

arises from law, custom, or an individual or collective arrangement, in which case the labor arrangement shall be deemed absolutely null and void; v. are not forced to work in conditions that endanger their health and personal safety; and are protected from work that does not conform to occupational health and safety standards; vi. receive full and effective legal protection, without discrimination, when they provide their services as seasonal, occasional, or migrant workers, as well as when they are hired by employers, such that they receive the benefits of national laws and practices, which shall be in accordance with international human rights laws and standards for this category of workers; d. ensure that indigenous workers and their employers are informed of the rights of indigenous workers under national law and international and indigenous standards, and of the remedies and actions available to them to protect those rights. 4) States shall take measures to promote employment of indigenous individuals.

Article 28: 1) Indigenous peoples have the right to full recognition and respect for the ownership, dominion, possession, control, development, and protection of their tangible and intangible cultural heritage and intellectual property, including its collective nature, transmitted over millennia from generation to generation. 2) The collective intellectual property of indigenous peoples includes, inter alia, traditional knowledge and traditional cultural expressions, including traditional knowledge associated with genetic resources, ancestral designs and procedures, cultural, artistic, spiritual, technological, and scientific expressions, tangible and intangible cultural heritage, as well as knowledge and developments of their own related to biodiversity and the utility and qualities of seeds, medicinal plants, flora, and fauna. 3) States, with the full and effective participation of indigenous peoples, shall adopt measures necessary to ensure that national and international agreements and regimes provide recognition and adequate protection for the cultural heritage of indigenous peoples and intellectual property associated with that heritage. In adopting such measures, consultations shall be held to obtain the free, prior and informed consent of indigenous peoples

Article 33: Indigenous peoples and individuals have the right to effective and suitable remedies, including prompt judicial remedies, for the reparation of any violation of their collective and individual rights. States, with the full and effective participation of indigenous peoples, shall provide the necessary mechanisms for the exercise of this right.

Article 34: In the event of conflicts or disputes with indigenous peoples, States shall provide, with the full and effective participation of those peoples, just, equitable and effective mechanisms and procedures for their prompt resolution. For that purpose, due consideration and recognition shall be accorded to the customs, traditions, norms and legal systems of the indigenous peoples concerned.

BART 0005825

*American Constitution:*

1st Amendment: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

4th Amendment: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

# Other Legal documents:

- Senate Bill 1383
- Senate Bill 1159
- Assembly Bill 685
- The Americans with Disabilities Act
- The Civil Rights Act of 1964
- Genetic Information Nondiscrimination Act

BART 0005826



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Date of Review | 12/16/2021 |
|---|---|

| **Employee Name** | **Employee ID Number** |
|---|---|
| Harrison, Clifton | 063189 |

## Initial Review

1. Documents Included:
   a. Religious Exemption v.1 ☒Yes ☐No _____
   b. Religious/Medical Supplemental ☐Yes ☐No _____
   c. Religious Exemption v.2 ☐Yes ☐No _____
   d. Medical Accommodation ☐Yes ☐No _____
   e. Written Request ☐Yes ☐No _____
   f. Affidavit/Statement ☒Yes ☐No _____
   g. Other documentation ☐Yes ☐No _____

## Case Evaluation

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☐Yes ☒No

   If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☐Yes ☐No

   If "Yes," please explain:

4. Is the timing of the request considered questionable? ☐Yes ☒No

   If "Yes," please explain:

BART 0005830



**RELIGIOUS EXEMPTION**
**REQUEST REVIEW FORM**
**(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
|  |  |

5. Is there reason to request an interview of the employee to discuss the request further? ☒Yes ☐No

If "Yes," please explain:
There is not a clear connection with the employee's religious belief and the reason why he is not able to take the COVID-19 vaccine.

Would like to have the opportunity to have the employee express in their own words their sincerely held religious belief and how it prevents them from getting the COVID-19 vaccine.

## Interview

6. Interview Conducted? ☐Yes, Date of Interview: _____ ☐No, ☐Declined by employee

Interview assessment:

## Religious Exemption Determination

Based on the review of evidence provided, the request for a religious exemption is:

☐**Approved**

☐**Denied**

If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an accommodation.

**BART 0005831**



| Employee Name | Employee ID Number |
|---|---|
| | |

## Accommodation Criteria

If approved, was an accommodation identified that meets the following criteria:

7.  Employee remains able to perform the essential functions of the job: ☐Yes ☐No

8.  Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐Yes ☐No

9.  The request does not create undue hardship for the District: ☐Yes ☐No

   If "No," to any of the above questions, explain:

## Final Determination

The final determination is:

   ☐**Approved**; both the religious exemption and the accommodation requests are approved
   ☐**Denied**; either one or both requests (exemption and accommodation) were not approved

   Explain:

_____
Name/Title of Reviewer

_____
Date

**BART 0005832**

Harrison, Clifton
063189
Station Agent
12/17/2021 12:43 PM

## Religious Exemption Interviews

Interviewers:  Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management

**EEOC factors:**

☐ The reasons cited in support of the request were primarily for secular/non-religious reasons.

☒ A clear nexus between the request and the stated religious beliefs was not established.

☐ Evidence of behaviors inconsistent with adherence to the stated beliefs exists.

☐ The timing of your request as it relates to adoption of the stated beliefs.

*Introduction:  We are not questioning the sincerity of your belief, just assess if the Religious Exemptions applies to you, and how it relates to the COVID-19 vaccine.  We reviewed all of the documents to support your Religious Vaccination Exemption Request.  We wanted to have a quick discussion with you to ask some clarifying questions, it shouldn't take longer than 10-15 minutes. We are not questioning your faith or that you have this sincerely held belief but just wanted to give you the opportunity to provide some clarification.  From here: if approved, RA; if denied, then remaining options: get vaccine, retirement/resignation, if do nothing out of compliance.*

**INTERVIEW QUESTIONS:**

3rd chance for the interview.  Wanted a recording/transcript of the meeting.

1. **Can you just tell us briefly about your sincerely held belief?**
2. **Can you tell us in your own words why taking COVID-19 vaccine is contrary to your religious belief?**
   It would go against his faith.  Elaborate?  His faith gives him guidance on how to preserve his health, and to take the vaccine would be to go against his faith.

3. **What do you think will happen to you if you take the COVID-19 vaccine?**
   "Oh, I'm not sure." Elaborate?  He isn't sure, am I asking him the risk?  He can provide the data and the side effects.  (Explained it is an open ended question and he can answer it any way he would like to) He wouldn't know exactly how the vaccine would negatively affect him.  He knows the risks/side effects, and could provide us with that data.

4. **Can you provide us other examples of how this religious belief is demonstrated in other aspects of your life?**
   He demonstrated it in all aspects of his life.  Examples?  "Umm.. uh... I don't... all my interactions with other people, with my children, with my friends, with my mothers, with

elders, with pastors, ministers from all the people I speak and work with. I don't know if there was something specifically you are looking for? I don't know how to answer that."
For example, today is Friday so it is a personal practice to fast every Friday. He does his best to participate in Ramadan, but difficult to do when he has a full-time job.

5. You refuse to take the COVID-19 vaccine because of the alleged use of aborted fetal cells in the creation of the vaccine. Research on this topic has revealed some cosmetic and over-the-counter medicines may use the same process the COVID-19 vaccine. Are you aware of this? Tell me how else you demonstrate the same pre-cautions in your life.

Determination:

☒ Approved

☐ Denied



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 20, 2021

Clifton Harrison
362 Euclid Ave #103
Oakland, CA 94610
clifton.harrison@yahoo.com

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Clifton,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
Rod Maplestone
**Manager of Leave Programs**

CC:     Leave Management Confidential File





EXHIBIT
**20**
G. Huynh - 9.29.23

**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

**Date of Request** 11/9/2021

| Employee Name | Employee ID Number |
|---|---|
| Nicholas Taylor | 066093 |
| **Job Title** | **Email Address** |
| Tool room attendant | nickrtay1@gmail.com |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU | Luis Granados |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description): Personal ethics

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year):
1988 (birth)

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):
Please see attached file.

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

**BART_0001544**

 **B A R T**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

As stated in my answer in the 3rd question, any medicine, vaccine, etc. that uses aborted fetal cells, is not something I put in my body. Furthermore, I consume almost no OTC drugs or those that are prescribed without doing doing thorough research. I always take a natural route to heal any ailments I may have. I utilize herbal teas, vitamins and eat a healthy diet as well as exercise to maintain my health. And I have to say, it's done wonders for me this far.

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

My duties actually require me to have little to no contact with others. I am stationed in a remote cubical in a minimally staffed facility. I can essentially perform my job without coming within 6' of any coworker. I believe the current requirements of masking be social distancing are more than adequate to protect everyone. Testing could be done as needed.

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____
Employee Signature

**11/9/2021**
_____
Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____       Documentation Included? ☐**YES** ☐**NO**

Date Documentation Received: ___/___/_____

My personal values (and those of my family) are morally opposed to abortion. My parents instilled this into me from my earliest memories, and reinforced it throughout my formative years. WE view abortion as a moral sin. We do not seek to impose our values on others, but we ask that ours be respected, as provided in the US Constitution. I fully understand that none of the currently available Covid-19 vaccines carry any aborted fetal matter, but they were indisputably developed using such tissues. We cannot support or condone any vaccine or therapeutic product developed in that manner. If a vaccine were to be developed without utilizing such a process, I would certainly consider it. This would not be limited to Covid, either. As the father of a newborn daughter, I cannot imagine accepting the concept of abortion. I hope my daughter grows to hold the same belief system in her heart.

BART_0001553



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| | |
|---|---|
| **Date of Request** | 11/19/2021 |

| **Employee Name** | **Employee ID Number** |
|---|---|
| Nicholas Taylor | D66093 |
| **Job Title** | **Email Address** |
| Tool room attendant | nickrtay1@gmail.com |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU | Luis Granados |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description): Personal Ethics

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year):
   1988 (Birth)

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):

   Please see attached file.

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

Scanned with CamScanner
BART 00075148



4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed). As stated in #3, any medicine, vaccine, etc that uses aborted fetal cells, is not something I put in my body. Futhermore, I consume almost no OTC drugs or those that are prescribed without doing through research. I always take a natural route to heal any ailments I may have. I utilize herbal teas, vitamins & eat a healthy diet as well as exercise regularly to maintain my health. This approach has done very well for me thus far.

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. My duties actually require me to have little to no contact with others. I am staffed in a remote cubical in a minimally staffed facility. I can essentially perform my job without coming within 6' of any coworker. I believe the current requirements of masking & social distancing are more than adequate to protect everyone. Testing could be done as needed.

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

See attachment.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

Employee Signature

11/19/2021
Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____     Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

Scanned with CamScanner
BART 00015417



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
|  |  |

5. Is there reason to request an interview of the employee to discuss the request further? ☐Yes ☒No

   If "Yes," please explain:

### Interview

6. Interview Conducted? ☐Yes, Date of Interview: _____ ☐No, ☐Declined by employee

   Interview assessment:

### Religious Exemption Determination

Based on the review of evidence provided, the request for a religious exemption is:

    ☐**Approved**
    ☒**Denied**

    If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an accommodation.

**BART_0001549**

 **B A R T**

| Employee Name | Employee ID Number |
|---|---|
|  |  |

## Accommodation Criteria

If approved, was an accommodation identified that meets the following criteria:

7. Employee remains able to perform the essential functions of the job: ☐**Yes** ☐**No**

8. Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐**Yes** ☐**No**

9. The request does not create undue hardship for the District: ☐**Yes** ☐**No**

If "No," to any of the above questions, explain:

## Final Determination

The final determination is:

☐**Approved**; both the religious exemption and the accommodation requests are approved
☐**Denied**; either one or both requests (exemption and accommodation) were not approved

Explain:

Sam Dawood, Attorney III
Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management          11/23/2021
Name/Title of Reviewer                                                     Date



RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)

| **Employee Name** | **Employee ID Number** |
|---|---|
| | |

## Accommodation Criteria

If approved, was an accommodation identified that meets the following criteria:

7. Employee remains able to perform the essential functions of the job: ☐Yes ☐No

8. Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐Yes ☐No

9. The request does not create undue hardship for the District: ☐Yes ☐No

   If "No," to any of the above questions, explain:

## Final Determination

The final determination is:

   ☐**Approved**; both the religious exemption and the accommodation requests are approved

   ☐**Denied**; either one or both requests (exemption and accommodation) were not approved

   Explain:

Sam Dawood, Attorney III
Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management

Name/Title of Reviewer

11/23/2021

Date



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

November 24, 2021

Nicholas Taylor
139 Laguna Dr
Tracy, CA 95376
nickrtay1@gmail.com

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Nicholas,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

BART_0001551

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:     Leave Management Confidential File



EXHIBIT
21
G. Huynh - 9.29.23

**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| Date of Request | 11/02/2021 |
|---|---|
| **Employee Name** | **Employee ID Number** |
| La Ron Johnson | 062736 |
| **Job Title** | **Email Address** |
| Train Control Electronic Technician | ljohns2@bart.gov |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU | Tesfay Ghebru |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description): Hebraism

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): 2013

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):

The vaccine conflicts with my faith. Matthew 24:7-8 says in the beginning of the time of sorrows(the last days) there will be wars, famines and pestilence. From our perspective covid 19 is just one of the pestilences created as a caveat to intice men to repent. Proverbs 3:5 encourages us to trust in God. Jer 17:5 and Psa 118:8 teach that it is cursed to trust in man and not the Lord. Deut 32:39 teaches that God controls life and death so getting a vaccination won't stop you from dying when God ordained for you to die. Amo 5:19 teaches even if you escape death one way, if it is your time, God will create another way to end your life; thus getting a vaccination to prevent covid is unnecessary

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

**BART  0001318**



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

The difference between this vaccine and others is the nature of its presentation. 5 in 6 of people who contract covid have mild symptoms. The global mortality rate is about 3.4% and most of those deaths were people who are over 50 years of age or have respiratory or immune system ailments. Data also shows that deaths among fully vaccinated Americans rose sharply in the latest outbreak. In addition, the vaccine isn't meant to prevent contraction, it is meant to reduce the severity of the symptoms. Yet, governments globally are making it mandatory to get the vaccination in spite of having this data. That is very suspicious. It normally takes 10-20 years to develop a vaccine; the fastest vaccine created was the mumps vaccine which took 4 years to develop. In a case like this, my faith requires us to look to our God for protection and not men.

5. If requested, I can provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. ■YES ☐NO

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____
**Employee Signature**

11/02/2021
_____
Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| | |
|---|---|
| Date of Request | 11/02/2021 |

| Employee Name | Employee ID Number |
|---|---|
| La Ron Johnson | 062736 |
| **Job Title** | **Email Address** |
| Train Control Electronic Technician | ljohns2@bart.gov |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU | Tesfay Ghebru |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description): Hebraism

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): 2013

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):
The vaccine conflicts with my faith. Matthew 24:7-8 says in the beginning of the time of sorrows(the last days) there will be wars, famines and pestilence. From our perspective covid 19 is just one of the pestilences created as a caveat to intice men to repent. Proverbs 3:5 encourages us to trust in God. Jer 17:5 and Psa 118:8 teach that it is cursed to trust in man and not the Lord. Deut 32:39 teaches that God controls life and death so getting a vaccination won't stop you from dying when God ordained for you to die. Amo 5:19 teaches even if you escape death one way, if it is your time, God will create another way to end your life; thus getting a vaccination to prevent covid is unnecessary



**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

The difference between this vaccine and others is the nature of its presentation. 5 in 6 of people who contract covid have mild symptoms. The global mortality rate is about 3.4% and most of those deaths were people who are over 50 years of age or have respiratory or immune system ailments. Data also shows that deaths among fully vaccinated Americans rose sharply in the latest outbreak. In addition, the vaccine isn't meant to prevent contraction, it is meant to reduce the severity of the symptoms. Yet, governments globally are making it mandatory to get the vaccination in spite of having this data. That is very suspicious. It normally takes 10-20 years to develop a vaccine; the fastest vaccine created was the mumps vaccine which took 4 years to develop. In a case like this, my faith requires us to look to our God for protection and not men.

5. If requested, I can provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. ■**YES** ☐**NO**

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____          _____11/02/2021_____
Employee Signature                                          Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐**YES** ☐**NO**

Date Documentation Received: ___/___/_____

| | |
|---|---|
| **From:** | La Ron Johnson |
| **To:** | Michael Hourani |
| **Subject:** | Fw: COVID-19 Vaccine Mandate Religious Exemption Request |
| **Date:** | Thursday, December 23, 2021 10:04:01 AM |
| **Attachments:** | image001.png |

This is the email thread of my conversation with HR.

Thanks,

La Ron

**From:** Rod Maplestone <rmaples@bart.gov>
**Sent:** Thursday, December 23, 2021 7:43 AM
**To:** La Ron Johnson <LJohns2@bart.gov>
**Cc:** HR Disability Program <HRDP@bart.gov>
**Subject:** RE: COVID-19 Vaccine Mandate Religious Exemption Request

Hi La Ron,

There is no re-evaluation for the religious exemption.

If you believe there has been a violation of your rights, including being denied a request for a religious exemption or reasonable accommodation, on the basis of discrimination, harassment, and/or retaliation should immediately report the prohibited conduct to the District's Office of Civil Rights at eeocomplaint@bart.gov.

Thank you.

**Rod Maplestone**
**Manager, Leave Programs**
Human Resources Department
2150 Webster St.
Office: 510-464-6198
Mobile: 206-498-5008
Fax:510-464-7511
Email rmaples@BART.gov



**From:** La Ron Johnson <LJohns2@bart.gov>
**Sent:** Wednesday, December 22, 2021 4:52 PM
**To:** Rod Maplestone <rmaples@bart.gov>
**Subject:** Re: COVID-19 Vaccine Mandate Religious Exemption Request

BART 0003057

Hi Rod,

First, I wasn't told anything, nor was I contacted, about an interview.

Second, if the the portion of my statement that you cited were all I said, I would agree with you. However, "the panel" conveniently omitted all of the Biblical scriptures that I presented to support why my faith's leaders teach not to take this vaccine. In addition, my Rabbi wrote a letter that I didn't get the chance to submit initially because he was sick the past couple weeks that should be taken into consideration.

The scriptures I provided: "Matthew 24:7-8 says in the beginning of the time of sorrows(the last days) there will be wars, famines and pestilence. From our perspective covid 19 is just one of the pestilences created as a caveat to entice men to repent. Proverbs 3:5 encourages us to trust in God. Jer 17:5 and Psa 118:8 teach that it is cursed to trust in man and not the Lord. Deut 32:39 teaches that God controls life and death so getting a vaccination won't stop you from dying when God ordained for you to die. Amo 5:19 teaches even if you escape death one way, if it is your time, God will create another way to end your life; thus getting a vaccination to prevent covid is unnecessary." These reasons given are non-secular and my Rabbi provided a letter outlining how the development of the vaccine involved the use of fetal cells which is abominable to those who follow my faith.

However, even without the submission of my Rabbi's letter, "the panel's" unanimous decision is not fair based on your reasoning because it does not take the entirety of my statement into consideration. Needless to say, I would like my case re-evaluated.

Respectfully,
La Ron

**From:** Rod Maplestone <rmaples@bart.gov>
**Sent:** Wednesday, December 22, 2021 10:56 AM
**To:** La Ron Johnson <LJohns2@bart.gov>
**Cc:** HR Disability Program <HRDP@bart.gov>
**Subject:** FW: COVID-19 Vaccine Mandate Religious Exemption Request

Hi La Ron,

I am sorry that we were not able to grant your religious exemption request. The review process included a three person panel review of your written exemption request, following the guidelines published by the U.S. Equal Employment Opportunity Commission (EEOC). This process was designed to ensures that each request was carefully considered.

Title VII of the Civil Rights Act of 1964 only requires that an employer grant a religious exemption

BART 0003058

when the employee has a sincerely held religious belief that precludes him from complying with the employer's policy. Title VII does not protect political or social philosophies and personal preferences.

In your request form, you provided primarily non-religious, secular reasons for refusing to take the COVID 19 vaccine, including the following statement: "the difference between this vaccine and others is the nature of its presentation. 5 in 6 of people who contract covid have mild symptoms. The global mortality rate is about 3.4% and most of those deaths were people who are over 50 years of age or have respiratory or immune system ailments. Data also shows that deaths among fully vaccinated Americans rose sharply in the latest outbreak. In addition, the vaccine isn't meant to prevent contraction, it is meant to reduce the severity of the symptoms. Yet, governments globally are making it mandatory to get the vaccination in spite of having this data. That is very suspicious. It normally takes 10-20 years to develop a vaccine; the fastest vaccine created was the mumps vaccine which took 4 years to develop." This rationale is based on non-religious reasoning.

Secular/non-religious reasons for refusing a vaccine do not entitle an individual to a religious exemption. Because the panel determined and came to the unanimous decision that the reasons cited in support of your request were primarily secular/non-religious, the request was ultimately denied.

Please let me know if you have additional questions. Thank you.

**Rod Maplestone**
**Manager, Leave Programs**
Human Resources Department
2150 Webster St.
Office: 510-464-6198
Mobile: 206-498-5008
Fax:510-464-7511
Email  rmaples@BART.gov



**From:** La Ron Johnson <LJohns2@bart.gov>
**Sent:** Friday, December 17, 2021 6:47 PM
**To:** Human Resources COVID 19 TEAM <HRCOVID19@bart.gov>
**Subject:** Re: COVID-19 Vaccine Mandate Religious Exemption Request

Can BART provide a specific reason why MY religious exemption request was denied?

With the fact that people are facing unemployment, I think the least BART could do is explain why a request is denied. Especially in my case, because I don't fall into any of the categories for denial mentioned in the letter!

**BART 0003059**

Respectfully,
La Ron

**From:** Human Resources COVID 19 TEAM <HRCOVID19@bart.gov>
**Sent:** Wednesday, December 15, 2021 1:26 PM
**To:** La Ron Johnson <LJohns2@bart.gov>
**Cc:** HR Disability Program <HRDP@bart.gov>
**Subject:** COVID-19 Vaccine Mandate Religious Exemption Request

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** Please see attached letter, which you will also receive via US mail, for more details

Thank you,

Kelly Harrison
Human Resources | HR COVID-19 Team Member
San Francisco Bay Area Rapid Transit District
Phone: (510) 287-4779 | hrcovid19@bart.com



**B A R T**

**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 15, 2021

La Ron Johnson
3745 International Blvd, #4
Oakland, CA 062736
94601

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear La Ron,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
Rod Maplestone
**Manager of Leave Programs**

CC:     Leave Management Confidential File



EXHIBIT

**22**

G. Huynh - 9.29.23



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| | Date of Request | |
|---|---|---|
| **Employee Name** | | **Employee ID Number** |
| Jim Lasovich | | 056661 |
| **Job Title** | | **Email Address** |
| Operations Supervisor Liaison | | jlasovi@bart.gov |
| **Union (or Non-Rep)** | | **Supervisor/Manager** |
| AFSCME | | Supervisor |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| | |
|---|---|
| 1. My religion or belief system is (enter description): | I have been a Christian for a long time and remember my Father and my God Parents teaching us Catechism at a young age and as I got older I have been an advocate for Pro-Life. No faithful Christian can be Pre-Abortion. Therefore, it is my sincere belief that abortion is murder. Exodus 20:13 "You shall not Kill". As such I cannot accept in good conscience a Covid-19 Vaccine based on this strong Christian belief. Also The Church says a person should follow their own judgment of conscience and should not be coerced to go against their sincere religious beliefs. |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): | |
| Started becoming aware in my early adult years hearing about Abortion Rights and would have to say the defining moment for me in regards to backing Pro Life would be May 9, 1989. | |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): | |
| I explain how long you have had this sincere belief. The conflict that I have is that the Covid-19 Vaccines that are provided have been derived from cell lines from aborted children in the making and or testing of these vaccines and is therefore in direct conflict of my sincere Religious Belief. If I were to accept a Covid-19 vaccine, I would then be condoning the termination of a human life. God puts a value on the life especially an unborn child. Proverbs 24:11-12: So I believe that every human life from conception until we die is very sacred and that God has a purpose for all of us. As I mentioned in question (2) the defining moment for me would be the birth of my first child and when I looked upon her, everything was pretty clear to me about bringing a child into this world. Who could possibly want to willfully abort or hurt in any way a human life who's only chance to come into this world is you and God and we know that God will give an unborn child a chance, question is will we? I knew about the issue of abortion as a young adult as I have mentioned, but I said the defining moment for me was the birth of my children and I will love and protect them as long as I live. We should all take responsibility for our own actions especially about life. In my opinion, I feel you couldn't prove your love and obedience more to God then by giving an unborn child a chance at having life. Obedience to God strengthens our Faith to him. Luke 11:28 Jesus replied "But even more blessed are all who hear the word of God and put it into practice" | |



**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

In addition to the my answer given in question 3, I would like to say that I pray everyday for God's guidance in everything I do and feel that I have made a moral choice and I feel that God has lead me to this moral and responsible decision. If a Christian feels that it is against their sincere belief and conscience that is between him and God. I also do respect the advice of all medical professionals. I know they are on the front line and know that they want the best help for people. I have not heard that Christians cannot take vaccines but to follow their Religious beliefs in good conscience and that a Christian may take a moral stance and deem it wrong to receive some vaccines for a variety of reasons. To be fair about vaccines, I have had all my childhood and Hepatitis Vaccines and also the Flu Vaccines in the past. I will say that after taking the Flu Vaccine, I did get sick from it and felt terrible for a few days afterwards and do not care for that feeling. So over time and as I got older I have made a conscience effort to abstain from taking vaccines in general. I also believe that it is in my best interest to refrain from ingesting pharmaceutical products into my body that are unclean. Prayer based healing is a central belief in the Christian Faith. Being exposed to selective illnesses will help us to build our immune systems naturally. The science on this is conclusive in that natural immunity is better than the Vaccine itself. Members of Congress and Senator Mike Lee has recently introduces a bill S.2846- Natural Immunity Is Real Act.

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

I would like to say for the record that I have been working throughout the Covid situation and have exercised all Covid Protocols since the beginning. Therefore I would submit to weekly Covid testing if needed. Continue to wear a KN95 Mask, gloves and social distance and continue to adhere to all Covid Protocols as I have in the past.
I would like to say with all due respect to the District. Prior to the vaccines, there was a protocol for workers and others during 2020 that did not create an "undue hardship" and still would not be an "undue hardship" if the District continued to allow employees to perform their job which was considered a "safe and effective" practice prior to the introduction of the vaccine. If the Covid shots work and the people who have received them should be protected. Others who have sincere religious beliefs would not create an undue hardship. I am all about being safe and keeping others safe.

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____     11/11/2021
Employee Signature                           Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____     Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

abortion. We are a worldwide pro-life
organization, based on Catholic principles,
and a 501(c)(3) corporation. With a full-time
staff of some 50 people, we are a family of
ministries, encompassing Deacons for Life,
Seminarians for Life, Rachel's Vineyard, the
Silent No More Awareness Campaign, Civil
Rights for the Unborn, Parliamentary Network
for Critical Issues, Stand True Youth Outreach,
and more.

**Our Pastoral Team (Partial list)**
Fr. Frank A. Pavone
National Director and Chairman

Fr. Denis G. Wilde, OSA
Associate Director

Janet A. Morana
Executive Director
Co-Founder, Silent No More Awareness
Campaign

Evangelist Alveda King
(Niece of Rev. Dr. Martin Luther King, Jr.)
Director, Civil Rights for the Unborn

Dr. Theresa and Kevin Burke
Founders, Rachel's Vineyard Ministries

Mr. Bryan Kemper
Director, Youth Outreach

Marie Smith
Director, Parliamentary Network for Critical
Issues

**Advisory Board of Bishops (Partial list)**
His Eminence Cardinal Christoph Schönborn
Archbishop of Vienna

His Eminence Renato Cardinal Martino
President Emeritus, Pontifical Council for
Justice and Peace

Most Reverend Patrick Dunn
Bishop of Auckland, New Zealand

Most Reverend Michael J. Sheridan
Bishop of Colorado Springs

Most Reverend Roger Foys
Bishop of Covington

Most Reverend Clarence Silva
Bishop of Honolulu

(See additional bishops online)

**Medical Consultants**
Anthony Levatino, M.D.
William R. Lile, Jr., M.D.
Daniel Lee Holland, M.D.
Byron Calhoun, M.D.
Matthew P. Harrison, M.D.
George Delgado, M.D.

**Media Consultants**
Drew Mariani
Teresa Tomeo

**General Correspondence:**
P.O. Box 236695
Cocoa, FL 32923
Phone: (321) 500-1000
Toll Free: (888) 735-3448
staff@priestsforlife.org
www.EndAbortion.US
www.EndAbortion.TV
www.EndAbortionPodcast.US
www.ProLifeCentral.org
www.PriestsForLife.org
www.RachelsVineyard.org
www.SilentNoMore.com

**Orders Department**
(888) 735-3448, ext. 237
·321-500-1000
www.ProLifeProducts.org

**Media Department**
For interviews: media@priestsforlife.org

**Financial Support**
Priests for Life is supported only by your tax-
deductible gifts: Visit
www.ProLifeDonation.org
888-735-3448, ext. 235
·321-500-1000.



November 10, 2021

To Whom It May Concern,

Jim Lasovich is a baptized Catholic seeking a religious exemption from an immunization requirement. This letter indicates that this decision in these circumstances is consistent with Catholic teaching.

The Roman Catholic Church teaches that a person may be required to refuse a medical intervention, including a vaccination, if his or her informed conscience comes to this sure judgment. While the Catholic Church does not prohibit the use of vaccines in principle, her teachings do provide a principled religious basis on which a Catholic may determine that he or she ought to refuse certain vaccines.

The Church holds that vaccination is not morally obligatory in principle and so must always be voluntary.

Moreover, there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience.

An individual's judgment in these matters is to be respected, because he/she is morally required to obey the judgment of a sure conscience, even if it is objectively in error. As the *Catechism* makes clear, a person "must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters" (n. 1782).

Given the current situation with the Covid 19 vaccines and having heard the judgments Jim Lasovich has made, I can attest that he is acting in accordance with Catholic teaching in this matter.

Sincerely in Christ,

Fr. Frank Pavone

Fr. Frank Pavone
National Director, Priests for Life

*w w w . E n d A b o r t i o n . U S*

**BART 0001325**



**BART**

| Date of Review | 11/15/2021 |
|---|---|

| Employee Name | Employee ID Number |
|---|---|
| Lasovich, James | 056661 |

## Initial Review

1. Documents Included:
   a. Religious Exemption v.1 ☐Yes ☐No _____
   b. Religious/Medical Supplemental ☐Yes ☐No _____
   c. Religious Exemption v.2 ☒Yes ☐No _____
   d. Medical Accommodation ☐Yes ☐No _____
   e. Written Request ☐Yes ☐No _____
   f. Affidavit/Statement ☒Yes ☐No _____
   g. Other documentation ☐Yes ☐No _____

## Case Evaluation

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☐Yes ☒No

   If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☒Yes ☐No

   If "Yes," please explain:

   Acknowledges he has not heard that Christians cannot take the vaccine, but it is up to his consceince and between him and God. However, he states he has had vaccinations in the past and felt terrible afterwards and does not care for that feeling. As a result, he made a conscience effort to abstain from taking vaccines in general. Also believes in refraining from ingesting unclean pharmaceutical products. Did not provide a letter from his church, but instead a letter from anti-abortion political organization, based in Florida.

4. Is the timing of the request considered questionable? ☐Yes ☒No

   If "Yes," please explain:



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
| | |

5. Is there reason to request an interview of the employee to discuss the request further? ☐Yes ☒No

   If "Yes," please explain:

### Interview

6. Interview Conducted? ☐Yes, Date of Interview: _____ ☐No, ☐Declined by employee

   Interview assessment:

### Religious Exemption Determination

Based on the review of evidence provided, the request for a religious exemption is:
- ☐**Approved**
- ☒**Denied**

   If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an accommodation.

**BART  0001327**



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
| --- | --- |
| | |

## Accommodation Criteria

If approved, was an accommodation identified that meets the following criteria:

7.  Employee remains able to perform the essential functions of the job: ☐**Yes** ☐**No**

8.  Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐**Yes** ☐**No**

9.  The request does not create undue hardship for the District: ☐**Yes** ☐**No**

   If "No," to any of the above questions, explain:

## Final Determination

The final determination is:

   ☐**Approved**; both the religious exemption and the accommodation requests are approved

   ☒**Denied**; either one or both requests (exemption and accommodation) were not approved

   Explain:

Amelia Sandoval Smith, Senior Attorney
Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management
Name/Title of Reviewer

11/15/2021
Date

**BART 0001328**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

November 23, 2021

Jim Lasovich
463 Desert Gold Terrace
Brentwood, CA 94513
jlaovi@bart.gov

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jim,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate –** If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement –** Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

San Francisco Bay Area Rapid Transit District

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:     Leave Management Confidential File

**BART 0001330**



**B A R T**

EXHIBIT
**23**
G. Huynh - 9.29.23

**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

Date of Request

| Employee Name | Employee ID Number |
|---|---|
| Albert J. Roth, Jr. | 058110 |
| **Job Title** | **Email Address** |
| Automatic Fare Collection Foreworker | aroth@bart.gov |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU | Byron Ho |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description): I am a Minister and hold Credentials of Ministry
   See my Attached file for details ARoth Religious Exemption Request

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year):
   The date of my Ministry is 2011. however this is my lifelong belief system dating back to 1963

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):
   See my Attached file for details ARoth Religious Exemption Request



4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).
See my Attached file for details ARoth Religious Exemption Request

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.
See my Attached file for details ARoth Religious Exemption Request

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____     _____ 11/20/21 _____
Employee Signature                           Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____     Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

135325.1



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| Date of Request | |
|---|---|
| **Employee Name** | **Employee ID Number** |
| Albert J. Roth, Jr. | 058110 |
| **Job Title** | **Email Address** |
| Automatic Fare Collection Forman | aroth@bart.gov |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU | |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description): I am a Christian and a Ordained Minister

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year):
I have held my belief system my entire Christian life ...  (See continuation for this response attached)

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):
The nature of my objection is spiritual in nature.  My religious faith forbids me from obeying this mandate.
The nature of my objection is being forced to chose between my conscious for God or keeping my job.

(See continuation for this response attached)

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

Before growing my religious faith, I did not understand the severity and the consequence of destroying my temple. However, because of spiritual advisors that I am under, I have grown in my faith since taking previous vaccines. When I grew in my faith, I understood how sacred my temples is to my God. Also, in the previous vaccines that I have taken I could make better judgements because of the length of testing and clinical trials that was attributed to those vaccines. With the current vaccine I don   t have that level of confidence that this would be a choice for my body that is pleasing to God.
Since I have grown in my faith I have come to understand that perhaps that I should have taken none of

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

There are various means available means that accommodation could be accomplished with no significant additional burden placed on BART or other employees.  MY job requires me to be essentially isolated for the majority of my current shift.  In essence my shift is from 1300 +2300.  After 1600 the day shift leaves and i am isolated.  Our desks in the office are greater than 6feet an at the occasional time other FW are present we mask up and maintain social distance.  A second option is i could move into a room that has minimal usage. this would  completely isolate me from any employee.  I do not come in contact with the public outside of my commune hours when the trains are virtually empty.  Also i practice social distances by only riding in the first

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____                    _____
Employee Signature                                          Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____



| Date of Review | 11/23/2021 |
|---|---|

| **Employee Name** | **Employee ID Number** |
|---|---|
| Roth, Albert | 058110 |

## Initial Review

1. Documents Included:
   a. Religious Exemption v.1 ☐Yes ☐No _____
   b. Religious/Medical Supplemental ☐Yes ☐No _____
   c. Religious Exemption v.2 ☒Yes ☐No _____
   d. Medical Accommodation ☐Yes ☐No _____
   e. Written Request ☐Yes ☐No _____
   f. Affidavit/Statement ☒Yes ☐No _____
   g. Other documentation ☐Yes ☐No _____

## Case Evaluation

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☐Yes ☒No

   If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☒Yes ☐No

   If "Yes," please explain:
   Employee list reasons that include "doing what is right." Talks about the vaccine may cause harm to his healthy body, which is a secular reason. Although he lists this as his belief, he does not provide a reason given stating how the COVID-19 vaccine goes against his sincerely held religious belief.

4. Is the timing of the request considered questionable? ☐Yes ☒No

   If "Yes," please explain:



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
| | |

5.  Is there reason to request an interview of the employee to discuss the request further? ☐Yes ☒No

    If "Yes," please explain:

### Interview

6.  Interview Conducted? ☐Yes, Date of Interview: _____ ☐No, ☐Declined by employee

    Interview assessment:

### Religious Exemption Determination

Based on the review of evidence provided, the request for a religious exemption is:

   ☐**Approved**
   ☒**Denied**

   If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an accommodation.

**BART 0001522**



| **Employee Name** | **Employee ID Number** |
|---|---|
| | |

### Accommodation Criteria

If approved, was an accommodation identified that meets the following criteria:

7.  Employee remains able to perform the essential functions of the job: ☐**Yes**  ☐**No**

8.  Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐**Yes**  ☐**No**

9.  The request does not create undue hardship for the District: ☐**Yes**  ☐**No**

    If "No," to any of the above questions, explain:

### Final Determination

The final determination is:

   ☐**Approved**; both the religious exemption and the accommodation requests are approved
   ☐**Denied**; either one or both requests (exemption and accommodation) were not approved

   Explain:

Sam Dawood, Attorney III
Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management

Name/Title of Reviewer

11/23/2021

Date

**BART  0001523**



**B A R T**

**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

November 24, 2021

Albert Roth
230 Eve Court
Hayward, CA 94541-3702
aroth@bart.gov

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Albert,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:      Leave Management Confidential File





**EXHIBIT**
**24**
G. Huynh - 9.29.23

**EMPLOYEE REQUEST FOR RELIGIOUS EXEMPTION (COVID-19 Vaccination)**

| Date of Request | 11/5/2021 |
|---|---|
| **Employee Name** | **Employee ID Number** |
| Tonya Lewis Williams | 058413 |
| **Job Title** | **Email Address** |
| Utility | tlewwilliams@yahoo.com |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU 1021 | Daniel Hoover |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

1. My religion or belief system is (enter description): Christianity

2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year):
In Year 1975

3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):
It is written in the BIBLE Acts 5:29 " Then Peter and the other apostles answered and said, We ought to obey God rather than men." Psalms 56:4 " In God I will praise his word, in God I have put my trust; I will not fear what flesh can do unto me." All three of the currently available COVID-19 vaccines are connected to aborted fetal cell lines.



4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

My Christian religious beliefs compel me from accepting or injecting any of these products into my body. All three of the currently available COVID-19 vaccines are connected to aborted fetal cell lines. 1 Corinthians 3:17 "If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are." In Revelation 13:17 "And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name."

5. If requested, I can provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. ☒YES ☐NO

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____
Employee Signature

11/5/2021
Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

# CHRISTIAN RELIGIOUS EXEMPTION REQUEST

**TO: Bay Area Rapid Transit**

**RE: Request for Exemption from Mandatory COVID Vaccine**

**To: Whom It May Concern,**

This document is a Christian Exemption Request I am seeking a religious accommodation from **San Francisco Bay Area Rapid Transit (BART)** COVID-19 vaccine requirement because of my sincerely held religious beliefs. In 1 Corinthians 6:19-20, the Bible commands Christians to honor God by caring responsibly for our bodies as temples of the Holy Spirit. I believe that receiving any COVID-19 vaccine would violate the Bible's command to honor God with my body because of the involvement of fetal stem cell lines in the COVID vaccines' development (Johnson & Johnson) and testing (Moderna and Pfizer). See David Prentice, Ph.D., COVID-19 Vaccine Candidates and Abortion-Derived Cell Lines, Charlotte Lozier Institute, June 2, 2021,

https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/.

The Bible states that a developing fetus in the womb was created by God and is a life that deserves to be protected. See, e.g., Psalm 139. Therefore, receiving a COVID vaccine would violate my deeply held beliefs about, first, honoring God in caring for my body, and second, advocating for the protection of sacred life. See Proverbs 31:8-9, Jeremiah 22:3, James 1:27.

Signed: _____ Date: 11/5/2021

# CHRISTIAN RELIGIOUS EXEMPTION REQUEST

**TO: Bay Area Rapid Transit**

**RE: Request for Exemption from Mandatory COVID Vaccine**

**To: Whom It May Concern,**

I, **Tonya Lewis Williams** Religious Faith is Christianity from 1975 to the present under fundamental Independent Baptist Bible Believing practices. My faith is between and God, not this paper or ink the bible is alive and proven perfect. The lord is my Sheppard remember God First and Always.

**1 Corinthians 6:19**
"What? know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?"

**1 Corinthians 6:20**
"For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.

**Psalms 139:14**
"I will praise thee; for I am fearfully and wonderfully made: marvellous are thy works; and that my soul knoweth right well."

**James 1:27**
"Pure religion and undefiled before God and the Father is this, To visit the fatherless and widows in their affliction, and to keep himself unspotted from the world. Current leadership Rev. Dr. Frankie L. Coleman, Sr.

Signature _____     Date  11/5/2021



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Date of Review | 12/3/2021 |
|---|---|

| **Employee Name** | **Employee ID Number** |
|---|---|
| Lewis Williams, Tonya | 058413 |

## Initial Review

1. Documents Included:
   a. Religious Exemption v.1 ☒Yes ☐No _____
   b. Religious/Medical Supplemental ☐Yes ☐No _____
   c. Religious Exemption v.2 ☐Yes ☐No _____
   d. Medical Accommodation ☐Yes ☐No _____
   e. Written Request ☐Yes ☐No _____
   f. Affidavit/Statement ☐Yes ☐No _____
   g. Other documentation ☐Yes ☐No _____

## Case Evaluation

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☐Yes ☐No

   If "Yes," please explain:
   Templated letter submitted.

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☒Yes ☐No

   If "Yes," please explain:
   Lists a political organization (Lozier Institute); Need clarification to see if belief is part of a comprehensive belief system, or if it is an anti-abortion, personal belief.

4. Is the timing of the request considered questionable? ☐Yes ☐No

   If "Yes," please explain:



| **Employee Name** | **Employee ID Number** |
|---|---|
|  |  |

5. Is there reason to request an interview of the employee to discuss the request further? ☒Yes ☐No

   If "Yes," please explain:
   Needs clarification if their use of other vaccines or pharmaceutical drugs are consistent with their religious belief. Would like to have the opportunity to have the employee express in their own words their sincerely held religious belief and how it prevents them from getting the COVID-19 vaccine.

### Interview

6. Interview Conducted? ☐Yes, Date of Interview: _____ ☐No, ☐Declined by employee

   Interview assessment:

### Religious Exemption Determination

Based on the review of evidence provided, the request for a religious exemption is:
   ☐**Approved**
   ☐**Denied**

   If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an accommodation.

**BART 0006357**



BART

**RELIGIOUS EXEMPTION**
**REQUEST REVIEW FORM**
**(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
| | |

## Accommodation Criteria

If approved, was an accommodation identified that meets the following criteria:

7. Employee remains able to perform the essential functions of the job: ☐Yes ☐No

8. Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐Yes ☐No

9. The request does not create undue hardship for the District: ☐Yes ☐No

    If "No," to any of the above questions, explain:

## Final Determination

The final determination is:

    ☐**Approved**; both the religious exemption and the accommodation requests are approved
    ☐**Denied**; either one or both requests (exemption and accommodation) were not approved

    Explain:

Amelia Sandoval Smith, Senior Attorney
Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management

Name/Title of Reviewer

12/3/2021

Date

**BART 0006358**

Lewis-Williams, Tonya
058413
Utility
12/15/2021 3:01 PM

## Religious Exemption Interviews

Interviewers:  Gizelle Huynh, Supervisor of Leave Management
Jesse Alcantara, Senior Leave Management Analyst

**EEOC factors:**

☒ The reasons cited in support of the request were primarily for secular/non-religious reasons.

☒ A clear nexus between the request and the stated religious beliefs was not established.

☐ Evidence of behaviors inconsistent with adherence to the stated beliefs exists.

☐ The timing of your request as it relates to adoption of the stated beliefs.

*Introduction:  We are not questioning the sincerity of your belief, just assess if the Religious Exemptions applies to you, and how it relates to the COVID-19 vaccine.  We reviewed all of the documents to support your Religious Vaccination Exemption Request.  We wanted to have a quick discussion with you to ask some clarifying questions, it shouldn't take longer than 10-15 minutes. We are not questioning your faith or that you have this sincerely held belief but just wanted to give you the opportunity to provide some clarification.  From here: if approved, RA; if denied, then remaining options: get vaccine, retirement/resignation, if do nothing out of compliance.*

**INTERVIEW QUESTIONS:**

1. Can you just tell us briefly about your sincerely held belief?
2. Can you tell us in your own words why taking COVID-19 vaccine is contrary to your religious belief?

   She does not put any garage they (Dr. Fauci and all those people) in her body.  No she does not want to explain more because everything we need to know is on the religious form, and it is her choice, if she doesn't want it, then she doesn't have to have it.  It is her right.

3. What do you think will happen to you if you take the COVID-19 vaccine?

   She is already not whole, so she would be toed-up.  She would not be human. (Did not want to add to that).

4. Can you provide us other examples of how this religious belief is demonstrated in other aspects of your life?

   Just the way she walks, every day actions.  Just how she treats put, how she feel (on her insides?).  (She needs to know how she be judge of what was said.)

**BART  0006362**

Lewis-Williams, Tonya
058413
Utility
12/15/2021 3:01 PM

If it's been over 20-30 years her being sick-sick, why would she be putting something in her body when no one knows what is in it. Plus you can still get the COVID. The point of getting the shot is so that you don't get sick. So that is why she feels... to her it isn't human, that isn't human to her.

It's unconstitutional, it just doesn't make sense. The job states that we don't discriminate based on religion.

5. You refuse to take the COVID-19 vaccine because of the alleged use of aborted fetal cells in the creation of the vaccine. Research on this topic has revealed some cosmetic and over-the-counter medicines may use the same process the COVID-19 vaccine. Are you aware of this? Tell me how else you demonstrate the same pre-cautions in your life.

(did not brings this up, but ask because it was mentioned on her request form.) She does not wear make-up, beautiful by nature so no cosmetics on her. No medications. Why? Because she doesn't need any cosmetics. Because medications are garbage, and doesn't put any medications in her except for what the doctor prescribes.

Determination:

☐ Approved

☒ Denied



**B A R T**

**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 20, 2021

Tonya Lewis-Williams
2342 Park Blvd
Oakland, CA 94606
tlewwilliams@yahoo.com

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Tonya,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:     Leave Management Confidential File

BART 0006360





EXHIBIT
**25**
G. Huynh - 9.29.23

**RELIGIOUS EXEMPTION**
**REQUEST REVIEW FORM**
**(COVID-19 Vaccination)**

| Date of Review | 11/23/2021 |

| **Employee Name** | |
| --- | --- |
| Gilbert, Adrian | **Employee ID Number** |
| | 065937 |

## Initial Review

1. Documents Included:
   a. Religious Exemption v.1 ☐Yes ☐No _____
   b. Religious/Medical Supplemental ☐Yes ☐No _____
   c. Religious Exemption v.2 ☒Yes ☐No _____
   d. Medical Accommodation ☐Yes ☐No _____
   e. Written Request ☐Yes ☐No _____
   f. Affidavit/Statement ☒Yes ☐No _____
   g. Other documentation ☐Yes ☐No _____

## Case Evaluation

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☐Yes ☐No

   If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☒Yes ☐No

   If "Yes," please explain:
   Refers to "Free Exercise." No tie to comprehensive belief system.

4. Is the timing of the request considered questionable? ☐Yes ☐No

   If "Yes," please explain:

BART 0001195

 

**EXHIBIT**
**26**
G. Huynh - 9.29.23

**BART**

**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

| | | **Date of Request** | 11 / 04 / 2021 |
|---|---|---|---|
| **Employee Name** | | | **Employee ID Number** |
| Sergii Grinchenko | | | 064930 |
| **Job Title** | | | **Email Address** |
| Elevator/Escalator Worker | | | sergiibrd@yahoo.com |
| **Union (or Non-Rep)** | | | **Supervisor/Manager** |
| SEIU 1021 | | | Eric Stockton |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| |
|---|
| 1. My religion or belief system is (enter description): Christian |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): 1991 |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): Please see attached. |

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

   I am practicing my right to use Health Information Portability and Accountability Act (HIPAA) and willing not to disclose my private medical history, medical information, or records. Any violation of this laws by any company or person will bring to further escalation and immediate legal action.

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

   Wearing a face mask and social distancing.

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____
Employee Signature

11/04/2021
Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____     Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

135325.1

Employee Request for Religious Exemption (COVID-19 vaccine) | Page 2

**My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):**

I understand the position of the United States Government to protect its citizens from potential danger from infectious diseases. I'm thankful for a government who makes efforts to protect its citizens.

But under Title VII of the Civil Rights Act, an employer must not discriminate against an employee on the basis of that employee's sincerely held religious beliefs. Religious discrimination involves treating a person (an applicant or employee) unfavorably because of his or her religious beliefs.

I am respectfully request that you honor my sincere religious abjection to vaccination and grant me an exemption. "...for whatsoever is not of faith is sin. "Romans 14:23.

I came to the United States from Ukraine where Christians were prosecuted, and they didn't have freedom of speech and religion. Some of our family members were imprisoned because of their faith. The main purpose of our immigration was to practice our religion freely in the United States.

I believe that Jesus Christ came to earth and lived a sinless life, was crucified on the cross, was resurrected from death on the third day, and ascended to heaven. I believe that God, through the Holy Spirit dwells in me and guides me towards His will. Because God lives in me as the Holy Spirit, my body is a living Temple of God. "Do you not know that your body is a temple of the Holy Spirit, who is in you, whom you have received from God? You are not your own. That God is in you. That He is our healer." Corinthians 6:19. My religious beliefs serve as my blueprint as I navigate life with the numerous roles I play such as a husband, father, Christian, co-worker, etc. I strongly feel these beliefs keep me on the correct path God intended for me. Staying true to such beliefs allow me to maintain a standard of integrity in the many roles I play out throughout my life.

"CV-19 vaccine products are genetic coding instructions that purport to instruct human body to produce a spike protein" that is not natural to our own human genetic system. The possibility of genetically changing the human body, the body created by God in His image goes against my religious beliefs. I believe God is my protection and healer of my body, and He created immune system that helps me to fight with diseases. I am believe that injecting myself with vaccination goes against God's commandment to take care of my body. According to the FDA website,"Serious and unexpected side effects may occur. The possible side effects of the vaccine are still being studied in clinical trials." As a result, this vaccine is not safe and may harm my body.

Because this request for exemption is deeply personal to me and contains personal thoughts and beliefs, I asked to keep it 100% confidential.

BART_0003051



**RELIGIOUS EXEMPTION**
**REQUEST REVIEW FORM**
**(COVID-19 Vaccination)**

| Date of Review | 11/12/2021 |
|---|---|

| **Employee Name** | **Employee ID Number** |
|---|---|
| Grinchenko, Sergii | 064930 |

## Initial Review

1. Documents Included:
    a. Religious Exemption v.1 ☐**Yes** ☐**No** _____
    b. Religious/Medical Supplemental ☐**Yes** ☐**No** _____
    c. Religious Exemption v.2 ☒**Yes** ☐**No** _____
    d. Medical Accommodation ☐**Yes** ☐**No** _____
    e. Written Request ☐**Yes** ☐**No** _____
    f. Affidavit/Statement ☒**Yes** ☐**No** _____
    g. Other documentation ☐**Yes** ☐**No** _____

## Case Evaluation

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☐**Yes** ☒**No**

    If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☒**Yes** ☐**No**

    If "Yes," please explain:
    Employee states secular reasons such as the vaccine not being safe and may harm his body. It is unclear if his belief is a part of a comprehensive belief systems.

4. Is the timing of the request considered questionable? ☐**Yes** ☒**No**

    If "Yes," please explain:



| Employee Name | Employee ID Number |
|---|---|
|  |  |

5. Is there reason to request an interview of the employee to discuss the request further? ☐Yes ☒No

   If "Yes," please explain:

   As articulated in his documents, refusal of the vaccine is not a part of of a comprehensive belief systems. He further indicates his personal belief that it is not natural and has side effects. Personal belief are not protected religious beliefs. Employee resfused to provide additional documetnation to demonstrate that his decision to not be vaccinated is algined with his belief sytsm.

### Interview

6. Interview Conducted? ☐Yes, Date of Interview: _____ ☐No, ☐Declined by employee

   Interview assessment:

### Religious Exemption Determination

Based on the review of evidence provided, the request for a religious exemption is:

    ☐Approved

    ☒Denied

    If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an accommodation.

BART_0004219



| **Employee Name** | **Employee ID Number** |
|---|---|
| | |

**Accommodation Criteria**

If approved, was an accommodation identified that meets the following criteria:

7. Employee remains able to perform the essential functions of the job: ☐**Yes** ☐**No**

8. Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐**Yes** ☐**No**

9. The request does not create undue hardship for the District: ☐**Yes** ☐**No**

    If "No," to any of the above questions, explain:

**Final Determination**

The final determination is:

    ☐**Approved**; both the religious exemption and the accommodation requests are approved
    ☐**Denied**; either one or both requests (exemption and accommodation) were not approved

    Explain:

Amelia Sandoval Smith, Senior Attorney
Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management

11/12/2021

Name/Title of Reviewer | Date



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

November 23, 2021

Sergii Grinchenko
8462 Scenic Vista Way
Fair Oaks, CA 95628
sergiibrd@yahoo.com

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Sergii,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied**. The denial is objectively supported by one or more of the following factors: 1) the reasons cited in support of the request were primarily for secular/non-religious reasons, 2) a clear nexus between the request and the stated religious beliefs was not established, 3) evidence of behaviors inconsistent with adherence to the stated beliefs exists, and/or 4) the timing of your request as it relates to adoption of the stated beliefs. Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

San Francisco Bay Area Rapid Transit District

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:     Leave Management Confidential File

# EXHIBIT 2

```
 1                UNITED STATES DISTRICT COURT

 2                         FOR THE

 3               NORTHERN DISTRICT OF CALIFORNIA

 4

 5

 6   CHAVEZ, et al.,                )   Case No.
                                    )   3:22-cv-06119-WHA
 7              Plaintiffs,         )   3:22-CV-09193-WHA
        vs.                         )
 8                                  )
     SAN FRANCISCO BAY AREA RAPID   )
 9   TRANSIT DISTRICT and DOES 1-100, )  Volume I
                                    )
10                                  )
                Defendants.         )
11   _____)   Pages 1 - 85

12

13

14                      DEPOSITION OF

15                   RODNEY W. MAPLESTONE

16                   September 22, 2023

17

18

19   Reported by:

20   CLARE MACY, RPR, CSR #5256

21   -------------------------------------------------------

22                  JAN BROWN & ASSOCIATES

23      WORLDWIDE DEPOSITION & VIDEOGRAPHY SERVICES

24   701 Battery St., 3rd Floor, San Francisco, CA 94111

25            (415) 981-3498 or (800) 522-7096

                                                         1
```

```
1                    I N D E X
2                                              PAGE
3    Examination by Mr. Snider                    6
4    Reporter's Certificate                      85
5                   E X H I B I T S
6    DEPOSITION NO.                              PAGE
7    Exhibit 1   Two-page document entitled "Employee    13
8                Request for Religious Exemption
9                (COVID-19 Vaccination)";
10               Bates Nos. BART 0000013 - 14
11   Exhibit 2   Document entitled "Employee Request    14
12               for Religious Exemption (COVID-19
13               Vaccination) Supplemental
14               Documentation"; Bates No. BART 0000012
15   Exhibit 3   Two-page document entitled "Employee    15
16               Request for Religious Exemption
17               (COVID-19 Vaccination)"; Bates Nos.
18               BART 0000015 - 16
19   Exhibit 4   Three-page document entitled "BART    18
20               Human Resources Department Standard
21               Operating Procedures"; Bates Nos.
22               BART 0000235 - 237
23   Exhibit 5   Two-page blank Religious Exemption    21
24               Request Review Form (COVID-19
25               Vaccination)
```

2

```
1                    E X H I B I T S
2    DEPOSITION NO.                                    PAGE
3

4

5    Exhibit 6    Two-page document entitled "Religious    24
6                 Exemption Interviews"

7    Exhibit 7    Two-page letter dated December 20,       31
8                 2021 from Rod Maplestone to Szu-Cheng
9                 Sun; Bates Nos. BART 0001541 - 1542

10   Exhibit 8    Three-page letter dated January 3,       32
11                2022 from Rod Maplestone to Jonathan
12                Castaneda; Bates Nos. BART_0001025 - 1027

13   Exhibit 9    Three-page letter dated January 5,       47
14                2022 from Rod Maplestone to Mary
15                Engler-Contreras; Bates Nos. BART_
16                0001168 - 1170

17   Exhibit 10   Three-page letter dated January 3,       58
18                2022 from Rod Maplestone to Adrian
19                Gilbert; Bates Nos. BART 0001215 - 1217

20   Exhibit 11   Nine-page packet of documents            70
21                pertaining to Employee Rosalind E.
22                Parker; Bates Nos. BART 0001425 - 1433

23   Exhibit 12   Five-page packet of documents            78
24                pertaining to Employee Szu-Cheng
25                Sun; Bates Nos. BART 0001536 - 1540
```

3

1        BE IT REMEMBERED that, pursuant to Subpoena,

2   and on Friday, September 22, 2023, commencing at the

3   hour of 9:55 a.m., in the offices of Glynn, Finley,

4   Mortl, Hanlon & Friedenberg, LLP, One Walnut Creek

5   Center, Suite 500, 100 Pringle Avenue, Walnut Creek,

6   California, before me, Clare Macy, a certified shorthand

7   reporter in the State of California, there personally

8   appeared

9

10                  RODNEY W. MAPLESTONE,

11

12   called as a witness by the PlaintiffS, who being by me

13        first duly sworn, was thereupon examined and

14          interrogated as is hereinafter set forth.

15

16                     ---o0o---

17

18

19

20

21

22

23

24

25

                                                      4

```
 1                    A P P E A R A N C E S

 2

 3

 4            KEVIN T. SNIDER, Attorney at Law, of Pacific

 5    Justice Institute, P.O. Box 276600, Sacramento,

 6    California 95827, appeared as counsel on behalf of the

 7    Plaintiffs.

 8    Tel: 916.857.6900

 9    Email: ksnider@pji.org

10            VICTORIA R. NUETZEL, Attorney at Law, and

11    JAMES M. HANLON, JR., Attorney at Law, of Glynn, Finley,

12    Mortl, Hanlon & Friedenberg, LLP, One Walnut Creek

13    Center, Suite 500, 100 Pringle Avenue, Walnut Creek,

14    California 94607, appeared as counsel on behalf of the

15    Defendants.

16    Tel: 925.210.2800            Fax: 925.945.1975

17    Email: vnuetzel@glynnfinley.com

18    Email: jhanlon@glynnfinley.com

19            SAM DAWOOD, Attorney at Law, of Office of the

20    General Counsel, San Francisco Bay Area Rapid Transit

21    District, 2150 Webster Street, 10th Floor, Oakland,

22    California 94612, appeared as in-house counsel on behalf

23    of the Defendants.

24    Tel: 510.464.6019            Fax: 510.464.6049

25    Email: sdawood@bart.gov
```

                                                            5

| | |
|---|---|
| 1 | SEPTEMBER 22, 2023 - FRIDAY                9:55 A.M. |
| 2 | P R O C E E D I N G S |
| 3 | (Whereupon, the witness was sworn.) |
| 4 | EXAMINATION BY MR. SNIDER: |
| 5 | Q.   All right.  Mr. Maplestone, I'm Kevin Snider. |
| 6 | I'm the attorney representing some employees in the |
| 7 | lawsuit which BART is a defendant, and we're going to |
| 8 | take your deposition. |
| 9 | Can you state your full legal name and spell |
| 10 | it for our reporter? |
| 11 | **A.   Rodney William Maplestone, R-O-D-N-E-Y,** |
| 12 | **William, W-I-L-L-I-A-M, Maplestone, M-A-P-L-E-S-T-O-N-E.** |
| 13 | Q.   Mr. Maplestone, have you ever had your |
| 14 | deposition taken before? |
| 15 | **A.   Yes.** |
| 16 | Q.   Okay.  That will make it easy.  I'm going to |
| 17 | go through just a couple of quick rules, but you've done |
| 18 | this before. |
| 19 | First, what was the occasion to have a |
| 20 | deposition -- your deposition taken? |
| 21 | **A.   Could you say more about that?** |
| 22 | Q.   Was it a lawsuit where you were a plaintiff? |
| 23 | Defendant?  Witness? |
| 24 | **A.   Yeah.  Just through BART, there were a couple** |
| 25 | **of times where I was deposed for cases for BART.** |

6

1    Q.   Okay.  And all right.  Now, so you know that,
2  just because we're in this auspicious building in a
3  comfortable conference room, this is still a formal
4  undertaking, and so you're under oath.  And so what you
5  are going to testify will have to be truthful, and if
6  it's not or you change your testimony, say, in a trial,
7  we could take out our books and check you on that.  So
8  just keep that in mind.

9         You are going to -- Since you've done this
10  before, you know you're going to get a transcript of
11  this.  It will either be in booklet or PDF format.  And
12  one of the things:  You'll have a chance to read it, see
13  if there are any mistakes.  We're all human, and
14  sometimes someone will say something or a court reporter
15  will miss it or something.  So as long as it's not a
16  material change, it's probably not a problem.

17         Let me give you just an example for that.  Say
18  this was about a car accident, and you were a witness,
19  and your testimony was that -- The question was, what
20  color was the traffic light when the car entered the
21  intersection?  And you said, "Yellow."  And you went
22  back to your transcript, and you changed it -- crossed
23  out "yellow" and you put "amber."  That's not a material
24  change, just something -- But if you changed it from
25  yellow to red, that would be a material change.

                                                        7

1          So do you understand the difference?

2     **A.    I do.**

3     Q.    All right.  Good.  And the other thing is,

4  you're allowed to give us an estimate.  And so, for

5  example, you could estimate the length of this table,

6  but you probably couldn't estimate the length of the

7  table in my conference room because you haven't been in

8  my conference room.

9          So we don't want you to guess.

10         Have you had any -- in the last 24 hours, any

11 substances that would impair your ability to testify

12 this morning?

13    **A.    No.**

14    Q.    All right.  Good.  Then we'll go forward with

15 some -- past these preliminary questions and just to ask

16 you a couple of things.

17         One other thing is, since our court reporter

18 is making a transcript of this, we're going to try to

19 keep it as straightforward as possible.  So when you and

20 I talk -- Like, when we came in this morning, we have a

21 tendency to talk over each other a little bit.  So just

22 give a little bit of a pause before you answer so she's

23 got it.

24         And then, another thing is try to use words

25 instead of -- I mean English words instead of "huh-uh"

                                                    8

1   and "uh-huh" and shrugging and going like this.  Okay?

2       **A.    Understood.**

3       Q.    All right.  Let's get going.

4           What is your job title?

5       **A.    I am the Manager of Leave Programs.**

6       Q.    And how long have you held that position?

7       **A.    For a little over five years.**

8       Q.    Five years.  Okay.

9           What are your general duties?

10      **A.    Duties are to oversee the state and federal**

11  **leaves and accommodations for employees of BART.**

12      Q.    Okay.  Do you recall in the late summer of

13  2021 the BART Board of Directors voting to require

14  employees to be vaccinated?

15      **A.    Yes.**

16      Q.    Okay.  And was that -- I said late summer.  Do

17  you recall the month at all?

18      **A.    They voted on it in -- It went into effect in**

19  **December, and I believe they voted on it very shortly**

20  **before that.**

21      Q.    Okay.  Did you say December or September?  I'm

22  sorry.  My hearing is --

23      **A.    I believe it was December.**

24      Q.    Of 2021?

25      **A.    Yes.**

9

1    Q.    Okay.  Were you made aware of any employees

2    that wanted to have a religious exemption to the

3    vaccination requirement?

4        **A.    Yes.**

5    Q.    How about medical exemptions?

6        **A.    Yes.**

7    Q.    Okay.  And how many employees requested an

8    exemption, both medical and religious; do you recall?

9        **A.    All said and done, some people requested both.**

10   **It was around 200 employees total.**

11   Q.    All right.

12       **A.    Yeah.**

13   Q.    Of those, do you know about how many requested

14   religious exemptions?

15       **A.    Around 176, I believe, something in that**

16   **number.**

17       Q.    Okay.  And were you involved in the processing

18   of those requests?

19       **A.    Yes.**

20       Q.    Okay.  And what did that entail?

21       **A.    It entailed reviewing the request, a written**

22   **form of the request; meeting as a panel.  We have a**

23   **small panel that will review those submissions.  And**

24   **then we would determine what to do next, whether to**

25   **grant the exemption, meet -- speak with the employee to**

10

1   get additional information or to deny that request for

2   the exemption.

3        Q.   Okay.   Do you recall who was on the panel?

4        A.   It was me, Gizelle Huynh, who was the

5   supervisor of leave management at the time.  And Amelia

6   Sandoval-Smith, who is an attorney at BART.

7        Q.   How do you spell Amelia's name?

8        A.   A-M-E-L-I-A.  And Sandoval, I'm going to --

9        Q.   I think I got that.  It was just the first

10  one.

11       A.   Yes.

12       Q.   Okay.  Thanks.  And so these requests would go

13  to this panel, and it would be reviewed; is that your

14  testimony?

15       A.   They would come to leave management.  We would

16  package the request, meaning we would confirm that all

17  the needed information had been provided.  If necessary,

18  we would reach out to the employee to get more

19  information, but once we had enough information, we

20  would then meet as a panel.

21       Q.   How would you know if the employee had given

22  you the proper information?

23       A.   Just reviewing it to see that there was the

24  form completed; they had answered all the questions on

25  form.  And we did have a request that they provide

                                                        11

1    **additional written information, which they would need to**

2    **provide something.  If an employee didn't provide**

3    **everything, then we would let them know so they could**

4    **provide more.**

5    Q.   You said a form.  Was that something that you

6    wrote?  Or where did you get the form?

7    **A.   We created it.**

8    Q.   You created it.  Who is we?

9    **A.   Gizelle, me, and we did consult with our**

10    **attorney on that.**

11    Q.   Okay.  A BART attorney?

12    **A.   Yes.**

13    Q.   It doesn't really matter.  Okay.

14    All right.  And so there were some standard

15    forms used?

16    **A.   Yes.**

17    Q.   All right.  I'm going to -- From time to time,

18    we're going to look at some papers.

19    **A.   Okay.**

20    Q.   And so I've got these, and I will -- I've got

21    a copy for Madam Court Reporter and one copy for you.

22    And then I've got -- I'm sorry.  I didn't bring -- I

23    just brought one for your counsel.

24    MS. NUETZEL:  That's fine.

25    MR. SNIDER:  Unless you want to go and print

12

1 these off.

2         MR. DAWOOD:  I assume you want the witness to

3 use the copy that the court reporter has?

4         MR. SNIDER:  They are all the same, so if --

5         MS. NUETZEL:  If she marks it, then he can

6 look at the marked version.

7         (Whereupon, Exhibit 1 was marked for

8         identification.)

9         MR. SNIDER:  Q.  Take a look at this form and

10 tell me if you recognize it.

11     **A.    I do.**

12     Q.    All right.  And when was the first occasion

13 for you to see that form?

14     **A.    When I created it.**

15     Q.    Oh, you created it.  Okay.

16         All right.  So you typed this up.  For the

17 questions on it -- I see questions 1, 2, 3, 4 and 5,

18 where did you come up with those questions?  Did you

19 just think of those or --

20     **A.    There was an EEO guidance document that was**

21 **produced, so that led to the creation of the questions.**

22     Q.    All right.  Very good.  Let me show you

23 another document.  And I've got -- We will call it

24 Exhibit 2.

25 /////

                                                    13

```
 1              (Whereupon, Exhibit 2 was marked for

 2         identification.)

 3              MR. SNIDER:  Did I give -- Did I send four

 4    around?

 5         Q.   So this is marked -- At the very bottom

 6    right-hand corner, it's marked as BART's page 12.

 7              Do you see that?

 8         A.   Yes.

 9         Q.   So we're all looking at the same document.

10              All right.  Can you read the title up at the

11    upper right-hand corner into the record?

12         A.   "Employee Request for Religious Exemption,

13    COVID-19 Vaccination, Supplemental Documentation."

14         Q.   Okay.  And so with the prior document that I

15    gave you, was this something that came second because it

16    was the supplemental; it came third or --

17         A.   We changed the form at the beginning of the

18    process to add that additional question.  People who had

19    received the original form didn't have that additional

20    question.  So we added it to the form and made a new

21    document with all the questions.

22         Q.   Okay.  I'm going to show you another document,

23    and you tell me if this is that original document or

24    it's the second version of that.  Let me give it to --

25    What is the page number on that?
```

                                                         14

1   **A. This one is BART 13, which you had already**

2 **given me.**

3   Q. I gave you 13?  Oh.  Let me give you --

4    MS. NUETZEL:  Exhibit 1 is pages 13 and 14, so

5 we're clear.

6    MR. SNIDER:  Q.  That one?

7   **A. Yes.  Yes.**

8   Q. And this one.

9   So that's going to be number --

10   THE REPORTER:  3.

11   (Whereupon, Exhibit 3 was marked for

12   identification.)

13    MR. SNIDER:  3.  I'm sorry these are coming so

14 fast.

15    MS. NUETZEL:  The witness is looking at the

16 original one that's been marked.

17    MR. SNIDER:  Q.  All right.  So of the

18 exhibits that I've given you, which one was the first

19 document that you drafted?

20   **A. Exhibit 3.**

21   Q. Exhibit 3?  And how about, what was the second

22 one?  Was it the supplement, or was it the other?

23   **A. They were simultaneous.**

24   Q. Simultaneous?

25   **A. Yeah, because -- Yeah.  They were**

                 15

1   simultaneous.

2          Q.    And why is that?

3          A.    Because we added the question to the original

4   form, so that form was complete.  But anybody who had

5   received Exhibit 3 needed to receive Exhibit 2 to get

6   that additional question.

7          Q.    Okay.  So Exhibit -- So if I'm understanding

8   this, one of these forms eventually included the

9   supplemental question?

10          A.    That is correct.

11          Q.    All right.  So you had all together, I think

12   it was, six questions for a completed form?

13          A.    Yes.

14          Q.    All right.  And these forms were used for

15   everybody?

16          A.    Yes.

17          Q.    Okay.  And other than these forms, did you use

18   any other forms --

19          A.    Yes.

20          Q.    -- for initial -- I'm sorry.  You were

21   starting to speak, and I jumped in with another

22   clarifying question.  That's my bad.

23                Other than these forms, were there other forms

24   for the initial review that you used with employees?

25                MS. NUETZEL:  For the religious exemption?

                                                            16

1          MR. SNIDER:  Q.  For the religious exemption,
2     yes.  Thank you.
3          **A.   Not for the religious exemption.**
4          Q.   Okay.  So when you say not for the -- So this
5     is the initial documents that you gave to the employees?
6          **A.   Can you clarify that further when you say**
7     **"forms"?**
8          Q.   Those documents, I'm calling them forms.  What
9     did you call them?
10         **A.   I called it an application.**
11         Q.   Oh.  Application?
12         **A.   Yeah.**
13         Q.   All of those were applications?
14         **A.   Yeah.**
15         Q.   Okay.
16         **A.   I guess it could be the same as a form.**
17         Q.   So when I say "form," my own way of thinking
18    is that it's uniform.  So were there any boutique forms
19    or applications that you used?
20         **A.   No.**
21         Q.   Okay.  All right.  So I think we all
22    understand each other.
23              Other than the attorney that you ran these by,
24    did the other individual provide some additional
25    changes?

                                                          17

1    **A.    Which individual?**

2    Q.    You said there -- My understanding -- I may

3    have misheard you -- that when you drafted this, there

4    was another person, plus an attorney that this was

5    circulated to.  Is that right?

6    **A.    There was the supervisor of leave management,**

7    **who was on my team.**

8    Q.    Okay.  And that person?

9    **A.    Gizelle Huynh.**

10   Q.    Gizelle is a super- -- okay.

11   And I don't know the hierarchy for BART.  Is

12   she -- So she's over you?

13   **A.    She reported to me.**

14   Q.    She reported to you.  Okay.  So you were over

15   her?

16   **A.    Yes.**

17   Q.    Okay.  Got it.  Do you recall if she made any

18   additions or deletions to this?

19   **A.    I don't believe so.**

20   Q.    Okay.  I've got another document for you.

21   This will be marked whatever is next in order.

22   I think it's 4.

23   (Whereupon, Exhibit 4 was marked for

24   identification.)

25   MR. SNIDER:  Q.  Do you recognize this

18

1  document?

2  **A.    Yes.**

3  Q.    Where did you see this document?

4  **A.    When we created it.**

5  Q.    And "we" is Gizelle --

6  **A.    Yes.**

7  Q.    -- Huynh and you?

8  **A.    Yes.**

9  Q.    And anyone else?

10  **A.    No.**

11  Q.    All right.  And how was this form used?  I'm

12  sorry.  I'm calling it a form.  What did you call this?

13  **A.    We call it a standard operating procedure.**

14  Q.    The document is called Standard Operating

15  Procedure?

16  **A.    Yeah.**

17  Q.    Okay.  I see it up on the upper left-hand

18  side.  All right.  And when did you use this form?  For

19  what purpose?

20  **A.    To lay out the process for how we would**

21  **evaluate the requests.**

22  Q.    Okay.  And were these the only forms you --

23  I'm sorry, standard operating procedure documents that

24  you used for evaluating requests?

25            MS. NUETZEL:  For religious exemptions?

19

```
 1              MR. SNIDER:  Q.  For religious exemptions.
 2        A.    The only standard operating procedure.
 3        Q.    That's what you're calling this form?
 4        A.    Yeah.
 5        Q.    Is this the only document that you used after
 6   you -- after receiving the initial application?
 7        A.    This is the procedure we followed, yes.  This
 8   document is what we followed.
 9        Q.    Okay.  All right.  Did you use any other
10   documents for evaluating employee requests for religious
11   accommodation for vaccination?
12        A.    Yes.
13        Q.    What were those documents?
14        A.    There is a review document that we would track
15   the requests through.
16        Q.    Do you happen to know offhand what it was
17   called?  If you know.
18        A.    I don't remember the exact name of it.
19        Q.    It's perfectly fine if you don't remember
20   something.  For our purposes, unless I specify medical
21   exemptions or accommodations, we'll be just talking
22   about religious exemptions and accommodations.  It will
23   make it a little bit easier.
24        A.    Okay.
25        Q.    And I'm going to give you something, another
```

1 document.

2           This is next in order.

3           THE REPORTER:  That's 5.

4           (Whereupon, Exhibit 5 was marked for

5           identification.)

6           MR. SNIDER:  Q.  And this is -- Do you

7 recognize this document?

8      **A.   Yes.**

9      Q.   Okay.  Now, it doesn't have a Bates stamp on

10 it, but at the very top, there's some page numbers.  Do

11 you see something like "Page 114 of 115" at the very

12 top?

13      **A.   Yes.**

14      Q.   Okay.  Good.  We're looking at the same

15 document.  Tell me about this document.  You said you've

16 seen it before.  Tell me what you know about this

17 document.

18      **A.   This is the review document that I mentioned.**

19      Q.   Okay.  And it's -- And I think we said for the

20 record -- either you or I did -- that this is the

21 religious exemption request review form?

22      **A.   Yes.**

23      Q.   Okay.  And with this document, how would you

24 use it?

25      **A.   We would answer the questions as we were**

1    processing the request.

2         Q.    When you say -- So this is something that BART

3    employees such as yourself would fill out?

4         A.    Yes.

5         Q.    Okay.  So this is not an employee document

6    that's filled out?

7         A.    That's correct.

8         Q.    And the other exhibits that I've showed you, 1

9    through 4, take a look at those.  Can you tell me which

10   documents are filled out by employees and which

11   documents are filled out by -- I'm sorry, by religious

12   objectors to vaccination and which documents are filled

13   out by the reviewers, examiners?

14        A.    1, 2 and 3 would be filled out by the

15   employee.

16        Q.    Okay.

17        A.    No. 4 is not filled out; it's just

18   instructional.

19        Q.    It's just instructional, okay.

20        A.    And then Exhibit 5 would be filled out by the

21   panel.

22        Q.    Okay.  Any other documents that would be used

23   in the evaluation process?

24             MS. NUETZEL:  Are we talking now about the

25   exemption or evaluation as a whole going into

                                                           22

1    accommodations, for example?

2          MR. SNIDER:  Q.  Let's stick with exemptions,

3    because those go first.

4          MS. NUETZEL:  Sure.

5          MR. SNIDER:  Q.  Tell us about exemptions.

6    Any other documents you would use?

7      **A.    Yeah.   Whatever the employee produced as their**

8    **documents.**

9      Q.    Okay.  So it would be what they produced.

10     **A.    (Witness nods head.)**

11     Q.    Anything else that BART had for the exemption

12   process, or is this the universe of the documents?

13     **A.    Other than documents that were with the**

14   **attorney.**

15     Q.    Okay.

16     **A.    Yeah, things that were protected that way.   I**

17   **can't think of anything else.**

18     Q.    Okay.  And so is it your testimony there were

19   no boutique documents for a given employee; is that

20   right?

21         MS. NUETZEL:  I am going to object that it's

22   vague and ambiguous as to what a boutique document would

23   be.

24         MR. SNIDER:  Q.  Any documents that you --

25   that BART would draft that was for a specific employee?

                                                        23

1    A.    Not that I can recall.

2    Q.    Okay.  So this is probably the -- To your

3  recollection, this is the universe of the documents that

4  BART drafted and used for the religious exemptions; is

5  that right?

6    A.    Yes.

7    Q.    All right.  You know what?  I've got -- I'm

8  going to give you -- I think this is Exhibit 6; is that

9  right?

10         MS. NUETZEL:  That's correct.

11         (Whereupon, Exhibit 6 was marked for

12         identification.)

13         MR. SNIDER:  Q.  Take a look at this document,

14  Mr. Maplestone.  Tell me if you recall ever seeing this

15  type of document.

16    A.    Yes.

17    Q.    And where did you see it?

18    A.    This was used during a discussion with the

19  requester.

20    Q.    And so this was for the religious exemption

21  process; is that correct?

22    A.    Yes.

23    Q.    Okay.  And were you involved in drafting this

24  document?

25    A.    Yes.

24

1    Q.   Okay.  Anyone else involved in drafting this

2    document?

3         A.   **Gizelle Huynh.**

4         Q.   Okay.  And so we've got six exhibits.  Do

5    those comprise, to your knowledge, the universe of the

6    documents BART would use for evaluation for exemptions?

7         A.   **To the best of my recollection, yes.**

8         Q.   Take a look at this document, this Exhibit 6.

9    At the bottom of the first page, there is a paragraph or

10   item 5; do you see that?

11        A.   **Yes.**

12        Q.   Can you read that?  It's not long.  Can you

13   read those short sentences into the record?

14        A.   **"You refuse to take the COVID-19 vaccine**

15   **because of the alleged use of aborted fetal cells in the**

16   **creation of the vaccine.  Research on this topic has**

17   **revealed some cosmetic and over-the-counter medications**

18   **may use the same process the COVID-19 vaccine.  Are you**

19   **aware of this?  Tell me how else you demonstrate the**

20   **same precautions in your life."**

21        Q.   Okay.  In the second sentence, it says,

22   "Research on this topic."  Did you perform the research?

23        A.   **I did not.**

24        Q.   How did you know that research was done?  Did

25   Gizelle Huynh tell you that?

                                                          25

1      A.    I don't recall exactly how we established
2   that, that research had been done.  It might have been
3   Gizelle.  I don't know exactly.
4      Q.    Okay.  And this question, as I understand it,
5   were for religious objector employees who based their
6   position on a pro-life position; is that your
7   understanding?
8      A.    Yes.
9      Q.    Were there many employees who had that view
10  that you recall?
11     A.    Yes.
12     Q.    Okay.  And do you recall -- I'm not going to
13  hold you to this.  Do you have an estimate of the
14  percentage of employees that had pro-life views?
15     A.    I would estimate more than half of them.
16     Q.    More than half.  Okay.
17           And when it talks about "Research on this
18  topic has revealed some cosmetic and over-the-counter
19  medicines," what cosmetic -- what do you mean by
20  "cosmetic"?  Do you mean, like, lipstick and rouge or
21  whatever ladies put on their faces?
22     A.    Yes.
23     Q.    Okay.  And is it your understanding or did you
24  perform some research or were given a document that had
25  a connection between cosmetic products and aborted fetal

26

1  cells?

2      A.    Could you clarify that?  I don't quite

3  understand.

4      Q.    It says -- Well, let me read it again.  It

5  says, "Research on this topic has revealed some cosmetic

6  and over-the-counter medicines may use the same process

7  the COVID-19 vaccine."

8          How did you become aware that there were

9  cosmetic products that used the same process as the

10  COVID vaccine?

11      A.    I don't recall exactly, but we were talking

12  about the form and creating the questions.  And this was

13  a very common point that the requesters were making, one

14  of them.  And so this question was in relation to that.

15          And we were aware of the fact that other

16  products used similar techniques in their production as

17  a vaccine or in that way.  And so that was -- The

18  question was related to that.

19      Q.    As you sit here today, do you recall what

20  products?  I mean, is it typically eyeliner or lipstick?

21  Or what is it?

22      A.    I'm thinking more Tylenol, aspirin,

23  medications like that, but also, some beauty products.

24      Q.    Okay.  So let's just stay with the cosmetics

25  for just a second.  Then we'll go to over-the-counter

                                                        27

```
 1   medicines.
 2          For the cosmetic -- beauty products, I think
 3   you called them, do you recall, as you sit here, what
 4   those were, whether they were -- if you could think of a
 5   brand or if it's a specific type of application for the
 6   face?
 7       A.   I can't name a specific brand.
 8       Q.   Any specific item?  And by "item," I mean,
 9   like, lipstick or eyeliner or rouge or --
10       A.   I can't think of a specific one to tell you.
11       Q.   Do you recall having a discussion with Gizelle
12   about it?
13       A.   I do.
14       Q.   And was this something that she brought to
15   your attention about specific cosmetics?
16       A.   I do -- I don't know any specific cosmetics
17   that I can think of.  I do remember discussing this
18   question with Gizelle.
19       Q.   Okay.  All right.  Let's go to the
20   over-the-counter medicines.  Which over-the-counter
21   medicines did you understand used aborted fetal cells in
22   the creation of them?
23       A.   I don't know any -- I can't say for certain
24   any specific brand, but I am aware that generally that
25   is a practice that occurs in production of products like
```

                                                          28

1    that.

2         Q.   What kind of products?  Do you have any

3    recollection of what they would be?

4         **A.   What comes to mind is Tylenol and aspirin and**

5    **things like that.**

6         Q.   Tylenol and aspirin, okay.

7              Do you know approximately the decade when

8    aborted fetal cells were used for research?

9         **A.   I do not.**

10        Q.   Okay.  Do you know the approximate decade when

11   Tylenol was patented?

12        **A.   I do not.**

13        Q.   Okay.  How about aspirin?

14        **A.   I do not.**

15        Q.   Okay.  Did Gizelle know?

16        **A.   I do not know.**

17        Q.   Did anyone that you were working with have

18   knowledge of these over-the-counter medicines that used

19   aborted fetal cells in their creation?

20        **A.   Clarify that, please.**

21        Q.   Did anyone that you were working with on

22   this -- and I don't know if I want to call it a -- What

23   do you call this document?

24        **A.   This was our interview notes.**

25        Q.   Were you aware of anyone who helped you create

1 these interview notes who had knowledge about the use of

2 aborted fetal cells in research for over-the-counter

3 medicines?

4     **A.   Do I know any -- Clarify that again.  I'm**

5 **sorry.  I am still not understanding.**

6     Q.   Did anyone working with BART that you were

7 involved with in creating this document, did any of

8 them, to your knowledge, know about over-the-counter

9 medicines being researched through aborted fetal cells?

10     **A.   I can recall discussing it with Gizelle, and I**

11 **can't recall the exact specific knowledge that we might**

12 **have had about that.  We understood it to be an industry**

13 **practice or procedure that occurs with the production of**

14 **these kind of products.**

15     Q.   Do you recall ever interviewing any employees

16 who requested religious exemptions, their responses to

17 your question 5 from this -- from these notes?

18     **A.   Do I remember the responses they gave?**

19     Q.   Yeah.  Any of them that come to mind.

20         MS. NUETZEL:  Objection.  Overbroad.

21         You can answer if you know.

22         THE WITNESS:  There were all kinds of answers

23 to that question.

24         MR. SNIDER:  Q.  Okay.  I'd like to move --

25 and you can put -- We'll come back to those.  Don't toss

```
 1   them away, but for now, we'll set those aside.
 2              Did you write any letters to employees that
 3   were granted an exemption, a religious exemption to
 4   vaccination?
 5        A.    Yes.
 6        Q.    Okay.  Did you use a standard template for
 7   those letters?
 8        A.    Yes.
 9        Q.    Okay.  Did you create the template?
10        A.    Yes.
11        Q.    Okay.  Did anyone help you with it?
12        A.    Yes.
13        Q.    Who helped you with it?
14        A.    Gizelle Huynh.
15        Q.    Who was the primary drafter?
16        A.    Probably me.
17              MR. SNIDER:  Okay.  This is going to be --
18              THE REPORTER:  This is Exhibit 7.
19              MR. SNIDER:  This is at 7, okay.  We're moving
20   along.
21              (Whereupon, Exhibit 7 was marked for
22              identification.)
23              MR. SNIDER:  Q.  And here you are.
24              Do you need one more?
25              MR. DAWOOD:  Sure.  Thanks.
```

31

1          MR. SNIDER:  Q.  Do you recognize this
2    document?
3          **A.   Yes.**
4          Q.   And did you sign it electronically or by hand?
5          **A.   Yes, I did.**
6          Q.   Okay.  And was this one of those standardized
7    letters that you would use?
8          **A.   Yes.**
9          Q.   This is another new document.
10         THE REPORTER:  Exhibit 8.
11         MR. SNIDER:  Exhibit 8.
12         (Whereupon, Exhibit 8 was marked for
13         identification.)
14         MR. SNIDER:  Q.  Do you recognize this letter?
15         **A.   Yes.**
16         Q.   Just glance through it quickly and tell me if
17   this was another standardized letter that you would use.
18         **A.   Yes, to some degree.**
19         Q.   And you would -- you would -- What would you
20   change?  Of course, the name and the date; would that be
21   fair to say?
22         **A.   More than that.**
23         Q.   Okay.  What other items would you add to it?
24         **A.   We would reference the specific accommodations**
25   **that person had requested and then provide a response to**

                                                      32

1  that specific request applying to that employee.

2       Q.   Okay.  And did you keep a template on a

3  computer or laptop?

4       A.   Computer.

5       Q.   Okay.

6       A.   Well, laptop.  Same thing.

7       Q.   Yes.  Okay.

8            So you mentioned early on about a panel that

9  would review the religious exemption requests.  Do you

10 remember that testimony?

11      A.   Yes.

12      Q.   And there was three persons on the panel; is

13 that right?

14      A.   Yes.

15      Q.   And it was you, Gizelle -- and forgive me for

16 being informal using first names.  Gizelle, I think, is

17 Huynh.

18           -- and Amelia Sandoval?

19      A.   Correct.  Sandoval-Smith, correct.

20      Q.   Okay.  And was there, also, a panel that

21 reviewed requests for accommodation?

22      A.   It wasn't a panel, but it was Gizelle and me.

23      Q.   Okay.  Maybe -- Let me lay a foundation or ask

24 you to lay a foundation.  What is the difference between

25 a request for religious exemption and a request for

33

1   religious accommodation?

2       **A.    I don't see it as a request for religious**

3   **accommodation.  I see it as a two-pronged approach --**

4       Q.    Okay.

5       **A.    -- where the first one is I'm requesting an**

6   **exemption to something.**

7       Q.    Okay.

8       **A.    And you're either granted or not.  If you're**

9   **granted the exemption, then you look at how does that**

10  **apply in an accommodation --**

11      Q.    Okay.

12      **A.    -- and whether or not you can accommodate it.**

13      Q.    And so there were two individuals, yourself

14  and Gizelle Huynh, that reviewed the accommodation

15  requests?

16      **A.    Yes.**

17      Q.    And did that involve forms or templates?  Or

18  did it -- Were there oral examinations?  How did you

19  process the request for religious accommodation?

20      **A.    It was many different ways.**

21      Q.    Okay.  Let's start with --

22      **A.    Sorry.**

23      Q.    Let's start from the beginning.

24      **A.    If it was really straightforward and we know**

25  **that -- we know many of the jobs, and we know the**

                                                      34

1  functions of those jobs, so if we could determine that

2  the accommodation wouldn't be reasonable, we would be

3  able to make that assessment.  If we needed

4  clarification or we wanted to explore an option further,

5  we would reach out to the department specifically to

6  find out, "Could this be realistically or reasonably

7  accommodated?"  But many times we can -- we can already

8  know if we look at it and we know the job and we know

9  what that would require.  But we do reach out if we need

10  to know more.

11      Q.   Is that the entirety of the religious

12  accommodation process?  You said there were many steps,

13  so I want to see if there is a next step or is that the

14  first step?

15      A.   It's the first step because the employee can

16  come back with more accommodation options.  And so you

17  would keep reviewing each one and look at it from a

18  reasonableness approach.

19      Q.   And who would make the -- Are there further

20  steps beyond that?

21      A.   Not that I can think of.

22      Q.   Okay.  And if an accommodation was granted,

23  what was -- how would the employee be notified of that?

24      A.   They would receive a letter.

25      Q.   How many letters did you send out on that?

                                                        35

1    A.    On what?

2    Q.    Religious accommodations, granting religious

3    accommodations.

4    A.    We did not grant a religious accommodation.

5    Q.    Okay.  Did you grant any medical

6    accommodations?

7    A.    Yes.

8    Q.    Okay.  And who was the final decision maker on

9    whether or not an accommodation for religion was

10   granted?  Was that you?  Or was that Gizelle?  Or was it

11   both of you?

12   A.    Both of us.

13   Q.    Okay.  Did you ever have disagreements on it?

14   A.    Not that I can recall, no.

15   Q.    How many -- Can you give me an estimate of how

16   many requests for religious accommodation were denied?

17   A.    About 176, I'm thinking.

18   Q.    Okay.

19   A.    Actually, can I clarify that?

20   Q.    Yes, please.

21   A.    Some of them were granted -- They were not

22   even granted the exemption, so they didn't move to the

23   accommodation part.  So it's a smaller number than that,

24   actually.

25   Q.    Can you give me an estimate of how many people

 1    made it to the part two, the accommodation part?

 2        **A.    I want to guess about 100.  Maybe less than**

 3    **that.  It's been two years, so it's kind of hard to**

 4    **remember exactly.**

 5        Q.    I understand.

 6            So is it safe to say between 60 and 80 persons

 7    had their requests for religious exemption denied?

 8        **A.    It could be correct, yeah.**

 9        Q.    And going back to the religious exemptions,

10    it's fair to say that you used a standardized process

11    for reviewing all of these; is that correct?

12            MS. NUETZEL:  I would object that it's vague

13    and ambiguous.

14            But you can answer if you understand it.

15            THE WITNESS:  We followed a process; however,

16    each case was looked at on its own individual situation.

17            MR. SNIDER:  Q.  Okay.  So you followed a

18    process.  And the forms that I've -- the applications

19    and other exhibits that I gave you relative to the

20    religious exemption, those were all you used as far as

21    documentation?

22        **A.    Email.**

23        Q.    Email, okay.  Tell me about email.

24        **A.    Employees would make -- ask follow-up**

25    **questions or express their unhappiness with what our**

 1    decision was and would ask additional questions.  And so

 2    we would engage in email with the employee.

 3         Q.    Were there any other evaluators besides you

 4    and Gizelle Huynh?

 5         A.    On the religious exemptions?

 6         Q.    Yes.

 7         A.    There was a couple people who helped very,

 8    very briefly on a couple of interviews.

 9         Q.    And do you remember who they were?

10         A.    Yes.

11         Q.    Who are they?

12         A.    Jesse Alcantera, who was an employee of mine

13    at the time, and Yvette Ibarra, who was also an employee

14    of mine at the time.

15         Q.    Okay.  You said they handled very few.  Do you

16    have an estimate of how many?

17         A.    I want to say 10.  When there was a lot of

18    appointments very close together, we needed to do more

19    than -- we needed to divide Gizelle and me to have more

20    interviews completed.

21         Q.    So can you walk me through that?  Would you

22    pair up with one of those other folks, and Gizelle would

23    pair up with another person?

24         A.    Yes.

25         Q.    Okay.  Got it.

1          Take a look at -- back to Exhibit 4.  I think

2  it's page -- BART page 235.  Is that correct?

3          MS. NUETZEL:  I'll find it for the witness.

4          MR. SNIDER:  Q.  Which exhibit?

5    **A.   Exhibit 4, page 235.**

6    Q.   Okay.  Good.  Thank you.

7          Take a look at page 237.  Look at the bottom

8  box.  Do you see -- What does that box say on the

9  left-hand corner?

10    **A.   "Resources."**

11    Q.   Okay.  And then do you see next to that about

12  seven bullet points?

13    **A.   Yes.**

14    Q.   All right.  Can you read those bullet points

15  into the record for me?

16    **A.   "Initial Email Acknowledgment Template;**

17  **Religious Exemption Agreement Document Template;**

18  ==**Religious Exemption Denial Letter Template;**== **Religious**

19  **Exemption Request Form, V1; Religious Exemption Request**

20  **Form, V2; Religious Exemption Request Form [verbatim];**

21  **Supplemental Religious Exemption Request Form."**

22    Q.   Okay.  And are any of those documents absent

23  from the exhibits that I've given you?

24    **A.   The email acknowledgment template.**

25    Q.   Okay.  Do you remember the substance of that

1  email?  Was it pretty perfunctory?  Or what was it?

2      **A.  It was very basic, just acknowledging that**

3  **we've received the request and we'd be reviewing it and**

4  **following back up.**

5      Q.  Notice that you've received it and sent it to

6  review?

7      **A.  Yes.**

8      Q.  And so as you sit here today, do you feel that

9  you treated all the religious exemption requests fairly?

10      **A.  Yes.**

11      Q.  And everyone was treated equally?

12      **A.  Yes.**

13      Q.  Okay.  And all of the evaluators:  You,

14  Gizelle and the two other people, which I'm losing their

15  names but that you had mentioned in your prior

16  testimony, they all used the same criteria for review;

17  is that right?

18      **A.  Yes.**

19      Q.  Okay.  Are you familiar with the Center for

20  Disease Control -- Federal Center for Disease Control?

21      **A.  Yes.**

22      Q.  All right.  Did you know that they had a

23  guidance regarding safety issues in COVID-19?

24      **A.  Yes.**

25      Q.  Did you ever have a chance to review that?

40

1     **A.    I did use them as a resource.**

2     Q.    Okay.  Anyone else at -- who was a reviewer of

3  requests for religious accommodation -- I'm sorry,

4  exemption or accommodation, did they review the guidance

5  from the CDC?

6     **A.    Gizelle Huynh.**

7     Q.    So just you two?

8     **A.    Yeah.**

9     Q.    Okay.  Did you stay current on statements from

10  the CDC?

11     **A.    They were changing a lot at the time.  It was**

12  **a very uncertain time, and there was a lot of new**

13  **information being produced.  So it was hard to keep up**

14  **with, but we were doing the best we could to stay**

15  **abreast of what was being recommended at any given time.**

16     Q.    How did you monitor the CDC statements or

17  guidance?

18     **A.    BART was producing some documents with some**

19  **guidance, safety departments I believe.  And we were**

20  **looking at their website and just looking for pieces of**

21  **information that we could reference.**

22     Q.    When you say "we were looking at their

23  website," you meant CDC?

24     **A.    CDC.**

25     Q.    And then you said BART -- did you call it

41

1    safety department?

2        A.    **Safety department.**

3        Q.    Did they send you emails, or did they have a

4    website?  How did you --

5        A.    **There were mass distribution documents that**

6    **would go out, and they were hosted on our employee**

7    **intranet site.**

8        Q.    Okay.  How often would you review the BART

9    safety documents?

10       A.    **They would come out, I believe, weekly.  And I**

11   **would look at them regularly.**

12       Q.    And how often did you review the CDC

13   statements or guidelines?

14       A.    **Whenever I had a question or wanted to see**

15   **what was the latest information.**

16       Q.    Okay.  Have you ever heard of the Delta

17   variant of COVID-19?

18       A.    **Yes.**

19       Q.    Okay.  Also, had you ever heard of Omicron

20   variant?

21       A.    **Yes.**

22       Q.    Okay.  Were you aware that in July of 2021,

23   the CDC stated that, quote, "Delta infection resulted in

24   similarly high SARS COVID 2 viral loads in vaccinated

25   and unvaccinated people"?

                                                    42

1       A.    No.  I'm not -- I don't know that level of

2  detail.  I'm not a medical professional.

3       Q.   And maybe I should ask.  Do you have any

4  medical background?

5       A.    No.

6       Q.   Had you known that, regarding the statement

7  from the CDC, would that have in any way changed your

8  position on accommodation for any employees?

9       A.    I don't believe so.

10      Q.   Why not?

11      A.    The employee had the right to request the

12  exemption right under Title VII of the Civil Rights Act.

13  So once they request that, it's an accommodation

14  approach.  The Board of Directors had given us clear

15  guidance that this was being -- vaccination, mandatory

16  vaccination was the safest approach for employees at

17  BART and for members of the public who use our

18  infrastructure.

19          And so therefore, I wouldn't say that that

20  granular level of information would have been that

21  influential.  I think it was more about the fact that we

22  were told that "You must be vaccinated for safety of the

23  public and other employees."  And therefore, I don't see

24  how it would have maybe influenced to materially change

25  the outcome of cases.

43

1      Q.   You said the BART Board of Directors -- or do

2  you call them --

3      **A.   BART Board of Directors.**

4      Q.   BART Board of Directors.  Did the BART Board

5  of Directors communicate with you or any of your

6  superiors that vaccination -- there would be no

7  accommodation for those who are not vaccinated?

8      **A.   I don't know what they spoke to other people**

9  **about.  They never spoke to me.  Their document does**

10  **leave room for religious and medical accommodations and**

11  **exemptions.**

12      Q.   Did any other -- any BART employee who you

13  answer to tell you that there would be no

14  accommodations, religious accommodations for the

15  unvaccinated?

16      **A.   No one told me.**

17      Q.   So that was exclusively your decision and

18  Gizelle Huynh's?

19      **A.   Yeah.  Case-by-case decision of each**

20  **individual and their situation.**

21      Q.   Okay.  You testified that you were familiar

22  with the Omicron variant.  Were you aware that the CDC

23  said in March '22 that, regardless of vaccination status

24  or whether or not someone has symptoms, a person can

25  spread the virus to other people?  Were you aware of

                                                       44

1  that?

2      **A.    That happened after this was completed, and I**

3  **don't specifically know.  I don't recall that.**

4      Q.  Fair enough.

5      In making determinations for accommodation --

6  we're talking about religious accommodation, did BART

7  follow the Equal Employment Opportunity Commission

8  guidelines?

9      **A.    Yes.**

10     Q.  Okay.  To your knowledge, did the EEOC --

11  that's Equal Employment Opportunity Commission.  To your

12  knowledge, did the EEOC guidelines state that the

13  unvaccinated can never be accommodated?

14     **A.    They did not say that.**

15     Q.  In making determinations for accommodation --

16  for religious accommodation, did BART follow the CDC

17  guidelines?

18     **A.    Yes.**

19     Q.  And to your knowledge, did the CDC guidelines

20  state that the unvaccinated could never be accommodated?

21     **A.    No.**

22     Q.  Have you ever heard of the California

23  Department of Public Health?

24     **A.    Yes.**

25     Q.  Okay.  In making determinations for religious

45

1    accommodation, did BART follow the California Department
2    of Public Health's guidelines?
3          A.    I believe so.
4          Q.    Did either the EEOC or CDC guidelines require
5    elimination of direct threat or danger?
6          A.    Can you clarify that?
7          Q.    Did the EEOC or CDC guidelines state that an
8    accommodation must be such that it eliminates a direct
9    threat or danger of infection for COVID-19?
10         A.    I don't recall that specific statement.
11         Q.    Okay.  I see that, in providing responses
12   regarding religious accommodation to employees, a number
13   of times you mentioned the California Department of
14   Public Health.  Do you recall ever doing that in any of
15   your letters?
16         A.    It's possible.  I don't specifically remember
17   that, but it's very possible.
18         Q.    Do you think if I showed you some documents it
19   might refresh your recollection on that?
20         A.    Yes.
21         Q.    Okay.  Let's see if there are any.
22               Actually, take a look at some of your standard
23   templates.  I think -- Is there one that has -- starts
24   on page 1541?  I'm sorry.  Strike that.  How about one
25   that starts on page 1025?

                                                            46

1    **A.    Yes.**

2    Q.    Okay.  And what exhibit is that?

3    **A.    It is Exhibit 8.**

4    Q.    Exhibit 8, okay.

5          Do you see on page 1025 a highlighted section

6    highlighted in yellow?

7    **A.    Yes.**

8    Q.    Okay.  Does that refresh your recollection as

9    to the California Department of Public Health?

10   **A.    Yes.**

11   Q.    Can you read that into the record for us?

12   **A.    "According to the Federal Centers for Disease**

13   **Control and Prevention, CDC, as well as the California**

14   **Department of Public Health, CDPH, vaccination is the**

15   **most effective method to prevent transmission and limit**

16   **COVID-19 hospitalizations and death."**

17   Q.    Okay.  I'm going to show you another document.

18   I don't want to belabor this, but I want to make certain

19   we have just a clear record on it.

20         This will be next in line, whatever that is.

21         THE REPORTER:  9.

22         MR. SNIDER:  9.  All right.

23         (Whereupon, Exhibit 9 was marked for

24         identification.)

25         MS. NUETZEL:  Kevin, we've been going a little

                                                      47

1   over an hour.

2           MR. SNIDER:  Excellent.  Do you want a break?

3   How do you feel?

4           THE WITNESS:  Yeah.  That would be lovely,

5   taking a break.

6           MR. SNIDER:  Let's take a 15-minute break.

7           MS. NUETZEL:  That's perfect.  Thank you.

8           MR. SNIDER:  Okay.

9           (Recess taken from 11:00 to 11:16 a.m.)

10          MR. SNIDER:  Let's go ahead.

11          MS. NUETZEL:  We just marked Exhibit 9.

12          MR. SNIDER:  Q.  We just marked Exhibit 9.

13  And I'm looking at the bottom page number as 1168.  Do

14  you see that?

15      **A.   Yes.**

16      Q.   And what is the date of this letter?

17      **A.   January 5th, 2022.**

18      Q.   And who is it made out to?

19      **A.   Mary Engler-Contreras.**

20      Q.   And on the last -- It's a three-page document.

21  On page 1170, you affixed your signature in some manner

22  there?

23      **A.   Yes.**

24      Q.   Okay.  What's the subject of this letter?

25      **A.   No accommodation, COVID-19 Vaccine Mandate**

                                                        48

1    Religious Exemption Request.

2        Q.   All right.  And read the salutation and the

3    first paragraph, one sentence.

4        A.   "Dear Mary, We previously notified you that

5    your request for religious exemption to the COVID-19

6    Vaccine [verbatim] mandate...pursuant to Title VII of

7    the Civil Rights Act of 1964 was approved."

8        Q.   Okay.  Now, go to the next page, 1169.  Do you

9    see two columns?

10       A.   Yes.

11       Q.   And the left-hand column, what is the heading?

12       A.   Accommodation Considered.

13       Q.   And what does the right-hand column say?

14       A.   "Conclusion."

15       Q.   All right.  Do you see the highlighted --

16   There are three highlighted sections.  Do you see those?

17       A.   Yes.

18       Q.   Okay.  Can you read the first one?

19       A.   "As the California Department of Public

20   Health, CDPH, vaccination is the most effective method

21   to prevent transmission and limit COVID-19

22   hospitalizations and death."

23       Q.   Okay.  In the other two highlighted items, is

24   there any material difference in the -- in that -- in

25   your communication with Ms. Contreras?

                                                         49

1      A.    Can you clarify that?

2      Q.    Why don't you read those two.

3      A.    The second is, "the CDC and CDPH recommend

4  vaccination as the most effective method to prevent

5  transmission and limit COVID-19 hospitalizations and

6  death."

7            And the last one: "According to the CDC as

8  well as the CDPH, vaccination is the most effective

9  method to prevent transmission and limit COVID-19

10  hospitalizations and death."

11      Q.    Okay.  So as far as employee accommodation --

12  religious accommodation, as it relates to COVID-19

13  vaccination, BART relied in part on the California

14  Department of Public Health policies; is that correct?

15      A.    Yes.

16      Q.    Okay.  To your knowledge, did unvaccinated

17  employees pose any immediate danger?

18      A.    There was a lot of uncertainty.  This is years

19  ago when the pandemic was in full bloom; vaccinations

20  were just becoming available to the mass public; we were

21  all wearing masks everywhere; people were dying,

22  including people at BART.

23            So there was a lot of uncertainty about that.

24  And we had to go with what we were being advised of

25  based on the guidelines that we read and our

50

1  understanding of the situation.

2      Q.   So in your mind, who did the unvaccinated pose

3  a danger to?

4      A.   Other employees, members of the public.

5      Q.   Okay.  And in order to accommodate an

6  employee, what would it cost BART; do you have any idea?

7          MS. NUETZEL:  Objection.  Vague and ambiguous.

8          MR. SNIDER:  Q.  Would it cost BART any money

9  to accommodate a religious employee?

10     A.   You would have to ask me about a specific

11 accommodation.

12     Q.   Tell me -- Well, let's look at Mary's.  She

13 said -- Look at page 1168.  When I say "Mary," I mean

14 Mary Engler-Contreras.

15     A.   Okay.

16     Q.   Did I say "Exhibit 8," or is this 9?

17         MS. NUETZEL:  9.

18         THE WITNESS:  9.

19         MR. SNIDER:  Q.  I'm sorry.  Look at

20 Exhibit 9.  Do you see items 1 through 5 at the bottom

21 of the page?

22     A.   Yes.

23     Q.   Okay.  And I'll read the sentence for you,

24 the first sentence.  "In your request, you asked for the

25 following:"  The first item is what?

                                                      51

1      A.      Remote work.

2      Q.      So would that have cost BART anything?

3      A.      Yes.

4      Q.      What would it cost BART?

5      A.      Possibly a burden to allow somebody to work

6    remote without ever setting foot on BART property.

7    There was an administrative burden.

8      Q.      How much -- Roughly how much would that cost?

9      A.      I wouldn't equate it to money.

10     Q.      Okay.  Let's go to item 2, "Weekly COVID

11   Testing."  How much would that cost?

12     A.      I wouldn't know about any money amount, and I

13   don't think money would have factored.  It would have

14   been more administrative burden.

15     Q.      Is that your same answer for item 3, "Request

16   for an enclosed office space to work in/take breaks in"?

17     A.      On just the financial --

18     Q.      Yes, just the financial.

19     A.      Financial burden, I can't say, but

20   administrative burden.  There might have been some

21   financial, but that usually isn't a huge factor.

22     Q.      No. 4 she says -- requests to "Follow CDC

23   guidelines and wear gloves."  Would that cost -- What

24   would the cost be financially?

25     A.      You had to purchase the gloves.

                                                        52

```
 1        Q.    The cost of the gloves?
 2        A.    The cost of the gloves.
 3        Q.    Got it.  And then she said request No. 5,
 4   "Requesting an accommodation until March 15, 2022, so
 5   she can retire a year early."  Does that cost BART
 6   anything to accommodate that?
 7        A.    Administratively -- Well, would it cost us
 8   anything?  No.
 9        Q.    Okay.  All right.
10              For religious objectors to vaccination, would
11   BART have incurred any significant difficulty or expense
12   that you're aware of?  We've already talked about
13   expense.  But any significant difficulties?
14              MS. NUETZEL:  Objection.  Vague and ambiguous.
15              You can answer if you understand.
16              THE WITNESS:  I don't understand the question.
17              MR. SNIDER:  Q.  Okay.  So as you sit here,
18   you don't know if it would cause any significant
19   difficulty to accommodate religious employees?
20        A.    I don't think I said that, but -- Clarify,
21   please.
22        Q.    Do you know if there would be any difficulty
23   that BART would have in accommodating religious
24   employees for vaccination?
25        A.    That's --
```

```
 1              MS. NUETZEL:  Same objection.
 2              THE WITNESS:  That's so general.  I can't
 3    really answer it.  You're asking such a general
 4    question.  Yeah.
 5              MR. SNIDER:  Q.  Okay.  All right.  Do you
 6    know if BART required vaccine passports for public
 7    riders of trains?
 8        A.    I'm not aware of that.
 9        Q.    I understand religious objectors to the
10    vaccination had an option to retire if eligible.  Do you
11    know if that's true?
12        A.    Yes.
13        Q.    Okay.  Are you familiar with BART passes,
14    employee passes?
15        A.    Yes.
16        Q.    Okay.  If a BART employee chose to retire,
17    would their BART pass be revoked?
18        A.    I have no idea.
19        Q.    Were there any religious objectors to the
20    vaccination placed on administrative leave?
21              MS. NUETZEL:  At any time?
22              MR. SNIDER:  Q.  At any time, yes.
23        A.    Administratively, I believe they were, yeah.
24        Q.    Okay.  Is that generally or just employee
25    specific?
```

                                                        54

```
 1        A.    I don't recall exactly the reasoning.  It was
 2   more done through Labor Relations, who was helping with
 3   that piece.
 4        Q.    Do you know what administrative leave entails?
 5        A.    Yes.
 6        Q.    Okay.  What does it entail?
 7        A.    That is a nondisciplinary status; right?  That
 8   you're pending some kind of investigation outcome,
 9   whatever, and you are paid your full wage.  You are
10   usually required to report in on a daily basis and check
11   in, and you must be available during normal business
12   hours to be accessible for a phone call, meeting,
13   discussion, whatever.
14        Q.    Got it.  Okay.  If someone is on paid
15   administrative leave, are they typically not at a BART
16   venue?
17        A.    They are not permitted to come on-site unless
18   requested to do so.
19        Q.    Can they take a train to go to the grocery
20   store?
21        A.    My understanding is yes, they could do that.
22        Q.    And when an employee was put on paid
23   administrative leave, do you know whether or not their
24   transportation pass was still active?
25        A.    I -- I believe it is.
```

                                                              55

1    Q.   Was there a time lag between the BART

2  vaccination mandate and the requirements for compliance?

3    **A.   Compliance to what?**

4    Q.   To be vaccinated.

5    **A.   Say more about that.**

6    Q.   Okay.  Sure.

7         Let me represent to you that the Board issued

8  its mandate in September of 2021, vaccination mandate.

9    **A.   Okay.**

10   Q.   And was there a time period in which someone

11 would have to get vaccinated if they were not?

12   **A.   Yeah.  Everybody -- I believe the date was**

13 **December 13th, if I'm correct.  It was close to that**

14 **date.  And that was the date that it became effective.**

15 **And so you must be vaccinated on or before that date.**

16   Q.   So is it roughly two to three months between

17 the mandate being issued and the requirement to be

18 vaccinated?

19   **A.   I don't remember the exact time frame, but**

20 **there was a period of time because we needed -- you**

21 **know, obviously, people needed enough notice to do**

22 **something.**

23   Q.   During that time period --

24   **A.   Yeah.**

25   Q.   -- were employees -- unvaccinated employees on

                                                        56

 1  BART venues?

 2      **A.    Yes.**

 3      Q.    Okay.  Is it your understanding they posed a

 4  danger to themselves, other employees or the public

 5  during that period of time?

 6      **A.    There was so much uncertainty about COVID**

 7  **itself and transmission, we were -- you know, everybody**

 8  **was being told that vaccination was the most effective**

 9  **thing you could do.  And therefore, my belief would be**

10  **that you should get vaccinated, if you can.**

11      Q.    Do you have any idea why -- if you know.  I

12  don't want you to guess.  But if you have some firsthand

13  knowledge, do you know why BART allowed unvaccinated

14  employees to work on-site between the time when the

15  mandate was issued and the deadline to be vaccinated?

16      **A.    I had no part in that determination at all,**

17  **and it wasn't even anything that factored into my work.**

18  **It was just a procedural piece that was administered.**

19      Q.    But I think the question --

20            Can you read back the question?

21            (Whereupon, the reporter read the last

22            question.)

23            MR. SNIDER:  Q.  So again, did you have any

24  firsthand knowledge of why BART allowed unvaccinated

25  employees to work on-site?

                                                        57

```
1         A.    I really don't.

2         Q.    Okay.  Fair enough.

3               After the December deadline to be vaccinated,

4    were any BART -- unvaccinated BART employees asked to

5    return to work for a period of time?

6         A.    Say that again.  After --

7         Q.    After the vaccination deadline -- and I

8    believe you said it was December; is that right?

9         A.    I believe it's December 13th or 14th, yeah,

10   one of those days.

11        Q.    So after that deadline, were any unvaccinated

12   employees asked to come back to work on-site?

13        A.    I do not know if people were being asked to

14   come back to work.

15        Q.    Okay.  I'm going to -- Let's see.  I'm going

16   to show you a document, see if this refreshes your

17   recollection on that.

18               Is this Exhibit 10?

19               THE REPORTER:  Yes.

20               MR. SNIDER:  Okay.  We're moving through

21   these.

22               (Whereupon, Exhibit 10 was marked for

23               identification.)

24               MR. SNIDER:  Off the record for a second.

25               (Brief discussion off the record)
```

1          MR. SNIDER:  Let's go back on the record.

2      Q.    You have a document before you.  It has page

3  No. 1215.  Do you see that?

4      **A.    I do.**

5      Q.    And what is the date?

6      **A.    January 3rd, 2022.**

7      Q.    And who is it addressed to?

8      **A.    Adrian Gilbert.**

9      Q.    And what is the subject?

10     **A.    Closing Interactive/Options, COVID-19 Vaccine**

11  **Mandate Religious Exemption Request.**

12     Q.    Take a look at the -- It's a three-page

13  document.  Take a look at page marked 1217, page 3.

14     **A.    Yes.**

15     Q.    And did you affix your signature in some

16  fashion?

17     **A.    Yes.**

18     Q.    All right.  Look at the second page of the

19  document, page 12- -- marked as page 1216.  Can you read

20  the highlighted sentence?

21     **A.    "In the meantime, you are expected to return**

22  **to work during the seven-day decision period."**

23     Q.    Does that refresh your recollection?  Were

24  some employees asked to return to work during the --

25  before they were vaccinated?

                                                        59

1    **A.    Yes.**

2    Q.    Do you have any recollection if that was a

3    general condition or was -- or not?

4    **A.    What do you mean by "condition"?**

5    Q.    To return to work.

6    **A.    This was -- Can you clarify?  I'm still not**

7    **really understanding what you're trying to ask.**

8    Q.    Was the return to work before vaccination and

9    while a decision was pending, were employees typically

10   asked to go back on-site to work?

11   **A.    Yeah.  Now I do recall from this statement.**

12   **Employees were advised to go back to work during that**

13   **seven-day period.**

14   Q.    Okay.  Got it.

15          For those employees who regrettably were fired

16   or forced to retire, were they -- do you know if they

17   were banned from riding BART trains?

18   **A.    I have no knowledge of that.**

19   Q.    Okay.  Do you know whether or not BART

20   required contract workers to be vaccinated?

21   **A.    My understanding is yes.**

22   Q.    Okay.  And did BART allow any unvaccinated

23   contract workers on-site?

24   **A.    I do not believe so.**

25   Q.    You had mentioned that there were some medical

                                                        60

1  accommodations granted.  Do you recall that testimony?

2      **A.    Yes.**

3      Q.    And do you know of a -- Did you review those

4  requests?

5      **A.    Yes.**

6      Q.    And did you approve those accommodations?

7      **A.    Yes.**

8      Q.    Do you recall a gentleman named Lieutenant

9  Aaron Ledford?

10     **A.    You know, I don't remember that specific name,**

11  **to be honest.**

12     Q.    Okay.  That's fine.

13         (Reporter interrupts for a clarification.)

14         MR. SNIDER:  Q.  Mr. Maplestone, often when a

15  deposition is taken, some attorneys go through a

16  person's educational background.  I usually don't do

17  that; I find it a waste of time.  But I do have a few

18  questions about your education that I think may be

19  relevant to this case.  So if you will bear with me, I'm

20  going to just ask them.

21         Since graduating from high school -- Let me

22  ask, did you graduate from high school?

23     **A.    I did.**

24     Q.    Okay.  Have any college?

25     **A.    Yes.**

                                                    61

1      Q.   Graduate school?

2      **A.   No.**

3      Q.   Okay.  Since graduating from high school, have

4   you taken any courses in religious studies, theology or

5   spirituality?

6      **A.   No.**

7      Q.   Have you done any reading or other formal

8   studies in religion or theology to be able to evaluate

9   the religious beliefs of employees?

10     **A.   No.**

11     Q.   Okay.  Have you done any informal studies in

12   religion or theology to be able to evaluate the

13   religious beliefs of employees?

14     **A.   No.**

15     Q.   Did BART give you any training in religion or

16   theology in order to be able to determine if an

17   employee's belief was sincere?

18     **A.   That is not necessary to make that assessment.**

19     Q.   Okay.  Let me ask it -- I'm going to try

20   to phrase it as a yes-or-no question.

21     **A.   Okay.**

22     Q.   And I'll give you a chance to clarify as

23   needed.

24          Did BART give you any training in religion or

25   theology in order to be able to determine if an

1  employee's belief is sincere?

2      **A.  No.**

3      Q.  Okay.  Have you done any formal or informal

4  religious -- formal -- Let me say that again.  Strike

5  that.

6          Have you done any formal or informal studies

7  in religion or theology to be able to evaluate whether

8  an employee adheres to the religious teachings of his or

9  her religion?

10      **A.  No.**

11      Q.  Do you review any articles from religious

12  scholars to help you evaluate the sincerity of an

13  employee's religious beliefs?

14      **A.  No.**

15      Q.  Okay.  Did you review any religious texts to

16  help you evaluate the sincerity of an employee's

17  religious beliefs?

18      **A.  Only what they submitted.**

19      Q.  Okay.  Did you review any statements from

20  religious leaders to help you evaluate the sincerity?

21      **A.  What was submitted by employees.**

22      Q.  Okay.  How about websites, did you go and

23  review any websites on religion or spirituality or

24  theology if you had a question in your own mind about an

25  employee's request for religious exemption?

                 63

1      **A.     Clarify that.**

2      Q.    Did you ever visit any websites about religion

3   or theology?

4             MS. NUETZEL:  With respect to rendering a

5   decision?

6             MR. SNIDER:  Q.  Yes.

7      **A.     Not really for making the decision, no.**

8      Q.    During those months when you were evaluating

9   both exemptions and accommodations, did you have

10  occasion to review religious websites?

11     **A.     Define a religious website.**

12     Q.    Having to do with spirituality, having to do

13  with the study or practice of religion.

14     **A.     If the employee referenced a website, we might**

15  **look at it.**

16     Q.    Okay.  Fair enough.  Do you recall any

17  employees referencing websites?

18     **A.     Yes.**

19     Q.    Okay.  Do you recall any offhand?

20     **A.     Not specifically, but they referenced either**

21  **their own belief website or general websites.**

22     Q.    Okay.  Was there any criteria used to

23  determine the sincerity of an employee's religious

24  beliefs?

25     **A.     We generally do not question the sincerity of**

1    a belief.  The belief is -- The presumption is their

2    belief is sincere.

3         Q.   Were there ever occasions where you decided

4    that an employee's belief was not sincere?

5         A.   I would say there was sometimes evidence of

6    behaviors inconsistent with the stated belief, but I

7    would never say it was not a sincere belief.

8         Q.   Okay.  Are you able to, as you sit here today,

9    define sincerity?

10        A.   It is my -- It would be a deeply held belief

11   or set of beliefs personal to that individual that maybe

12   influences their world view.

13        Q.   Okay.  I think I asked you this, but I had a

14   senior moment.  I can't remember what you responded.

15             So I'll anticipate the asked and answered, but

16   was there any criteria used to determine the sincerity

17   of an employee's religious beliefs?

18             MS. NUETZEL:  It was asked and answered.

19             MR. SNIDER:  Yeah, but I can't remember the

20   answer.

21             THE WITNESS:  I never questioned the

22   sincerity.  I never questioned that.

23             MR. SNIDER:  Q.  Was a criteria used?

24        A.   Yes.

25        Q.   Okay.  What was that criteria?

                                                          65

1       A.    It was the EEOC guidance document.

2       Q.    Okay.  Do you recall what that -- what the

3   EEOC guidance document said relative to sincerity?

4       A.    It gave four factors to consider.

5       Q.    What were those?

6       A.    It was the timing of the request; whether the

7   requester exhibited behaviors either inconsistent or --

8   yeah, inconsistent with their stated belief system;

9   whether the request was for secular or nonreligious

10  reasons.

11      Q.    Is your understanding of those four criteria

12  to be objective or subjective?

13      A.    You can apply, sort of, an objective approach

14  to looking at it, but they are subjective things.

15      Q.    Okay.  When you say "they are subjective

16  things," you mean the beliefs are subjective or the

17  criteria can be subjective?

18      A.    The criteria is objective, but the beliefs

19  themselves are subjective.

20      Q.    Got it.  Thank you.  Was there any objective

21  criteria used to determine whether a stated religious

22  belief by an employee was factually correct?

23      A.    Can you clarify that?

24      Q.    Sure.  If an employee said that they were of a

25  certain religion and that religion was pro life, and

1    your understanding was religious leaders of that

2    religion don't hold that view, would you take that into

3    consideration?

4         A.   The employee can have a belief that is maybe

5    not compatible with the religion as a whole, but if that

6    was their interpretation and their understanding or

7    their specific sincere belief about it, then it would be

8    considered their belief.

9         Q.   Right.  Okay.  Was there any occasion that you

10   reviewed a request for religious exemption in which the

11   belief was incomprehensible to you?

12        A.   Yeah.  There might have been a few that

13   didn't -- that was hard to follow.

14        Q.   What would you do with those individuals?

15        A.   We gave them an opportunity to speak with us

16   and provide additional clarification.

17        Q.   And would they -- What kind of questions would

18   you ask them?

19        A.   The questions from one of the exhibits you had

20   seen with the interview document.

21        Q.   You would stick with those questions?

22        A.   Stick with those questions.

23        Q.   Okay.  Got it.  Did BART ever review whether a

24   particular religious objector to vaccination had a

25   comprehensive belief system?

1          MS. NUETZEL:  Objection.  Vague and ambiguous.

2          But you can answer if you understand.

3          THE WITNESS:  Yeah.  Can you clarify further,

4    please?

5          MR. SNIDER:  Q.  Do you know if any of the

6    BART documentation for the forms or documents that we've

7    provided, did any of those speak to a comprehensive

8    belief system?

9          MS. NUETZEL:  Same objection.

10         THE WITNESS:  I'm still not quite clear.

11         MR. SNIDER:  Q.  I'm asking if the document

12   itself spoke to -- mentioned a comprehensive belief

13   set -- a belief system?

14    **A.    Which document?**

15         Q.    Any of those documents.  Did any of those --

16    **A.    It's so general, I can't say 100 percent.**

17         Q.    You don't know whether or not -- You don't

18   know whether or not the documents that you drafted

19   mentioned a comprehensive belief system?

20         MS. NUETZEL:  Same objection.

21         THE WITNESS:  I don't really know -- If you

22   can tell me which document you would like me to look at,

23   I can do that.

24         MR. SNIDER:  Q.  You don't remember typing the

25   word "comprehensive"?

                                                        68

1      **A.    This was years ago --**

2      Q.    Okay.

3      **A.    -- so I generally don't remember that exact**

4  **word coming out of my keyboard.**

5      Q.    In evaluating the religious beliefs, would

6  BART look for signs of consistency between faith and

7  conduct?

8      **A.    What do you mean by "conduct"?**

9      Q.    What you do.  Faith.  What you believe.

10     **A.    In a workplace setting?**

11     Q.    In anything at all.

12     MS. NUETZEL:  Overbroad.

13     You can answer.

14     THE WITNESS:  We looked at the factors that

15  EEOC guidelines presented, and that was -- those were

16  the -- One of them is demonstrating behaviors

17  inconsistent with your stated belief.

18     MR. SNIDER:  Q.  Okay.  So when I said

19  "conduct," what I -- probably a synonym for that would

20  be behaviors.  So would BART look for signs of

21  consistency between faith and behaviors?

22     **A.    We would -- we would allow the employee to**

23  **draw a nexus between their belief and their request.**

24  **And if they, in doing so, also shared information that**

25  **was inconsistent with what they were requesting or their**

69

1   **belief, that could be considered.**

2       Q.   I'm going to show you a document from an

3   employee named Rosalind Parker.

4            And we will make that Exhibit --

5            THE REPORTER:  11.

6            MS. NUETZEL:  Thank you.

7            (Whereupon, Exhibit 11 was marked for

8            identification.)

9            MR. SNIDER:  Let me see if I can find my copy.

10      Q.   I am showing you a document that has page

11  numbers 1425 to 1433.  Do you see that?

12      **A.   I do.**

13      Q.   All right.  Why don't you take a second to

14  read -- Well, let me ask, do you remember Rosalind

15  Parker's request for religious exemption?

16      **A.   I recognize her name.**

17      Q.   Okay.  Why don't you take a moment to read her

18  request.

19           MS. NUETZEL:  Do you want him to read all of

20  the attachments?  It may take some time since there's a

21  number of pages.

22           MR. SNIDER:  Q.  I'm getting close to being

23  done.  So go ahead and take your time to look at those.

24      **A.   Okay.**

25      Q.   All right.  Thank you for taking the time to

                                                          70

1  do that.  Take a look at page 1427.

2      **A.   Okay.**

3      Q.   That's a letter -- I'm going to -- It's

4  from -- Tell me who this is from.

5      **A.   It's from Rosalind E. Parker.**

6      Q.   And she begins her letter with, "Hello, Rod.

7  I believe in the Lord Jesus Christ."  Are you seeing

8  that?

9      **A.   Yes.**

10      Q.   Take a look at the paragraph that has a number

11  3 on it.

12      **A.   (Witness nods head.)**

13      Q.   Okay.  In your review of that, what is your --

14  what is your understanding of her beliefs generally

15  based on paragraph 3?

16      **A.   She was asserting that her body is a temple,**

17  **and therefore, she would not put things in her body that**

18  **she does not believe are right.**

19      Q.   Uh-huh.  Okay.  And then take a look at the

20  next paragraph.  It's numbered 4.  What is your

21  understanding of her beliefs regarding that?

22      **A.   She would be asserting that she believes that**

23  **the vaccine included aborted fetal cells in some way,**

24  **and so that would violate her belief.**

25      Q.   Okay.  All right.  Now, look at page 1431.

1    And there is a box with a heading Case Evaluation.  Are
2    you tracking with me?
3        **A.   Yes.**
4        Q.   And there is some highlighted language at
5    No. 2.  Can you read that to me?
6        **A.   "Are there any inconsistencies with the**
7    **employee's stated belief or whether an employee has**
8    **acted in an inconsistent way with a stated belief?"**
9        Q.   What box is checked?
10       **A.   "Yes."**
11       Q.   Okay.  And then read the rest of that -- of
12   that section.
13       **A.   "If yes, please explain:"**
14            **And it says, "Prior to her request for a**
15   **religious exemption, employee mentioned: 'I am happy to**
16   **comply with the vaccine mandate upon proof of claim.'**
17   **This shows her willingness to get the vaccine, which is**
18   **inconsistent with what she states in her religious**
19   **exemption request."**
20       Q.   So what did you understand to be "proof of
21   claim"?
22       **A.   What do you mean by "proof of claim"?**
23       Q.   That's what she -- That's what I'm asking.
24   She put that language in there.
25       **A.   I don't know exactly what she meant by "proof**

72

1    of claim."

2        Q.    Okay.

3        **A.    I focused -- Well, yeah.**

4        Q.    What did you focus on?

5        **A.    Her statement being "happy to comply with the**

6    **vaccine mandate."**

7        Q.    Predicated on proof of claim; right?  But

8    you're not certain what that is; is that right?  Or am I

9    misstating what you said?

10       **A.    I don't recall now what her meaning of "proof**

11   **of claim" means.**

12       Q.    How is her willingness to get the vaccine

13   inconsistent with her stated religious beliefs?

14       **A.    If her -- if her immutable belief is that she**

15   **can't get the vaccine because it would violate her**

16   **temple, and then she's at the same time saying "I'm**

17   **happy to comply and get the vaccine," that is an**

18   **inconsistent statement.**

19       Q.    What if she meant if it's proven that the

20   vaccine doesn't cause harm to her body?

21            MS. NUETZEL:  Objection.  Calls for

22   speculation.

23            THE WITNESS:  I wouldn't know that.

24            MR. SNIDER:  Q.  So you wouldn't know?

25       **A.    I wouldn't know that, what she meant by that.**

                                                            73

1    She didn't say that.

2        Q.    So what were the -- Do you know if anyone

3    probed any further into that?

4        A.    We did.  It looks -- appears we did interview

5    her.

6        Q.    Okay.  Do you have a recollection of the

7    interview?

8        A.    I do not.

9        Q.    Take a look at -- Oh, okay.  Take a look at

10   page 1432.  Do you see item 5?

11       A.    Yes.

12       Q.    Can you read that box for me?

13       A.    "Is there a reason to request an interview of

14   the employee to discuss the request further?"

15            Checked box "Yes."

16            "If yes, please explain:"

17            "Inconsistency with what was written in the

18   religious exemption request and her two letters with

19   secular reasoning.  Would like to have the opportunity

20   to have the employee express in their own words their

21   sincerely held religious belief, how it prevents them

22   from getting the COVID-19 vaccine, and inconsistency."

23       Q.    Okay.  Tell me about the secular reasoning.

24   You just read her full request for exemption.

25       A.    If you look at page 1428, it's a Faith

                                                        74

1    **Fellowship Foursquare Church document, general document.**
2    **It mentions significantly speaking about the**
3    **Constitution, the Declaration of Independence, quotes**
4    **from presidents, things that are not -- they are more**
5    **in -- they are not necessarily religious in their --**
6    **They might be referencing something about religion, but**
7    **they're more secular.**
8        Q.   So is it your testimony those documents aren't
9    religious enough?
10            MS. NUETZEL:  Objection.  Misstates the
11    testimony.
12            THE WITNESS:  Yeah.  I wouldn't say "enough."
13    I would say there is a lot of information in this
14    document that is not religious in nature; it's more
15    nonreligious.
16            MR. SNIDER:  Q.  So I'm looking at page -- Are
17    you looking at page 1429?
18       **A.   Yes.**
19        Q.   Okay.  Do you see the document says "Preamble
20    to the Constitution"?
21       **A.   Yes.**
22        Q.   And do you see the third line, the last
23    phrase, "and secure the blessings of liberty to
24    ourselves and our posterity"?
25       **A.   Yes.**

                                                          75

1    Q.   Is it your understanding that that would be
2    religious or secular?
3        **A.   Well, my --**
4            MS. NUETZEL:  Objection.  Vague and ambiguous.
5            But --
6            MR. SNIDER:  Q.  I'm asking your
7    understanding.
8        **A.   My understanding is that, if you're**
9    **referencing the Constitution, that is more secular.**
10   Q.   I'm referring to that phrase.
11       **A.   I would just say, generally speaking, if you**
12   **are referencing the Constitution of the United States,**
13   **that is not a religious document, and so that would not**
14   **be a religious factor.**
15   Q.   Okay.  Declaration -- Look at the Declaration
16   of Independence.  Do you see that section?
17       **A.   Yes.**
18   Q.   And again, it says, "We hold these truths to
19   be self-evident, that all men are created equal, that
20   they are endowed by their creator with certain
21   unalienable rights."
22           Again, do you see that as -- that statement in
23   the Declaration of Independence primarily secular or
24   religious?
25       **A.   It's not a religious document.**

76

1      Q.   How about the statement itself?

2      **A.   I see that as more of a -- not necessarily a**

3 **religious statement.**

4      Q.   Okay.  How about the quote from John Adams

5 below that, "Our Constitution was made only for a moral

6 and religious people.  It is wholly inadequate to the

7 government of any other."  Same question:  Secular --

8 primarily secular or religious?

9      **A.   That one is harder to tell.  I don't really --**

10 **I'm not as familiar with that quote.**

11      Q.   And then the statement from Thomas Jefferson:

12 "God, who gave us life, gave us liberty.  Can the

13 liberties of a nation be secure when we have removed a

14 conviction that these liberties are the gift of God?

15 Indeed, I tremble for my country when I reflect that God

16 is just, that his justice cannot sleep forever."

17         Again, primarily -- In your view, primarily

18 religious or secular?

19      **A.   If he's talking about justice and things like**

20 **that, it seems more secular to me.**

21      Q.   Okay.  All right.  So is it fair enough -- and

22 there's one other quote, but I won't go through it from

23 Benjamin Franklin because it's a bit longer.  But you've

24 read it.

25         So is it your testimony that these -- these

1  statements from the Constitution, the Declaration of
2  Independence and these -- I'm going to call them three
3  prominent founders -- is that a fair enough statement?
4  That those are primarily in your view regarded as
5  secular rather than religious?
6      **A.    I would say yes.**
7      Q.   Okay.  Thank you.
8           And my last exhibit -- We're getting down to
9  the end.
10     **A.    I'm so sorry.  Can I just run to the rest**
11  **room?  I'll be right back.**
12          MR. SNIDER:  Off the record.
13          (Recess taken from 12:06 to 12:11 p.m.)
14          MR. SNIDER:  Let's go back on the record.
15  Almost done.
16          (Whereupon, Exhibit 12 was marked for
17          identification.)
18          MR. SNIDER:  Q.  I gave you a document.
19          What is this labeled as?
20          THE REPORTER:  12.
21          MR. SNIDER:  12.  Okay.  All right.
22     Q.   This document starts on page 1536 and runs to
23  page 1540.
24     **A.    Okay.**
25     Q.   Take a look at -- This is the religious

                                                        78

```
 1   exemption request for Szu-Cheng Sun --
 2           And you've got the spelling, Madam Court
 3   Reporter.
 4           Do you remember running across this request
 5   for religious exemption?
 6       A.   Not specifically, but yes.
 7       Q.   I won't make you read the whole thing.  Just
 8   read the -- Can you just read the boxes starting at --
 9   there's 1, 2, 3 -- through 6.  Can you just look at
10   those?
11       A.   Okay.  Number 1, "My religion" --
12       Q.   I'm sorry.  You don't have --
13       A.   Just answers?  Okay.
14       Q.   No.  I'm sorry.  You could just read it to
15   yourself, just to refresh your recollection.
16       A.   Oh, okay.
17       Q.   No need for the --
18       A.   Okay.
19       Q.   Okay.  What was Mr. Sun's religion?
20       A.   Ruism.
21       Q.   Ruism.  Do you know what that is?
22       A.   I'm not familiar with that.
23       Q.   Okay.  And take a look at page 1539.  Look at
24   the very bottom left-hand corner.  Do you see the
25   highlighted section?
```

79

1     **A.   (Witness nods head.)**

2     Q.   Was Mr. Sun's request for religious exemption

3 approved or denied?

4     **A.   Denied.**

5     Q.   Okay.  Then, what were the reasons given?

6     **A.   "The reasons cited in support of the request**

7 **were primarily for secular/nonreligious reasons.  A**

8 **clear nexus between the request and the stated religious**

9 **beliefs was not established."**

10    Q.   Having reviewed this, can you explain to me

11 why his reasoning was primarily secular?

12    **A.   If you look at page 1540 --**

13    Q.   Okay.

14    **A.   -- item No. 2, and that was in response to a**

15 **question, "Can you tell us in your own words why taking**

16 **the COVID-19 vaccine is contrary to your religious**

17 **belief?"**

18       **And his answers were something -- You know,**

19 **the notes say, "We are trying to" -- "trying not to do**

20 **anything harmful.  No long-term safety study on**

21 **vaccine."  That is not a religious reason.**

22       **"Nobody knows what will happen physically."**

23 **That is not a religious reason.**

24       **Those are questions about the vaccine and the**

25 **medical aspects of it or how it affects the body.**

1     Q.   That's how it will affect the body; is that

2   right?  Is that what I heard you say?

3     **A.   He is asserting that he doesn't know how.**

4     Q.   He doesn't know --

5     **A.   This person -- I don't know if -- I can't**

6   **remember, but this person was referencing beliefs about**

7   **how it will affect their body and there are long-term**

8   **studies.  So that's a secular reason to not want the**

9   **vaccine.**

10     Q.   Okay.  And then a second reason was -- you

11  said was, a clear nexus between the request and the

12  stated religious beliefs was not established.  Can you

13  explain that?  Explain it based on his responses?

14     **A.   Yeah.  And remember, it's been two years since**

15  **I looked at this.**

16     Q.   Yes, of course.

17     **A.   Yeah.  So he asserts that their body -- "our**

18  **bodies, every hair and bit of skin, it's all received**

19  **from our parent, and must not injure or wound them."**

20         **And he's talking about Ruism and about not**

21  **getting tattoos or piercings or anything like that.  It**

22  **never makes any connection.  There's no connection with**

23  **how is the vaccine a violation of your body.**

24     Q.   Okay.

25     **A.   Like, he says his body is to be protected, but**

81

1   he doesn't say how the vaccine violates that belief.

2   He just says these things about -- concern about the

3   long-term effects and those things.

4           So those are the primary reasons asserted for

5   not getting the vaccine.  So it wasn't a nexus created

6   for me.

7           MR. SNIDER:  Okay.  Off the record.

8           (Brief discussion off the record)

9           MR. SNIDER:  All right.  Back on the record.

10      Q.   Okay.  Did the evaluation process contain a

11  system for individualized exemptions?

12      A.   Say more about that.

13          MS. NUETZEL:  Objection.  Vague and ambiguous.

14          MR. SNIDER:  Q.  The evaluation process had a

15  number of standardized forms, and you had letter

16  templates; right?

17      A.   (Witness nods head.)

18      Q.   Okay.  Were those forms and the letter

19  templates and the questions that you had, were those the

20  mechanism for making individual determinations for

21  people?

22      A.   They just -- They provided the structure for

23  that process.

24      Q.   I'm sorry.  They?

25      A.   The letters, the form templates.

82

```
 1        Q.    Okay.  Understood.  Okay.
 2              And so this structure, this process,
 3   evaluation process, so that was what was used to get an
 4   individualized exemption -- to determine someone would
 5   get an individualized exemption; is that right?
 6        A.    It was the process -- These were the tools we
 7   used to evaluate, but they were given an opportunity to
 8   make whatever statement, assertions they wanted, and we
 9   would review that.
10        Q.    And based on their responses, employees'
11   responses, you would either grant or deny individualized
12   exemptions; is that right?
13        A.    Yes, based on everything provided.
14        Q.    And you had discretion to do that; right?
15        A.    Yes.
16        Q.    And is that the same for the religious
17   accommodation; you had discretion on that?
18        A.    Yes.
19              MR. SNIDER:  Does counsel have any questions
20   before we --
21              MR. DAWOOD:  (Shakes head.)
22              MS. NUETZEL:  No.
23              MR. SNIDER:  All right.  We are done.
24              Thank you very much for coming and your time.
25              THE WITNESS:  I appreciate it.
```

                                                        83

1      MR. SNIDER:  And good luck to you.

2      THE WITNESS:  Thank you.

3      THE REPORTER:  Would all counsel like to order

4  a transcript?  Would you like a transcript?

5      MS. NUETZEL:  Yes.

6      MR. SNIDER:  Expedited, please.

7      (Whereupon, the deposition was concluded at

8  12:20 p.m.)

9                    ---o0o---

10

11

12

13

14

15  _____

16               RODNEY W. MAPLESTONE

17

18

19

20                    ---o0o---

21

22

23

24

25

                                          84

1   STATE OF CALIFORNIA      )  SS.

2

3          I do hereby certify that the witness in the

4   foregoing deposition was by me duly sworn to testify to

5   the truth, the whole truth, and nothing but the truth in

6   the within-entitled cause; that said deposition was

7   taken at the time and place therein stated; that the

8   testimony of the said witness was reported by me, a

9   certified shorthand reporter and disinterested person,

10  and was under my supervision thereafter transcribed into

11  typewriting, and when so transcribed was carefully read

12  to or by the said witness, and, being in every desire,

13  was thereafter by the said witness duly subscribed; that

14  if unsigned by the witness, signature has been waived in

15  accordance with stipulation between counsel for the

16  respective parties.

17         And I further certify that I am not of counsel

18  or attorney for either or any of the parties to said

19  deposition nor in any way interested in the outcome of

20  the cause named in said caption.

21         IN WITNESS WHEREOF, I have hereunto set my

22  hand this 27th day of September, 2023.

23

24  _____

25         CLARE MACY, Certified Shorthand Reporter

                                                    85



**EMPLOYEE REQUEST FOR RELIGIOUS EXEMPTION (COVID-19 Vaccination)**

| | Date of Request | |
|---|---|---|
| Employee Name | | Employee ID Number |
| Job Title | | Email Address |
| Union (or Non-Rep) | | Supervisor/Manager |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

## EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| |
|---|
| 1. My religion or belief system is (enter description): |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): |

EXHIBIT
1
MAPLESTONE 9 1/22/23
FORM AO 100-051-0060

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

BART 0000013


4.  If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

5.  If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

6.  Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____

**Employee Signature**

_____

**Date**

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____



**B A R T**

**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**
SUPPLEMENTAL DOCUMENTATION

| Employee Name | Employee ID Number |
|---|---|
| | |

In response to your request for a religious exemption to the COVID-19 vaccine, we are requesting additional information needed to process your request.

| 1. | If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. |
|---|---|

**EXHIBIT**

**2**

**MAPLESTONE** 9/22/22

FBI/AD 800-631-6989

| 2. | Please also provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. |
|---|---|

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____     _____
Employee Signature                                        Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

**BART 0000012**



## EMPLOYEE REQUEST FOR RELIGIOUS EXEMPTION (COVID-19 Vaccination)

| | Date of Request | | |
|---|---|---|---|
| Employee Name | | Employee ID Number | |
| Job Title | | Email Address | |
| Union (or Non-Rep) | | Supervisor/Manager | |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| |
|---|
| 1. My religion or belief system is (enter description): |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): |

EXHIBIT
3
MAPLESTONE
9/27/23
PENGAD 800-631-6989

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| 4. | If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed). |
|----|---|

| 5. | If requested, I can provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. ☐YES ☐NO |
|----|---|

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____          _____
Employee Signature                                    Date

| Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know. |
|---|

FOR LEAVE MANAGEMENT USE ONLY

| Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO |
|---|
| Date Documentation Received: ___/___/_____ |



| Human Resources Department<br>Standard Operating Procedures | LEAVE MANAGEMENT |
| --- | --- |
| | RELIGIOUS EXEMPTION TO VACCINE MANDATE REQUESTS |
| | 10/15/21 |
| | 10/27/21 |

**This SOP identifies the steps for employees to request a vaccine mandate exemption either for medical reasons or religious exemption. Please note that employee requests for the COVID-19 vaccine mandate medical accommodation Requests will be evaluated using the current Reasonable Accommodation request practices.**

| Employee | **Submit request for religious exemption to Leave Management** |
| --- | --- |
| | <ul><li>Written request sent to HRDP@bart.gov</li><li>Verbal request to Rod Maplestone, Manager of Leave Programs, by phone at 510-464-6198</li><li>By verbal report to Manager/Supervisor who will then direct employee to contact Leave Mangement by phone or email</li><li>By referral from HR COVID-19 hotline</li><li>Completed request form obtained on EmployeeConnect sent to HRDP@bart.gov</li></ul> |
| Leave Management | **Confirmation of Request** |
| | <ul><li>Submit **Initial Email Acknowledgement** to employee request and to send if not provided in initial request:<ul><li><u>**Religious Exemption Request Form (V2)**</u> for completion and return to HRDP@bart.gov<ul><li>*If V1 form was submitted by employee previously, they will also need to complete Supplemental Request form*</li></ul></li><li>Inform employee of up to <u>**7-businessday review period**</u></li></ul></li><li>Review request for completeness and request clarification and/or additional information with due date for response (7 days)</li><li>If employee received V1 of the Religious Exemption Request Form, send **Supplemental Religious Exemption Request Form** and request for additional documentation with due date for reaponse (1 week)<ul><li>If employee requests additional time, grant if reasonable (1-2 weeks)</li></ul></li></ul> |
| Employee | **Submit Religious Exemption form and documentation to Leave Management** |
| | <ul><li>Completed form and any supportive documentation must be submitted to Leave Management by email to request sent to HRDP@bart.gov</li></ul> |

EXHIBIT
4
MAPLESTONE 9/21/23
PRBAD 800-631-6989

**Please contact Rod Maplestone/Manager of Leave Programs at (510) 464-6198 for changes to this Job Aid.**

**BART 0000235**

| | |
|---|---|
| **Leave Management Analyst**<br><br>**(with active participation by employee)** | **Review complete request and all supporting documentatin provided**<br><br>• Confirm that Request Form is complete and that additional documentation is valid (e.g., should be PDF with letterhead and signature if from Religious Institution)<br>    ○ If necessary, request addional documentation and/or clarification with due date (7 days)<br><br>• Confer with the employee, if needed, to better understand the basis of their sincerely held believe and how it prevents them from receiving a vaccine and or to understand any accommodation request they may be making<br><br>• Review each form using the **Religious Exemption Request Review Form**<br>    ○ Review for the following four factors the EEOC has identified as an objective basis for questioning the religious nature or sincerity of a belief or practice:<br><br>    1. **CONSISTENCY: Whether the employee has acted in a way that is inconsistent with the claimed belief**<br><br>    2. **NON-RELIGIOUS REASONS: Whether the employee is seeking a benefit or an exception that is likely to be sought for nonreligious reasons**<br><br>    3. **TIMING: Whether the timing of the request is questionable**<br><br>    4. **SECULAR REASONS: Whether the employer has other reasons to believe that the employee is seeking the benefit for secular reasons**<br><br>• Complete the **Religious Exemption Request Review Form** indicating a determination regarding the religious exemption request and further evaluate whether the request can be reasonably accommodated for the following criteria:<br><br>    1. **Employee remains able to perform the essential functions of the job**<br><br>    2. **Request does not pose a direct threat to the health and/or safety of others in the workplace**<br><br>    3. **The request does not create undue hardship for the District** |
| **Leave Management** | **Communicate determination with employee**<br><br>• If the request is granted and an accommodation has been agreed to by employee, Union Leadership, and Leave Management):<br>    ○ Send the employee a **Religious Exemption Agreement Document** outlining the terms of the agreement, clearly identifying the responsibilities of all parties<br>    ○ Obtain both employee and Union signatures on the document<br>    ○ Share copies of all documents with signing parties and store in separate record file (not employee file) |

**Please contact Rod Maplestone/Manager of Leave Programs at (510) 464-6198 for changes to this Job Aid.**

| | |
|---|---|
| | • Continue to monitor the accommodation and engage with the employee as necessary<br><br>**If the request is denied**<br><br>• Send a **Religious Exemption Denial Letter** explaining that the request is denied due to one of the following reasons:<br>  ○ Religious exemption is not granted<br>  ○ No accommodation could be identified<br><br>• Notify the employee of their option to appeal to the Office of Civil Rights for further review<br><br>• Letter should provide the following options to the employee:<br>  ○ Request an extension to the 12/13/21 deadline to obtain the vaccine and be fully vaccinated<br>  ○ Review options for retirement (if eligible)<br>  ○ Resign from employment with the District<br><br>• Inform employee that if no action is taken and they do not comply with the vaccine mandate, they will be subject to disciplinary action up to and including termination of employment |
| **RESOURCES** | • **Intial Email Acknowledgement TEMPLATE**<br>• **Religious Exemption Agreement Document TEMPLATE**<br>• **Religious Exemption Denial Letter TEMPLATE**<br>• <u>**Religious Exemption Request Form (V1)**</u><br>• <u>**Religious Exemption Request Form (V2)**</u><br>• **Religious Exemption Request Review Form**<br>• **Supplemental Religious Exemption Request Form** |

Reviewed & Approved By:


_____          _____
[MANAGER/SUPERVISOR NAME]                 *Date*
[MANAGER TITLE]


_____          _____
[MANAGER/SUPERVISOR NAME]                 *Date*
[MANAGER TITLE]


_____          _____
*Veronica Thomas*                         *Date*
*HR Director*


**Please contact Rod Maplestone/Manager of Leave Programs at (510) 464-6198 for changes to this Job Aid.**

**BART  0000237**



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

**Date of Review**

| **Employee Name** | **Employee ID Number** |
|---|---|

## To be completed by reviewer:

1. Form has been completed entirely and is signed and dated by employee, and supporting documentation provided? ☐Yes ☐No

2. Is there evidence the employee has acted in a way that is inconsistent with the claimed belief? ☐Yes ☐No

   If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious reasons? ☐Yes ☐No

   If "Yes," please explain:

4. Is the timing of the request considered questionable? ☐Yes ☐No

   If "Yes," please explain:

5. Is there evidence the employee may be seeking the benefit for secular reasons? ☐Yes ☐No

   If "Yes," please explain:

**EXHIBIT**
**5**
PENGAD 800-631-6989
*MAPLESTONE* 9/22/23



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
| | |

6.  Is additional information needed to make a determination? ☐Yes ☐No

   If "Yes," please explain:

7.  Are there inconsistencies in the documentation provided? ☐Yes ☐No

   If "Yes," please explain:

**Determination**

Based on the review of evidence provided, the request for a religious exemption to the COVID-19 vaccine is:
☐Approved ☐Denied Based on the following:

If approved, the accommodation is:

_____          _____
Name of Reviewer                                              Date

**Employee Name**
**Employee ID**
**Title**
**Interview Date and Time**

## Religious Exemption Interviews

**Interviewers: Rod Maplestone, Manager of Leave Programs**
**Gizelle Huynh, Supervisor of Leave Management**


**EEOC factors:**

☐ The reasons cited in support of the request were primarily for secular/non-religious reasons.

☐ A clear nexus between the request and the stated religious beliefs was not established.

☐ Evidence of behaviors inconsistent with adherence to the stated beliefs exists.

☐ The timing of your request as it relates to adoption of the stated beliefs.

*Introduction: We are not questioning the sincerity of your belief, just assess if the Religious Exemptions applies to you. We reviewed all of the documents to support your Religious Vaccination Exemption Request. We wanted to have a quick discussion with you to ask some clarifying questions, it shouldn't take longer than 10-15 minutes. We are not questioning your faith or that you have this sincerely held belief but just wanted to give you the opportunity to provide some clarification. From here: if approved, RA; if denied, then remaining options: get vaccine, retirement/resignation, if do nothing out of compliance.*

**INTERVIEW QUESTIONS:**

1. Can you just tell us briefly about your sincerely held belief?
2. Can you tell us in your own words why taking COVID-19 vaccine is contrary to your religious belief?
3. What do you think will happen to you if you take the COVID-19 vaccine?
4. Can you provide us other examples of how this religious belief is demonstrated in other aspects of your life?
5. You refuse to take the COVID-19 vaccine because of the alleged use of aborted fetal cells in the creation of the vaccine. Research on this topic has revealed some cosmetic and over-the-counter medicines may use the same process the COVID-19 vaccine. Are you aware of this? Tell me how else you demonstrate the same pre-cautions in your life.


**Determination:**

☐ Approved

☐ Denied

EXHIBIT

6

MAPLESTONE 4/22/22

FORMS AD 800-631-6989

**Employee Name**
**Employee ID**
**Title**
**Interview Date and Time**

 **BART**

San Francisco Bay Area Rapid Transit District
2150 Webster Street, Oakland, CA 94612



EXHIBIT

7

MAPLESTONE    9/22/22

**SENT VIA EMAIL/US MAIL**

December 20, 2021

Szu-Cheng Sun
82 Images Circle
Milpitas, CA 95035
ssun1@bart.gov

**SUBJECT: Denial—COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Szu-Cheng,

We have reviewed your request for a religious exemption to the COVID-19 vaccination mandate under Title VII of the Civil Rights Act of 1964. **After careful review and consideration of the information provided, your request is denied.** The denial is objectively supported by one or more of the following factors: ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Please note that this determination is supported by guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

As a result, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate –** If you opt to receive the vaccine, you may request enough time to become fully vaccinated in time to return to work after December 13, 2021. Doing so would delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including evidence of receiving the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement –** Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Ame Stokstad at 510.464.6206 or astokst@bart.gov to determine if you are eligible for a service retirement and, if so, apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

**BART 0001541**

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination or proof of receiving the first shot of a two-dose vaccine, within seven (7) days of this letter by December 13, 2021, you will be out of compliance with the District's vaccine mandate and the District will seek termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe they have been discriminated against, including being denied a valid request for religious exemption or reasonable accommodation, may file a formal complaint with the District's Office of Civil Rights (OCR). OCR investigates complaints of employment discrimination based on protected statuses covered under the District's Equal Employment Opportunity (EEO) Policies. Employees should immediately report the prohibited conduct to OCR at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:    Leave Management Confidential File

 **BART**

**San Francisco Bay Area apid Transit District**
2150 Webster Street, Oakland, CA 94612



**SENT VIA EMAIL/US MAIL**

January 3, 2022

Jonathan Castaneda
AFC Electronic Technician
201 13th St. #1614
OAKLAND, CA 94604
flow38.237@gmail.com

**SUBJECT: Closing Interactive/Options, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jonathan,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted.

In a letter, sent to you on December 22, 2021, we informed you that we were unable to identify a reasonable accommodation for your request that would enable you to continue to meet job performance and safety requirements and not place an undue hardship on the District. We agreed to consider any additional accommodation options if you submitted them on or before December 27, 2021.

The District carefully considered the following additional accommodations you identified:

1. No new accommodation option was provided for consideration

We are unable to identify an accommodation option that would achieve the safety standard set forth by the Board of Directors in the Vaccine Mandate Policy Statement approved on October 14, 2021. ~~According to the Centers~~ ~~.... ... ...~~

**Subsequently, the District has concluded that we are unable to accommodate your request and meet performance and safety requirements without placing an undue hardship on the District.**

Your reasonable accommodation request is now closed, as we have considered all identified accommodations. However, if you are able to identify potential additional reasonable accommodations for us to consider, please provide them within the next seven (7) days. Upon receipt, we will consider re-opening your reasonable

San Francisco Bay Area Rapid Transit District

**BART_0001025**

accommodation request and continue with the process. In the meantime, you are expected to return to work during the 7-day decision period. Therefore, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, the District will delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including only having received the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination seven (7) days of today's date, you will be out of compliance with the District's vaccine mandate and the District will pursue termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. In the future, if you have a qualifying medical condition and need to request a reasonable accommodation, the District will engage in the Reasonable Accommodation Interactive Process with you. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe there has been a violation of their employee rights, including being denied a request for a religious exemption or reasonable accommodation, on the basis of discrimination, harassment, and/or retaliation should immediately report the prohibited conduct to the District's Office of Civil Rights at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:     Leave Management Confidential File



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

January 5, 2022

      Mary Engler-Contreras
      Operations Supervisor Liaison
      6223 Empress Court
      San Jose, CA 95129
      mengler@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Mary,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

1. Remote Work
2. Weekly COVID Testing.
3. Request for an enclosed office space to work in/take breaks in.
4. Follow CDC Guidelines and Wear gloves
5. Requesting an accommodation until 03/15/22 so she can retire a year earlier.



San Francisco Bay Area Rapid Transit District

After careful consideration, the District has concluded that we are unable to accommodate your request and meet the requirements stated above and not place an undue hardship on the District. In addition to the accommodation you requested, the District explored the following additional accommodation options and concluded that none of the accommodations identified would sufficiently reduce potential COVID transmission and not place an undue burden on the District:

| Accommodation Considered | Conclusion |
|---|---|
| 1. Follow CDC Guidelines:<br>  a. Mask wearing/PPE/Gloves, etc.<br>  b. Practice Social distancing<br>  c. Avoid crowds/poorly ventilated places<br>  d. Stay home when sick<br>  e. Clean and disinfect surfaces and equipment | Adherence to CDC guidelines is recommended for all employees. While it is recommended that we all follow these guidelines, they are not specific workplace accommodations. According to the Federal Centers for Disease Control and Prevention (CDC) as well ~~as the California Department of Public Health, vaccination~~ ~~is the most effective method to prevent transmission and limit~~ ~~COVID-19 hospitalizations and death.~~ |
| 2. Remote work | Although some positions may allow work to be performed remotely on an intermittent basis, doing so 100% of the time would not be practical. We cannot guarantee you would never need to come on-site for meetings, inspections, discussions, etc. for the remainder of your employment at the District. |
| 3. Communicate via phone, text, and email or participate in meetings via MS Teams/online | It is not reasonable to expect that even despite efforts to avoid direct contact with others, that we would be able to completely eliminate the need for such contact as part of your job. |
| 4. Use of respirators | While face coverings, including the use of respirators, does comply with CDC guidelines, ~~the CDC and CDPH recommend vaccination as~~ ~~the most effective method to prevent transmission and limit~~ ~~COVID-19 hospitalizations and death.~~ |
| 5. Limited contact with others due to field-based work, work alone, work in enclosed office spaces, use of own vehicle/equipment, or use of alternative break areas or workstations | Despite efforts to limit contact with others, it would not be possible to eliminate the need for direct and/or close contact with others in all situations. |
| 6. Natural COVID antibodies instead of vaccine | According to the CDC, a positive antibody test result alone, especially one from an infection at an unknown time or that was determined by a viral test more than 6 months ago, does not necessarily mean that you are immune to getting COVID-19. |
| 7. Regular/daily temperature checks and/or screening for symptoms | Regular temperature checks/screening for symptoms is unreasonably burdensome for the District to monitor and maintain on an ongoing basis. Furthermore, both the CDC and CDPH recommend vaccination as the most effective method to prevent transmission and limit COVID-19 hospitalizations and death. |
| 8. Unpaid leave of absence (3-4 months) | Granting a temporary leave of absence (paid or unpaid) would be unreasonable as vaccination status would not be expected to change during the period of leave. |
| 9. Regular COVID testing, either:<br>  a. At employee's time and expense, or;<br>  b. On-site<br>  c. Saliva testing rather than other methods<br>  d. Utilize labs that do not share data<br>  e. Retest if PCR test is positive and asymptomatic | Regular COVID testing is unreasonably burdensome for the District to monitor and maintain on an ongoing basis, whether paid for by the employee or the District. Furthermore, the testing option does not achieve the safety standard set forth by the Board of Directors in the Vaccine Mandate Policy Statement approved on October 14, 2021. ~~according to the CDC as well as the CDPH, vaccination is the~~ ~~most effective method to prevent transmission and limit COVID-19~~ ~~hospitalizations and death.~~ |

The District will consider additional accommodation options (not addressed above) if identified. Please send an email including any additional accommodations you would like us to consider to HRDP@bart.gov by Sunday, January 9, 2022. Leave Management will evaluate your request and determine whether it can be accommodated.

If we do not receive additional accommodation requests for consideration from you, we will consider this accommodation request closed due to the fact that no reasonable accommodation could be identified. In the future, if you have a qualifying medical condition and need to request a reasonable accommodation, the District will engage in the Reasonable Accommodation Interactive Process with you.

**COMPLAINT PROCEDURE:** Employees who believe there has been a violation of their employee rights, including being denied a request for a religious exemption or reasonable accommodation, on the basis of discrimination, harassment, and/or retaliation should immediately report the prohibited conduct to the District's Office of Civil Rights at eeocomplaint@bart.gov.

Respectfully,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:     Leave Management Confidential File



**San Francisco Bay Area apid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 3, 2022

Adrian Gilbert
Train Operator
1608 62nd St #A
Berkeley, CA 94703
mradbme@yahoo.com



**SUBJECT: Closing Interactive/Options, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Adrian,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted.

In a letter, sent to you on December 22, 2021, we informed you that we were unable to identify a reasonable accommodation for your request that would enable you to continue to meet job performance and safety requirements and not place an undue hardship on the District. We agreed to consider any additional accommodation options if you submitted them on or before December 27, 2021.

The District carefully considered the following additional accommodations you identified:

1.  No new accommodations were provided; however, you mentioned your PPE would include respirator face masks, disinfectant wipes/spray, in addition to practicing safe social distancing

While wearing PPE, such as a respirator and face mask, is sufficient to reduce potential COVID transmission, these options are not as effective as a COVID-19 vaccine would be in preventing COVID transmission between employees when in contact with patrons and other employees. I understand you have minimal physical contact with others, however there is no guarantee you will have no contact or exposure to other employees and patrons.

Adherence to CDC guidelines is recommended for all employees. This includes use of disinfectant wipes/spray, in addition to practicing safe social distancing. While it is recommended that we all follow these guidelines, they are not specific workplace accommodations.

We are unable to identify an accommodation option that would achieve the safety standard set forth by the Board of Directors in the Vaccine Mandate Policy Statement approved on October 14, 2021. According to the Federal

San Francisco Bay Area Rapid Transit District

Centers for Disease Control and Prevention (CDC) as well as the California Department of Public Health (CDPH), vaccination is the most effective method to prevent transmission and limit COVID-19 hospitalizations and death.

**Subsequently, the District has concluded that we are unable to accommodate your request and meet performance and safety requirements without placing an undue hardship on the District.**

Your reasonable accommodation request is now closed, as we have considered all identified accommodations. However, if you are able to identify potential additional reasonable accommodations for us to consider, please provide them within the next seven (7) days. Upon receipt, we will consider re-opening your reasonable accommodation request and continue with the process. ██████████████████████████████ ████████████████████ Therefore, you have the following options:

**OPTION #1:**

**Comply with the Vaccine Mandate** – If you opt to receive the vaccine, the District will delay any termination proceedings so long as you provide evidence of having received a vaccination shot within seven (7) days of today's date. Please submit your proof, including only having received the first dose of a two-dose vaccine, to vaccine@bart.gov.

**OPTION #2:**

**Service Retirement** – Because you are a member of the California Public Employee's Retirement System (CalPERS), you may contact Arne Stokstad at 510.464.6206 or astokst@bart.gov to apply for a service retirement. You may also directly contact CalPERS at 888.225.7377 for more information regarding your retirement options.

**OPTION #3:**

**Voluntary Resignation** – If you are not eligible for or do not wish to pursue retirement, you have the option to voluntarily resign from your position. You may submit your written resignation to Leave Management – Human Resources at 2150 Webster Street – 4th Floor, Oakland, CA 94612 or to your immediate Supervisor.

**OPTION #4:**

**Take no Action** – if you do not elect to pursue retirement or voluntarily resign, and do not provide proof of vaccination seven (7) days of today's date, you will be out of compliance with the District's vaccine mandate and the District will pursue termination of your employment. If the District pursues this option, you will be notified separately of the details of your pre-disciplinary hearing.

This closes your request for a religious exemption to the COVID-19 vaccine mandate. In the future, if you have a qualifying medical condition and need to request a reasonable accommodation, the District will engage in the Reasonable Accommodation Interactive Process with you. If you have any questions or need further clarification, please contact me at 510.464.6198 or HRDP@bart.gov.

**COMPLAINT PROCEDURE:** Employees who believe there has been a violation of their employee rights, including being denied a request for a religious exemption or reasonable accommodation, on the basis of discrimination, harassment, and/or retaliation should immediately report the prohibited conduct to the District's Office of Civil Rights at eeocomplaint@bart.gov.

Sincerely,

*Rod Maplestone*
**Rod Maplestone**
**Manager of Leave Programs**

CC:     Leave Management Confidential File



**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

**Date of Request**

| Employee Name | Employee ID Number |
|---|---|
| Rosalind E. Parker | 060396 |
| **Job Title** | **Email Address** |
| Customer Service Clerk IV | rparker@bart.gov |
| **Union (or Non-Rep)** | **Supervisor/Manager** |
| SEIU 1021 | Brian Espinoza/Pat Seto |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

### EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| |
|---|
| 1.  My religion or belief system is (enter description): Follower of Christ |
| 2.  I have held this belief(s) system, or practiced and observed this religion since (enter date or year): 1997 |
| 3.  My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): See attached |

> **EXHIBIT**
> *11*
> MAPLESTONE
> 9/12/22



4.  If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

See attached

5.  If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

I have been perfroming my job effectively and efficantly all these months just as I've been asked and has no undue hardship, no threat to health and saftey to others. 1. Continue my work as usual. 2. I will self check myself and if I have a fever I will stay home. System self screening. 3. Spit in a cup for testing if applicable. I will follow as long as the polices are applicable to the law in accordance.

6.  Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_Rosalind Reyat_        12/13/2021
**Employee Signature**        **Date**

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____      Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

Rosalind E. Parker
260 Sunset Boulevard, #11
Hayward, CA 94541

San Francisco Bay Area Rapid Transit
Leave Management, Rod Maplestone
2150 Webster Street, 4th Floor
Oakland, CA 94612

Hello Rod,

I believe in the Lord Jesus Christ.

As a little girl I was baptized and gave my heart to the Lord. I have held my belief since 1997. I
Have followed Christ ever since. I honor the Lord with all my heart soul and might. He died for
my sins, he was buried, and God raised him up on the third day the scripture says in
1Corinthians 15:4. Prayer and meditation is a daily occurrence in my life, also studying
scripture. Sharing the word with others is important to me and is one of Gods commands.

As a child of God he is sovereign over all things, even disease. In times of trouble believers
take refuge in him. (Psalms118:8-9) Our bible teaches us

I live by keeping Gods commandments, submitting to him as scriptures states in the bible. My
belief is injecting any foreign substances into your body is against Gods laws.

3. God created me with an immune system, and I will not alter his design. It is a sin against my
God given conscience to allow unwanted intrusions into my body, which is a temple of the Holy
Spirit. The word of God in the bible says in 1 Corinthians 3: 16-17 Know ye not that ye are a
temple of God and the spirit of God dwelleth in you. 17 If any man defiles the temple of God,
him shall God destroy: for the temple of God is holy, which temple ye are?

4. To my knowledge Covid-19 vaccinations performed tests using aborted human fetal cell
lines. The Most Highest God, says life starts at conception. "For you formed my inward parts;
you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully
made". Psalms 139:13-14. Using aborted human fetal cell lines is murder and is a sin.

These are my sincere religious beliefs.

Sincerely,

Rosalind E. Parker

BART 0001427



October 19, 2021

To whom it may concern:

    We are writing this letter on behalf of Rosalind Parker who attends our church. Because of our religious beliefs we request exemption from the COVID-19 vaccination.

    This letter is written with the sincere desire that those who read it will lead and instruct their fellow Americans with full understanding of their individual liberties and religious freedoms that we should all revere with the utmost respect. In our current crisis the COVID-19 virus and in all of its concerns our freedoms should not bend nor be abridged by fear over what may, but be maintained as we fight together to end this pandemic with wisdom, science and the ingenuity that has enabled us to conquer tragedies in our rich history. The demands being made on people to take a vaccine or pay the price are completely inconsistent with Law and Liberty afforded to all Americans. These demands should be opposed or even supported by those who exercise their own free will in either case to determine what may enter their bodies.

    As Christians we believe that our God is sovereign over all things, even disease. In times of trouble believers take refuge in Him (Psalms 118:8-9). Our Bible teaches us that Our Lord has authority over all things, and that would include viruses (Matthew 28:18 - 20). We believe our lives are ultimately in God's Hands. We believe as is stated in Psalms 91:1 - 11, that plagues, pestilence and even disasters submit to God's authority.

    As Americans we believe strongly in our individual liberty outlined so clearly in our founding documents, The Constitution and The Declaration of Independence. The words of our founders can and do more to clearly express the Religious Freedoms that Christians seek and will to maintain with moral and legal standing.

*Passion for God | Compassion for People*

577 Manor Boulevard • San Leandro, CA 94579 • (510) 357-5723 • www.faith-fellowship.us

**BART 0001428**

The Preamble to the Constitution

*We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America.*

The Declaration of Independence

*"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness."*

*"Our Constitution was made only for a moral and religious People. It is wholly inadequate to the government of any other,"*

Johns Adams, 2nd President

*"God who gave us life gave us Liberty. Can the liberties of a nation be secure when we have removed a conviction that these liberties are the gift of God? Indeed I tremble for my country when I reflect that God is just, that His justice cannot sleep forever.*

-Thomas Jefferson, America's 3rd President

*I've lived, Sir, a long time, and the longer I live, the more convincing Proofs I see of this Truth — That God governs in the Affairs of Men. And if a sparrow cannot fall to the ground without his Notice, is it probable that an Empire can rise without his Aid? We have been assured, Sir, in the Sacred Writings, that except the Lord build the House they labor in vain who build it. I firmly believe this, — and I also believe that without his concurring Aid, we shall*

BART 0001429

*succeed in this political Building no better than the Builders of Babel: We shall be divided by our little partial local interests; our Projects will be confounded, and we ourselves shall become a Reproach and Bye word down to future Ages.*

Benjamin Franklin
A signer of both America's Declaration of Independence
& The US Constitution

As Christians we are fully aware that many do not believe as we do and we fully support their right to disagree. 1 Corinthians 2:14 "But a natural person does not accept the things of the Spirit of God, for they are foolishness to him; and he cannot understand them, because they are spiritually discerned."

It is not the understanding or agreement that Christians seek from others but simply our rights and privileges as a free people to govern ourselves, our bodies and decisions that determine our well being.

Regards,

*Pastor Vince Taylor*

Senior Pastor Vince Taylor
Faith Fellowship Church

BART 0001430



**RELIGIOUS EXEMPTION**
**REQUEST REVIEW FORM**
**(COVID-19 Vaccination)**

| Date of Review | 12/14/2021 |
|---|---|

Parker, Rosalind | 060396

1. Documents Included:
   a. Religious Exemption v.1 ☐Yes ☐No _____
   b. Religious/Medical Supplemental ☐Yes ☐No _____
   c. Religious Exemption v.2 ☒Yes ☐No _____
   d. Medical Accommodation ☐Yes ☐No _____
   e. Written Request ☐Yes ☐No _____
   f. Affidavit/Statement ☒Yes ☐No _____
   g. Other documentation ☐Yes ☐No _____

2. Are there any inconsistencies with the employee's stated belief or whether an employee has acted in an inconsistent way with a stated belief? ☒Yes ☐No

   If "Yes," please explain:
   Prior to her request for a religious exemption, employee mentioned:

   "I am Happy to comply with the Vaccine mandate upon proof of claim"

   This shows her willingness to get the vaccine which is inconsistent with what she states in her religious exemption request.

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious/ Secular reasons? ☒Yes ☐No

   If "Yes," please explain:
   Employee states secular reasoning, one of them being, "there is no proof that Covid 19 exist."

4. Is the timing of the request considered questionable? ☒Yes ☐No

   If "Yes," please explain:

   The religious exemption request came only after two letters were sent with listed non-religious reasons for not wanting to take the vaccine.

BART 0001431



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
|  |  |

5. Is there reason to request an interview of the employee to discuss the request further? ☒Yes ☐No

   If "Yes," please explain:

Inconsistency with what was written with the religious exemption request and her two letters with secular reasoning.

Would like to have the opportunity to have the employee express in their own words their sincerely held religious belief, how it prevents them from getting the COVID-19 vaccine, and inconsistency.

6. Interview Conducted? ☐Yes, Date of Interview: _____ ☐No, ☒Declined by employee

   Interview assessment:
Employee did not show up to her scheduled meeting.

Based on the review of evidence provided, the request for a religious exemption is:
   ☐Approved
   ☐Denied

   If denied, basis for denial:

If religious exemption is approved, please proceed to the next section regarding determination regarding an accommodation.

BART 0001432



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
|  |  |

**Accommodation Criteria**

If approved, was an accommodation identified that meets the following criteria:

7.  Employee remains able to perform the essential functions of the job: ☐Yes ☐No

8.  Request does not pose a direct threat to the health and/or safety of others in the workplace: ☐Yes ☐No

9.  The request does not create undue hardship for the District: ☐Yes ☐No

    If "No," to any of the above questions, explain:

**Final Determination**

The final determination is:

    ☐**Approved**; both the religious exemption and the accommodation requests are approved
    ☐**Denied**; either one or both requests (exemption and accommodation) were not approved

    Explain:

_____       _____
Name/Title of Reviewer                              Date





EXHIBIT
12
MAPLESTONG

**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| | Date of Request | 12/06/21 |
|---|---|---|
| **Employee Name** | | **EMPLOYEE NUMBER** |
| Szu-Cheng Sun | | 063668 |
| **Job Title** | | **EMAIL ADDRESS** |
| Computer Electronic Technician | | ssun1@bart.gov |
| **Union (or Non-Rep)** | | **SUPERVISOR NAME** |
| SEIU | | Albert Schmitt |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

## EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| | |
|---|---|
| 1. My religion or belief system is (enter description): Ruism | |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): around 1980 | |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): In the "Xiao Jing" (孝經) of Ruism, 「身體髮膚，受之父母，不敢毀傷」[^1] which means "Our bodies - to every hair and bit of skin - are received by us from our parents, and we must not to injure or wound them", is what I believe and followed. As a true beliver of Ruism, I will not do something like piercing, tattooing, or anything similar to my body. Ruism also taught us that the Nature is the best and human intervention should be kept as less aa possible. And, this is what I follow and what I do. | |

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

BART 0001536



4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

   I didn't have any vaccine since 1980.

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

   (1) Ware mask and keep social distance; (2) Stay away from workplace if infected until recovery; and/or (3) any reasonable accommodation provided.

   Based on a newly published (10/28) research paper on The Lancet, a peer-reviewed general medical journal, concludes that "...... fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infectionin household settings, including to fully vaccinated contacts ......" [^2]

   In other words, any unvaccinated person with the said accommodations said above, our workplace will be kept as safe as that of those fully vaccinated one could provide.

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____     12/06/21
Employee Signature                                              Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

References:
=========

[^1]: https://ctext.org/pre-qin-and-han/zh?searchu=%E8%BA%AB%E9%AB%94%E9%AB%AE%E8%86%9A&en=on

[^2]: "Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study"; Published on www.thelancet.com/infection at October 28, 2021, the research paper's URL here: https://doi.org/10.1016/S1473-3099(21)00648-4

Additional Information :
=================

(for the Item-6 of this Exemption)
Unlike Christianity nor Catholicism, Ruism's institutions were not a separate church, but those of society, family, school, and state. Also, Ruism's priests were not separate liturgical specialists, but parents, teachers, and officials. Ruism was part of the Chinese social fabric and way of life; to Confucians (or Ruism), everyday life was the arena of religion.

Self-Cultivation and Self-Examination are key dogmas of Ruism, even without priest like Christianity or Catholicism do, we dedicate ourselves to lifelong, continuous self-improvement.

However, without some kind of authorities of Ruism, such as that of a priest of Christianity, it is very hard for me to obtain a document that you have requested. Unless testimony from my friend is acceptable, I guess the best alternative that I could provide at this moment, and hopefully you will understand and accept, is the statements explained above.

BART 0001538

Employee Name  Szu-Cheng Sun
Employee ID
Title
Interview Date and Time  12/16/21  1:20

## Religious Exemption Interviews

Interviewers:  Rod Maplestone, Manager of Leave Programs
               Gizelle Huynh, Supervisor of Leave Management

EEOC factors:

☒ The reasons cited in support of the request were primarily for secular/non-religious reasons.

☒ A clear nexus between the request and the stated religious beliefs was not established.

☐ Evidence of behaviors inconsistent with adherence to the stated beliefs exists.

☐ The timing of your request as it relates to adoption of the stated beliefs.

*Introduction: We are not questioning the sincerity of your belief, just assess if the Religious Exemptions applies to you. We reviewed all of the documents to support your Religious Vaccination Exemption Request. We wanted to have a quick discussion with you to ask some clarifying questions, it shouldn't take longer than 10-15 minutes. We are not questioning your faith or that you have this sincerely held belief but just wanted to give you the opportunity to provide some clarification. From here: if approved, RA; if denied, then remaining options: get vaccine, retirement/resignation, if do nothing out of compliance.*

INTERVIEW QUESTIONS:

1. Can you just tell us briefly about your sincerely held belief?
2. Can you tell us in your own words why taking COVID-19 vaccine is contrary to your religious belief?
3. What do you think will happen to you if you take the COVID-19 vaccine?
4. Can you provide us other examples of how this religious belief is demonstrated in other aspects of your life?
5. You refuse to take the COVID-19 vaccine because of the alleged use of aborted fetal cells in the creation of the vaccine. Research on this topic has revealed some cosmetic and over-the-counter medicines may use the same process the COVID-19 vaccine. Are you aware of this? Tell me how else you demonstrate the same pre-cautions in your life.

Determination:

☐ Approved

☒ Denied

BART 0001539

Employee Name  Szu-Cheng Sun
Employee ID
Title
Interview Date and Time  12/16/21   1:20

1)  Basically our believe that nature is best
    trying to avoid any intervention
    Every hair and skin is receipt of parent
    my culture and my belief
    Because western culture and Eastern culture
    are very different.

2)  we are trying not to do anything harmful
    No long-term safety study on vaccine
    we cannot do intervention
    nobody knows what will happen physically
    Spiritually we don't
    Do not do massage, exept from relative

3)  I don't do piercing
    Pray twice a day with (burning) stick
    Every day for 30 years
    No meditation once per week for an hour

BART 0001540

# EXHIBIT 3

1    UNITED STATES DISTRICT COURT

2    FOR THE

3    NORTHERN DISTRICT OF CALIFORNIA

4

5

6    CHAVEZ, et al.,                    )    Case No.
                                        )    3:22-cv-06119-WHA
7              Plaintiffs,              )    3:22-CV-09193-WHA
         vs.                            )
8                                       )
     SAN FRANCISCO BAY AREA RAPID       )
9    TRANSIT DISTRICT and DOES 1-100,   )    Volume I
                                        )
10                                      )
               Defendants.             )
11    _____ )      Pages 1 - 38

12

13

14              DEPOSITION OF

15       VERONICA RIVERA BADONG THOMAS

16           September 25, 2023

17

18

19    Reported by:

20    CLARE MACY, RPR, CSR #5256

21    -------------------------------------------------------

22              JAN BROWN & ASSOCIATES

23       WORLDWIDE DEPOSITION & VIDEOGRAPHY SERVICES

24    701 Battery St., 3rd Floor, San Francisco, CA 94111

25           (415) 981-3498 or (800) 522-7096

1

1                        I N D E X

2                                              PAGE

3

4    Examination by Mr. Snider                  6

5

6    Examination by Ms. Nuetzel                 36

7

8    Reporter's Certificate                     38

9

10                    ---o0o---

11

12                 E X H I B I T S

13

14   DEPOSITION NO.                             PAGE

15

16   Exhibit 13  Memorandum template dated      11

17               October XX, 2021, from Veronica

18               Thomas to [Employee Name], Subject:

19               Proof of Full COVID-19 Vaccination

20               Required by December 13, 2021;

21               Bates No. BART 0000019

22

23   Exhibit 14  BART document entitled "Coronavirus    13

24               Pandemic - (COVID-19), Statement of

25               Policy"; Bates No. BART_0000018

                                                    2

```
1                    E X H I B I T S
2    DEPOSITION NO.                               PAGE

3    Exhibit 15  Five-page set of documents        16
4                containing document entitled "Employee
5                Request for Religious Exemption
6                (COVID-19 Vaccination) Supplemental
7                Documentation"; two-page document entitled
8                "Employee Request for Religious Exemption
9                (COVID-19 Vaccination)"; two-page document
10               entitled "Employee Request for Religious
11               Exemption (COVID-19 Vaccination)"; Bates
12               Nos. BART 0000012 - 16

13   Exhibit 16  Seven-page document containing       17
14               two-page Blank Religious Exemption
15               Request Review Form (COVID-19
16               Vaccination); three-page document
17               entitled "BART Human Resources Department
18               Standard Operating Procedures" (Bates
19               Nos. BART 0000235 - 237); two-page
20               document entitled "Religious
21               Exemption Interviews"

22   Exhibit 17  Two-page memorandum dated           31
23               November 26, 2021 from Veronica
24               Thomas to Antonio Gonzalez III;
25               Bates Nos. BART_0005192 - 5193
```

1            BE IT REMEMBERED that, pursuant to Subpoena,

2    and on Monday, September 25, 2023, commencing at the

3    hour of 10:09 a.m., in the offices of Glynn, Finley,

4    Mortl, Hanlon & Friedenberg, LLP, One Walnut Creek

5    Center, Suite 500, 100 Pringle Avenue, Walnut Creek,

6    California, before me, Clare Macy, a certified shorthand

7    reporter in the State of California, there personally

8    appeared

9

10            VERONICA RIVERA BADONG THOMAS,

11

12    called as a witness by the PlaintiffS, who being by me

13        first duly sworn, was thereupon examined and

14          interrogated as is hereinafter set forth.

15

16                    ---o0o---

17

18

19

20

21

22

23

24

25

                                                    4

1          A P P E A R A N C E S

2

3

4          KEVIN T. SNIDER, Attorney at Law, of Pacific

5     Justice Institute, P.O. Box 276600, Sacramento,

6     California 95827, appeared as counsel on behalf of the

7     Plaintiffs.

8     Tel: 916.857.6900

9     Email: ksnider@pji.org

10          VICTORIA R. NUETZEL, Attorney at Law, and

11    JAMES M. HANLON, JR., Attorney at Law, of Glynn, Finley,

12    Mortl, Hanlon & Friedenberg, LLP, One Walnut Creek

13    Center, Suite 500, 100 Pringle Avenue, Walnut Creek,

14    California 94596, appeared as counsel on behalf of the

15    Defendants.

16    Tel: 925.210.2800          Fax: 925.945.1975

17    Email: vnuetzel@glynnfinley.com

18    Email: jhanlon@glynnfinley.com

19          SAM DAWOOD, Attorney at Law, of Office of the

20    General Counsel, San Francisco Bay Area Rapid Transit

21    District, 2150 Webster Street, 10th Floor, Oakland,

22    California 94612, appeared as in-house counsel on behalf

23    of the Defendants.

24    Tel: 510.464.6019          Fax: 510.464.6049

25    Email: sdawood@bart.gov

5

1   SEPTEMBER 25, 2023 - MONDAY           10:09 A.M.

2                P R O C E E D I N G S

3         (Whereupon, the witness was sworn.)

4   EXAMINATION BY MR. SNIDER:

5       Q.   Good morning.   My name is Kevin Snider.   We

6   just met.   I'm the attorney representing some former

7   employees of BART, and there's a lawsuit going on.   And

8   so we're here to just take your deposition as a witness.

9         Can you give your full legal name and spell it

10   for the record?

11      **A.   Okay.   Veronica, V-E-R-O-N-I-C-A, Rivera,**

12   **R-I-V-E-R-A, Badong, B-A-D-O-N-G, Thomas, T-H-O-M-A-S.**

13       Q.   Do you want me to call you Ms. or Mrs. Thomas?

14   How do you prefer?

15      **A.   Mrs. Thomas.**

16       Q.   Mrs. Thomas.   Okay.

17      **A.   Or Veronica.**

18       Q.   Okay.   Have you ever had your deposition taken

19   before?

20      **A.   Yes.**

21       Q.   What was the situation?

22      **A.   Sacramento State University.   There was a**

23   **lawsuit against the university regarding an employee who**

24   **felt that they were not fairly considered for a**

25   **promotional opportunity.**

                                                        6

1    Q.    Okay.  And you were a witness?

2    **A.    Yes.  Also plaintiff.**

3    Q.    You were a plaintiff in the case?

4    **A.    Yeah.   Those allegations were -- It was one**

5    **of -- a former employee who reported within my unit.**

6    Q.    Okay.

7    **A.    So myself and several others.**

8    Q.    Okay.  All right.  So since you've had a

9    deposition -- depositions before --

10   **A.    Yes.**

11   Q.    -- you're an old pro at this, I'll just give

12   you some refresher on some of these things.

13         As you know, this is a -- Though we are in a

14   wonderful building and a comfortable office setting,

15   this is a form of a legal proceeding.  And so you're

16   under oath, so obligated to tell the truth.

17         And in the last, oh, 24 hours, have you taken

18   any substances that would prevent you from testifying?

19   **A.    No.**

20   Q.    Okay.  And we're going to be giving you, as

21   you know from past experiences, a transcript.  It will

22   either be in a PDF or a booklet form.

23   **A.    Okay.**

24   Q.    And you'll look through it, read it, make

25   certain it's correct.  You'll have a chance to change

7

1   your answers, but if you change it in a material way,
2   then we could bring this to the Court's attention if you
3   were called at a trial.
4           So a material change -- Let me give you an
5   example.  If this was a car accident and you were a
6   witness and you were asked what color was the traffic
7   signal when the car went through the intersection, and
8   you said, "Yellow"; you went back and changed it to
9   "Amber."  That's not a material change.  But if you
10  changed it to "Red," that would be a material change.
11          So do you understand the difference between a
12  material and immaterial change?
13      A.   Yes.
14      Q.   Okay.  Also, because we're trying to get a
15  clear record, we'll do our best not to talk over each
16  other and anticipate questions and answers like we do in
17  ordinary conversations.  So just give a short pause
18  after I give a question and then respond.
19          Also, don't use nonverbal responses like we
20  always do, like I just used my hands instead of
21  speaking, shrugs, nods.  Just say, "Yes," "No,"
22  "Correct," "I don't know," that sort of thing.
23      A.   Yes.
24      Q.   Let's see.  Where are you currently working?
25      A.   City of Pleasanton.

8

1    Q.   And have you ever worked for BART?

2    **A.   Yes.**

3    Q.   And when was that?

4    **A.   August 2020 through May 2021.**

5    Q.   Okay.  And what was your job title?

6    **A.   Human Resources Director.**

7    Q.   Human Resources Director.

8         And that was the job title -- position you

9    held the entire time; is that right?

10   **A.   Correct.**

11   Q.   Okay.  What were your general duties?

12   **A.   I was responsible for oversight of the talent**

13   **acquisition team.**

14   Q.   I'm sorry.  Which team?

15   **A.   Talent acquisition team.**

16   Q.   Talent acquisition.  Okay.

17   **A.   Also known as recruitment.**

18   **The leaves -- absences and leaves team -- I**

19   **think that's what they're called; human resources**

20   **information systems; compensation; as well as substance**

21   **abuse and alcohol testing unit.  And then there were**

22   **some front desk and general positions there as well.**

23   Q.   Okay.  And how many employees did you have

24   under you?

25   **A.   I don't know exactly, but anywhere from 45 to**

9

1  **50.**

2      Q.   45 to 50.  And that reminds me.  I forgot to

3  give in one of the instructions -- You just did

4  something appropriate; you gave me an estimate.  And so

5  you're allowed to do that.  But don't guess.

6          The difference is if I asked you how long this

7  table is, you could give me an estimate, because you're

8  looking at it; it's in front of you.  But if I asked you

9  how long is the table in my conference room in my

10  office, you wouldn't -- you'd have to guess.

11     **A.   Okay.**

12     Q.   All right.  So moving along, as to those 40 to

13  50 employees, are you familiar with a gentleman named

14  Rod Maplestone?

15     **A.   Yes.**

16     Q.   How about Gizelle Huynh?

17     **A.   Yes.**

18     Q.   Okay.  And what were their positions?

19     **A.   Rod was the manager over leaves -- absences**

20  **and leaves.  Gizelle was a supervisor, so she was**

21  **working beneath him.**

22     Q.   Did you have much interaction with them?

23     **A.   Yes.**

24     Q.   Do you recall the BART Board of Directors

25  requiring employees to be vaccinated for COVID-19?

                                                    10

1    **A.   Yes.**

2    Q.   Approximately -- To the best of your

3    recollection, approximately when did they require that?

4    **A.   I want to say September 2021.**

5    Q.   Okay.  In front of you -- or is it in front of

6    you?  Let's see.

7         Madam Court Reporter, can you --

8         This is a long table.

9         In front of you we have some documents.  These

10    are exhibits.

11    **A.   Uh-huh.**

12         **(Whereupon, Exhibit 13 was marked for**

13         **identification.)**

14         MR. SNIDER:  Q.  And so take a look at -- I

15    believe it's marked Exhibit 13.  Take a look at

16    Exhibit 13 for a second.  And does that refresh your

17    recollection about the vaccination requirement?

18    **A.   Yes.**

19    Q.   Okay.  And I see under the -- You recall

20    seeing this document; is that correct?

21    **A.   Yes.**

22    Q.   It has your name under it -- under "From:"  Do

23    you see that?

24    **A.   Yes.**

25    Q.   Did you draft this document or review it or --

                                                    11

1    A.    Yes.

2    Q.    Okay.  You drafted it?

3    A.    Yes.

4    Q.    It has a -- it looks like brackets under the

5    section that says, "To:" with the employee.  So this

6    would be -- I guess you would have employees --

7    individual employees' names typed into that?

8    A.    Correct.

9    Q.    All right.  And the date October XX, is that

10   20?  Or was that to be filled in later on the date?

11   A.    I'm not sure of your question.

12   Q.    Under Date: the second line --

13   A.    Yes.

14   Q.    -- it has "October"; it has two X's.  Does

15   that mean 20?

16   A.    Well, whatever date was to be selected in

17   there -- to go in there.

18   Q.    Got it.  Okay.

19   A.    So these were -- This is a template.

20   Q.    A template.  Okay.

21   A.    So you would drop the name and the date in.

22   Q.    All right.  It mentions a policy statement in

23   the first paragraph.  Do you see that?

24   A.    Yes.

25   /////

                                                    12

1      **(Whereupon, Exhibit 14 was marked for**

2      **identification.)**

3           MR. SNIDER:  Q.  And take a look at

4    Exhibit 14.  Does that look like the policy statement

5    mentioned in this memorandum?

6        **A.    It looks like it to me.**

7           Q.   To your knowledge, did that policy ever change

8    while you were working for BART?

9        **A.    Not that I recall.**

10          Q.   Look at the fourth paragraph of the policy

11   statement, which is Exhibit 14.  Do you see a

12   highlighted sentence?

13       **A.    Yes.**

14          Q.   Can you read that sentence into the record for

15   us?

16       **A.    "Therefore, all BART employees and Board**

17   **members shall be fully vaccinated against COVID-19 by**

18   **December 13th, 2021, with exceptions made only for those**

19   **who qualify for a reasonable accommodation or a**

20   **religious exemption."**

21          Q.   All right.  Did you run the draft of this

22   memorandum by any -- anyone else in BART?

23       **A.    Yes.**

24          Q.   Who?

25               MS. NUETZEL:  Are you referring now to

13

1    Exhibit 13?

2          MR. SNIDER:  Q.  Yeah.  Exhibit 13, the

3    memorandum.

4          A.   Yes.

5          Q.   Okay.  Who did you run that by?

6          A.   This was a collective effort.  This wasn't

7    just me writing this.

8          Q.   Okay.

9          A.   This was a group.  I don't recall everyone who

10   was involved.

11         Q.   Do you have a recollection of any of the

12   persons involved?

13         A.   Our general manager's office and potentially

14   the -- someone in Legal, of course, and my team as well.

15         Q.   For the general manager, do you recall the

16   person or persons?

17         A.   No.

18         Q.   How about in your team?

19         A.   It would have been Rod Maplestone.  He's the

20   manager.

21         Q.   Okay.  As to the statement of policy,

22   Exhibit 14, when was the first time you saw that

23   document?

24         A.   I don't remember.

25         Q.   You saw it prior to drafting the memorandum,

                                                          14

 1   Exhibit 13?

 2       A.   I would say so.

 3       Q.   How did you come across this policy statement?

 4       A.   I don't -- I don't recall.

 5       Q.   Under the policy statement, again Exhibit 14,

 6   it mentions a reasonable accommodation.  Do you see

 7   that?

 8       A.   Yes.

 9       Q.   How would an employee qualify for a reasonable

10   accommodation?

11       A.   Well, an employee would work with the leaves

12   department on my team, and they would have to submit the

13   appropriate request documents for review to that team.

14       Q.   And how would an employee qualify for a

15   religious exemption?

16       A.   They would have to submit the request to the

17   leaves department as well, and that team would review

18   it.

19       Q.   Were these the same documents?

20       A.   I don't recall if they're the same documents

21   or the same forms, but there is a written request that

22   would take place.

23       Q.   Okay.  Did you ever have occasion to look at

24   these documents, these forms that you mentioned?

25       A.   I've seen --

                                                         15

 1          MS. NUETZEL:  At any time?

 2          MR. SNIDER:  Q.  Yes, at any time.

 3     **A.   Yeah, I've seen them.**

 4          **(Whereupon, Exhibit 15 was marked for**

 5          **identification.)**

 6          MR. SNIDER:  Q.  Okay.  Can you take a look at

 7     Exhibit 15 in front of you.  You can see -- Go ahead and

 8     thumb through those.

 9          Have you seen those documents before?

10     **A.   Possibly.**

11     Q.   Do you know where you might have seen them?

12     **A.   At BART, when I worked there.**

13     Q.   So to your recollection, you didn't -- you

14     weren't involved in drafting them?

15     **A.   I was not involved in drafting these.**

16     Q.   Do you know what -- Do you recall whether or

17     not you reviewed them before they went out?

18     **A.   Possibly.**

19     Q.   Do you know if you had -- you recall having a

20     discussion with anyone in your department about these

21     forms prior to them going out?

22     **A.   Yes.**

23     Q.   Okay.  And who did you discuss them with?

24     **A.   It's been a while, so some of these details**

25     **are really vague for me now.**

                                                          16

1          These documents, including this notice, would
2     have been reviewed with the team, who would be
3     responsible for leading and issuing and managing the
4     process.  So Rod Maplestone is my point manager for this
5     area, and those discussions would have happened with
6     him.  And any documents for review he would have shared
7     with me, and we would have worked together on the
8     appropriate language for these documents.
9          Q.   Anyone else on that team that you recall
10    talking to about these documents?
11         A.   Probably the entire team was involved at some
12    point.
13         Q.   Roughly how many people would that be?
14         A.   Six or so.
15         Q.   To the best of your recollection, can you give
16    me the names of those six?
17         A.   I don't remember all of those individuals.
18         Q.   Can you give me any of them?
19         A.   Aside from Gizelle, I don't remember who is on
20    that team.  It's been a while, so I don't remember the
21    names.  I really don't.
22              (Whereupon, Exhibit 16 was marked for
23              identification.)
24              MR. SNIDER:  Q.  Okay.  Take a look at
25    Exhibit 16.  And why don't you thumb through those

                                                          17

1    pages.  Do you have any recollection of seeing those

2    documents before?

3         **A.    Yes.**

4         Q.    And what are those documents?  How would you

5    describe them?

6         **A.    On the fifth page -- Starting on the fifth**

7    **page, this is the standard operating procedure for the**

8    **process.**

9         Q.    Okay.

10        **A.    So the documents on top are the documents that**

11   **are utilized for the standard operating procedures.**

12        Q.    Okay.  All right.  So these were what -- you

13   call it the standard operating procedures --

14        **A.    Correct.**

15        Q.    -- for review of religious exemptions; is that

16   correct?

17        **A.    Correct.**

18        Q.    Okay.

19        **A.    This includes vaccine mandate requests.**

20   **Anytime we write a standard operating procedure, we have**

21   **a consistent template, whose role, what steps in that**

22   **process would be taken.  And on the very last page,**

23   **where it says, "Resources," any resources that guide or**

24   **direct or that are a part of that process are attached.**

25   **That way, it alleviates you having to search all over**

                                                          18

1    the place.  It's all one policy process.

2        Q.   I see.  What level of supervision or review

3    were you involved in for processing these documents?

4        A.   I'm always part of that review.

5        Q.   Okay.  When an employee filled out the

6    documents, which were -- I think it was Exhibit 15 --

7        A.   Yes.

8        Q.   -- would you have -- would you be part of

9    reviewing those documents?

10       A.   No.  You can see clearly in the standard

11   operating procedures for each role on the left column.

12       Q.   I'm sorry.  Can you tell me -- There may be --

13       A.   It's page 4 on your Exhibit 16.

14       Q.   Okay.  Thank you.

15       A.   So I think you passed it.

16       Q.   I passed it?  Okay.

17       A.   It's the fourth page.

18       Q.   Fourth page, okay.  Okay.

19       A.   Keep going.

20           MS. NUETZEL:  One more page.

21           MR. SNIDER:  Q.  One more page.  Actually, for

22   some reason, I've got an extra blank page, but I've seen

23   it.  Is this where you're seeing "Interviewers" with a

24   colon and some -- and two names?

25       A.   If you turn two more pages --

                                                       19

1    Q.   Two more pages.

2    **A.   -- that starts the standard operating**

3  **procedures.**

4    Q.   Okay.

5    **A.   It identifies the role of the individual that**

6  **manages this process or procedure on the left.**

7    Q.   Okay.

8    **A.   So each person has a role in that process.**

9    Q.   I see.  And then on Exhibit 16, were you

10  involved in reviewing any of those documents for

11  individual employees?

12    **A.   No.**

13    Q.   Okay.  That would have been -- The persons who

14  reviewed those would have been whom?

15    **A.   Well, if I may direct you back to the policy**

16  **itself --**

17    Q.   Please.

18    **A.   -- the roles are identified in this policy.**

19  **Employee submits the document that you have in your**

20  **Exhibit 16.  It then goes to the leave management**

21  **office.  That team takes the following review steps.**

22  **The employee then must submit any additional information**

23  **regarding that process.  So the roles are identified as**

24  **to who is the responsible party at each step.**

25        **This is just the policy.  And the documents**

20

1  related to that policy are always attached there.  So

2  it's identified in that policy who is responsible.  That

3  is the leave's office.

4      Q.  Okay.  Good.  Thank you for that explanation.

5  That's helpful.

6          To your knowledge, were these the only -- In

7  view of Exhibit 15 and 16, were these the only documents

8  that BART produced that were used in this standard

9  procedure?

10     A.  Yes.

11     Q.  Okay.  And you had supervisorial authority

12 over the reviewers; is that correct?

13     A.  Yes.  That team reported to me.  Yes.

14     Q.  All right.  And to your knowledge, was there

15 ever a time where you felt that it was -- they weren't

16 being fair?

17     A.  No.

18     Q.  Okay.  And the criteria that they used, as

19 you've explained, was standardized; is that correct?

20     A.  Correct.

21     Q.  And they treated everyone the same?

22     A.  Yes.

23     Q.  Were the reviewers -- were they given any

24 training to review these requests for religious

25 exemptions?

                                                    21

1    A.    These requests for religious exemptions, as

2    far as I know, the understanding was that this would be

3    led by Rod Maplestone and Gizelle.  So I wasn't aware

4    that anyone else on their team would be fully involved

5    aside from maybe coordination, organizing documents, so

6    on and so forth.  Decisions were Rod and Gizelle.

7    Q.    I see.  Do you know if Rod and Gizelle were

8    given any training by anyone in BART regarding reviewing

9    religious exemptions?

10    A.    Rod and Gizelle are the actual people who --

11    this is their -- this is what they do for a living.  So

12    they are responsible for any accommodation requests, any

13    other types of leave request.  They manage all of those

14    types of processes:  Laws, rules, regulations, things

15    like that.  They are responsible for staying educated on

16    their field as well as communicating that.  If any

17    changes happen; the new laws hit the organization; there

18    were multiple changes in terms of COVID-19 and what our

19    responsibilities were, they were responsible for

20    ensuring that that happened appropriately.  So this is

21    truly their field.

22    Q.    Okay.  Do you know if there was a panel that

23    would review requests for religious accommodation -- I'm

24    sorry.  Strike that.

25              Do you know if there was a panel that reviewed

                                                              22

1   requests for religious exemptions?

2       A.    Not to my knowledge.  I don't remember the

3   process in its entirety.

4       Q.    Okay.  But to your knowledge, the process was

5   uniform?

6       A.    Correct.

7       Q.    All right.  I'm going to shift back from

8   religious -- from the review of the religious exemptions

9   over to accommodations.  When you wrote your memo in

10  October of 2021, did you anticipate that BART would

11  grant any reasonable accommodations?

12      A.    I don't -- I don't think we were in the

13  mindset of anticipating.  This document or the

14  communication was for the mandate.  And those who wish

15  to seek any accommodations would follow our normal

16  process for seeking accommodations.

17      Q.    Okay.  Do you know if there were any medical

18  accommodations granted?

19      A.    I believe so.

20      Q.    Are you familiar with a Lieutenant Aaron

21  Ledford?

22      A.    No.

23      Q.    At some point, did you ever become aware that

24  BART did not grant any reasonable accommodations for

25  religious objectors?

                                                        23

1    A.    Yes.

2    Q.    When did you first discover that?

3    A.    I don't recall when I discovered it.  There

4    were timelines under which you must submit.  And under

5    those timelines, if you did not, then we followed the

6    process to advise that you had not submitted your proof

7    of vaccination.  And as the notices were issued,

8    individuals who didn't submit the vaccination proof

9    submitted the request for an accommodation under either

10   the religious or the medical.  And then the process went

11   from there.

12           Everyone was reviewed on different dates,

13   different times because of the volume.  And they were

14   responded to.  And we just kept track of -- or Rod's

15   team kept track of that until such time we were at the

16   point of here were the notices finalized, and these were

17   denied.  And now we're moving to the next step of the

18   separation process.

19   Q.    Right.

20   A.    And I think that went well into March of the

21   next year.

22   Q.    I see.  Going back to employees not being

23   granted accommodations -- I mean, I'm talking about

24   religious objectors.

25   A.    Yes.

                                                    24

1    Q.   Did anyone that you're aware of under you

2  mention that no religious accommodations were being

3  granted?

4         MS. NUETZEL:  At any point in time?  That's

5  vague.

6         MR. SNIDER:  Q.  Let's go from November 1st of

7  2021 until the process ended in March of 2022.

8    **A.   I think that's, kind of, a blanket statement.**

9  **So I'll be -- I'll just attempt to clarify.**

10        **As those individual requests were reviewed, if**

11  **they were denied, at a point in time when I connected**

12  **with that manager, Rod Maplestone, we have regular**

13  **one-on-one meetings; we have team meetings.  That's when**

14  **he would communicate.  There was too much volume.  This**

15  **is one of multiple program areas I oversee, with many**

16  **layers.  So at points and times through the process, Rod**

17  **would update me on where he was with those requests and**

18  **had anyone then subsequent to that submitted the proof**

19  **of vaccination.**

20   Q.   Did you ever ask him how many requests for

21  religious accommodation were granted?

22   **A.   I believe so, yes.**

23   Q.   And do you recall that conversation?

24   **A.   No.**

25   Q.   Do you recall ever being told by Rod that no

                                                      25

1  request for religious accommodation were granted?

2      A.   I don't -- I don't believe he said that.  He

3  kept me posted as he reviewed each request.  When we

4  potentially got to the end, we were all knowledgeable of

5  where we were going with the review based on his

6  communication to us.  But I don't ever recall him making

7  a complete statement that none of them were granted.  I

8  don't recall him saying that.

9        It was clear that, at the end of this, when we

10  wrapped it up, we knew that those who weren't granted,

11  some subsequent to that did go and get the vaccine and

12  submitted their proof of vaccination.  And then those

13  that didn't, we went to the next phase of the process.

14      Q.   So Mrs. Thomas, at some point did you realize

15  that not one religious objector was granted an

16  accommodation?

17      A.   Yes.

18      Q.   And when was that?  Was that February/March of

19  2022?  Was it before that?

20      A.   It potentially could have been February or

21  March.

22      Q.   Did Rod or anyone else below you give you an

23  explanation for that?

24      A.   I believe we had discussions.

25      Q.   Tell us about those discussions.

26

1     A.   I don't recall them specifically, but of

2  course, we talked about -- This was something that many

3  organizations were moving to.  So we weren't oblivious

4  to our counterparts who were also looking at this

5  process with the same mandates.  I believe San Francisco

6  City and County moved toward the process prior to us.

7          And so we, kind of, talked about, you know,

8  just everything in regards to what was happening around

9  this topic.

10     Q.   When you mentioned your counterparts, I think

11  you've identified San Francisco.  Any other

12  counterparts?

13     A.   Not that I recall.

14          And I mean counterparts in terms of the kind

15  of work we do in human resources.

16     Q.   Okay.

17     A.   So most agencies have a leaves program, where

18  you receive accommodations.  And so we may discuss or

19  look into what other agencies were doing.

20     Q.   Were those agencies -- were they government

21  agencies?

22     A.   Yes.

23     Q.   Okay.  Were they primarily local?  State?

24  National?  Can you give me -- Was it a potpourri of

25  agencies?

27

1    **A.    None.  I'm speaking in general terms.  We**
2    **spoke possibly with San Francisco City and County, and**
3    **any other agencies or discussions that happened I'm not**
4    **aware of that.**
5        Q.   Were you ever informed by anyone in management
6    in BART that unvaccinated employees would pose an
7    immediate danger?
8             MS. NUETZEL:  At any point in time?
9             MR. SNIDER:  Q.  Let's go from, oh,
10   August 1st, 2021 until the end of the year,
11   December 31st, 2021.
12       **A.    Can you repeat the question?**
13       Q.   Certainly.  Were you ever told by someone in
14   BART management that unvaccinated employees would pose a
15   danger of some kind?
16       **A.    No.**
17       Q.   Are you a BART rider yourself?
18       **A.    No.**
19       Q.   Have you ever ridden a BART train?
20       **A.    Of course.  I grew up on BART.**
21       Q.   Okay.  To your knowledge, does BART have the
22   authority to ban a member of the public from riding a
23   train?
24       **A.    I wouldn't know.**
25       Q.   Are you familiar with BART employees having

                                                          28

1    transportation passes?

2         **A.    Yes.**

3         Q.    Okay.  Upon retirement from BART, does an

4    employee retain that pass?

5         **A.    I believe so.**

6         Q.    Do you know, in your department that you

7    directed, was there any responsibility about revoking

8    passes, transportation passes?

9              MS. NUETZEL:  Objection.  Vague and ambiguous.

10             You can answer if you understand what he's

11   asking.

12             THE WITNESS:  Can you repeat the question?

13             MR. SNIDER:  Q.  Certainly.  In your

14   department, was there ever a time when you would be

15   responsible -- or I'm sorry, your department would be

16   responsible for revoking transportation passes?

17        **A.    Yes.**

18        Q.    And what would be the circumstances for that?

19        **A.    Misuse of a pass.**

20        Q.    Can you give me an example?

21        **A.    There are policies around families.  I believe**

22   **you are granted -- And let me just say I'm just going to**

23   **remember as much as I can.**

24             **So overall, you receive a pass, and your**

25   **family receives a pass -- excuse me -- and if you loan**

                                                            29

1  that out to anyone, under those circumstances you could
2  potentially lose your benefit to that.

3      Q.  So for example, you give your pass to your
4  nephew or your neighbor?

5      A.  Correct.

6      Q.  Okay.  When a BART employee resigns or was
7  fired, did they lose their transportation pass?

8      A.  Potentially.

9      Q.  Are there circumstances where they would keep
10 it?

11     A.  I don't -- I don't know.

12     Q.  To your knowledge, were any religious
13 objectors to vaccination placed on unpaid administrative
14 leave?

15     A.  I don't -- I don't remember.

16     Q.  Do you understand correctly that the memo of
17 October 2021 that you sent out about the vaccine mandate
18 gave employees approximately two months to get
19 vaccinated?

20     A.  Yes.

21     Q.  During that two-month period, were employees
22 still working at BART venues?

23     A.  Yes.

24     Q.  Do you know if any unvaccinated BART employees
25 were asked to return to work for a period of time after

                                                    30

1    noncompliance with the vaccination directive?

2        A.    I believe so.

3            (Whereupon, Exhibit 17 was marked for

4            identification.)

5            MR. SNIDER:  Q.  Take a look at a document in

6    front of you labeled as Exhibit 17.

7        A.    Yes.

8        Q.    Do you recognize that document?

9        A.    Yes.

10        Q.    Whom was it addressed to?

11        A.    Antonio Gonzales, the Third.

12        Q.    Did you send out other memos like this?

13        A.    I didn't personally, no.

14        Q.    Do you know if other memos like this were sent

15    out?

16        A.    Yes.

17        Q.    And did you draft this document?

18        A.    Well, the template was drafted.  So normally

19    what happens is, as a department head, notices are

20    issued under my name.  The document may be drafted by

21    any particular manager in that specialty area.  We both

22    review the document to make sure that it's consistent,

23    that it reads well, that it's in compliance with what

24    we're trying to articulate.  And then that manager and

25    their team utilize the document so that the language is

                                                        31

1  consistent, where necessary, and inserts the

2  individuals' names and date.

3      Q.   Do you see the second paragraph that's bolded?

4      A.   Yes.

5      Q.   Could you read the first sentence into the

6  record for us?

7      A.   On Exhibit 17?

8      Q.   Yes, please.

9      A.   "All employees must submit proof of COVID-19

10  vaccination by December 13th, 2021, or else they will be

11  in violation of the District policy and will be subject

12  to termination of employment."

13      Q.   Do you know who made the decision that

14  employees would be subject to termination for not being

15  vaccinated?

16      A.   The Board did.  It's a condition of

17  employment.

18      Q.   How did the Board communicate that to you?

19      A.   I don't know if they communicated it directly.

20  I don't recall all of the discussions.

21          But in Human Resources, when you fail to

22  adhere to policy that could result in disciplinary

23  action up to termination, there are certain

24  circumstances where some of these actions could result

25  in direct termination.

                                                        32

1     Q.   Is there a person who -- in BART who serves as

2   a liaison between the Board and you?

3     **A.   Well, that's the general manager's office.**

4     Q.   General manager.  Okay.

5          So that person, that office would provide

6   communications to you regarding the Board; is that

7   correct?

8     **A.   Well, I'm involved with those meetings.**

9     Q.   I'm sorry.  What meetings are those?

10    **A.   Our general meetings, our executive meetings**

11  **around Board decisions.  I attend the Board meetings.**

12  **So of course, I was in those meetings.**

13    Q.   So at those meetings, let's say -- let's break

14  them down.  The Board meetings -- You at a Board meeting

15  learned of the -- that employees would be subject to

16  termination; isn't that correct?

17    **A.   No.  It doesn't work like that.**

18    Q.   Okay.

19    **A.   I think the discussion came about that the**

20  **Board determined that, as a condition of employment,**

21  **they want to make sure that the vaccine -- all employees**

22  **are vaccinated, basically.  And so failure to be**

23  **vaccinated by a certain date would mean either you go**

24  **through the path of a reasonable accommodation, and here**

25  **is that path to be reviewed and determined, or you would**

33

1    get vaccinated and submit that proof of vaccination.

2         Now, the discussions around it, there was so

3    much going on, I can't land on a sentence for you.  I

4    cannot be that specific for you.

5         Q.   Okay.  Fair enough.

6              Do you know if the vaccination requirement

7    applied to contractors working for BART?

8         A.   All employees working for BART.

9         Q.   How about persons that aren't employees but

10   they are outside independent contractors?

11        A.   If they were going to be working with BART,

12   they had to be vaccinated.

13        Q.   So if they were on a BART venue --

14        A.   All -- As far as I know, everyone, whether you

15   are a contractor, a temporary employee or a permanent

16   employee, everyone must be vaccinated.

17        Q.   Do you know how that was monitored by BART?

18        A.   I don't recall.

19        Q.   Do you know how it was enforced by BART?

20        A.   I don't recall.

21             MR. SNIDER:  Let me just look at my notes for

22   just a moment.  We'll go off the record.

23             (Brief pause in proceedings)

24             MR. SNIDER:  Let's go back on the record.

25        Q.   A couple more questions for you.

                                                          34

1          Do you know approximately how many

2    unvaccinated religious objectors were terminated from

3    employment?

4          **A.    I don't recall the exact number.**

5          Q.    Can you give me an estimate?

6          **A.    86.**

7          Q.    Okay.  Do you know if there was a standard

8    process for the termination of unvaccinated employees?

9          **A.    Yes.**

10         Q.    Okay.  What was that process?

11         **A.    All terminations follow the same process.  So**

12   **if they are represented by a union, they are entitled to**

13   **their Skelly hearing, and that's one process.  If they**

14   **are nonrepresented, there's another process that they go**

15   **through in order to have the option to say, "I don't**

16   **feel I should be terminated, and here is the reasons as**

17   **to why."**

18         **So both paths have -- Even without the**

19   **mandate, that's the process and path for any**

20   **terminations that we take.**

21         Q.    Okay.  Do you know how many employees

22   requesting medical exemptions from vaccination who

23   ultimately did not get vaccinated were terminated?  Do

24   you have an estimate for that number?

25         **A.    No.**

35

1       MR. SNIDER:  That's all the questions I have.

2       Madam Reporter, can I get an expedited

3  transcript?

4       THE REPORTER:  Yes.

5       MS. NUETZEL:  I want to ask one question for

6  clarification.

7  EXAMINATION BY MS. NUETZEL:

8     Q.   At the beginning of the deposition, Mr. Snider

9  asked you what dates you were employed by BART, and you

10 said August 2020 to May of 2021.  Was that date actually

11 May of 2022?

12     **A.   2022, yes.**

13       MR. SNIDER:  Good catch.

14       MS. NUETZEL:  It wasn't making sense.  I had

15 assumed she had misspoken.

16       MR. SNIDER:  I think I projected the date.

17       THE WITNESS:  And clarification on the other

18 depositions.  We were -- Our team were the defendants in

19 that case for that deposition at Sacramento State

20 University.

21       MS. NUETZEL:  Thank you.

22       MR. SNIDER:  All right.  That's all I've got.

23 Thank you.

24       THE REPORTER:  Ms. Nuetzel, same order as

25 Friday's job?

                                                        36

1          MS. NUETZEL:  Yes, please.  Thank you.

2          (Whereupon, the deposition was concluded at

3  10:58 a.m.)

4                  ---o0o---

5

6

7

8

9

10

11

12

13

14    _____

15            VERONICA RIVERA BADONG THOMAS

16

17

18

19

20

21                ---o0o---

22

23

24

25

                                   37

1   STATE OF CALIFORNIA      )  SS.

2

3           I do hereby certify that the witness in the

4   foregoing deposition was by me duly sworn to testify to

5   the truth, the whole truth, and nothing but the truth in

6   the within-entitled cause; that said deposition was

7   taken at the time and place therein stated; that the

8   testimony of the said witness was reported by me, a

9   certified shorthand reporter and disinterested person,

10  and was under my supervision thereafter transcribed into

11  typewriting, and when so transcribed was carefully read

12  to or by the said witness, and, being in every desire,

13  was thereafter by the said witness duly subscribed; that

14  if unsigned by the witness, signature has been waived in

15  accordance with stipulation between counsel for the

16  respective parties.

17          And I further certify that I am not of counsel

18  or attorney for either or any of the parties to said

19  deposition nor in any way interested in the outcome of

20  the cause named in said caption.

21          IN WITNESS WHEREOF, I have hereunto set my

22  hand this 27th day of September, 2023.

23

24  _____

25          CLARE MACY, Certified Shorthand Reporter

                                                    38

# SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT

## MEMORANDUM

**TO:**     [Employee Name]

**DATE:**   ~~October XX, 2021~~

**FROM:**   Veronica Thomas, Director of Human Resources

**SUBJECT:** Proof of Full COVID-19 Vaccination Required by December 13, 2021

On October 14, 2021, the BART Board of Directors approved a policy statement mandating COVID-19 vaccinations of employees. Attached is the memo from the General Manager dated October 18, 2021 along with the policy statement.

The approved policy requires individuals to be ~~fully vaccinated by December 13, 2021.~~ In general, people are considered fully vaccinated two weeks after their second dose of a two-dose series such as Pfizer or Moderna vaccines, or two weeks after a single-dose vaccine, such as Johnson and Johnson.

**Based on our records, you have not submitted a proof of COVID-19 vaccination or there is no proof of COVID-19 vaccination on file. Therefore, you are considered unvaccinated and must show proof of full vaccination by December 13, 2021 or else you will be in violation of the District Policy and subject to disciplinary action up to and including termination.**

To submit your proof of vaccination, you can attach a copy of your CDC card, California's digital vaccine record, or the WHO Yellow Card to the Employee Self-Attestation Online Form by visiting EmployeeConnect and clicking "Main Menu" – "Employee Self-Attest Form" – and then adding and uploading the file. For additional submission options, please see COVID-19 Updates and Info, under the Employee Information section on EmployeeConnect.

To confirm submission of your proof of vaccination, you can check EmployeeConnect under the Employee Self Attest Form Section. If you have a proof of vaccination on file, it will be attached and you will be able to view your document. Please note, just self-attesting "Yes" on the Self Attest Form is not sufficient to be considered vaccinated. In addition, if your submission is not acceptable, you will be notified.

The District will be holding COVID-19 vaccination informational sessions. A list of sessions will be posted on EmployeeConnect. A video of the COVID informational session will also be available on Employee Connect. Additional COVID-19 vaccination clinics are being scheduled on-site. Please see EmployeeConnect for a listing of dates, times and locations. You can also locate a COVID-19 vaccine site near you, by going to www.vaccines.gov or by contacting your medical provider.

If you are unvaccinated and would like to request a medical accommodation or religious exemption, please go to EmployeeConnect, COVID19 Updates and Info, complete an exemption form and submit it to Leave Management at hrdp@bart.gov. If you have questions regarding the exemption process, please email Leave Management at hrdp@bart.gov.

EXHIBIT
13
THOMAS  9/25/23



**Coronavirus Pandemic – (COVID-19)**

**Statement of Policy:**

The Coronavirus Pandemic of 2019 ("COVID-19") has brought tremendous challenges to the San Francisco Bay Area Rapid Transit District ("BART"). Since the national emergency shutdown in March 2020, when ridership dropped below 5%, BART has lost over 20,960 days of productivity and had 2,377 employees use pandemic related leave demonstrating the breathtaking toll the pandemic has had on our staff and service. Those effects continue as we face challenges with the Delta variant increasing the transmissibility of the disease. In response to the pandemic and its variants, numerous federal, state, and local entities, including three of the four largest counties in the Bay Area, have implemented vaccination requirements to protect workers and the public.

Whereas in winter 2020 BART saw between a three- and nine-fold increase in cases, and the current prevalence of the Delta variant causing positive cases at a 54% higher rate for unvaccinated employees, BART must take responsible action to protect our ability to function. BART has a duty to provide a safe and healthy workplace, consistent with COVID-19 public health guidance and legal requirements, to protect its employees and the public as services reopen and more employees return to workplaces.

According to the federal Centers for Disease Control and Prevention ("CDC"), the California Department of Public Health ("CDPH"), and County Health Officers, COVID-19 continues to pose a risk, especially to individuals who are not fully vaccinated, and certain safety measures remain necessary to protect against COVID-19 cases and deaths. Vaccination is the most effective way to prevent transmission and limit COVID-19 hospitalizations and deaths. Unvaccinated employees are at greater risk of contracting and spreading COVID-19 within the workplace and BART facilities, as well as to the public that depends on our services.

Therefore, all BART employees and Board members shall be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or a Religious Exemption. The Board also directs the General Manager to bargain over the policy and impacts of this decision prior to the requested implementation of the policy on December 13, 2021. During this time the Board directs BART to prioritize culturally competent outreach and conduct an education campaign for the remaining unvaccinated population. Finally, the Board directs the General Manager to implement vaccination requirements for consultants and contractors who perform work on BART property.



**BART_0000018**



**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**
SUPPLEMENTAL DOCUMENTATION

| Employee Name | Employee ID Number |
|---|---|
| | |

In response to your request for a religious exemption to the COVID-19 vaccine, we are requesting additional information needed to process your request.

| 1. | If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. |
|---|---|

> **EXHIBIT**
> FENGAD 800-631-6989
> 15
> THOMAS
> 9/25/23

| 2. | Please also provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. |
|---|---|

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____          _____
Employee Signature                                              Date

| Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know. |
|---|

FOR LEAVE MANAGEMENT USE ONLY

| Date Received: ___/___/_____ | Documentation Included? ☐YES ☐NO |
|---|---|
| Date Documentation Received: ___/___/_____ | |

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

**BART 0000012**



**BART**

**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

| | Date of Request | |
|---|---|---|
| **Employee Name** | | **Employee ID Number** |
| | | |
| **Job Title** | | **Email Address** |
| | | |
| **Union (or Non-Rep)** | | **Supervisor/Manager** |
| | | |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

## EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| | |
|---|---|
| 1. My religion or belief system is (enter description): | |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): | |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): | |

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

**BART 0000013**



**EMPLOYEE REQUEST FOR
RELIGIOUS EXEMPTION
(COVID-19 Vaccination)**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.

6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____          _____
**Employee Signature**                                                                    **Date**

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____



## EMPLOYEE REQUEST FOR
## RELIGIOUS EXEMPTION
## (COVID-19 Vaccination)

| Date of Request | | |
|---|---|---|
| Employee Name | | Employee ID Number |
| | | |
| Job Title | | Email Address |
| | | |
| Union (or Non-Rep) | | Supervisor/Manager |
| | | |

The San Francisco Bay Area Rapid Transit District ("District") is committed to equal employment opportunities for all employees and a work environment that is free of unlawful harassment, discrimination, and retaliation. Consistent with this commitment, the District complies with all laws protecting employees' religious beliefs, practices, and observances. When requested, the District will provide an exemption or reasonable accommodation for employees' sincerely held religious beliefs, practices, and observances, which prohibit the employee from receiving a COVID-19 vaccination, provided the accommodation is reasonable, the employee is able to perform the essential functions of their job, and the accommodation does not create an undue hardship for the District or pose a direct threat to the health and/or safety of the employee or others in the workplace.

As voted on by the Board of Directors on October 14, 2021, a Statement of Policy was approved mandating that all employees and Board members be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or Religious Exemption.

A religious exemption may be considered for any District employee who: (1) holds a sincere religious belief that conflicts with the vaccination requirement, (2) completes this request form, and (3) provides any information needed to support the exemption request.

## EMPLOYEE CERTIFICATION

I request an exemption from the District policy requiring COVID-19 vaccinations for all District employees. I make this request based on my sincerely held religious belief(s), practice(s), or observance(s). My beliefs are in conflict with the vaccination requirement, and I certify the following is true:

| |
|---|
| 1. My religion or belief system is (enter description): |
| |
| 2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year): |
| 3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it): |
| |

135325.1 PLEASE SEND COMPLETED FORM ALONG WITH SUPPORTING DOCUMENTATION TO HRDP@BART.GOV

**BART 0000015**



**EMPLOYEE REQUEST FOR**
**RELIGIOUS EXEMPTION**
**(COVID-19 Vaccination)**

4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).

5. If requested, I can provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance. ☐YES ☐NO

I hereby certify that I make this request based on my sincerely held religious beliefs that prevent me from complying with COVID-19 vaccination requirements. I understand that any falsified information can lead to disciplinary action, up to and including termination of employment.

I also understand that my request for an accommodation may not be approved if it is not reasonable, if I am unable to perform the essential functions of my job, if it poses a direct threat to the health and/or safety of others in the workplace and/or me, or if it creates an undue hardship for the District.

_____         _____
Employee Signature                          Date

Please note that this information will be maintained in a separate confidential file from your personnel file and access will be limited only to those with a need-to-know.

FOR LEAVE MANAGEMENT USE ONLY

Date Received: ___/___/_____          Documentation Included? ☐YES ☐NO

Date Documentation Received: ___/___/_____

**BART 0000016**

Case 3.22 cv 00110 Document 1 1

**RELIGIOUS EXEMPTION REQUEST REVIEW FORM (COVID-19 Vaccination)**

**ba** B A R T

**Date of Review**

| Employee Name | Employee ID Number |
|---|---|
| | |

**To be completed by reviewer:**

1. Form has been completed entirely and is signed and dated by employee, and supporting documentation provided? ☐Yes ☐No

2. Is there evidence the employee has acted in a way that is inconsistent with the claimed belief? ☐Yes ☐No

   If "Yes," please explain:

3. Is there evidence the employee is seeking a benefit or an exception that is likely to be sought for nonreligious reasons? ☐Yes ☐No

   If "Yes," please explain:

4. Is the timing of the request considered questionable? ☐Yes ☐No

   If "Yes," please explain:

5. Is there evidence the employee may be seeking the benefit for secular reasons? ☐Yes ☐No

   If "Yes," please explain:



EXHIBIT
16
THOMAS  9/25/23
PENGAD 800-631-6989



**RELIGIOUS EXEMPTION
REQUEST REVIEW FORM
(COVID-19 Vaccination)**

| Employee Name | Employee ID Number |
|---|---|
|  |  |

6.  Is additional information needed to make a determination? ☐Yes ☐No

If "Yes," please explain:

7.  Are there inconsistencies in the documentation provided? ☐Yes ☐No

If "Yes," please explain:

**Determination**

Based on the review of evidence provided, the request for a religious exemption to the COVID-19 vaccine is:

☐Approved ☐Denied Based on the following:

If approved, the accommodation is:

_____          _____
Name of Reviewer                                    Date



| | LEAVE MANAGEMENT |
|---|---|
| **Human Resources Department** **Standard Operating Procedures** | **RELIGIOUS EXEMPTION TO VACCINE MANDATE REQUESTS** |
| | 10/15/21 |
| | 10/27/21 |

**This SOP identifies the steps for employees to request a vaccine mandate exemption either for medical reasons or religious exemption. Please note that employee requests for the COVID-19 vaccine mandate medical accommodation Requests will be evaluated using the current Reasonable Accommodation request practices.**

| | |
|---|---|
| **Employee** | **Submit request for religious exemption to Leave Management** <br><br> • Written request sent to <u>HRDP@bart.gov</u> <br> • Verbal request to Rod Maplestone, Manager of Leave Programs, by phone at 510-464-6198 <br> • By verbal report to Manager/Supervisor who will then direct employee to contact Leave Mangement by phone or email <br> • By referral from HR COVID-19 hotline <br> • Completed request form obtained on EmployeeConnect sent to <u>HRDP@bart.gov</u> |
| **Leave Management** | **Confirmation of Request** <br><br> • Submit **Initial Email Acknowledgement** to employee request and to send if not provided in initial request: <br>     o ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br>        ▪ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br>     o Inform employee of up to **7-businessday review period** <br><br> • Review request for completeness and request clarification and/or additional information with due date for response (7 days) <br> • ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br>     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 1 week) <br>     o If employee requests additional time, grant if reasonable (1-2 weeks) |
| **Employee** | **Submit Religious Exemption form and documentation to Leave Management** <br><br> • Completed form and any supportive documentation must be submitted to Leave Management by email to request sent to <u>HRDP@bart.gov</u> |

**Please contact Rod Maplestone/Manager of Leave Programs at (510) 464-6198 for changes to this Job Aid.**

**BART 0000235**

| | |
|---|---|
| **Leave Management Analyst**<br><br>**(with active participation by employee)** | **Review complete request and all supporting documentatin provided**<br><br>• Confirm that Request Form is complete and that additional documentation is valid (e.g., should be PDF with letterhead and signature if from Religious Institution)<br>    ○ If necessary, request addional documentation and/or clarification with due date (7 days)<br><br>• Confer with the employee, if needed, to better understand the basis of their sincerely held believe and how it prevents them from receiving a vaccine and or to understand any accommodation request they may be making<br><br>• Review each form using the **Religious Exemption Request Review Form**<br>    ○ Review for the following four factors the EEOC has identified as an objective basis for questioning the religious nature or sincerity of a belief or practice:<br><br>    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>    ▆▆▆▆▆▆▆<br><br>    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br><br>    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br><br>• Complete the **Religious Exemption Request Review Form** indicating a determination regarding the religious exemption request and further evaluate whether the request can be reasonably accommodated for the following criteria:<br><br>    1. **Employee remains able to perform the essential functions of the job**<br><br>    2. **Request does not pose a direct threat to the health and/or safety of others in the workplace**<br><br>    3. **The request does not create undue hardship for the District** |
| **Leave Management** | **Communicate determination with employee**<br><br>• If the request is granted and an accommodation has been agreed to by employee, Union Leadership, and Leave Management):<br>    ○ Send the employee a **Religious Exemption Agreement Document** outlining the terms of the agreement, clearly identifying the responsibilities of all parties<br>    ○ Obtain both employee and Union signatures on the document<br>    ○ Share copies of all documents with signing parties and store in separate record file (not employee file) |

**Please contact Rod Maplestone/Manager of Leave Programs at (510) 464-6198 for changes to this Job Aid.**

BART 0000236

|  | • Continue to monitor the accommodation and engage with the employee as necessary |
|--|--|
|  | ████████████████ |
|  | • Send a **Religious Exemption Denial Letter** explaining that the request is denied due to one of the following reasons:<br>   o Religious exemption is not granted<br>   o No accommodation could be identified |
|  | • Notify the employee of their option to appeal to the Office of Civil Rights for further review |
|  | • Letter should provide the following options to the employee:<br>   o Request an extension to the 12/13/21 deadline to obtain the vaccine and be fully vaccinated<br>   o Review options for retirement (if eligible)<br>   o Resign from employment with the District |
|  | • Inform employee that if no action is taken and they do not comply with the vaccine mandate, they will be subject to disciplinary action up to and including termination of employment |
| **RESOURCES** | • **Intial Email Acknowledgement TEMPLATE**<br>• **Religious Exemption Agreement Document TEMPLATE**<br>• **Religious Exemption Denial Letter TEMPLATE**<br>• **<u>Religious Exemption Request Form (V1)</u>**<br>• **<u>Religious Exemption Request Form (V2)</u>**<br>• **Religious Exemption Request Review Form**<br>• **Supplemental Religious Exemption Request Form** |

Reviewed & Approved By:

_____          _____
[MANAGER/SUPERVISOR NAME]          *Date*
[MANAGER TITLE]

_____          _____
[MANAGER/SUPERVISOR NAME]          *Date*
[MANAGER TITLE]

_____          _____
*Veronica Thomas*          *Date*
*HR Director*

**Please contact Rod Maplestone/Manager of Leave Programs at (510) 464-6198 for changes to this Job Aid.**

Employee Name
Employee ID
Title
Interview Date and Time

## Religious Exemption Interviews

Interviewers:  Rod Maplestone, Manager of Leave Programs
Gizelle Huynh, Supervisor of Leave Management

EEOC factors:

☐ The reasons cited in support of the request were primarily for secular/non-religious reasons.

☐ A clear nexus between the request and the stated religious beliefs was not established.

☐ Evidence of behaviors inconsistent with adherence to the stated beliefs exists.

☐ The timing of your request as it relates to adoption of the stated beliefs.

*Introduction:  We are not questioning the sincerity of your belief, just assess if the Religious Exemptions applies to you.  We reviewed all of the documents to support your Religious Vaccination Exemption Request.  We wanted to have a quick discussion with you to ask some clarifying questions, it shouldn't take longer than 10-15 minutes.  We are not questioning your faith or that you have this sincerely held belief but just wanted to give you the opportunity to provide some clarification.  From here: if approved, RA; if denied, then remaining options: get vaccine, retirement/resignation, if do nothing out of compliance.*

INTERVIEW QUESTIONS:

1. Can you just tell us briefly about your sincerely held belief?
2. Can you tell us in your own words why taking COVID-19 vaccine is contrary to your religious belief?
3. What do you think will happen to you if you take the COVID-19 vaccine?
4. Can you provide us other examples of how this religious belief is demonstrated in other aspects of your life?
5. You refuse to take the COVID-19 vaccine because of the alleged use of aborted fetal cells in the creation of the vaccine.  Research on this topic has revealed some cosmetic and over-the-counter medicines may use the same process the COVID-19 vaccine.  Are you aware of this?  Tell me how else you demonstrate the same pre-cautions in your life.

Determination:

☐ Approved

☐ Denied

- **Employee Name**
- **Employee ID**
- **Title**
- **Interview Date and Time**

**SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT**

**MEMORANDUM**

**TO:**     Antonio Gonzalez III
1771 Westwood Drive
Concord, CA 94521



**DATE:**     November 26, 2021

**FROM:**     Veronica Thomas, Director of Human Resources

**SUBJECT:**     Reminder Proof of Full COVID-19 Vaccination Required by December 13, 2021

This is a follow up memo to a notice that was mailed out to you in October 2021. If you have not provided proof of full vaccination and you are considered unvaccinated. Even if you have submitted proof of one-dose of a two-dose vaccine, you are still considered unvaccinated until you complete the process. As a reminder, based on the Vaccine Mandate Policy approved by the Board of Directors on October 14, 2021, all BART employees, contractors, and Board of Directors are required to be fully vaccinated by **December 13, 2021**. Individuals are considered fully vaccinated two weeks after their second dose of a two-dose series such as Pfizer or Moderna vaccines, or two weeks after a single-dose vaccine, such as Johnson and Johnson. The Board of Directors has not made any changes to this deadline.

**All employees must submit proof of COVID-19 vaccination by December 13, 2021, or else they will be in violation of the District Policy and will be subject to termination of employment. Employees on any type of leave before, on, or after December 13, 2021, are still required to submit proof of COVID-19 vaccination by December 13, 2021, to be in compliance with District Policy.**

District management and labor partners are finishing their meet and confer process. Please be advised, that COVID-19 testing in lieu of vaccination will not be available.

To submit your proof of vaccination, you can attach a copy of your CDC card, California's digital vaccine record, or the International Certificate of Vaccination as approved by the World Health Organization (WHO) Yellow Card to the Employee Self-Attestation Online Form by visiting EmployeeConnect and clicking "Main Menu" – "Employee Self-Attest Form" – and then adding and uploading the file. For additional submission options, please see COVID-19 Updates and Info, under the Employee Information section on EmployeeConnect.

Proof of vaccination status can be submitted via email to vaccine@bart.gov. **If you are currently in the process of becoming vaccinated, please upload your vaccination card after your first dose.** However, if you are reporting one dose of a two-dose vaccine, you will still be required to re-submit your information showing you received both doses to be considered fully vaccinated by December 13, 2021.

To confirm submission of your proof of vaccination, you can check EmployeeConnect under the Employee Self Attest Form Section. If you have a proof of vaccination on file, it will be attached, and you will be able to view your document. Please note, simply self-attesting "Yes" on the Self Attest online Form is not sufficient to be considered vaccinated. In addition, if your submission is not acceptable, you will be notified.

BART_0005192

The District has partnered with Kaiser Permanente through our CalPERS Wellness Initiative to provide on-site vaccine clinics at the Hayward and Concord Shops for BART employees on Thursday, December 2, 2021. The vendor will be offering all 3 types of vaccines: Johnson and Johnson/Janssen (1-dose), and Pfizer and Moderna (2-dose). For those getting a 2-dose, the 2nd appointment will be scheduled at the event for a different location.

| | |
|---|---|
| Morning | December 2, 2021 from 7 am to 9 am |
| | Hayward Shop, 150 Sandoval Way, Hayward, CA 94544 |
| Afternoon | December 2, 2021 from 3 pm to 5 pm |
| | Concord Shop,1045 San Miguel Road, Concord, CA 94518 |

**Unvaccinated employees have priority to sign-up and will have until Monday, November 29, 2021, to schedule an appointment at one of the on-site clinics. If spaces are available those who want boosters can sign up starting on November 30, 2021.**

You will need to:

1) Sign up online through the link below. Walk-ins will be taken if there is space available.

   Link for Concord: **www.mhealthsystem.com/BartConcord**

   Link for Hayward: **www.mhealthsystem.com/BartHayward**

2) Fill out and print the Consent form and bring it with you. Forms will be available on-site.
3) Bring your medical insurance card.*
4) Wear a short sleeve shirt to the appointment.
5) For boosters, you will need to bring your CDC card or have your digital code with the date of your 1st and/or 2nd vaccination

**\*There is no cost to the employee. The vaccine is free. The vendor charges your medical provider for the administrative fee.**

After getting your vaccination, you are required to wait in the designated waiting area for 15-30 minutes.

We are not able to offer this opportunity to friends or family members of employees at this time. Employees or their family members have the following options to get a vaccine or booster:

- Contact your medical provider to schedule an appointment.
- Check with your local retail pharmacy, such as Safeway, CVS, Rite Aid, Walgreens, etc.
- Visit www.vaccines.gov to find a vaccine clinic near you offering the vaccine of your choice.

For assistance with signing up, please contact the HR COVID19 Team at 510-464-6219 or HRCOVID19@bart.gov.

If you are unvaccinated and would like to request a medical accommodation or religious exemption, please go to EmployeeConnect, COVID19 Updates and Info, complete an exemption form and submit it to Leave Management at hrdp@bart.gov. If you have questions regarding the exemption process, please email Leave Management at hrdp@bart.gov.

For more information including COVID-19 FAQs and to watch the video of the COVID-19 Vaccine Educational Panel on November 10, 2021, please go to EmployeeConnect.

**BART_0005193**

# EXHIBIT 4



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Teresa Owens
Station Agent
1061 Bending Willow Wy
Pittsburg, CA 94565
teresaowens1061@gmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Teresa,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Regular COVID testing

**BART_0000976**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

December 22, 2021

Jonathan Castaneda
AFC Electronic Technician
201 13th St. #1614
Oakland, CA 94604
flow38.237@gmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jonathan,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1.    You did not request any specific accommodation



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>SENT VIA EMAIL/US MAIL</u>

February 4, 2022

Jonathan Castaneda
201 13th St. #1614
Oakland, CA 94604

**SUBJECT: Closure of Interactive RA for COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jonathan,

The San Francisco Bay Area Rapid Transit District ("District") previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted (ATTACHMENT I). The District then proceeded to engage with you to determine if we could identify a reasonable accommodation for your request that would enable you to continue to perform the essential functions of your position, meet safety requirements, and not place an undue hardship on the District.

Any reasonable accommodation identified must meet the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.  Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.

At the onset of the Religious Exemption Request, you were asked to indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. Through our interactive process with you, you did not request any specific accommodation, but we explored 16 other possible accommodations (ATTACHMENT II). As mentioned, after careful review and consideration, the District has concluded that we are unable to accommodate your requested accommodations and meet the required job and safety standards and not place an undue hardship on the District.

On date January 3, 2022, you did not provide additional accommodation options for us to consider, and you were notified of the closure of your interactive process (ATTACHMENT III). In response you provided the District with

San Francisco Bay Area Rapid Transit District



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Jonathan Castaneda
AFC Electronic Technician
201 13th St. #1614
Oakland, CA 94604
flow38.237@gmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jonathan,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

    1.      You did not request any specific accommodation

**BART_0001036**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Gabriel Chavez
Buildings Worker
5275 Mohican Way
Antioch, CA 94531
gchavez@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Gabriel,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Regular/daily temperature checks
3. Regular COVID testing

**BART_0001073**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 22, 2021

Avin Curry
Police Officer
360 Heritage Ln
Dixon, CA 95620
avinc33@yahoo.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Avin,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Regular COVID testing
2. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
3. Stay home when sick4.Immediately report any positive COVID test result and remain home for 14 days/until symptom free

**BART_0001108**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Avin Curry
Police Officer
360 Heritage Ln
Dixon, CA 95620
avinc33@yahoo.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Avin,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Regular COVID testing
2. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
3. Stay home when sick4.Immediately report any positive COVID test result and remain home for 14 days/until symptom free

**BART_0001121**



**San Francisco Bay Area apid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>SENT VIA EMAIL/US MAIL</u>

January 27, 2022

Avin Curry
360 Heritage Ln
Dixon, CA 95620

**SUBJECT: Closure of Interactive RA for COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Avin,

The San Francisco Bay Area Rapid Transit District ("District") previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted (ATTACHMENT I). The District then proceeded to engage with you to determine if we could identify a reasonable accommodation for your request that would enable you to continue to perform the essential functions of your position, meet safety requirements, and not place an undue hardship on the District.

Any reasonable accommodation identified must meet the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.   Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.

At the onset of the Religious Exemption Request, you were asked to indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. Through our interactive process with you, you requested three (3) reasonable accommodations and we explored sixteen (16) other possible accommodations (ATTACHMENT II). As mentioned, after careful review and consideration, the District has concluded that we are unable to accommodate your requested accommodations and meet the required job and safety standards and not place an undue hardship on the District.

On January 3, 2022, we addressed two (2) additional accommodations you provided, and you were notified of the closure of your interactive process (ATTACHMENT III). In response you provided the District with possible

San Francisco Bay Area Rapid Transit District

**BART_0001117**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 5, 2022

      Mary Engler-Contreras
      Operations Supervisor Liaison
      6223 Empress Court
      San Jose, CA 95129
      mengler@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Mary,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

      1. Remote Work
      2. Weekly COVID Testing.
      3. Request for an enclosed office space to work in/take breaks in.
      4. Follow CDC Guidelines and Wear gloves
      5. Requesting an accommodation until 03/15/22 so she can retire a year earlier.

San Francisco Bay Area Rapid Transit District

**BART_0001168**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Adrian Gilbert
Train Operator
1608 62nd St #A
Berkeley, CA 94703
mradbme@yahoo.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Adrian,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)

**BART_0001199**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 27, 2022

Adrian Gilbert
1608 62nd St #A
Berkeley, CA 94703

**SUBJECT: Closure of Interactive RA for COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Adrian,

The San Francisco Bay Area Rapid Transit District ("District") previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted (ATTACHMENT I). The District then proceeded to engage with you to determine if we could identify a reasonable accommodation for your request that would enable you to continue to perform the essential functions of your position, meet safety requirements, and not place an undue hardship on the District.

Any reasonable accommodation identified must meet the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.

At the onset of the Religious Exemption Request, you were asked to indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. Through our interactive process with you, you requested one (1) reasonable accommodation and we explored 16 other possible accommodations (ATTACHMENT II). As mentioned, after careful review and consideration, the District has concluded that we are unable to accommodate your requested accommodations and meet the required job and safety standards and not place an undue hardship on the District.

On date January 3, 2022, we addressed one (1) additional accommodation you provided, and you were notified of the closure of your interactive process (ATTACHMENT III). In response you provided the District with possible

San Francisco Bay Area Rapid Transit District

**BART_0001207**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Adrian Gilbert
Train Operator
1608 62nd St #A
Berkeley, CA 94703
mradbme@yahoo.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Adrian,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.  Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.  Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations.  2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

January 5, 2022

James Gilheany
Mgr of Technology Programs
2484 Centennial Ln
Hayward, CA 94541
jgilhea@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear James,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.   Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

1. Weekly testing with the following requirements:
   a) Saliva testing rather than other methods
   b) Utilize labs that do not share data with third parties
   c) Option to request a retest immediately if PCR test result is positive and I am asymptomatic

San Francisco Bay Area Rapid Transit District

Sincerely,

Jim

January 5, 2022

James Gilheany

Mgr of Technology Programs

2484 Centennial Ln

Hayward, CA 94541

jgilhea@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear James,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved. The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

• Ensures that you can continue to perform the essential functions of your job;

• Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and

• Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

February 1, 2022

Jim Gilheany
2484 Centennial Ln
Hayward, CA 94541
jgilhea@bart.gov

**SUBJECT: Closure of Interactive RA for COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jim,

The San Francisco Bay Area Rapid Transit District ("District") previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted (ATTACHMENT I). The District then proceeded to engage with you to determine if we could identify a reasonable accommodation for your request that would enable you to continue to perform the essential functions of your position, meet safety requirements, and not place an undue hardship on the District.

Any reasonable accommodation identified must meet the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business ) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.

At the onset of the Religious Exemption Request, you were asked to indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. Through our interactive process with you, you requested one (1) reasonable accommodation and we explored nine (9) other possible accommodations (ATTACHMENT II). As mentioned, after careful review and consideration, the District has concluded that we are unable to accommodate your requested accommodations and meet the required job and safety standards and not place an undue hardship on the District.

San Francisco Bay Area Rapid Transit District

**BART_0001263**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 5, 2022

James Gilheany
Mgr of Technology Programs
2484 Centennial Ln
Hayward, CA 94541
jgilhea@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear James,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

1. Weekly testing with the following requirements:
    a) Saliva testing rather than other methods
    b) Utilize labs that do not share data with third parties
    c) Option to request a retest immediately if PCR test result is positive and I am asymptomatic

San Francisco Bay Area Rapid Transit District



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Silverio Gonzalez
Transportation Supervisor
92 Jefferson St
South San Francisco, CA 94080-1515
sgonzal@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Silverio,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Regular COVID testing

**BART_0001284**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 22, 2021

Phi Le
Community Services Officer
22957 Kingsford Way
Hayward, CA 94541
ple@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Phi,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, <mark>an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business</mark>. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Regular COVID testing

**BART_0001359**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

February 1, 2022

Phi Le
22957 Kingsford Way
Hayward, CA 94541
ple@bart.gov

**SUBJECT: Closure of Interactive RA for COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Phi,

The San Francisco Bay Area Rapid Transit District ("District") previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted (ATTACHMENT I). The District then proceeded to engage with you to determine if we could identify a reasonable accommodation for your request that would enable you to continue to perform the essential functions of your position, meet safety requirements, and not place an undue hardship on the District.

Any reasonable accommodation identified must meet the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business ) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.

At the onset of the Religious Exemption Request, you were asked to indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. Through our interactive process with you, you requested two (2) reasonable accommodations and we explored sixteen (16) other possible accommodations (ATTACHMENT II). As mentioned, after careful review and consideration, the District has concluded that we are unable to accommodate your requested accommodations and meet the required job and safety standards and not place an undue hardship on the District.

San Francisco Bay Area Rapid Transit District

**BART_0001369**

ATTACHMENT II

**B A R T**
**ba**
San Francisco Bay Area Rapid Transit District
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Phi Le
Community Services Officer
22957 Kingsford Way
Hayward, CA 94541
ple@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Phi,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Regular COVID testing

**BART_0001374**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 22, 2021

Michael Manzano
Sr Police Officer
1727 Marco Polo Way #15
Burlingame, CA 94010-5448
mmanzan@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Michael,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Stay home when sick
2. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
3. Improved air quality indoors with improved air filtration systems and cleaning of floors
4. Regular washing/cleaning of uniforms, equipment, vehicles, etc.
5. Conduct interactions with others outside or away from confined spaces/limit time inside

**BART_0001417**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 5, 2022

      Ryan Rivera
      Storekeeper
      343 Solano Ave
      Hayward, CA 94541
      lewtm@aol.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Ryan,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, ==an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.== 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

      1. Follow CDC Guidelines
      2. Temperature checks
      3. Weekly COVID testing
      4. Remote work
      5. Unpaid leave of absence

San Francisco Bay Area Rapid Transit District

**BART_0001479**

**BART**

**b a**

**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

January 5, 2022

Ryan Rivera
Storekeeper
343 Solano Ave
Hayward, CA 94541
lewtm@aol.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Ryan,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines
2. Temperature checks
3. Weekly COVID testing
4. Remote work
5. Unpaid leave of absence

San Francisco Bay Area Rapid Transit District

**BART_0001497**

**From:** [Rod Maplestone](#)
**To:** [Gizelle Huynh](#)
**Subject:** RE: Positions for Internal Job Search - Ryan Rivera
**Date:** Monday, February 28, 2022 12:05:56 PM
**Attachments:** [image002.png](#)
[image003.png](#)

Hi Gizelle,

Thanks for the update.  I agree with your assessment.  Thanks.

**Rod Maplestone**
**Manager, Leave Programs**
Human Resources Department
2150 Webster St.
Office: 510-464-6198
Mobile: 206-498-5008
Fax:510-464-7511
Email  [rmaples@BART.gov](mailto:rmaples@BART.gov)



**From:** Gizelle Huynh <ghuynh@bart.gov>
**Sent:** Monday, February 28, 2022 12:05 PM
**To:** Rod Maplestone <rmaples@bart.gov>
**Subject:** RE: Positions for Internal Job Search - Ryan Rivera

Hi Rod,

As we discussed, the list Wilder provided did not match the list Ray provided.  However, in reviewing Wilder's list, there would not have been a possible reasonable accommodation that the District could have offered which met the following requirements:

•        Ensures that the employee can continue to perform the essential functions of their job
•        Does not pose a direct threat to the health and/or safety of themselves or other employees in the workplace
•        Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business ) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.  Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.


Therefore, this list of possible positions was not presented afterwards since we already responded, and the outcome/determination was the same.

**From:** Rod Maplestone
**To:** Gizelle Huynh
**Subject:** RE: Positions for Internal Job Search - Ryan Rivera
**Date:** Monday, February 28, 2022 12:05:56 PM
**Attachments:** image002.png
image003.png

Hi Gizelle,

Thanks for the update.  I agree with your assessment.  Thanks.

**Rod Maplestone**
**Manager, Leave Programs**
Human Resources Department
2150 Webster St.
Office: 510-464-6198
Mobile: 206-498-5008
Fax:510-464-7511
Email  rmaples@BART.gov



**From:** Gizelle Huynh <ghuynh@bart.gov>
**Sent:** Monday, February 28, 2022 12:05 PM
**To:** Rod Maplestone <rmaples@bart.gov>
**Subject:** RE: Positions for Internal Job Search - Ryan Rivera

Hi Rod,

As we discussed, the list Wilder provided did not match the list Ray provided.  However, in reviewing Wilder's list, there would not have been a possible reasonable accommodation that the District could have offered which met the following requirements:

• Ensures that the employee can continue to perform the essential functions of their job
• Does not pose a direct threat to the health and/or safety of themselves or other employees in the workplace
• Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business ) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.  Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.


Therefore, this list of possible positions was not presented afterwards since we already responded, and the outcome/determination was the same.

**BART_0001507**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 5, 2022

Jim Scullion
Train Control Electronic Tech
4 Captain Drive #312
Emeryville, CA 94608
Calypsozan@gmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jim,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, <mark>an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.</mark> 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

  1. No accommodation recommendation provided

San Francisco Bay Area Rapid Transit District

**BART_0001529**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Darolyn Turner
Train Operator
5113 Mozart Dr
Richmond, CA 94803
d.turner2008@hotmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Darolyn,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Regular COVID testing
2. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
3. Alternative break/changing areas for unvaccinated

**BART_0001575**



**San Francisco Bay Area apid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>SENT VIA EMAIL/US MAIL</u>

January 19, 2022

Darolyn Turner
5113 Mozart Dr.
Richmond, CA 94803

**SUBJECT: Closure of Interactive RA for COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Darolyn,

The San Francisco Bay Area Rapid Transit District ("District") previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964 had been granted (ATTACHMENT I). The District then proceeded to engage with you to determine if we could identify a reasonable accommodation for your request that would enable you to continue to perform the essential functions of your position, meet safety requirements, and not place an undue hardship on the District.

Any reasonable accommodation identified must meet the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.) 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.

At the onset of the Religious Exemption Request, you were asked to indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace. Through our interactive process with you, you requested three (3) reasonable accommodations and we explored 16 other possible accommodations (ATTACHMENT II). As mentioned, after careful review and consideration, the District has concluded that we are unable to accommodate your requested accommodations and meet the required job and safety standards and not place an undue hardship on the District.

On January 4, 2022, we addressed five (5) additional accommodations you provided and you were notified of the closure of your interactive process (ATTACHMENT III). In response you provided the District with possible

San Francisco Bay Area Rapid Transit District

**BART_0001579**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Gabriel Chavez
Buildings Worker
5275 Mohican Way
Antioch, CA 94531
gchavez@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Gabriel,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Regular/daily temperature checks
3. Regular COVID testing

**BART_0002849**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

**SENT VIA EMAIL/US MAIL**

December 22, 2021

Jonathan Castaneda
AFC Electronic Technician
201 13th St. #1614
Oakland, CA 94604
flow38.237@gmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Jonathan,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.  42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.  Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public.  Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations.  2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1.      You did not request any specific accommodation

**BART_0003397**

of the employer, and the number of employees who will in fact need a particular accommodation. See Commission Guidelines, 29 C.F.R. § 1605.2(e).

An employer cannot rely on hypothetical hardship, but rather should rely on objective information.[3] The Supreme Court has held that requiring an employer to bear more than a "de minimis," or a minimal, cost to accommodate an employee's religious belief is an undue hardship. *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 616 (9th Cir. 1988) (quoting *Anderson v. Gen. Dynamic*, 589 F.2d 397, 402 (9th Cir. 1978)). Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business – including, in this instance, the risk of the spread of COVID-19 to other employees or to the public.

For the reasons stated in section iii), above, the District concluded that it was unable to accommodate Charging Party's requested accommodations and meet the required job and safety standards without placing an undue hardship on the District.

v) *Following a Thorough and Exhaustive Interactive Process, Charging Party was Terminated*

As the District concluded the interactive process and explored all possible accommodation options, Charging Party was provided with the following options: 1) comply with the District's Vaccine Mandate; 2) elect service retirement through the California Public Employee's Retirement System (CalPERS), if eligible; 3) voluntarily resign; or 4) take no action and the District would pursue termination of employment (**See Attachment 8**). Charging Party was terminated on January 18, 2022.

**Conclusion**

The District strongly denies it discriminated or retaliated against Charging Party due to his religious belief. Rather, the District conducted and completed an exhaustive interactive process to identify potential accommodations, and further made an individualized assessment which

---

[3] See *Tabura v. Kellogg USA*, 880 F.3d 544, 558 (10th Cir. 2018) (reversing summary judgment for employer where it "did not . . . cite to any evidence to support its assertions" that accommodating plaintiffs' need to observe their Sabbath would impose an undue hardship "in the form of unauthorized overtime, quality control issues, and even forcing entire lines to shut down"); *Brown v. Gen. Motors Corp.*, 601 F.2d 956, 960 (8th Cir. 1979) (holding that "projected 'theoretical' future effects cannot outweigh the undisputed fact that no monetary costs and de minimis efficiency problems were actually incurred during the three month period in which [employee] was accommodated"); *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981) (undue hardship requires "proof of actual imposition on coworkers or disruption of the work routine" rather than "conceivable or hypothetical hardships" (internal quotation marks and citation omitted)); *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1492 (10th Cir. 1989) ("Any proffered hardship . . . must be actual," not speculative).



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 22, 2021

Phi Le
Community Services Officer
22957 Kingsford Way
Hayward, CA 94541
ple@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Phi,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Regular COVID testing

**BART_0004447**

   *v)*    <u>*None of the Options Identified by Complainant Would Be Effective to Prevent COVID-19*</u>
          <u>*Transmission, and Furthermore, Those Options Would Cause an Undue Burden on the*</u>
          <u>*District*</u>

Under existing law, an employer can refuse to provide a reasonable accommodation if it
would pose an undue hardship. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84
(1977). Relevant factors may include the type of workplace, the nature of the employee's
duties, the identifiable cost of the accommodation in relation to the size and operating
costs of the employer, and the number of employees who will in fact need a particular
accommodation. See Commission Guidelines, 29 C.F.R. § 1605.2(e).

An employer cannot rely on hypothetical hardship, but rather should rely on objective
information.[3] The Supreme Court has held that requiring an employer to bear more than
a "de minimis," or a minimal, cost to accommodate an employee's religious belief is an
undue hardship. *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 616 (9th Cir. 1988)
(quoting *Anderson v. Gen. Dynamic*, 589 F.2d 397, 402 (9th Cir. 1978)). Costs to be
considered include not only direct monetary costs but also the burden on the conduct of
the employer's business – including, in this instance, the risk of the spread of COVID-19
to other employees or to the public.

In the present case, Complainant contends that she was allowed to telework during the
pandemic in the previous year and requested to continue to remote work as her primary
accommodation. Pursuant to EEOC Guidelines titled, "Work at Home/Telework as a
Reasonable Accommodation," under number 4, it states, in pertinent part:[4]

         *An employer and employee first need to identify and review all of the essential job*
         *functions. The essential functions or duties are those tasks that are fundamental to*

---

[3] See *Tabura v. Kellogg USA*, 880 F.3d 544, 558 (10th Cir. 2018) (reversing summary judgment for employer where
it "did not . . . cite to any evidence to support its assertions" that accommodating plaintiffs' need to observe their
Sabbath would impose an undue hardship "in the form of unauthorized overtime, quality control issues, and even
forcing entire lines to shut down"); *Brown v. Gen. Motors Corp.*, 601 F.2d 956, 960 (8th Cir. 1979) (holding that
"projected 'theoretical' future effects cannot outweigh the undisputed fact that no monetary costs and de minimis
efficiency problems were actually incurred during the three month period in which [employee] was
accommodated"); *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981) (undue hardship requires
"proof of actual imposition on coworkers or disruption of the work routine" rather than "conceivable or
hypothetical hardships" (internal quotation marks and citation omitted)); *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d
1481, 1492 (10th Cir. 1989) ("Any proffered hardship . . . must be actual," not speculative).

[4] See https://www.eeoc.gov/laws/guidance/work-hometelework-reasonable-accommodation.



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 7, 2022

      Christopher Monaco
      Fire Protection Worker
      5032 Treetop Dr
      Salida, CA 95368-9014
      cmonaco@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Christopher,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District. (Per Title VII of the Civil Rights Act, ==an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.== 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

      1. No accommodation recommendation provided.

San Francisco Bay Area Rapid Transit District

**BART_0005707**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 22, 2021

Frank Kitzmiller
Train Operator
P.O. Box 1169
South San Francisco, CA 94083-1169
frankkitzmiller@gmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Frank,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1. Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)
2. Portable air purifying respirators
3. Full lab and hospital grade body suit worn under uniform
4. Work graveyard shift/or alone to limit exposure to others
5. Alternative break areas for unvaccinated

**BART_0006198**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

January 5, 2022

      Perry Griffis
      Shop Scheduler
      266 Blue Ridge Dr
      Martinez, CA 94553
      pgriffi@bart.gov

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Perry,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate made pursuant to Title VII of the Civil Rights Act of 1964, was approved.

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job;
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace; and
- Does not create an undue hardship for the District.  (Per Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business.  42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2.   Costs to be considered include not only direct monetary costs, but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public).

In your request, you asked for the following accommodation:

      1. Follow CDC Guidelines
      2. Frequent COVID Test
      3. Remote work

San Francisco Bay Area Rapid Transit District

**BART_0006236**



**San Francisco Bay Area Rapid Transit District**
2150 Webster Street, Oakland, CA 94612

<u>**SENT VIA EMAIL/US MAIL**</u>

December 22, 2021

Seamus Wilson
Train Operator
2734 Vale Road
San Pablo, CA 94806
swilson.ehs@gmail.com

**SUBJECT: No Accommodation, COVID-19 Vaccine Mandate Religious Exemption Request**

Dear Seamus,

We previously notified you that your request for a religious exemption to the COVID-19 vaccination mandate was approved in accordance Title VII of the Civil Rights Act of 1964, and supported by the guidelines put forth by the Equal Employment Opportunity Commission (EEOC).

The next step in the process is for the District to work with you to determine whether a reasonable accommodation can be identified to enable you to continue working without being vaccinated and to ensure the accommodation meets the following requirements:

- Ensures that you can continue to perform the essential functions of your job
- Does not pose a direct threat to the health and/or safety of you or other employees in the workplace
- Does not create an undue hardship for the District (under Title VII of the Civil Rights Act, an employer can deny an accommodation request if it imposes more than a de minimis cost on the employer's business. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1605.2. Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business, including the risk of the spread of COVID-19 to other employees or to the public. Additionally, other factors to be considered include the size of the employer and its operations, the type of business operations at issue, and the overall impact of the requested accommodation on operations. 2 C.C.R. § 11062(b))

In your request, you asked for the following accommodation:

1.    Follow CDC Guidelines (mask wearing, handwashing, sanitizing surfaces, socially distancing, etc.)

BART_0006333

# EXHIBIT 5

## SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT

---

## MEMORANDUM

**TO:**    All BART Staff        **DATE:**   October 18, 2021

**FROM**:    General Manager

**SUBJECT:**    BART Board Approves COVID-19 Vaccine Mandate for Employees

On October 14, 2021, the BART Board of Directors voted 8-1 to approve a policy statement mandating COVID-19 vaccinations of employees, board members, and contractors. I encourage all employees to read the full policy statement included in this correspondence. A recording of the Board meeting can be found on bart.gov/board here and the item discussion begins at the 1:36:44 mark.

The approved policy requires individuals to be fully vaccinated by **December 13, 2021**. In general, people are considered fully vaccinated two weeks after their second dose of a two-dose series such as Pfizer or Moderna vaccines, or two weeks after a single-dose vaccine, such as Johnson and Johnson.

I have directed Labor Relations to immediately begin meeting with our labor partners to discuss the policy and the impacts of this decision. Meetings are scheduled to begin tomorrow.

The following dates are being provided for informational purposes as examples of timelines to become fully vaccinated:

| COVID-19 Vaccine Type | 1st Dose No later than | 2nd Dose No later than | Fully Vaccinated by |
|---|---|---|---|
| Moderna | 11/1/2021 | 11/29/2021 | 12/13/2021 |
| Pfizer | 11/8/2021 | 11/29/2021 | 12/13/2021 |
| Johnson & Johnson | N/A-Single Dose | 11/29/2021 | 12/13/2021 |

To find a COVID-19 vaccine near you, you can go to www.vaccines.gov or contact your medical provider.

To submit your proof of vaccination, you can attach a copy of your CDC card, California's digital vaccine record, or the WHO Yellow Card to the Employee Self-Attestation Online Form by visiting EmployeeConnect and clicking "Main Menu" – "Employee Self-Attest Form" – and then adding and uploading the file. For additional submission options, please see COVID-19 Updates and Info, under the Employee Information section on EmployeeConnect.

If you are unvaccinated and would like to request a medical accommodation or religious exemption, please go to EmployeeConnect, COVID19 Updates and Info, complete an exemption form and submit it to Leave Management at hrdp@bart.gov. If you have questions regarding the exemption process, please email Leave Management at hrdp@bart.gov.

_Robert M. Powers_
Robert M. Powers

Attachment



**Coronavirus Pandemic – (COVID-19)**

**Statement of Policy:**

The Coronavirus Pandemic of 2019 ("COVID-19") has brought tremendous challenges to the San Francisco Bay Area Rapid Transit District ("BART"). Since the national emergency shutdown in March 2020, when ridership dropped below 5%, BART has lost over 20,960 days of productivity and had 2,377 employees use pandemic related leave demonstrating the breathtaking toll the pandemic has had on our staff and service. Those effects continue as we face challenges with the Delta variant increasing the transmissibility of the disease. In response to the pandemic and its variants, numerous federal, state, and local entities, including three of the four largest counties in the Bay Area, have implemented vaccination requirements to protect workers and the public.

Whereas in winter 2020 BART saw between a three- and nine-fold increase in cases, and the current prevalence of the Delta variant causing positive cases at a 54% higher rate for unvaccinated employees, BART must take responsible action to protect our ability to function. BART has a duty to provide a safe and healthy workplace, consistent with COVID-19 public health guidance and legal requirements, to protect its employees and the public as services reopen and more employees return to workplaces.

According to the federal Centers for Disease Control and Prevention ("CDC"), the California Department of Public Health ("CDPH"), and County Health Officers, COVID-19 continues to pose a risk, especially to individuals who are not fully vaccinated, and certain safety measures remain necessary to protect against COVID-19 cases and deaths. Vaccination is the most effective way to prevent transmission and limit COVID-19 hospitalizations and deaths. Unvaccinated employees are at greater risk of contracting and spreading COVID-19 within the workplace and BART facilities, as well as to the public that depends on our services.

Therefore, all BART employees and Board members shall be fully vaccinated against COVID-19 by December 13, 2021, with exceptions made only for those who qualify for a Reasonable Accommodation or a Religious Exemption. The Board also directs the General Manager to bargain over the policy and impacts of this decision prior to the requested implementation of the policy on December 13, 2021. During this time the Board directs BART to prioritize culturally competent outreach and conduct an education campaign for the remaining unvaccinated population. Finally, the Board directs the General Manager to implement vaccination requirements for consultants and contractors who perform work on BART property.

**BART_0000018**

# EXHIBIT 6



Kevin Snider <kevinsnider@pji.org>

## RE: Public Record Request (HQ43558)
1 message

---

**Bryan, Nedra@DIR** <NBryan@dir.ca.gov>                                   Tue, Oct 24, 2023 at 7:36 AM
To: Kevin Snider <ksnider@pji.org>

Hello Kevin,

From August 2021 through December 2022, employees working in person were either required to be vaccinated or, if not vaccinated, engage in regular COVID-19 testing. This was based on directives for all state departments.

If an employee was unvaccinated, partially vaccinated, did not wish to disclose their vaccination status (decline to state or DTS), or otherwise did not provide appropriate vaccination verification, they were subject to the following testing cycles, based on their circumstances.

- Weekly Testing (every 7 days) for all employees who are not fully vaccinated.
- Twice Weekly Testing (every 3 to 4 days) if they:

  o  Regularly visit or are expected to visit workplaces covered by Title 8, Section 5199, such as hospitals, Skilled Nursing Facilities (SNFs) and correctional facilities.

  o  Regularly visit or are expected to visit meat packing or food processing facilities.

  o  Regularly visit or are expected to visit workplaces with confirmed or probable SARS-CoV-2 cases present at the time of the visit.

  o  Regularly visit or are expected to visit Adult and Senior Care Facilities (ACSFs).

Thank you,

*Nedra Bryan*

Section Chief, Transactions and Return to Work

Human Resources Office

Cell Phone | (279) 234-6270

State of California

Department of Industrial Relations

2180 Harvard Street, Suite 160 | Sacramento, CA 95815

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act.  If you are not the intended recipient, please contact the sender and destroy all copies of the communication

**From:** Kevin Snider <ksnider@pji.org>
**Sent:** Monday, October 23, 2023 9:55 AM
**To:** Bryan, Nedra@DIR <NBryan@dir.ca.gov>
**Subject:** Re: Public Record Request (HQ43558)

---

**CAUTION: [External Email]**
This email originated from outside of our DIR organization. Do not click links or open attachments unless you recognize the sender and know the content is expected and is safe. If in doubt reach out and check with the sender by phone.

---

Good morning Nedra,

Was there a COVID-19 vaccination requirement of employees?

Kevin

Kevin T. Snider, Chief Counsel*

Northern California Office

P.O. Box 276600

Sacramento, CA 95827
tel. (916) 857-6900
pji.org
ATTORNEY/CLIENT PRIVILEGED CONFIDENTIAL MATERIAL
The information contained in this e-mail message, and all attachments, is covered by the attorney/client and or
work product privilege and is confidential information intended only for the use of the individual or entity
named above. If you have received this communication in error, please immediately notify us by return e-mail.
Thank You.

*Admitted in Washington, California & the District of Columbia

On Mon, Oct 23, 2023 at 8:13 AM Bryan, Nedra@DIR <NBryan@dir.ca.gov> wrote:

> Dear Mr. Snider,
>
> I am writing to follow up on my email below regarding your PRA request. After conducting a search, we were not able to locate
> any records responsive to your request.

Thank you,

*Nedra Bryan*

Section Chief, Transactions and Return to Work

Human Resources Office

Cell Phone I (279) 234-6270

State of California

Department of Industrial Relations

2180 Harvard Street, Suite 160 | Sacramento, CA 95815

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information.  It is solely for the use of the intended recipient(s).  Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act.  If you are not the intended recipient, please contact the sender and destroy all copies of the communication

**From:** Bryan, Nedra@DIR
**Sent:** Monday, October 16, 2023 1:26 PM
**To:** 'ksnider@pji.org' <ksnider@pji.org>
**Cc:** DIR PRA <PRA@DIR.ca.gov>
**Subject:** Public Record Request (HQ43558)

Dear Kevin Snider,

I am writing regarding your Public Records Act request, which our office received on October 12, 2023 and which was assigned the unique identifier: HQ43558. Given the nature of your request, we require the 14-day extension provided for in Government Code section 7922.535, subdivision (b). Accordingly, we will respond as soon as possible, and by no later than October 27, 2023.

Sincerely,

*Nedra Bryan*

Section Chief, Transactions and Return to Work

Human Resources Office

Cell Phone I (279) 234-6270

State of California

Department of Industrial Relations

2180 Harvard Street, Suite 160 | Sacramento, CA 95815

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the

sender and destroy all copies of the communication



State of California—Health and Human Services Agency
# California Department of Public Health



**TOMÁS J. ARAGÓN, MD, DrPH**
*Director and State Public Health Officer*

**GAVIN NEWSOM**
*Governor*

August 1, 2023

Kevin Snider
ksnider@pji.org

RE: Public Records Reference # P019110-071923

Dear Kevin:

On 7/19/2023  the California Department of Public Health (CDPH) received your request for records under the Public Records Act (PRA) wherein you requested the following:

1. *A writing/document that provides data on the number of The California Department of Public Health employees who sought religious accommodation for the COVID-19 vaccination between January 1, 2021 and December 31, 2022.*
2. *A writing/document that provides data on the number of The California Department of Public Health employees who were granted a religious accommodation for the COVID-19 vaccination between January 1, 2021 and December 31, 2022.*

The responsive records are ready for your review and have been released to the CDPH Public Records Center:

1. *The number of CDPH employees that sought religious accommodation for the COVID-19 vaccination between January 1, 2021 and December 31, 2022.*
   *156 employees*
2. *The number of CDPH employees that were granted a religious accommodation for the same time period.*
   *156 employees*

If you have any questions regarding this matter, please contact me at (279) 217-0708.

Sincerely,

**Alexandria Horner**
Human Resources Division
Employee Relations and Resource Branch
Position & Data Analysis Unit (PDAU)

---

CDPH, MS 1700  ●  P.O. Box 997377  ●  Sacramento, CA 95899-7378
(916) 445-0983
Department Website (www.cdph.ca.gov)



# EXHIBIT 7

 Gmail

## Fwd: Urgent PRA Request - Response
1 message

**Desiree Westbrook** <dwest@pji.org>                                    Fri, Oct 27, 2023 at 10:59 AM
To: Kevin Snider <ksnider@pji.org>
Cc: Desiree Westbrook <dwest@pji.org>

Hello Mr. Snider, :)

FYI-Please see below (they omitted something):

---------- Forwarded message ---------
From: **Lisa Hopkins** <Lisa.Hopkins@hrd.cccounty.us>
Date: Fri, Oct 27, 2023 at 10:58 AM
Subject: RE: Urgent PRA Request - Response
To: Desiree Westbrook <dwest@pji.org>
Cc: Ann Elliott <Ann.Elliott@hrd.cccounty.us>

My apology Desiree,  that should not have said "Merit Board".  You are already in receipt so please simply disregard that small portion.

   **Lisa Hopkins**, **Executive Secretary**

Contra Costa County | Human Resources Department

1025 Escobar Street, 2nd Floor

Phone:  925.655.2103

CONFIDENTIALITY NOTICE: This email communication and any attachments may contain confidential and privileged information for the use of the designated recipients. If you are not the intended recipient, you are hereby notified that you have received this communication in error or it has been directed to a specific individual or individuals, and that any review, disclosure, dissemination, distribution, or copying of this email or its contents without written authorization from the original sender is prohibited. If you have received this communication in error, please immediately destroy all copies of this communication and any attachments.

---

**From:** Lisa Hopkins
**Sent:** Friday, October 27, 2023 10:46 AM
**To:** Desiree Westbrook <dwest@pji.org>
**Subject:** RE: Urgent PRA Request - Response

You too.



**Lisa Hopkins**, **Executive Secretary**

Contra Costa County | Human Resources Department

1025 Escobar Street, 2nd Floor

Phone: 925.655.2103

CONFIDENTIALITY NOTICE: This email communication and any attachments may contain confidential and privileged information for the use of the designated recipients. If you are not the intended recipient, you are hereby notified that you have received this communication in error or it has been directed to a specific individual or individuals, and that any review, disclosure, dissemination, distribution, or copying of this email or its contents without written authorization from the original sender is prohibited. If you have received this communication in error, please immediately destroy all copies of this communication and any attachments.

---

**From:** Desiree Westbrook <dwest@pji.org>
**Sent:** Friday, October 27, 2023 10:45 AM
**To:** Lisa Hopkins <Lisa.Hopkins@hrd.cccounty.us>
**Cc:** Ann Elliott <Ann.Elliott@hrd.cccounty.us>; Desiree Westbrook <dwest@pji.org>
**Subject:** Re: Urgent PRA Request - Response

Thank you, Lisa.

Receipt, confirmed.

I hope you all have a great weekend.

Thanks again!

On Fri, Oct 27, 2023 at 10:40 AM Lisa Hopkins <Lisa.Hopkins@hrd.cccounty.us> wrote:

Good Morning Desiree:

This is the response of the Contra Costa County Merit Board to your public records request of October 18, 2023, for the following records:

1. A writing/document that provides data on the number of **Contra Costa County** employees who sought religious exemptions for COVID-19 vaccination between January 1, 2021 and December 31, 2022.

2. A writing/document that provides data on the number of **Contra Costa County** employees who were granted religious accommodations to COVID-19 vaccination between January 1, 2021 and December 31, 2022.

Contra Costa County has identified records in response to the request. Please see below.

1. 971 (Note, Policy effective as of 8/2021 and rescinded 6/16/2023; this number is for the specific time frame).

2. 959 (Note, Policy effective as of 8/2021 and rescinded 6/16/2023; this number is for the specific time frame).

Please confirm receipt. Thanks in advance.



**Lisa Hopkins**, **Executive Secretary**

Contra Costa County | Human Resources Department

1025 Escobar Street, 2nd Floor

Phone: 925.655.2103

CONFIDENTIALITY NOTICE: This email communication and any attachments may contain confidential and privileged information for the use of the designated recipients. If you are not the intended recipient, you are hereby notified that you have received this communication in error or it has been directed to a specific individual or individuals, and that any review, disclosure, dissemination, distribution, or copying of this email or its contents without written authorization from the original sender is prohibited. If you have received this communication in error, please immediately destroy all copies of this communication and any attachments.

--

Sincerely,

Desiree' Westbrook
Paralegal



Northern California Office
P.O. Box 276600
Sacramento, CA 95827
pji.org



ATTORNEY/CLIENT PRIVILEGED CONFIDENTIAL MATERIAL
The information contained in this e-mail message, and all attachments, is covered by the attorney/client and or work
product privilege and is confidential information intended only for the use of the individual or entity named above. If
you have received this communication in error, please immediately notify us by return e-mail. Thank You.

**From:** **Kevin Snider** ksnider@pji.org 
**Subject:** Fwd: [EXTERNAL] CPRA Request Form-COVID-19 Data on Employees
**Date:** December 11, 2023 at 9:51 AM
**To:** Brittany Green bgreen@pji.org

KS

**Kevin T. Snider, Chief Counsel\***



**Northern California Office**
P.O. Box 276600
Sacramento, CA 95827
tel. (916) 857-6900
pji.org
ATTORNEY/CLIENT PRIVILEGED CONFIDENTIAL MATERIAL
The information contained in this e-mail message, and all attachments, is covered
by the attorney/client and or work product privilege and is confidential
information intended only for the use of the individual or entity named above. If
you have received this communication in error, please immediately notify us by
return e-mail. Thank You.

*Admitted in Washington, California & the District of Columbia

--------- Forwarded message ---------
From: **Ayden, James** <james.ayden@cco.sccgov.org>
Date: Fri, Nov 17, 2023 at 12:29 PM
Subject: RE: [EXTERNAL] CPRA Request Form-COVID-19 Data on Employees
To: ksnider@pji.org <ksnider@pji.org>

Dear Mr. Snider

Attached please find non-exempt records that are responsive to your October 3, 2023, request.  Please note records, the disclosure of which is exempted or prohibited by state or federal law (Gov. Code § 7927.705), including records containing [p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy (Gov. Code § 7927.700; Article I, section 1 of the California Constitution), records protected by the deliberative process privilege and records, the disclosure of which would violate individual privacy rights, and any other records that are exempt on the basis that the public interest in nondisclosure outweighs the interest in disclosure (Gov. Code § 7922.000), have been withheld.

This completes the County's response to your request.

Thank you.



**James K. Ayden** | Deputy County Counsel

Office of the County Counsel, County of Santa Clara

70 West Hedding Street, East Wing, 9th Floor | San José, CA 95110

Office: (408) 299-5906 | Mobile: (669) 272-6173

[james.ayden@cco.sccgov.org](mailto:james.ayden@cco.sccgov.org) | counsel.sccgov.org

**NOTICE TO RECIPIENT**: The information in this email is confidential and may be protected by the attorney-client and/or work product privileges. If you received this email in error, any review, use, dissemination, distribution, or copying of it is strictly prohibited.  Please notify Administration, Office of the County Counsel, of the error immediately at 408-299-5900 and delete this communication and any attached documents from your system.

---

**From:** Ayden, James
**Sent:** Friday, October 27, 2023 11:53 AM
**To:** [ksnider@pji.org](mailto:ksnider@pji.org)
**Subject:** FW: [EXTERNAL] CPRA Request Form-COVID-19 Data on Employees

Dear Mr. Snider:

The County of Santa Clara ("County") has received your October 3, 2023 request for:

> 1. A writing/document that provides data on the number of employees employed by the County of Santa Clara who sought religious exemptions to vaccination for COVID-19 between January 1, 2021 and December 31, 2022 .
> 2. A writing/document that provides data on the number of employees employed by the County of Santa Clara who were granted religious accommodations to be excluded from COVID-19 vaccinations between January 1, 2021 and December 31, 2022.

The County has designated the Office of the County Counsel as the office responsible for receiving and coordinating public record requests, and as such, I am providing an initial response to your request.  The County possesses responsive records and is collecting and reviewing them for applicable exemptions and privileges.  The County anticipates producing responsive records by November 17, 2023.

Thank you.

 **James K. Ayden** | Deputy County Counsel

Office of the County Counsel, County of Santa Clara

70 West Hedding Street, East Wing, 9th Floor | San José, CA 95110

Office: (408) 299-5906 | Mobile: (669) 272-6173

[james.ayden@cco.sccgov.org](mailto:james.ayden@cco.sccgov.org) | counsel.sccgov.org

**NOTICE TO RECIPIENT**: The information in this email is confidential and may be protected by the attorney-client and/or work product privileges. If you received this email in error, any review, use, dissemination, distribution, or copying of it is strictly prohibited.  Please notify Administration, Office of the County Counsel, of the error immediately at 408-299-5900 and delete this communication and any attached documents from your system.

---

**From:** Ayden, James
**Sent:** Friday, October 13, 2023 3:24 PM
**To:** [ksnider@pji.org](mailto:ksnider@pji.org)
**Subject:** RE: [EXTERNAL] CPRA Request Form-COVID-19 Data on Employees

Dear Mr. Snider:

The County has designated the Office of the County Counsel as the office responsible for receiving and coordinating public record requests, and as such, I am providing an initial response to your request. Pursuant to California Government Code section 7922.535(c)(1), (3), and (4), the County extends its time for responding to your request by an additional 14 days to search for and collect requested records from offices other than the Office of the County Counsel and require consulting with other agencies and departments that have a substantial interest in this request and to compile data and/or to extract data.

The County will provide a response to your request by October 27, 2023.

Thank you.



James K. Ayden | Deputy County Counsel

Office of the County Counsel, County of Santa Clara

70 West Hedding Street, East Wing, 9th Floor | San José, CA 95110

Office: (408) 299-5906 | Mobile: (669) 272-6173

james.ayden@cco.sccgov.org | counsel.sccgov.org

**NOTICE TO RECIPIENT**: The information in this email is confidential and may be protected by the attorney-client and/or work product privileges. If you received this email in error, any review, use, dissemination, distribution, or copying of it is strictly prohibited. Please notify Administration, Office of the County Counsel, of the error immediately at 408-299-5900 and delete this communication and any attached documents from your system.

**From:** donotreply@isd.sccgov.org <donotreply@isd.sccgov.org>
**Sent:** Tuesday, October 3, 2023 11:57 AM
**To:** RecordsUnit <RecordsUnit@cob.sccgov.org>
**Subject:** [EXTERNAL] Webform submission from: CPRA Request Form

Submitted on Tue, 10/03/2023 - 11:56

Submitted by: Anonymous

Submitted values are:

**First Name**
Kevin

**Last Name**
Snider

**Company**
PJI

**Phone**
9168576900

**Fax**
9168576902

**Cell**
5102895335

**Email**
ksnider@pji.org

**Information requested: (please provide any dates and as many details as possible)**
1. A writing/document that provides data on the number of employees employed by the County of Santa Clara who sought religious exemptions to vaccination for COVID-19 between January 1, 2021 and December 31, 2022 .
2. A writing/document that provides data on the number of employees employed by the County of Santa Clara who were granted religious accommodations to be excluded from COVID-19 vaccinations between January 1, 2021 and December 31, 2022.

Production.pdf
81 KB

1. Approximately 1,236 employees for the period between January 1, 2021, and December 31, 2022.

2. Approximately 1,164 employees for the period between January 1, 2021, and December 31, 2022.

 Gmail

Kevin Snider <kevinsnider@pji.org>

## Urgent - CA Public Records Act Request - Solano

**Desiree Westbrook** <dwest@pji.org>                                    Wed, Oct 11, 2023 at 7:29 PM
To: Kevin Snider <ksnider@pji.org>
Cc: Desiree Westbrook <dwest@pji.org>

Hello Mr. Snider,

Please let me know what you'd like for me to communicate to them (Solano County) per their response below.

Thank you,

Desiree' Westbrook

Begin forwarded message:

> **From:** "Stewart, Qwendolyn" <QStewart@solanocounty.com>
> **Date:** October 11, 2023 at 3:04:37 PM PDT
> **To:** "Davis, Matthew A." <MADavis@solanocounty.com>, dwest@pji.org
> **Cc:** "Vaughn, Debbie L." <DLVaughn@solanocounty.com>, "Pak, David M."
> <DMPak@solanocounty.com>
> **Subject: RE: Urgent - CA Public Records Act Request**
>
>
> Hello,
>
> Please confirm that the total amount is sufficient.  I do have a spreadsheet but it
> includes personal data for our employees.
>
> 1. A writing/document that provides data on the number of <u>Solano
> County</u> employees who sought religious exemptions for COVID-19 vaccination
> between January 1, 2021 and December 31, 2022.  = 23
>
> 2. A writing/document that provides data on the number of employees who were
> granted religious accommodations to COVID-19 vaccination between January 1,
> 2021 and December 31, 2022.  = 19  granted



## Qwen Stewart

## Risk Manager

Solano County Human Resources

675 Texas Street, Suite 1800, Fairfield

(707) 784 6183

qstewart@solanocounty.com

My Wellness Site



---

**From:** Davis, Matthew A. <MADavis@SolanoCounty.com>
**Sent:** Wednesday, October 11, 2023 9:49 AM
**To:** Pak, David M. <DMPak@SolanoCounty.com>; Stewart, Qwendolyn <QStewart@SolanoCounty.com>
**Cc:** Vaughn, Debbie L. <DLVaughn@SolanoCounty.com>
**Subject:** FW: Urgent - CA Public Records Act Request

Hi Qwen and David, good morning –

County Counsel advised I send this PRA to you for review and response.  Please let me know if you have any questions or concerns.

Thank you in advance for your assistance in this matter.  Please see request below.

**Matthew A. Davis, M.A., M.P.A.**

*Senior Management Analyst / Public Communications Officer*

Solano County Administrator's Office

675 Texas Street, Suite 6500

Fairfield, CA 94533

Direct (707) 784-6111

MADavis@SolanoCounty.com


@CountyOfSolano

@SolanoCountyPH

@SolanoSheriff



---

**From:** Desiree Westbrook <dwest@pji.org>
**Sent:** Tuesday, October 10, 2023 4:15 PM
**To:** Davis, Matthew A. <madavis@solanocounty.com>
**Cc:** Desiree Westbrook <dwest@pji.org>
**Subject:** Re: Urgent - CA Public Records Act Request


Hello,


**<u>Please see the corrected/updated records request:</u>**


Greetings,


Please provide records per the California Public Records Act as follows:


1. A writing/document that provides data on the number of <u>Solano</u>

<u>County</u> employees who sought religious exemptions for COVID-19 vaccination between January 1, 2021 and December 31, 2022.

2. A writing/document that provides data on the number of employees who were granted religious accommodations to COVID-19 vaccination between January 1, 2021 and December 31, 2022.

Most gratefully,

Desriee' Westbrook

On Tue, Oct 10, 2023 at 4:04 PM Desiree Westbrook <<dwest@pji.org>> wrote:

Greetings,

Please provide records per the California Public Records Act as follows:

1. A writing/document that provides data on the number of <u>Solano County</u> employees who sought religious exemptions for COVID-19 vaccination between January 1, 2021 and December 31, 2022.

2. A writing/document that provides data on the number of University of California at Berkeley employees who were granted religious accommodations to COVID-19 vaccination between January 1, 2021 and December 31, 2022.

Most gratefully,

Desriee' Westbrook

[EXTERNAL Email Notice!] External communication is important to us. Be cautious of phishing attempts. Do not click or open suspicious links or attachments.

# EXHIBIT 8

**From:** **Kevin Snider** ksnider@pji.org 
**Subject:** Fwd: Sacramento Regional Transit District (SacRT): PRA: 23-099b (Westbrook, Desire), No Document Response Letter
**Date:** December 11, 2023 at 9:55 AM
**To:** Brittany Green bgreen@pji.org

KS

Kevin T. Snider, Chief Counsel∗



Northern California Office
P.O. Box 276600
Sacramento, CA 95827
tel. (916) 857-6900
pji.org
ATTORNEY/CLIENT PRIVILEGED CONFIDENTIAL MATERIAL
The information contained in this e-mail message, and all attachments, is covered
by the attorney/client and or work product privilege and is confidential
information intended only for the use of the individual or entity named above. If
you have received this communication in error, please immediately notify us by
return e-mail. Thank You.

∗Admitted in Washington, California & the District of Columbia

---------- Forwarded message ---------
From: **Sussan M. Nasirian** <snasirian@sacrt.com>
Date: Thu, Oct 19, 2023 at 1:44 PM
Subject: Sacramento Regional Transit District (SacRT): PRA: 23-099b (Westbrook, Desire), No Document Response Letter
To: ksnider@pji.org <ksnider@pji.org>
Cc: Michelle Garvin <MGarvin@sacrt.com>

**RE: Public Records Request 23-099b**

Dear Desire Westbrook:

Please find attached, a No Document Response Letter pertaining to your Public Records Act request on October 10, 2023.

Should you have any questions, please feel free to contact me.

Thank you and have a wonderful day!

Thanks much,


**Sussan Nasirian**

*Program Analyst*


**SACRAMENTO REGIONAL TRANSIT DISTRICT**

**p:** 916.556.0487 I **c:** 916.708.4136

**e:** snasirian@sacrt.com

1102 Q Street, Suite 4200 I Sacramento, CA 95811

**Facebook** I **Twitter** I **Instagram** I **LinkedIn**

PRA 23-099b
No Doc....23.pdf
277 KB



**Sacramento Regional
Transit District**
A Public Transit Agency
and Equal Opportunity Employer

**Administrative Offices**
1400 29th Street
Sacramento, CA 95816
916-321-2800

**Mailing Address**
P.O. Box 2110
Sacramento, CA 95812-2110

**Human Resources**
2810 O Street
Sacramento, CA 95816
916-556-0299

**Customer Service &
Sales Center**
1225 R Street
Sacramento, CA 95811

**Route, Schedule & Fare
Information**
916-321-BUSS (2877)
TDD 916-483-HEAR (4327)
sacrt.com

Public Transit Since 1973

October 19, 2023

*Sent via Electronic Mail Only*

Desire Westbrook
P.O. Box 276600
Sacramento, CA 95827-6600
Email: ksnider@pji.org

**Re: Public Records Request 23-099**

Dear Desire Westbrook:

On October 10, 2023, Sacramento Regional Transit District (SacRT) received your California Public Records Act (PRA) Request, for the following:

"1. A writing/document that provides data on the number of Sacramento Regional Transit District employees who sought religious exemptions for COVID-19 vaccination between January 1, 2021 and December 31, 2022.

2. A writing/document that provides data on the number of Sacramento Regional Transit District employees who were granted religious accommodations to COVID-19 vaccination between January 1, 2021 and December 31, 2022."

Please be advised that SacRT did not require COVID-19 vaccinations and does not have any record(s) responsive to your request.

If you have any further questions, please contact me by email at snasirian@sacrt.com.

Sincerely,
SACRAMENTO REGIONAL TRANSIT DISTRICT

*Sussan Nasirian*
Sussan Nasirian
Program Analyst