1   GLYNN, FINLEY, MORTL,
    HANLON & FRIEDENBERG, LLP
2   JAMES M. HANLON, JR., Bar No. 214096
    VICTORIA R. NUETZEL, Bar No. 115124
3   DAWSON P. HONEY, Bar No. 347217
    One Walnut Creek Center
4   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
5   Telephone: (925) 210-2800
    Facsimile: (925) 945-1975
6
    SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
7   OFFICE OF THE GENERAL COUNSEL
    SAM N. DAWOOD, Bar No. 178862
8   2150 Webster Street, 10th Floor
    Oakland, CA 94612
9   Telephone: (510) 464-6015
    Facsimile: (510) 464-6049
10
    Attorneys for Defendant
11  San Francisco Bay Area Rapid Transit District

12

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16  JERAMIAH COOPER, RONALD            )   Case No. 3:22-cv-09193-WHA
    FREEMEN II, ADRIAN GILBERT,        )
17  SILVERIO GONZALEZ, SERGII          )   **DEFENDANT BART'S**
    GRINCHENKO, LARON JOHNSON, JIM     )   **CROSS-MOTION FOR**
18  LASOVICH, RAYMOND LOCKETT,         )   **PARTIAL SUMMARY JUDGMENT**
    MICHAEL MANZANO, TERESA            )
19  OWENS, ROSALIND PARKER, RYAN       )   Date:      March 28, 2024
    RIVERA, ALBERT ROTH, JIM           )   Time:      8:00 a.m.
20  SCULLEN, SC SUN, NICK TAYLOR, and  )   Crtrm:     12
    DAROLYN TURNER,                    )   Judge:     Hon. William H. Alsup
21                                     )
                   Plaintiffs,         )
22                                     )
           vs.                         )
23                                     )
    SAN FRANCISCO BAY AREA RAPID       )
24  TRANSIT DISTRICT,                  )
                                       )
25                 Defendants.         )
                                       )
26  _____)

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. RELEVANT FACTUAL BACKGROUND.........................................................1

    A. BART's Vaccine Mandate.........................................................................1

    B. BART's Consideration of Requests for Religious Exemption and Accommodation.........................................................................................2

    C. BART's Health and Safety Concerns Were Well Grounded...................4

III. ARGUMENT..........................................................................................................7

    A. BART's Religious Exemption Process Did Not Violate Plaintiffs' Rights of Free Exercise..............................................................................7

        1. BART's Vaccine Mandate Was a Neutral Law of General Applicability Subject to Rational Basis Review...............................7

            a. *Fulton* Did Not Hold that <u>Any</u> Individualized Consideration Renders an Exemption Process Not Generally Applicable........................8

            b. BART's Vaccine Mandate Was Neutral....................................10

            c. BART's Vaccine Mandate Was Generally Applicable ............11

        2. BART's Vaccine Mandate Satisfies Rational Basis Review...........14

        3. BART's Vaccine Mandate Would Satisfy Strict Scrutiny Review, Were It Appropriate ......................................................................15

IV. CONCLUSION....................................................................................................19

1

**<u>TABLE OF AUTHORITIES</u>**

2

<u>CASES</u>

3

*California Fair Employment & Housing Commission v. Gemini Aluminum Corp.*
4    122 Cal. App. 4th 1004 (2004) ........................................................................... 7

5

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
   508 U.S. 520 (1993)............................................................................... 8, 10, 15
6

*Doe v. San Diego Unified School District*
7    19 F.4th 1173 (9th Cir. 2021) ....................................................................... 8, 11, 12

8
*Does 1-6 v. Mills*
9    566 F. Supp. 3d 34 (D. Me. 2021) ................................................................... 10, 14

10 *Dr. T. v. Alexander-Scott*
   579 F. Supp. 3d 271 (D. R.I. 2022)..................................................................... 7
11

12 *Employment Div., Department of Human Resources of Oregon v. Smith*
   494 U.S. 872 (1990)........................................................................................ 7, 8
13

14 *Fulton v. City of Philadelphia*
   141 S. Ct. 1868 (2021)............................................................................ 8, 9, 10, 13
15

*George v. Grossmont Cuyamaca Community College District Board of Governors*
16    Case No. 22-cv-0424, 2022 WL 16722357 (S.D. Cal. November 4, 2022) .............................. 9

17 *Jacobson v. Massachusetts*
   197 U.S. 11 (1905)....................................................................................... 7
18

19 *Kane v. De Blasio*
   19 F.4th 152 (2d Cir. 2021) ....................................................................... 10, 11, 12, 13
20

*Kennedy v. Bremerton School District*
21    __ U.S. __, __ S. Ct. __, 2022 WL 2295034 (U.S. Jun. 27, 2022) ................................... 11, 15

22 *Opuku-Boateng v. State of California*
   95 F.3d 1461 (9th Cir. 1996) ............................................................................... 7
23

24 *Orr v. Bank of America, NT & SA*
   285 F.3d 764 (9th Cir. 2002) ............................................................................... 16
25

26 *Parents for Privacy v. Barr*
   949 F.3d 1210 (9th Cir. 2020) ....................................................................... 8, 15

27

28

*Pilz v. Inslee*
No. 3:21-cv-05735, 2022 WL 1719172 (W.D. Wash. May 27, 2022) .............................. 11, 12

*Prince v. Massachusetts*
321 U.S. 158 (1944) .............................................................................................................. 7

*Roman Catholic Diocese of Brooklyn v. Cuomo*
__ U.S. __, 141 S. Ct. 63 (2020) ....................................................................................... 14

*Sherbert v. Verner*
374 U.S. 398 (1963) ............................................................................................................ 11

*Short v. Berger*
593 F. Supp. 3d 944 (C.D. Cal. 2022) ........................................................................ 4, 5, 6

*Spivak v. City of Philadelphia*
649 F. Supp. 3d 45 (E.D. Pa. 2023) ................................................................................. 10

*Stormans, Inc. v. Wiseman*
794 F.3d 1064 (9th Cir. 2015) ............................................................................... 10, 11, 14

*Sullivan v. Dollar Tree Stores, Inc.*
623 F.3d 770 (9th Cir. 2010) ............................................................................................ 17

*Tandon v. Newsom*
593 U.S. 61, 141 S. Ct. 1294 ................................................................................. 13, 14, 15

*UnifySCC v. Cody*
Case No. 22-cv-01019, 2022 WL 2357068 (N.D. Cal. June 30, 2022) ........................... passim

*United States ex rel. Kelly v. Serco, Inc.*
846 F.3d 325 (9th Cir. 2017) ............................................................................................ 18

*We The Patriots USA, Inc. v. Hochul*
17 F.4th 266 (2d Cir. 2021) ........................................................................................ 10, 14

*Whitlow v. California*
203 F. Supp. 3d 1079 (S.D. Cal. 2016) .......................................................................... 7, 8

*Wise v. Inslee*
No. 2:21-CV-0288, 2021 WL 4951571 (E.D. Wa. Oct. 25, 2021) .................................... 14

*Zucht v. King*
260 U.S. 174 (1922) ............................................................................................................. 7

1

STATUTES

2

Public Utilities Code

Section 99171.................................................................................................................. 14

3

4

42 United Stats Code

Section 1983.............................................................................................................. 1, 19

5

RULES

6

Federal Rule of Evidence

7

Rule 201 ................................................................................................................... 1, 2
Rule 801 .................................................................................................................... 16
Rule 802 .................................................................................................................... 16
Rule 803 .................................................................................................................... 16

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.      Introduction**

Defendant San Francisco Bay Area Rapid Transit District ("BART") cross-moves for summary judgment of Plaintiffs' Second Cause of Action, which brings a claim under 42 U.S.C. section 1983 on allegations that BART violated Plaintiffs' rights to free exercise of religion under the First and Fourteenth Amendments to the Constitution. *See* Dkt. 1 at 25-28.  As discussed below, BART did not violate Plaintiffs' free exercise rights because its vaccination mandate, including the religious exemption process, was neutral and generally applicable as a matter of law.  Accordingly, the mandate is subject to rational basis review, which it clears easily.  In addition, even were the vaccine mandate subject to strict scrutiny review, which it is not, it would still satisfy such review as a matter of law.

**II.     Relevant Factual Background**

**A.      BART's Vaccine Mandate**

BART is a heavy rail service that provides public transportation throughout the Bay Area. Declaration of Victoria R. Nuetzel in Support of Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Defendant's Cross-Motion for Partial Summary Judgment, Ex. A, *Chavez v. BART*, No 3:22-cv-06119-WHA (N.D. Cal. Jan. 10, 2024), Dkt. 51-1 ("Nuetzel Decl.").[1]  Many people, including essential workers, relied on BART to commute to work and perform essential life activities during the COVID-19 pandemic. *Id.*  For this reason, BART employees, along with other state and local transit personnel, were deemed essential workers. Declaration of Rodney Maplestone in Support of Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Defendant's Cross-Motion for Partial Summary Judgment at ¶ 4, *Chavez v. BART*, No 3:22-cv-06119-WHA (N.D. Cal. Jan. 10, 2024), Dkt. 51-2 ("Maplestone Decl.").

To ensure BART continued to operate during this critical time, in October 2021, BART's Board of Directors adopted a mandate that all employees must be vaccinated against COVID-19. Nuetzel Decl., Ex. B.  The purpose of BART's vaccine mandate was to protect its employees and

---

[1] Rather than file duplicative declarations, BART relies on declarations filed in the related case.  These filings may be judicially noticed under Federal Rule of Evidence 201, and BART requests that the Court do so.

1   patrons, and its capacity to fulfill its critical public mission.  *Id.*  In particular, BART sought to

2   prevent both its employees and the public from contracting COVID-19, and also to minimize the

3   severity of illness if its employees were infected, so as to reduce the period during which they

4   would be absent from work.  *Id.*

5        The mandate was prescient.  January 2022 saw a significant uptick in COVID-19

6   infections in California, with more than 50,000 new cases reported in the state every day that

7   month.  Johns Hopkins Univ. of Med., Coronavirus Resource Center, available at

8   https://coronavirus.jhu.edu/region/us/california[2]; *see also* Declaration of Joseph A. Lewnard,

9   Ph.D. in Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of

10  Defendant's Cross-Motion for Partial Summary Judgment at ¶¶ 10-12, *Chavez v. BART*, No

11  3:22-cv-06119-WHA (N.D. Cal. Jan. 10, 2024), Dkt. 51-3 ("Lewnard Decl."),.  California saw

12  an average of more than 100 deaths per day from COVID-19 in January 2022, which continued

13  through March 2022.  *Id.*  Human nature may downplay the severity of past bad conditions, but

14  the Court will recall the seriousness of the situation.  *See also* Lewnard Decl., ¶¶ 9-12.

15      **B.   BART's Consideration of Requests for Religious Exemption and
          Accommodation**

16

17       This lawsuit is brought by former BART employees in a variety of positions who refused

18  to be vaccinated against COVID-19.  Each claimed that sincerely held religious belief prevented

19  their vaccination and sought an exemption from the vaccine mandate and accommodation that

20  would permit them to work unvaccinated.

21       BART anticipated such requests and specified that it would consider exemptions.

22  Nuetzel Decl., Ex. B.  It developed an Employee Vaccination Policy, which specified the

23  potential exemptions and process for requesting them.  Nuetzel Decl., Ex. C.  BART modeled its

24  process on the Equal Employment Opportunity Commission's ("EEOC") existing guidance

25  concerning requests for religious exemption from COVID-19 vaccination requirements.

26  Maplestone Decl., ¶ 6.  As recommended by the EEOC, BART's Leave Management

27

28  ---
    [2]  These data may be judicially noticed under Federal Rule of Evidence 201, and BART
    requests that the Court do so.

1   Department prepared forms to collect information from employees concerning the beliefs that

2   prevented them from being vaccinated and the accommodation sought.  Maplestone Decl., ¶¶ 6-

3   7.  Those forms permitted employees to explain their individual belief and objection to COVID-

4   19 vaccination.  *Id*.  If, following initial review, more information was required, an interview was

5   conducted.  Maplestone Decl., ¶ 8.  All interviews used the same questions to focus on the EEOC

6   criteria for determination of an employee's sincerely held religious belief.  Maplestone Decl.,

7   ¶ 9.

8       When the information was complete, a panel of three BART employees reviewed each

9   application.  Maplestone Decl., ¶ 10; Nuetzel Decl., Ex. D at 33:8-19; Ex. E at 10:17-11:20.

10   Each decision was individual to the employee, with each employee's stated religious beliefs

11   separately considered.  Maplestone Decl., ¶ 10.  Altogether, BART received requests for

12   religious exemption from 181 employees.  Maplestone Decl., ¶ 14.  Of these initial requests,

13   40 employees chose not to complete the application process, and either were vaccinated or had

14   their employment terminated.  *Id.*  Of those who completed the process, 70 were granted

15   religious exemption from the vaccine mandate.  *Id.*  Of those employees denied an exemption,

16   45 elected to be vaccinated rather than end their employment.  *Id.*

17       For each employee who received a religious exemption, BART considered whether a

18   reasonable accommodation could permit them to work unvaccinated while taking into account

19   the safety of the public and other employees.  Maplestone Decl., ¶ 16.  BART's analysis relied

20   on guidance from public health officials and agencies, and reflected the critical nature of

21   BART's service in the Bay Area.  *Id.*  There was no predetermined decision or instruction to

22   deny any accommodation.  Nuetzel Decl., Ex. D at 44:4-20; Ex. E at 12:25-13:5, 16:24 –17:4.

23   After such inquiries, BART was unable to accommodate any of the 70 employees who received

24   religious exemptions.  Maplestone Decl., ¶ 18.  BART could not identify accommodation that

25   would permit the employee to continue to work unvaccinated without imposing an undue burden,

26   namely health and safety concerns for the public and co-workers.  *Id.*

27       Of the 70 employees who were granted an exemption, but could not be accommodated,

28   33 chose to be vaccinated rather than separated from employment.  *Id.*, ¶ 19.  Thirty-seven

1   employees who were granted exemptions, but could not be accommodated, resigned, retired, or

2   were terminated.  *Id.*

3        Altogether, 73 employees who requested a religious exemption and completed the

4   application process lost their jobs.  Maplestone Decl., ¶ 19.  Thirty-six were denied an

5   exemption; 37 received an exemption, but could not be accommodated.  *Id.*, ¶¶ 14, 19.

6   Following completion of the exemption process, BART did not permit any unvaccinated

7   employee to work.[3]  *Id.*, ¶ 20.

8       **C.**    **BART's Health and Safety Concerns Were Well Grounded**

9        BART supports this cross-motion with declarations from two expert witnesses, Joseph A.

10   Lewnard, Ph.D., an epidemiologist on faculty at the University of California, Berkeley, and

11   Nancy M. McClellan, an eminent industrial hygienist.  These experts establish that BART's

12   employee and public health concerns were valid, and that no lesser means existed to address

13   BART's concerns at the same level of efficacy.  BART will not repeat the declarations in this

14   brief, but some of the key points are as follows:

15       •  By October 2021, when BART's vaccine mandate went into effect, 85% of adults in

16          California had received a full primacy vaccine series against COVID-19.  Lewnard

17          Decl., ¶ 9.  By January 2022, when BART completed its exemption and

18          accommodation process, about 90% of adults in California were vaccinated.  *Id.*

19       •  Despite these levels of vaccination, the United States and California remained in an

20          acute phase of the COVID-19 pandemic.  Lewnard Decl., ¶ 10.  Weekly COVID-19

21          hospitalizations hit an all-time high of 150,652 during the week beginning

22          January 15, 2022.  *Id.*  Vaccination efforts are estimated to have prevented

23          72,000 COVID-19 hospital admissions and 19,000 deaths in California from

---

24        [3]  Plaintiffs plead that BART "granted medical accommodations to vaccination but not a
25   single religious accommodation."  Dkt. 1, ¶ 51 (emphasis original); *see also id.* at ¶¶ 59, 61, 66.
    BART did grant eight medical accommodations, but each of those required the employee to
26   refrain from working until he or she could be vaccinated.  Maplestone Decl., ¶ 15.  During the
    period that medical issues prevented vaccination, each employee was placed on unpaid leave.  *Id.*
27   After completion of the exemption process, BART did not permit <u>any</u> employee to work while
    unvaccinated for any reason.  Maplestone Decl., ¶ 20; *see also Short v. Berger*, 593 F. Supp. 3d
28   944, 951 (C.D. Cal. 2022) ("[o]nly permanent medical exemptions are analogous to religious
    exemptions").

1    February through October 16, 2021.  *Id.*, ¶ 11.  From October 2021 through

2    February 2022, the percentage of the adult population of the U.S. who had

3    experienced COVID-19 infection rose from about 21% to 58%, demonstrating the

4    dramatic effect of the Omicron variant then circulating.  *Id.*

5    • As of October 2021, "[r]educing the spread of SARS-CoV-2 remained a necessary

6    means of preventing individuals – whether employees or members of the public –

7    from experiencing severe disease (*e.g.*, necessitating hospital admission or intensive

8    care) or death from avoidable SARS-CoV-2 exposures occurring on BART's

9    premises."  Lewnard Decl., ¶ 13; *see also* Declaration of Nancy M. McClellan in

10    Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of

11    Defendant's Cross-Motion for Partial Summary Judgment at ¶ 11, *Chavez v. BART*,

12    No 3:22-cv-06119-WHA (N.D. Cal. Jan. 10, 2024), Dkt 51-4 ("McClellan Decl.").

13    • "The most straightforward means by which vaccination can contribute to this

14    objective of reducing the spread of SARS-CoV-2 is by preventing infections from

15    occurring, as individuals who are not infected cannot transmit to others."  Lewnard

16    Decl., ¶ 14.  Randomized controlled trials at the time demonstrated that vaccines were

17    about 94% and 95% efficacious in preventing COVID-19.  *Id.*  "Federal OSHA

18    declared that the vaccines authorized by the U.S. Food and Drug Administration in

19    the United States were highly effective at protecting fully vaccinated people against

20    symptomatic and severe COVID-10 health effects."  McClellan Decl., ¶ 12.

21    • "[L]ittle to no evidence supported adoption of other countermeasures as suitable

22    alternatives that would enable BART to achieve the same objective of reducing

23    SARS-CoV-2 spread…."  Lewnard Decl., ¶ 16.  "Best-available studies estimated

24    that even when using polymerase chain reaction (PCR) tests with high frequency

25    (every 2 days) and rapid results turnaround (1 day), only 58% (40% to 74%) of

26    symptomatic cases could be identified before symptoms onset…."  *Id.*  "Rapid

27    antigen-based tests, which offer lower sensitivity for detection of SARS-CoV-2

28    infection, but enable faster identification of positive cases by delivering results almost

instantly, were not yet widely and readily available to the U.S. general public as of October 2021, with many having received Emergency Use Authorization only months earlier and demand greatly outstripping available supply." *Id.* "[R]outine testing at a weekly frequency was estimated to reduce transmission by only 24% within the general population." *Id.*, ¶ 17. "Broad scientific awareness of these findings as of October 2021, and appreciation of the clear difference in the effectiveness of testing relative to vaccination, supported BART's policy of requiring vaccination among employees rather than accepting testing as an alternative." *Id.*

- "Abundant studies" had shown by October 2021 that wearing gloves was not an effective strategy for avoiding COVID-19 infection. Lewnard Decl., ¶ 18. "Further non-pharmaceutical countermeasures such as mask-wearing, voluntary self-isolation after known or potential exposure to SARS-CoV-2 or based on presence of symptoms, physical distancing, and enhanced ventilation or filtration of shared indoor air continued to be recommended and practices as an adjunct strategy together with vaccination. These measures were thus sought to enhance protection beyond what was afforded by BART's vaccination policy, they could not be expected to serve as sufficient alternatives to vaccination." *Id.* "While masking reduced transmission of larger bioaerosols, the mask materials and fit to the face resulted in minimal protection from smaller particle size and higher concentration bioaerosols, resulting in the consideration of face masks as a far inferior control and interim measure relative to vaccination." McClellan Decl., ¶ 14; *see also id.*, ¶ 21 ("     The risk of bioaerosol exposure in the various transit workplace settings required a multilayer control approach with vaccination as the highest priority within the layers of engineering, administrative, and PPE controls.").

- As of the relevant time period, October 2021 through January 2022, "there were no less restrictive means for BART to achieve its goals of lessening the spread of COVID-19 among employees and the general public, and of decreasing the severity of symptoms and frequency of hospitalization, than vaccination. All other measures

1   available were significantly inferior to vaccination with respect to achieving those

2   goals."  Lewnard Decl., ¶ 19; McClellan Decl., ¶ 22.

3   **III.    Argument**

4   **A.    BART's Religious Exemption Process Did Not Violate Plaintiffs'
         Rights of Free Exercise**

5

6   To comply with its obligations as an employer under Title VII and FEHA, BART was

7   required to consider exemptions and accommodation for employees who sincerely held a

8   religious belief that prevented their vaccination against COVID-19.  *Opuku-Boateng v. State of*

9   *Cal.*, 95 F.3d 1461, 1467 (9th Cir. 1996); *Cal. Fair Emp't & Hous. Comm'n v. Gemini Aluminum*

10  *Corp.*, 122 Cal. App. 4th 1004, 1011 (2004).  BART's process, which followed EEOC guidance

11  and applicable law, considered whether (1) the belief that prevented an employee's vaccination

12  was religious, rather than secular, and (2) the employee could perform their job duties while

13  unvaccinated without imposing undue hardship or significant difficulty on BART.  (Maplestone

14  Decl., ¶ 12.)

15  Plaintiffs contend that BART's vaccine mandate was not "generally applicable" to its

16  workforce, and therefore should be subject to strict scrutiny review to determine whether

17  infringement on their free exercise rights was constitutional.  Dkt. 32 at 13-15.  That legal

18  assertion is mistaken and contrary to case law.  BART's religious exemption process was

19  generally applicable as a matter of law, and easily passes rational basis review.  Further, even

20  were strict scrutiny applicable, which it is not, BART's process would clear that hurdle as well.

21  **1.    BART's Vaccine Mandate Was a Neutral Law of General
         Applicability Subject to Rational Basis Review**

22

23  "Courts in this country have held for over a century that mandatory vaccination laws are

24  a valid exercise of a state's police powers, and such laws have withstood constitutional

25  challenges."  *Dr. T. v. Alexander-Scott*, 579 F. Supp. 3d 271, 280 (D. R.I. 2022) (citing

26  *Employment Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 889 (1990) ("*Smith*");

27  *Prince v. Massachusetts*, 321 U.S. 158, 166-67, n.12 (1944); *Zucht v. King*, 260 U.S. 174, 176-

28  77 (1922); *Jacobson v. Massachusetts*, 197 U.S. 11, 25-27 (1905)); *see also Whitlow v.*

1  *California*, 203 F. Supp. 3d 1079, 1086 (S.D. Cal. 2016) ("the right to free exercise does not

2  outweigh the State's interest in public health and safety").  Indeed, California's requirement that

3  children be vaccinated to attend schools includes <u>no process</u> for religious exemption and is

4  nonetheless constitutional.  *See Whitlow*, 203 F. Supp. 3d at 1085-86.

5        "The Supreme Court has held that 'the right of free exercise does not relieve an

6  individual of the obligation to comply with a 'valid and neutral law of general applicability on

7  the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or

8  proscribes).'"  *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021) (quoting

9  *Smith*, 494 U.S. at 879).  "[A] law that is neutral and of general applicability need not be justified

10  by a compelling governmental interest even if the law has the incidental effect of burdening a

11  particular religious practice . . .  A law failing to satisfy these requirements must be justified by a

12  compelling governmental interest and must be narrowly tailored to advance that interest."

13  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993); *see also*

14  *Parents for Privacy v. Barr*, 949 F.3d 1210, 1238 (9th Cir. 2020) (laws that are generally

15  applicable and facially neutral are subject only to rational basis review).

16        Plaintiffs rely on the Supreme Court's decision in *Fulton v. City of Philadelphia*, 141 S.

17  Ct. 1868 (2021), to argue that BART's vaccine mandate was not generally applicable, and is thus

18  subject to strict scrutiny review, because it included an EEOC-based religious exemption process

19  to comply with Title VII and FEHA.  Dkt. 36 at 13-15.  According to Plaintiffs, a governmental

20  employer cannot comply with those statutes without running afoul of the First Amendment such

21  that its policies become subject to strict scrutiny review.  Plaintiffs misread *Fulton*, which has

22  been construed in subsequent cases as discussed here.

23              **a.**     ***Fulton* Did Not Hold that <u>Any</u> Individualized Consideration**

24                    **Renders an Exemption Process Not Generally Applicable**

25        *Fulton* considered a decision by the City of Philadelphia to cease its long-term

26  relationship with Catholic Social Services ("CSS") to provide foster agency services.  141 S. Ct.

27  at 1874-76.  The City did so citing to an ordinance that prohibited it from doing business with

28  any entity that discriminated against same-sex couples.  *Id.* at 1875-76.  CSS refused to consider

1   same-sex couples as foster parents, so the City ended its relationship.  *Id.*  CSS sued, claiming

2   that the City's decision violated its free exercise rights.  *Id.* at 1876.  The Supreme Court held

3   that the ordinance at issue was not generally applicable because it vested a City employee with

4   "sole" authority to grant "entirely discretionary exemptions" to the ordinance.  *Id.* at 1878;

5   *see also id.* at 1877 ("A law is not generally applicable if it invites the government to consider

6   the particular reasons for a person's conduct by providing a mechanism for individualized

7   exemptions." (internal quotations omitted)).

8         As discussed below, *Fulton* did not hold that <u>any</u> consideration specific to one or more

9   persons renders a law or policy not "generally applicable."  Rather, a court must assess whether

10  an exemption process permits sufficiently <u>broad, unchecked discretion</u> that animus against an

11  applicant's religious belief jeopardizes impartial decision making.  Such was the case in *Fulton*,

12  where a City official empowered with "entirely discretionary" authority over the exemption told

13  CSS leadership that "things have changed since 100 years ago" and "it would be great if we

14  followed the teachings of Pope Francis, the voice of the Catholic Church."  *Id.* at 1875.  There is

15  no evidence of animus by any BART employee in this case, nor was any BART employee given

16  sole, unchecked discretion to exempt other employees from the vaccine mandate.  Instead, the

17  undisputed evidence establishes that the three-employee panel that considered requests applied a

18  uniform standard and procedure, consistent with EEOC guidelines.  Maplestone Decl., ¶ 10.

19        This Court considered the application of *Fulton* to a governmental employer's COVID-

20  19 vaccine mandate in *UnifySCC v. Cody*, Case No. 22-cv-01019, 2022 WL 2357068 (N.D. Cal.

21  June 30, 2022).  *UnifySCC* concerned Santa Clara County's vaccine mandate, which included a

22  religious exemption process; the plaintiffs brought a free exercise challenge and made the same

23  *Fulton* argument Plaintiffs make here.  *Id.* at *6-*12.  The Court's discussion and application of

24  applicable law provide a template for this case.  *See also George v. Grossmont Cuyamaca Cmty.*

25  *Coll. Dist. Bd. of Governors*, Case No. 22-cv-0424, 2022 WL 16722357, at *12-15 (S.D. Cal.

26  November 4, 2022) (following *UnifySCC* in considering employee vaccination mandate).

27        "Under *Fulton*, law incidentally burdening religion is subject only to rational basis

28  review as long as it is neutral and generally applicable."  *UnifySCC*, 2022 WL 2357068, at *6

1    (citing *Fulton*, 141 S. Ct. at 1976; *Lukumi*, 508 U.S. at 531-34).  "A policy must be both facially

2    and operationally neutral to avoid strict scrutiny."  *Id.*  "The tests for 'neutrality and general

3    applicability are interrelated,' but the prongs are considered separately."  *Id.* (quoting *Stormans*,

4    *Inc. v. Wiseman*, 794 F.3d 1064, 1076 (9th Cir. 2015)).

5                              **b.      BART's Vaccine Mandate Was Neutral**

6            "A law lacks facial neutrality if it refers to a religious practice without secular meaning

7    discernible from the language or context."  *UnifySCC*, 2022 WL 2357068, at *6 (quoting

8    *Stormans*, 794 F.3d at 1076).  "COVID-19 vaccination requirements have been held to be

9    facially neutral when they apply to an entire category (i.e., all employees) and 'do not single out

10   employees who decline vaccination on religious grounds.'"  *Id.* (quoting *We The Patriots USA,*

11   *Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021); and citing *Kane v. De Blasio*, 19 F.4th 152, 164

12   (2d Cir. 2021)).  "The existence of religious exemptions does not undermine facial neutrality."

13   *Id.* (citing *Kane*, 19 F.4th at 165).

14           BART's vaccine mandate was facially neutral because it applied to all employees and the

15   sole mention of religion was a process for an employee to apply for a religious exemption, which

16   was a potential benefit not available to employees with secular objections to vaccination.  The

17   process was thus facially neutral with respect to free exercise.  This Court reached that ruling

18   when considering a substantially similar mandate and exemption process in *UnifySCC*.  2022

19   WL 2357068, at *6.  Other courts have ruled similarly with respect to comparable COVID-19

20   employee vaccine mandates.  *E.g.*, *We The Patriots USA, Inc.*, 17 F.4th at 281; *Spivak v. City of*

21   *Philadelphia*, 649 F. Supp. 3d 45, 55 (E.D. Pa. 2023); *Does 1-6 v. Mills*, 566 F. Supp. 3d 34, 46

22   (D. Me. 2021).

23           BART's vaccine mandate was also operationally neutral.  It is an undisputed fact that

24   BART did not permit <u>any</u> employee to work while unvaccinated after requests for exemption

25   were fully processed.[4]  Maplestone Decl., ¶ 20.  As this Court noted in *UnifySCC*, that result

26           [4]   BART granted a small number of employees medical exemptions to the vaccine mandate,
     but the sole accommodation was being placed on unpaid leave until the employee was medically
27   cleared to be vaccinated.  Maplestone Decl., ¶ 15.  There was no similar basis for unpaid leave
     with respect to religious objectors because, unlike a transient medical condition, their religious
28   belief would not be anticipated to change and permit vaccination.

applied "whether an employee [was] eager to be vaccinated or strongly opposed and whether an

employee's opposition or reluctance [was] due to philosophical or political objections to vaccine

requirements, concerns about the vaccine's efficacy or potential side effects, or religious

beliefs." 2022 WL 2357068, at *6 (quoting *We The Patriots USA, Inc.*, 17 F.4th at 266).

BART's inclusion of a religious exemption application process "*benefits* religious objectors and

does not undermine operational neutrality." *Id.* (emphasis in original).

### c.      BART's Vaccine Mandate Was Generally Applicable

"A government policy will fail the general applicability requirement if it 'prohibits

religious conduct while permitting secular conduct that undermines the government's asserted

interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'"

*UnifySCC*, 2022 WL 2357068, at *7 (quoting *Kennedy v. Bremerton Sch. Dist.* __ U.S. __,

__ S. Ct. __, 2022 WL 2295034, at *9 (U.S. Jun. 27, 2022)). "The mere existence of an

exemption that affords some minimal government discretion does not destroy a law's

'general applicability.'" *Id.* at *7 (quoting *Stormans*, 794 F.3d at 1082); accord *Pilz v. Inslee*,

No. 3:21-cv-05735, 2022 WL 1719172, at *4 (W.D. Wash. May 27, 2022) (*Fulton* "did not hold

that any law containing exemptions is *per se* not generally applicable"). Rather, *Fulton* applies

to an exemption process that grants broad, unchecked discretion to a government official,

because the exercise of such discretion renders the process not generally applicable and

vulnerable to anti-religious bias.[5] *Id.* ("there must be some showing that the exemption

procedures allow secularly motivated conduct to be favored over religiously motivated conduct"

(quoting *Kane*, 19 F.4th at 165)).

The Ninth Circuit discussed an employee religious exemption process in *Doe v.*

*San Diego Unified School District*, 19 F.4th 1173 (9th Cir. 2021). That case concerned a

COVID-19 vaccine mandate for students, and the plaintiff pointed to an exemption process in the

school district's employee mandate as evidence that the student mandate was not generally

applicable. *Id.* at 1180. The Ninth Circuit explained that the employee process was not properly

---

[5]   This standard is consistent with Plaintiffs' citation of *Sherbert v. Verner*, 374 U.S. 398
(1963). Dkt. 32 at 14. That case concerned a "good cause" standard for exemption, which is the
sort of broad, undefined discretion that was of concern in *Fulton*. *See Sherbert*, 374 U.S. at 401.

1   considered a religious exemption:

2       [T]hat procedure does not apply to students and, in any event, is not a religious
        *exemption*. To the contrary, it is a legally required interactive process that may
3       ultimately result in a denial of the requested accommodation. The EEOC has
        released guidance explaining that, although Title VII prohibits employment
4       discrimination based on religion, an employee's request for an exemption from a
        COVID-19 vaccination mandate can be denied on the ground that the employee's
5       belief is not truly religious in nature or is not sincerely held, or on the ground that
        such an exemption would pose an "undue hardship" by burdening "the conduct of
6       the employer's business" through increasing "the risk of the spread of COVID-19
        to other employees or to the public."

7

8   *Id.* at 1180 (emphasis original). The Ninth Circuit thus recognized that when a governmental

9   employer, like BART, complies with Title VII and state law against discrimination by providing

10  a process to consider religious exemption and accommodation, it does <u>not</u> act in a discretionary

11  manner that renders its process not "generally applicable." *See also Pilz*, 2022 WL 1719172, at

12  *4-5 (law requiring all State of Washington employees to be vaccinated against COVID-19 was

13  generally applicable notwithstanding "standardized exemptions" because those were "not the

14  same as giving government officials wide latitude to deny exemptions for any reason").

15      It is thus settled law that providing a religious exemption process, which necessarily

16  includes consideration of an employee's personal belief and job duties, doesn't render a vaccine

17  mandate not generally applicable. Plaintiffs instead must establish "that the exemption

18  procedures allow secularly motivated conduct to be favored over religiously motivated conduct."

19  *UnifySCC*, 2022 WL 2357068, at *7 (quoting *Kane*, 19 F.4th at 165).

20      Plaintiffs have argued that BART favored secular conduct because its vaccine mandate

21  applied only to its employees, and BART did not require that members of the public show proof

22  of vaccination before entering its system. Dkt. 32 at 15. This argument is unavailing – BART

23  treated similarly situated persons in the same manner, which is what the law requires.

24      Some unvaccinated members of the public who entered BART's system and rode its

25  trains undoubtedly refrained from vaccination for religious reasons, like the Plaintiffs. BART

26  extended its public transit services to those people in the same manner it did to all members of

27  the public. In fulfilling its mission as a public transit provider, BART did not distinguish

28  between those customers who avoided COVID-19 vaccination for religious reasons and any

1   other person.  With respect to riders, BART did not favor secularly motivated conduct over

2   religiously motivated conduct.

3          But transit riders and transit workers are not comparably situated.  The Second Circuit

4   considered, and rejected, Plaintiffs' argument in *Kane*, 19 F.4th at 165-66.  *Kane* concerned

5   New York City's COVID-19 vaccine mandate for employees working in public schools.  *Id.* at

6   158.  The plaintiffs brought a free exercise challenge and argued that the City's mandate was not

7   generally applicable because it did not apply to members of the general public.  *Id.* at 165-66.

8   New York City's mandate permitted "students, parents (in certain circumstances), deliverymen,

9   repairmen, emergency responders" and others to enter schools without proof of vaccination.  *Id.*

10  at 161-62.  The *Kane* plaintiffs argued that the mandate thus favored secular over religious

11  conduct.  *Id.*  The Second Circuit disagreed, holding that because the mandate "provides for

12  objectively defined categories of exemptions . . . that do not 'invite the government to decide

13  which reasons for not complying with the policy are worthy of solicitude.'"  *Id.* at 166 (quoting

14  *Fulton*, 141 S. Ct. at 1879).  The Second Circuit further held that the public's activities were not

15  comparable the employees' for purposes of a free exercise analysis:

16      "Whether two activities are comparable for purposes of the Free Exercise Clause
        must be judged against the asserted government interest that justifies the
17      regulation at issue."  [*Tandon v. Newsom*, 593 U.S. 61, 141 S. Ct. 1294, 1296, 209
        L.Ed.2dd 355 (2021).]  Plaintiffs argue that the Vaccine Mandate violates these
18      principles because it exempts certain groups of people (for example, emergency
        providers).  But that argument is unavailing.  Viewed through the lens of the
19      City's asserted interest in stemming the spread of COVID-19, these groups are
        not comparable to the categories of people that the Mandate embraces.  While the
20      exempt groups do not come into prolonged daily contact with large groups of
        students (most of whom are unvaccinated), the covered groups (for example,
21      teachers) inevitably do.

22  *Id.*

23         The same is true for BART.  The interests behind BART's vaccine mandate were

24  threefold – avoid the spread of infection among its workforce, reduce downtime for members of

25  its workforce who became infected, and reduce the spread of infection among the public.

26  Nuetzel Decl., Ex. B.  Employees and the public were not evenly situated with respect to these

27  interests.  *See* McClellan Decl., ¶¶ 16-18, 20 ("The risk level is much lower for customers and

28  former employees spending minutes in transit environment compared to current BART

1    employees spending many working hours in the sometimes high-risk environment of the transit

2    system due to the differing duration and resulting likelihood of exposure."). Requiring employee

3    vaccination was the best measure available to address the downtime concern, whereas requiring

4    public vaccination would not affect that concern. *Id.* Also, as with the teachers in *Kane*, many

5    BART employees were in regular contact with large groups of people, some unvaccinated, due to

6    the nature of their work. *Id.* Accordingly, the general public was not comparable to BART's

7    employees for purposes of implementing BART's vaccine mandate in furtherance of its public

8    health and operational interests.[6]

9                    **2.    BART's Vaccine Mandate Satisfies Rational Basis Review**

10            "Under rational basis review, [a court] must uphold the rules if they are rationally related

11    to a legitimate government purpose." *UnifySCC*, 2022 WL 2357068, at *8 (quoting *Stormans*,

12    794 F.3d at 1084). "[T]he Supreme Court has held that '[s]temming the spread of COVID-19 is

13    unquestionably a compelling interest,' rather than merely a legitimate one." *Id.* (quoting *Roman*

14    *Catholic Diocese of Brooklyn v. Cuomo*, __ U.S. __, 141 S. Ct. 63, 67 (2020)); *see also* Dkt. 32

15    at 16 ("The Cooper-Plaintiffs concede, for purposes of this motion, that stemming the spread of

16    COVID-19 comprises a compelling state interest"). "[A]s numerous courts have held, requiring

17    employees to be vaccinated is rationally related to that interest because data show that approved

18    COVID-19 vaccines drastically reduce the chances of contracting and spreading the virus, or of

19    being afflicted with serious illness or death from COVID-19 if the virus is contracted."

20    *UnifySCC*, 2022 WL 2357068, at *8 (citing *Does 1-6 v. Mills*, 566 F. Supp. 3d 34, 52 (D. Me.

21    2021); *We The People, Inc.*, 17 F.4th at 290; *Wise v. Inslee*, No. 2:21-CV-0288, 2021 WL

22    4951571, at *3 (E.D. Wa. Oct. 25, 2021)). The undisputed evidence in this case is in accord—it

23            [6]  Plaintiffs assume, but have not established, that BART had authority to impose a vaccine
24    mandate on its patrons. BART is a public transit district, and has limited authority to exclude
      members of the public. Public Utilities Code section 99171 governs prohibition orders by which
25    a California transit district may bar a member of the public from its facilities. None of the bases
      stated pertains to a refusal to be vaccinated against contagious disease. This is not to say that it
      would be impossible for the State to bar unvaccinated persons from using public transit, but
26    Plaintiffs' assertion that BART could do so on its own is both unsupported and not practicable.
      In addition, BART did not have sufficient personnel resources to confirm vaccination at the
27    points of entry to its stations. Maplestone Decl., ¶ 21. As the Court knows, BART's facilities
      are entered through automated fare gates, and BART does not employ ticket takers or other
28    employees who could be stationed at entry points to check proof of vaccination. *Id.*

1    shows that vaccination was by far the most effective tool available to BART, with no comparable

2    alternative.  Lewnard Decl., ¶¶ 13-19; McClellan Decl., ¶¶ 11-22.  There is no reasonable

3    argument that BART's vaccine mandate does not satisfy rational basis review.

4         **3.     BART's Vaccine Mandate Would Satisfy Strict Scrutiny Review,
              Were It Appropriate**
5

6         Because BART's employee vaccine mandate was neutral and generally applicable, it is

7    not subject to strict scrutiny review, even if Plaintiffs' rights of free exercise were impacted.

8    *Lukumi*, 508 U.S. at 531-32; *Parents for Privacy*, 949 F.3d at 1238.  But if strict scrutiny were

9    applicable, the mandate still would be constitutional as a matter of law.

10        To satisfy strict scrutiny, the vaccine mandate must have been "justified by a compelling

11   state interest" and "narrowly tailored in pursuit of that interest."  *UnifySCC*, 2022 WL 2357068,

12   at *8 (quoting *Kennedy*, 2022 WL 2295034, at *9).  As discussed, the Supreme Court has held

13   that lessening the spread of COVID-19 was a compelling state interest and Plaintiffs concede as

14   much, so the only question is whether BART's vaccine mandate was narrowly tailored.  The

15   Supreme Court articulated the standard for considering whether a COVID-19 mandate is

16   narrowly tailored:  "[N]arrow tailoring requires the government to show that measures less

17   restrictive of the First Amendment activity could not address its interest in reducing the spread of

18   COVID." *Tandon v. Newsom*, 593 U.S. 61, 63 (2021).  As discussed here, BART's employee

19   vaccine mandate satisfies that standard.

20        With this opposition, BART submits declarations from an expert epidemiologist,

21   Dr. Joseph Lewnard, and an expert industrial hygienist, Nancy McClellan, who each opine that

22   no less restrictive means existed to satisfy BART's goals of restricting the spread of COVID-19

23   among its workers, minimizing employee downtime in the event of infections, and restricting the

24   spread of the virus among the public.  Lewnard Decl., ¶ 19; McClellan Decl., ¶ 22.

25        Unable to contest the scientific testimony and evidence, Plaintiffs instead have argued

26   that BART's policy could have been more narrowly tailored because a few other governmental

27   employers with COVID-19 vaccine mandates granted religious exemptions and accommodations

28   to their employees.  Dkt. 32 at 19-20.  Plaintiffs obtained this evidence through public records

1   requests, and it is all hearsay.  *See* Fed. R. Evid. 801, 802.  The evidence thus cannot be

2   considered on this motion unless a hearsay exception renders it admissible.  *E.g.*, *Orr v. Bank of*

3   *America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider

4   admissible evidence in ruling on a motion for summary judgment.").

5          Public records are admissible under Federal Rule of Evidence 803(8), but not if

6   "circumstances indicate a lack of trustworthiness."  As the Court knows, there is a distinction

7   between granting an employee a religious exemption (*i.e.*, recognizing that the employee's

8   religious belief prevents compliance with a vaccine mandate) and providing an accommodation

9   (*i.e.*, permitting continued employment while unvaccinated).  Here, the proffered records

10  disclose on their face reason for concern that the personnel responding to Plaintiffs' public

11  records requests did not appreciate that important distinction.

12         The problem is demonstrated by the response from the City of San Jose that Plaintiffs

13  submitted as evidence in the related case, but which is conspicuously omitted in the filings for

14  this case.  *Compare* Declaration of Kevin T. Snider at Ex. 8, *Chavez v. BART*, No 3:22-cv-

15  06119-WHA (N.D. Cal. Dec. 12, 2023), Dkt. 46-2 ("Snider Chavez Declaration"), *with* Dkt. 32-

16  2 ¶¶ 6-8.  Plaintiffs asked for information concerning (1) the number of employees who

17  requested a religious exemption and (2) the number of employees who were granted a "religious

18  accommodation."  Snider Chavez Declaration, Ex. 8.  The City responded that "we received 379

19  religious exemption requests from employees and approved 331."  *Id.*  The City thus told

20  Plaintiffs how many <u>exemptions</u> were granted, but not how many exempt employees received an

21  <u>accommodation</u>.  *Id.*

22         Even Plaintiffs confused this critical distinction in the related case, mistakenly telling the

23  Court that "Three hundred and seventy-nine employees of the City of San Jose requested

24  accommodation, for which 331 were granted."  Chavez-Plaintiffs' Motion for Partial Summary

25  Judgment at 20, *Chavez v. BART*, No 3:22-cv-06119-WHA (N.D. Cal. Dec. 12, 2023), Dkt. 46.

26  That is not correct.  The City reported that it approved 331 "religious <u>exemption</u> requests."

27  Snider Chavez Declaration, Ex. 8.  The City did not provide any information about how many

28  employees who received an exemption were then provided an <u>accommodation</u> that permitted

1   continued employment while unvaccinated.  Plaintiffs thus have improperly cherry-picked

2   evidence by attempting to shield the unfavorable City of San Jose evidence from the Court, after

3   presenting it in the related case.

4           The City of San Jose personnel did not correctly answer the questions that Plaintiffs

5   asked perhaps because they did not appreciate the distinction between granting a religious

6   exemption and providing an accommodation.  That confusion, which Plaintiffs share, indicates

7   the information provided by <u>all</u> the public agencies in response to identical requests lacks

8   trustworthiness.  Other agencies could have made a similar mistake and reported exemptions,

9   rather than accommodations, not appreciating the difference.

10          *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770 (9th Cir. 2010), provides an example of

11  a government record excluded as hearsay because it was untrustworthy.  That case concerned a

12  Department of Labor report.  *Id.* at 778.  The Ninth Circuit held that the document was properly

13  outside the public records exception to the hearsay rule because, among other reasons, the author

14  was not identified and the report was sent in response to a FOIA request, rather than in the usual

15  course of business.  *Id.*  As the Court noted, if the author is unknown, it becomes "impossible to

16  assess the author's skill or experience."  *Id.*

17          Here, we have no insight into the person or persons who were the source of the data

18  provided to Plaintiffs, so the Court cannot assess whether they reliably understood the difference

19  between granting a religious exemption to a COVID-19 vaccination mandate, on one hand, and

20  providing an accommodation, on the other.  We know that the City of San Jose did <u>not</u> apply that

21  distinction.  Accordingly, the data from other public agencies is not sufficiently reliable to be

22  admissible as a public record.  If Plaintiffs sought to present <u>admissible</u> evidence concerning the

23  rate of accommodation for other governmental employers, they should have obtained that

24  information through deposition, where the reliability of the data could be established.

25          Even were the evidence from other public agencies admissible, Plaintiffs' approach is

26  facile because they have obtained <u>no evidence</u> concerning any of those employees' job duties,

27  ///

28  ///

1    the conditions in their workplaces, or what accommodations were provided.[7]  Without such

2    evidence, there can be no assessment whether employees who received accommodation were

3    similarly situated to Plaintiffs.  Indeed, Plaintiffs' proffered evidence proves too much because,

4    with one exception, the other governmental employers <u>denied</u> accommodation requests for some

5    employees.  Dkt. 32-2, Ex. 7 (Contra Costa County denied 12 accommodation requests,

6    Santa Clara County denied 72 accommodation requests, Solano County denied 4 accommodation

7    requests).  Those employers determined that no reasonable accommodation was available for

8    some employees, which is the same conclusion that BART reached with respect to Plaintiffs.

9    This data does nothing to establish that BART could have employed less restrictive measures to

10   accomplish its goals of protecting employee and public health.

11           With this cross-motion, BART submits expert evidence that its COVID-19 vaccination

12   mandate and religious exemption process were narrowly tailored because there were no less

13   restrictive means available to accomplish BART's goals with respect to employee and public

14   health.  Lewnard Decl., ¶ 19; McClellan Decl., ¶ 22.  Plaintiffs cannot submit sufficient evidence

15   to establish a triable dispute of material fact.  *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d

16   325, 329-30 (9th Cir. 2017) (evidence that is "merely colorable, or is not significantly probative"

17   does not suffice to establish triable issue of material fact).

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

---

25           [7]  The sole exception with respect to accommodation was the California Department of
26   Industrial Relations ("DIR"), which apparently permitted weekly or bi-weekly testing for
     employees who did not present proof of vaccination.  Dkt. 32 at 20, Dkt. 32-2, Ex. 6.  BART's
27   experts explain that such testing was not as effective in slowing the spread of COVID-19 as was
     vaccination.  Lewnard Decl., ¶¶ 16-17, 22; McClellan Decl., ¶ 19, 21-22.  It is an open question
28   why DIR adopted a less effective approach, but this single example does nothing to establish that
     BART's policy was not narrowly tailored.

1  **IV.     Conclusion**

2          For the reasons set forth herein, and in the supporting declarations, the Court should grant

3  BART summary judgment of Plaintiffs' Second Cause of Action, which arises under 42 U.S.C.

4  section 1983.  As a matter of law, BART's COVID-19 employee vaccination mandate did not

5  violate Plaintiffs' rights to free exercise of religion under the First and Fourteenth Amendments.

6

7          Dated: February 16, 2024

8                                                                GLYNN, FINLEY, MORTL,
                                                                 HANLON & FRIEDENBERG, LLP
9                                                                JAMES M. HANLON, JR.
                                                                 VICTORIA R. NUETZEL
10                                                               DAWSON P. HONEY

11                                                               By:_____
12                                                                  Attorneys for Defendant San Francisco
                                                                    Bay Area Rapid Transit District

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28