Kevin T. Snider, State Bar No. 170988
Matthew B. McReynolds, State Bar No. 234797
Milton E. Matchak, State Bar No. 215739
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
ksnider@pji.org
mmcreynolds@pji.org
mmatchak@pji.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERAMIAH COOPER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, <br><br> Defendant. | Case No: 3:22-cv-09193-WHA <br><br> REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> DATE: March 28, 2024 <br> TIME: 8:00 A.M. <br> COURTROOM: 12 <br> JUDGE: Hon. William H. Alsup |

Cooper-Plaintiffs' Reply in Support of Motion for Partial Summary Judgment

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION ....................................................................................................................... 1
ARGUMENT ............................................................................................................................... 1
    I.   CONCESSIONS BY BART............................................................................................ 1
    II.  BART FAILED TO DEFEND ON THE FEHA CLAIM RELATIVE TO THE
         STATUTORY MEANING OF *UNDUE HARDSHIP* ................................................. 2
    III. THE COOPER-PLAINTIFFS SHOULD PREVAIL UNDER TITLE VII .................. 3
    IV. THE AUTHORITIES RELIED UPON BY BART SUPPORT PLAINTIFFS............. 3
        A.  BART's protocol was not a generally applicable law and thus
            subject to strict scrutiny review ................................................................. 8
        B.  BART misconstrues its burden for demonstrating the least
            restrictive means ........................................................................................ 9
        C.  The declarations of BART's experts neither create a dispute of
            material fact nor an affirmative defense ..............................................11
        D.  BART attempts to create confusion about other government
            entities that routinely granted religious accommodations by
            attacking one City's response to public records that is not before
            the Court in this case ..............................................................................12
CONCLUSION .........................................................................................................................13
OBJECTIONS ..........................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*303 Creative LLC v. Elenis*,
   6 F.4th 1160 (10th Cir. 2021) ................................................................................................ 7

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023) ............................................................................................................... 7

*Atkins v. City of Los Angeles*,
   8 Cal. App. 5th 696 (2017) .................................................................................................... 2

*Biden v. Missouri*,
   142 S. Ct. 647 (2022) ............................................................................................................. 6

*Bolden-Hardge v. Off. of State Controller*,
   63 F.4th 1215 (9th Cir. 2023) ................................................................................................ 2

*Bordeaux v. Lions Gate Entertainment, Inc.*,
   2023 WL 8108655 (C.D. Cal. 2023) ................................................................................... 10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ............................................................................................................... 9

*Doe v. San Diego U.S.D.*,
   19 F.4th 1073 (9th Cir. 2021) ................................................................................................ 3

*Doe v. San Diego U.S.D.*,
   22 F.4th 1099 (9th Cir. 2022) ........................................................................................... 4, 7

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021) ................................................................................................. 5, 7, 8

*Groff v. DeJoy, Postmaster General*,
   143 S. Ct. 2279 (2023) ........................................................................................................... 3

*Jenkins v. Cnty. of Riverside*,
   398 F.3d 1093 (9th Cir. 2005) ............................................................................................... 1

*Kane v. De Blasio*,
   19 F.4th 152 (2nd Cir. 2021) ................................................................................................. 8

ii
Cooper-Plaintiffs' Reply in Support of Motion for Partial Summary Judgment

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) .......................................................................................................... 8, 9

*South Bay United Pentecostal Church v. Newsom*,
    141 S. Ct. 716 (2021) ............................................................................................................ 9

*Stormans, Inc. v. Weisman*,
    794 F.3d 1064 (9th Cir. 2015) ...................................................................................... 3, 6, 7

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) ............................................................................................6, 8, 9, 10

*UnifySCC v. Cody*,
    2022 U.S. Dist. Lexis 116386 (N.D. Cal. June 30, 2022) ................................. 3, 4, 5, 7

*We the Patriots v. Hochul*,
    17 F.4th 266 (2d Cir. 2021) .................................................................................................. 7

**CONSTITUTION**

U.S. Const., amend. I ................................................................................................... 6, 7, 9, 10

U.S. Const., art. III ................................................................................................................... 2

**STATUTES, RULES, AND REGULATIONS**

42 U.S.C. § 1983 ....................................................................................................................... 1

42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964) ....................... *passim*

Cal. Code Gov. § 12900 et seq. (FEHA) ................................................................................. 2

Cal. Gov. Code § 12926(u) ...................................................................................................... 2

Cal. Gov. Code § 12940(a)(1) .................................................................................................. 2

# INTRODUCTION

Summary judgment is appropriate because there are no disputes of material fact. This reply brief will not repeat arguments already set forth in the motion, but will be confined to facts and cases not previously discussed. That said, Cooper points out that BART declined to address by law or facts several dispositive points in the motion. Partial summary judgment should be entered for certain of the Plaintiffs herein identified on specified claims.

# ARGUMENT

## I.   CONCESSIONS BY BART

In its opposition, BART did not address crucial issues raised in the motion. This failure to address arguments is a concession as to their merits (*Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)) and are dispositive of the motion. The unaddressed arguments are summarized as follows:

**42 U.S.C. § 1983 (Six employees denied a religious exemption):** The motion for partial summary judgment argued at length that the individualized review of the six employees denied a religious exemption violated the religion clauses. *See*, Mot. Section I(B)(iii), 14:21 to 19:3. BART did not provide anything other than a footnote to address the argument regarding these employees. In that BART did not proffer so much as a jot or tittle of evidence in opposition to Cooper's position, the Court can review the requests for exemption and denials on their face and grant summary judgment for these six employees.

***Title VII:*** BART declined to address the argument that it failed to initiate "good faith efforts" at accommodation by engaging in bilateral cooperation in the search for acceptable reconciliation of the religious needs of employees. Mot. Section II(B), 20:5 to 21:20. Summary judgment should be granted on this claim as to all Plaintiffs whose religious exemptions were granted but were denied an accommodation due to BART's failure to address this issue by law or evidence. In the alternative, per this Court's inherent powers to provide equitable remedies, the Court could order BART to conduct de novo review of requests for accommodation in accordance with the "good faith efforts" legal requirements. Amended Complaint, Prayer, at i.

**FEHA:** The Cooper motion clearly set forth the five statutory factors used for determining undue hardship. Mot. Section III, 23:19 to 24:3. BART did not address the statute (Cal. Gov. Code § 12926(u)) or explain *why* and *how* economic reasons would affect its ability to provide accommodations. *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 734 (2017). In view of its failure to assert a defense, summary judgment should be granted as to all Plaintiffs under the FEHA claim. This brief in reply will begin with the FEHA claim.

## II. BART FAILED TO DEFEND ON THE FEHA CLAIM RELATIVE TO THE STATUTORY MEANING OF *UNDUE HARDSHIP*.

Cooper's motion sets out the five statutory factors for *undue hardship* for which an employer can demonstrate a "significant difficulty or expense." Cal. Gov. Code § 12926(u). BART has chosen not to proffer a defense by setting forth even a scintilla of evidence as to those factors. Thus, summary judgment should be granted on the FEHA claim as to all the Plaintiffs.

BART's attempt at a defense is purely legal, quoting a Ninth Circuit decision that provides, "Both [FEHA and Title VII] require employers to accommodate job applicants' religious beliefs unless doing so would require an undue hardship." *Bolden-Hardge v. Off. of State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023). That is true. But what is *undue hardship*? California lawmakers have provided a boutique definition—"significant difficulty or expense." The term "significant difficulty or expense" appears nowhere in Title VII.

BART then offers a novel theory inviting the Court to accept its public health defense by incorporating FEHA's disability statute which speaks to endangering the employee's health or safety or the health or safety of others. Cal. Gov. Code § 12940(a)(1). As it must, BART admits this provision of FEHA deals exclusively with a physical or mental disability claim rather than religious accommodation. BART's request to extend that language to religious accommodation is an invitation to sit as both an Art. III court and as the solitary embodiment of the California Legislature. This invitation should be declined.

### III. THE COOPER-PLAINTIFFS SHOULD PREVAIL UNDER TITLE VII.

As mentioned at the outset of this brief, BART declined to address Cooper's section on BART's failure to comply with the required "good faith efforts" to accommodate the religious beliefs of the employees. Thus, for the eleven Plaintiffs[1] whose religious exemptions were granted but their accommodations were denied, BART has conceded this point, and summary judgment should be granted as to them.

To the extent the Court finds it necessary to look to undue hardship, Cooper has already addressed the U.S. Supreme Court's clarification of the de minimis standard in his motion, i.e., "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy, Postmaster General*, 143 S. Ct. 2279, 2295 (2023). Other than to say that BART did not provide an explanation of its representations to the EEOC regarding its de minimis cost defense, Cooper will not burden this Court by repeating arguments already set forth in his motion.

### IV. THE AUTHORITIES RELIED UPON BY BART SUPPORT PLAINTIFFS.

At a glance, *Stormans*, *UnifySCC*, and *Doe v. San Diego U.S.D.* have a curious commonality. In all three of these decisions, accommodations were made available and the plaintiffs declined them. In sharp contrast, BART offered not a single accommodation to a single employee.

At first blush, the most authoritative of these would seem to be *Doe v. San Diego U.S.D.*, 19 F.4th 1073 (9th Cir. 2021). But substantively, it reinforces the importance of accommodations. And procedurally, BART omits crucial subsequent history that undermines its usefulness here. Beginning with that history, the panel decision relied upon by BART, issued in late 2021, was later reconsidered and limited. On January 14, 2022, the Ninth Circuit denied rehearing and rehearing en banc over strong dissents penned or joined by eleven

---

[1] Jeramiah Cooper, Ronald Freeman II, Adrian Gilbert, Silverio Gonzalez, Raymond Lockett, Michael Manzano, Teresa Owens, Rosalind Parker, Ryan Rivera, Jim Scullion, Darolyn Turner.

judges. *See*, *Doe v. San Diego U.S.D.*, 22 F.4th 1099 (9th Cir. 2022). In response to the dissents, the panel majority emphasized the unusually limited reach of its ruling, chiding the dissenters for ostensibly reading too much into it as BART does here. To this end, Judges Berzon and Bennett emphasized that the decision was not even binding on subsequent panels in the same case. The majority wrote the following:

> The only question presented to the District Court and…the motions panel was whether Doe's request for an injunction pending appeal should be granted . . . [T]he motions panel's majority opinion is explicit that . . . its reasoning is not binding on the panel to which the preliminary injunction appeal is assigned.

*Id.* at 1110.

Even if one were to discount the panel majority's cabining of its own opinion, the prevailing school district, unlike BART, offered accommodations to students seeking exemptions, in the form of online learning. As the panel majority explained, "The . . . policy prevents [Doe] only from attending school in person and from participating in school sports, not from receiving a public education, participating in private sports leagues, or fully practicing her religion." *Id.* at 1114 (Berzon and Bennett, concurring in denial of rehearing and rehearing en banc).

Ironically, what SDUSD offered was strikingly similar to the accommodations sought by several of the present Plaintiffs to work from home. Unlike SDUSD, BART refused to even consider such alternatives. And unlike *Chavez*, the students and parents in *Doe* were unwilling to accept the at-home options offered.

This history—where no student was denied a public education or expelled from school based on vaccination status, and where the school district abandoned its putative vaccine mandate during litigation—is a far cry from BART's approach of implementing an unyielding mandate under which 181 civil servants lost their public employment.

Nor does *UnifySCC* lend a hand to BART. There again, accommodations were offered to many public employees. *UnifySCC v. Cody*, 2022 U.S. Dist. Lexis 116386 (N.D. Cal. June 30, 2022). What is more, Santa Clara County did "not exercise any discretion in granting

4
Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

a religious exemption once it determined that the exemption was sought for a religious reason." *Id.* at *20-21. In stark contrast to BART's individualized exemption procedure, "the County looks to the form only to determine if the objection is in fact religious in nature. This limited inquiry is permissible." *Id.* at *19. This was in contrast to *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021). *UnifySCC*, at *19. Due to BART's detailed probe into religious beliefs, its protocol was not a generally applicable law.

Contrary to what BART did, SCC created three tiers to assess potential accommodations for employees, in positions it deemed high, lower, and intermediate risks. *Id.* at *5-6. Consistent with free exercise obligations, SCC employees in lower-risk positions were granted accommodations such as wearing surgical masks and testing weekly for COVID-19. *Id.* at *6. Exempted employees in intermediate-risk positions were allowed to wear N-95 masks and get PCR testing twice a week rather than being vaccinated. *Id.* Even high-risk employees were not terminated outright or forced into early retirement; they were allowed to use leave time, and the County worked with them to explore reassignment or transfer. *Id.*

While SCC offered fewer accommodations to the employees it deemed high-risk (e.g., those working in hospitals and jails), it granted dozens of accommodations to lower and intermediate risk employees more comparable to the Plaintiffs in this case. All of the plaintiffs in *UnifySCC* worked in high-risk positions, *id.* at *8, and the named plaintiff who was a nurse working in a hospital refused to consider transfer to a lower or intermediate-risk position. *Id.* at *9. This contrasts with the BART-Plaintiff-employees, none of which worked in high-risk environments. By the time of the court's hearing in the late spring of 2022, SCC had offered fifteen transfers, and well over 100 of its high-risk employees were still on leave and had not been fired. *Id.* at *7-8.

At the same time Santa Clara County was treading cautiously, offering a variety of accommodations and avoiding mass firings, BART was rushing headlong toward the most severe, least accommodating, and most restrictive possible outcome. *UnifySCC* is accusatory, not affirming, of BART's abject failure to accommodate.

5
Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

*Stormans, Inc. v. Weisman*, 794 F.3d 1064 (9th Cir. 2015), poses additional dilemmas for BART because it undermines BART's non-accommodation approach. For instance, the mandate at issue in Washington State was meant to ensure access to abortion-inducing prescriptions. But that state, mindful of the sensitive religious and conscientious conflicts presented by its regulation, provided accommodations for individual pharmacists even broader than those established by Title VII or the Free Exercise Clause. "Importantly, the parties agree that the foregoing rule does not require an individual pharmacist to dispense medication if the pharmacist has a religious, moral, philosophical, or personal objection to delivery." *Stormans*, 794 F.3d at 1072. No accommodation was provided, however, for corporate pharmacies, *id.* at 1072-73, triggering the suit.

In order for *Stormans* to be on all fours, BART itself would need to be objecting to the vaccine mandate, as did the corporate entity in *Stormans*, and asserting a free exercise right for itself as the employer. It is, of course, doing quite the opposite. *Stormans* therefore stands as a reminder that accommodation options for individuals are non-optional, and nearly every employer and governmental entity other than BART, seems to understand this. *Accord, Biden v. Missouri*, 142 S. Ct. 647, 650 (2022) (upholding HHS vaccine mandate for healthcare providers while noting its provision of exemptions for medical and religious reasons).

*Stormans* may be more enlightening for the employees to whom BART denied exemption and never reached accommodation. The Ninth Circuit found no individualized exemptions relevant to the corporate pharmacy for the following reasons: "[T]he exemptions at issue are tied directly to limited, particularized, business-related, objective criteria, they do not create a regime of unfettered discretion that would permit discriminatory treatment of religion or religiously-motivated conduct." *Id.* at 1082. This is consistent with the rule requiring a comparison of an exemption to the relevant government interest set out in *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). In contrast, BART's determinations of whether employees' beliefs were religious enough to warrant an exemption stands as an individualized

exemption mechanism triggering the rule in *Fulton*. Even under *Stormans*, such an approach brings BART's process under strict scrutiny.

Without fully explaining its position, in a footnote BART indicates that compliance with Title VII's exemption and accommodation process requires it to violate the Free Exercise Clause. BART Op., p. 8, n. 4. Not so. A government employer has primary obligations to the U.S. Constitution that a private employer lacks. It does not follow that the government employer cannot retain fidelity to the First Amendment and also engage in Title VII evaluations. As an employer, the government must simply fashion its evaluations in a more prescribed and precise manner than its private employer counterparts. Based on *Doe v. SDUSD*, BART protests that a Title VII evaluation cannot be an individualized exemption. BART Op., p. 12. This misreads and overstates this case. First, *SDUSD* was not an employee Title VII case. (The lawsuit had no employee plaintiffs, and the opinion only briefly discusses Title VII once in dicta; the subsequent en banc opinions do not mention Title VII.). The Plaintiffs' position is that a Title VII evaluation can be conducted in a manner that constitutes an individualized exemption. When such happens, performance of the evaluation must proceed in a manner consistent with First Amendment requirements, i.e., a compelling interest that is narrowly tailored and uses the least restrictive means.

Finally, BART's citation to *UnifySCC* and *We the Patriots* in support of its position must be moderated by the fact that those two cases relied on language from *303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021). See, *We the Patriots v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021), and *UnifySCC*, at *18. The life of *303 Creative* was short lived when the Supreme Court reversed the decision subsequent to *We the Patriots* and *UnifySCC* on free speech grounds. *303 Creative LLC v. Elenis*, 600 U.S. 570, 143 S. Ct. 2298 (2023). Since that time, *303 Creative* has disappeared from court opinions as propositional authority for any clause in the First Amendment.

7

Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

**A. BART's protocol was not a generally applicable law and thus subject to strict scrutiny review.**

BART argues that the rule determining whether a law is generally applicable (*Fulton*, 141 S. Ct. at 1877) applies exclusively to situations where the sole determination is made by a single individual. Hence, BART argues that if the government uses a panel of three persons, then the law remains generally applicable. BART Op., p. 9-10. BART's novel position is inconsistent with the premise in *Fulton*. It takes the facts of *Fulton*, in which exemption decisions could be given to a single commissioner, and refashions the entire rule. *Fulton* does not confine the mechanism for individual exemptions rule to a single government official. The scope of the rule the Court articulates is broader, i.e., "the **government** consider[s] the particular reasons" for exemptions. *Id.* (emphasis added). BART's three-person panel for review remains a mechanism for individualized exemptions.

BART further claims that *Fulton* also stands for the proposition that "a court must assess whether an exemption process permits sufficiently broad, unchecked discretion animus against an applicant's religious belief." BART Op., 9:7-8 (emphasis in original). The language of "broad, unchecked discretion" appears nowhere in *Fulton*. Likewise, BART's assertion that *Fulton* has an animus requirement is mystifying. *Animus* was not part of the Supreme Court's formula or analysis in the case. Indeed, the word does not appear in either the opinion or concurrences.

Relying on *Kane v. De Blasio*, 19 F.4th 152 (2nd Cir. 2021), BART further argues that the allowance of passengers, whether religious or not, to ride the trains is not comparable to employees. BART Op., p. 13. In other words, the general public cannot be a comparator for purposes of general applicability. BART is mistaken. In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the Governor allowed the general public to congregate at stores and other venues whether the people were religious or not. The problem was that persons congregating at worship venues were disfavored. The same was true in *Tandon*. The Court

8

Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

compared the allowance of the general public to come together at a variety of venues with the prohibition against religious home gatherings. *Id.* at 1297.

### B. BART misconstrues its burden for demonstrating the least restrictive means.

Cooper discussed at length in the motion the difference between *most effective means* versus *least restrictive means* (Mot. Section I(B)(b), 12:11 to 14:2). Because no attempt to defend itself on this issue is put forward in its opposition, Cooper's point should be deemed conceded by BART. Perhaps for good reason.

Consider the epidemiologist who opined that BART had no other less restrictive alternative than universal vaccination of employees. Lewnard decl., ¶¶ 18-19 ("All other measures available were significantly inferior to vaccination with respect to achieving [BART's] goals."). BART's expert misunderstands the legal meaning of *least restrictive means*. It is not synonymous with the *most effect means*. Quite the opposite. BART's experts' positions are flawed, not as a matter of science but as a matter of law. Transforming *least restrictive means* into *most effect means* turns the meaning of the former on its head. In sum, this change in the meaning of terms is an attempt to make the strict scrutiny standard for narrow tailoring into a lesser standard of review.

Moreover, despite its misplaced *most effective means* analysis, it is undisputed that BART allowed the general public to ride trains, whether vaccinated or not. It is without cavil that dozens of persons traveling together in confined carriages present a greater risk of contagion than any other working environment that employees encounter while working for BART. BART's experts do not say otherwise, nor could they. That allowance is conduct which undermines its stated goals. A law lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-46 (1993). "[P]recautions that suffice for other activities suffice for religious exercise too." *Tandon*, 141 S. Ct. at 1297; *see also*, *Roman Catholic Diocese*, 141 S. Ct. at 69; *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 719 (2021)(J. Gorsuch statement). BART cannot reconcile its

9
Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

allowance for unvaccinated passengers with the requirement of using the least restrictive means that the Free Exercise Clause demands.

Its sole defense to this is the bald assertion by a non-percipient-hygienist declarant that the public takes short train trips of a few minutes whereas BART employees ride for prolonged periods. McClellen decl., ¶¶ 17, 20. BART Op., p. 14. The lynch pin of this premise slips out and the defense derails on a factual basis.[2] In truth, the Plaintiff-employees traveled on the trains during work no longer than the general public, and many rarely or not at all. See generally, the declarations of the Cooper and Chavez-Plaintiffs under the heading, *Riding BART Trains*. These are percipient witnesses testifying to their own experience who actually ride trains as opposed to an expert speculating about employee ridership. What is more, neither of BART's experts identify or otherwise claim that there are any other plaintiff work environments more susceptible to transmission of COVID-19 than riding trains. Therefore, because passengers stand as a proper comparator to employees, this allowance undermines BART's asserted interest in community health and safety.

Although BART's experts paint a picture of severe and imminent danger to vaccinated coworkers and the public that ride the rails, the undisputed facts demonstrate that BART's conduct did not reflect any peril requiring urgency. The declarations of many of the Plaintiffs establish that they were called back to work **after** receiving notice of the denial of their religious accommodation.[3]

In view of this, BART cannot demonstrate that "the religious exercise at issue is more dangerous than [riding trains] when the same precautions are applied."[4] *Tandon*, 141 S. Ct. at 1297 (2021). The precautions that BART used for train passengers—whatever BART

---

[2] See the evidentiary objections of lack of personal knowledge and foundation at the end of this brief.
[3] See generally, the declarations of the Cooper and Chavez Plaintiffs under the heading, *Return to Work*.
[4] This also undermines BART's Title VII accommodation rationale. BART Op., p. 23-24 (citing *Bordeaux v. Lions Gate Entertainment, Inc.*, 2023 WL 8108655 (C.D. Cal. 2023)).

eventually claims they are—could have been used for employees. Anything less than that falls short of use of the least restrictive means that the free exercise of religion requires.

### C. The declarations of BART's experts neither create a dispute of material fact nor an affirmative defense.

Based upon the conclusions found in the declarations of two science experts, BART claims that no religious accommodation was possible for any employee. Lewnard decl., ¶ 19; McClellan decl., ¶ 22. Cooper offers two reasons why BART's reliance on these conclusions fails to carry the day.

First, for purposes of summary judgment, the cornerstone laid for BART's defense lacks a foundation to rest on. There is no evidence or testimony of BART's reliance on the opinions at the time of the issuance of the mandate (October 2021). It is not that the experts' opinions are necessarily wrong. But assuming the validity of these opinions for purposes of this motion and BART's cross motion, the opinions fail to assert that any BART decisionmaker read the papers or studies cited and relied on them. Likewise, the experts do not claim that they or any other person with this expertise consulted and advised BART pursuant to the information set forth in the declarations when the mandate was issued by its Board. Absent evidence that BART had this information, relied on it, and as a result based its decision that no accommodations would be countenanced, then the verity of the expert opinions lacks relevance.[5]

Second, testimony of BART's examiners show no reliance on the opinions found in the expert declarations. Indeed, deposition testimony of BART decisionmakers in Human Resources does not factually support the position that BART deemed unvaccinated employees as posing a danger. Gizelle Huynh, who served as the Supervisor of Leave Management, was asked, "**Q:** Do you know if it was BART's view that unvaccinated

---

[5] See the evidentiary objections of lack of personal knowledge and foundation at the end of this brief.

11
Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

1  employees posed an immediate danger to anyone? **A:** I don't remember." Huynh deposition,
2  13:25 to 14:3.
3    The Director of BART's Human Resources, Veronica Thomas, was asked, "**Q:** Were
4  you ever told by someone in BART management that unvaccinated employees would pose a
5  danger of some kind? **A:** No." Thomas deposition, 28:13-16.
6    Chavez is not claiming that disputes of material facts are present. Instead, the BART
7  decisionmakers who are percipient witnesses simply do not corroborate that BART was aware
8  of, or relied upon, those scientific claims. The BART experts' opinions merely reconstruct the
9  public health history from the autumn and winter of 2021. For purposes of summary
10 judgment, the undisputed record of the testimony of BART's decisionmakers regarding the
11 actual knowledge and conduct of BART cannot be reconciled with those opinions. Thus,
12 those opinions, even if considered valid, do not provide an affirmative defense.

  **D. BART attempts to create confusion about other government entities that routinely granted religious accommodations by attacking one City's response to public records that is not before the Court in this case.**

15  Cooper put forward evidence of religious exemptions and accommodations to
16 COVID-19 vaccination granted by three counties and two state agencies. These latter two
17 entities are responsible for public health and worker safety. BART attempts to obfuscate this
18 evidence by attacking a response from the City of San José. First, BART's discussion is off
19 base because San José's response to a public record request was not included in **this case**.
20 Second, it is transparent that BART's tactic is to muddy the record by claiming the
21 municipality's answer was not clear. From this, BART attempts to call into question all
22 responses to public records requests by all the other entities. But there is nothing in the
23 responses from the two state agencies or three counties that lacks clarity. Thus, even if the San
24 José official was confused—which is not likely—the evidence from the other government
25 entities is left unchallenged.[6]

---

[6] BART brings the accusation of "cherry picking" data. Not so. The government entities relied upon by the employees "were the only ones which responded to . . . requests for public

12
Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

Turning to the request for public records to San José, that request asked for the number of employees seeking religious exemptions and the number of employees granted religious accommodations. The response from the Assistant to the City Manager was the following: "From January 1, 2021 through December 31, 2022, we received 379 religious exemption requests from employees and approved 331." Ct. Doc. 46-2, p. 403. BART's claim that the response demonstrates confusion on the part of the San José official is a strained reading of the text. From that strained reading, BART bootstraps confusion to **all** other governmental entities. Both BART's extrapolation from the San José response and the projection of confusion on all other entities is too farfetched to be seriously considered.[7]

## CONCLUSION

In summation, the Cooper-Plaintiffs' motion for partial summary judgment should be granted.

Dated: February 23, 2024

/s/Kevin T. Snider
Kevin T. Snider
Matthew B. McReynolds
Milton E. Matchak

*Attorneys for Plaintiffs*

---

records under the California Public Records Act on this issue with something other than stating there were no responsive records." Snider decl., ¶ 10. *Chavez v. BART*, Ct. Doc. 46-1.

[7] Also of note, BART's experts do not attempt to explain why another rail system did not even require vaccination though it too was an essential service. See Snider Decl., ¶ 8, Exh. 8 (Sacramento Regional Transit District).

13
Cooper-Plaintiffs' Reply in Support of Motion for Summary Judgment

## OBJECTIONS

**Declaration of Joseph Lewnard:** *Objection to* ¶¶ 3, 9-19: The declarant does not lay a foundation or assert personal knowledge that the scientific information was known, communicated or relied upon by BART at the time of the issuance of the vaccination mandate. F.R.E. 602 and 901

**Declaration of Nancy McClellen:** *Objection to* ¶¶ 11-14; 16-19, 21, 22: The declarant does not lay a foundation or assert personal knowledge that the scientific information was known, communicated or relied upon by BART at the time of the issuance of the vaccination mandate. F.R.E. 602 and 901.

*Objection to* ¶ 20: The declarant does not lay a foundation or assert personal knowledge regarding the length of time that BART employee-plaintiffs ride trains in comparison to the general public. F.R.E. 602 and 901.