Kevin T. Snider, State Bar No. 170988
Matthew B. McReynolds, State Bar No. 234797
Milton E. Matchak, State Bar No. 215739
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
ksnider@pji.org
mmcreynolds@pji.org
mmatchak@pji.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

JERAMIAH COOPER, et al.,

        Plaintiffs,

   v.

SAN FRANCISCO BAY AREA RAPID
TRANSIT DISTRICT,

        Defendant.

Case No: 3:22-cv-09193-WHA

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S CROSS-
MOTION FOR PARTIAL
SUMMARY JUDGMENT

Date: March 28, 2024
Time: 8:00 a.m.
Courtroom: 12
Judge: Hon. William H. Alsup

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................... 1

STATEMENT OF FACTS ............................................................................................ 2

STANDARD OF REVIEW .......................................................................................... 7

ARGUMENT ................................................................................................................. 8

I.   BART'S PROTOCOL VIOLATED THE FREE EXERCISE OF THE PLAINTIFFS'
     RELIGION ............................................................................................................... 8

   A.  BART's conduct interfered with the free exercise of religion .............................. 8

      i.   BART's process of review, which resulted in the denial of religious
           exemptions and accommodations, is subject to strict scrutiny because
           the process was not a generally applicable regulation ................................. 8

         a.  BART's process utilized individualized assessments and exemptions.... 8

         b.  BART allowed similar secular conduct of the unvaccinated public
             which it prohibited for unvaccinated employees .................................... 14

      ii.  To satisfy strict scrutiny review BART must demonstrate a compelling
           state interest ............................................................................................... 15

         a.  Beyond a compelling state interest, BART was obligated to narrowly
             tailor its requirements ............................................................................ 15

         b.  Constitutional obligations require BART to use the least restrictive
             means available ....................................................................................... 17

   B.  The declarations of BART's experts neither creates a dispute of material fact
       nor an affirmative defense ................................................................................ 23

CONCLUSION ............................................................................................................ 25

OBJECTIONS .............................................................................................................. 25

1

## TABLE OF AUTHORITIES

**CASES**

2

*303 Creative LLC v. Elenis,*
  6 F.4th 1160 (10th Cir. 2021) ...................................................................... 12, 13

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ........................................................................................ 13

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .......................................................................................... 7

*Bowen v. Roy,*
  476 U.S. 693 (1986) ...................................................................................... 9, 10

*Cantwell v. Connecticut,*
  310 U.S. 296 (1940) .......................................................................................... 8

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ...................................................................................*passim*

*Doe v. San Diego U.S.D.,*
  19 F.4th 1073 (9th Cir. 2021) ...................................................................... 13, 15

*Doe v. San Diego U.S.D.,*
  22 F.4th 1099 (9th Cir. 2022) ...................................................................... 13, 14

*Employment Div., Dept. of Human Resources of Ore. v. Smith,*
  494 U.S. 872 (1990) .................................................................................. 8, 9, 10

*Fulton v. City of Philadelphia,*
  141 S.Ct. 1868 (2021) ......................................................................... 8, 9, 10, 12

*Gateway City Church v. Newsom,*
  141 S.Ct. 1460 (2021) ..................................................................................... 20

*George v. Grossmont Cuyamaca Comm. Col. Dist. Bd. of Governors,*
  Case No. 22-cv-0420, 2022 WL 16722357952 ............................................. 11

*Kane v. De Blasio*
  19 F.4th 152 (2nd Cir. 2021) ......................................................................... 15

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kennedy v. Allied Mut. Ins. Co.*,
    952 F.2d 262 (9th Cir.1991) ................................................................17

*Kennedy v. Bremerton Sch. Dist.*,
    142 S.Ct. 2407 (2022) ........................................................................15

*Let Them Choose v. San Diego Unified Sch. Dist.*,
    85 Cal. App. 5th 693 (2022) ...............................................................13

*Pilz v. Inslee*,
    2022 U.S. Dist. LEXIS 95747(W.D. Wash. May 27, 2022).........................12

*Roman Catholic Diocese v. Cuomo*,
    141 S.Ct. 63 (2020) ....................................................................*passim*

*Sherbert v. Verner*,
    374 U.S. 398 (1963) ............................................................................9

*South Bay United Pentecostal Church v. Newsom*,
    141 S.Ct. 716 (2021) ...............................................................16, 19, 20

*Stormans v. Weisman*,
    794 F.3d 1064 (9th Cir. 2015) .........................................................11, 12

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) ................................................................*passim*

*UnifySCC v. Cody*,
    No. 22-cv-01019-BLF, 2022 U.S. Dist. Lexis 116386
    (N.D. Cal. June 30, 2022) ..........................................................10, 11, 12, 13

*Van Asdale v. Int. Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) .............................................................17

*We the Patriots v. Hochul*,
    17 F.4th 266 (2d Cir. 2021) .............................................................12, 13

**CONSTITUTIONS**

U.S. Const., amend. I............................................................................*passim*

U.S. Const., amend. XIV ...........................................................................8

Cooper-Plaintiffs' Opposition to Defendant's Cross-Motion for Summary Judgment

**STATUTES, RULES, AND REGULATIONS**

42 U.S.C. § 1983 ........................................................................................... 1

42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964) .................................... 3, 12

Cal. Gov. Code § 7920 ................................................................................. 21

Cal. Gov. Code § 12900 (FEHA) ....................................................................... 3

Cal. Health & Safety Code § 120335 .............................................................. 13

Fed. R. Civ. Proc. 56 .................................................................................... 7

**OTHER SOURCES**

OSHA, *Emergency Temporary Standard Fact Sheet – Workers' Rights under the COVID-19 Vaccination and Testing ETS* (Nov. 2, 2021), https://www.osha.gov/sites/default/files/publications/OSHA4159.pdf ............. 2, 18

CDPH, "State Issues Recommendations to Local Health Departments and Providers to Accelerate Safe Vaccine Administration Statewide" (Jan. 7, 2021), https://www.cdph.ca.gov/Programs/OPA/Pages/NR21-008.aspx. ................... 2, 3, 18

**INTRODUCTION AND SUMMARY OF THE ARGUMENT[1]**

The Board of Trustees of the Bay Area Rapid Transit System (BART) ordered its employees to vaccinate for SARS-CoV-2 (COVID-19). Around 200 employees requested exemptions and accommodations, mostly based on religious convictions. Instead of granting any accommodations, BART removed all of the religious objectors from its payrolls through (1) termination, (2) forced resignation, or (3) forced retirement. BART moves for partial summary judgment on the free exercise of religion claim brought under 42 U.S.C. § 1983. The Cooper-Plaintiffs oppose the motion per the points summarized below.

The process that BART used centered around a mechanism for individualized assessments for which BART examiners had discretion to grant or deny requests for exemption and accommodation. Because of this, the process was not a generally applicable law and thus comes under strict scrutiny review which requires a compelling state interest, narrowly tailored, using the least restrictive means.

Cooper-Plaintiffs concede for this motion that stemming the spread of COVID-19 qualifies as a compelling interest. That notwithstanding, BART failed to use the required narrow tailoring and the least restrictive means to achieve its purpose. It has allowed unvaccinated passengers to enter stations and board carriages. An unvaccinated passenger poses the same threat on a train or at a station as an unvaccinated employee.

A law lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way. Whatever health and safety measures that BART used for the public, it could have used the same for employees. Narrow tailoring, and utilizing the least restrictive means, is also undermined because two state departments intimately tied to health and safety and three neighboring counties, provided religious accommodations during the same period to between

---

[1] The cross motion for summary judgment was filed eight days beyond the Court's dispositive motion cutoff. Out of an abundance of caution, Cooper nonetheless submits an opposition.

82 and 100 percent of its employees. Further, the federal Occupational Safety and Health Administration (OSHA) issued an Emergency Temporary Standard for Vaccination.[2] Though requiring vaccination, the Standard included weekly testing for unvaccinated workers. These accommodations by relevant government entities demonstrate the use of the *least restrictive means*. But BART's experts conflate the scientific opinion of *most effective means* with the legal term *least restrictive means*.

The expert declarations in support of BART's motion cite to studies and their own opinions about requiring universal-employee vaccination. These declarations lack foundation because there are no representations that the BART Board, or decisionmakers for religious exemptions or accommodation, received and relied on these studies or opinions.

BART's non-percipient-hygienist declarant asserts that the danger from unvaccinated employees exceeded that of the general public passengers. The opinion is based on the assumption that passengers ride for a few minutes whereas employees ride for prolonged periods. This is a factual assertion dressed up as a scientific opinion. The underlying assumption is false. As percipient witnesses, the Cooper employees have submitted sworn statements as to their particular work-related train travel; these show overall that they rode the trains generally no more than, and often less than, the general public train passengers.

## STATEMENT OF FACTS

The material facts are not in dispute.

### General Facts

In response to the outbreak of COVID-19, in January 2021 the California Department of Public Health (CDPH) announced vaccine recommendations to local public health

---

[2] OSHA, *Emergency Temporary Standard Fact Sheet – Workers' Rights under the COVID-19 Vaccination and Testing ETS* (Nov. 2, 2021), https://www.osha.gov/sites/default/files/publications/OSHA4159.pdf.

departments.[3] In that announcement, the CDPH informed the public that "[f]ree, confidential testing is available statewide."[4]

### Mandatory COVID-19 Vaccination of BART Employees

On October 14, 2021, the BART Board of Directors voted 8-1 to issue a mandate requiring all of its employees to submit to vaccination for COVID-19. Snider decl., ¶ 5, Exh. 5 (Ct. Doc. 32-2, p. 385).[5] Employees were required to be fully vaccinated by December 13, 2021. *Id.* In its *Coronavirus Pandemic (COVID-19): Statement of Policy*, BART asserted that unvaccinated employees posed a danger to other employees and the public. *Id.*

Pursuant to federal and state law,[6] BART allowed employees to submit requests for religious exemptions and accommodations so they would not undergo vaccination. In total there were 189 requests for religious exemption for which 70 were granted a religious **exemption**.[7] Maplestone decl., ¶ 14. However, the remaining requests for religious exemption were denied. Of the seventy remaining employees granted a religious exemption, not one religious objector employee ultimately received an **accommodation**. *Id.* at ¶ 16.

### Uniform Mechanism for Review

The process for employees seeking religious exemptions to the vaccination requirement was a uniform system. Thomas depo., 23:4-6; Huynh depo., 10:3-5. Such employees submitted a standard document created and provided by BART entitled *Employee*

---

[3] CDPH, "State Issues Recommendations to Local Health Departments and Providers to Accelerate Safe Vaccine Administration Statewide" (Jan. 7, 2021), https://www.cdph.ca.gov/Programs/OPA/Pages/NR21-008.aspx.

[4] *Id.*

[5] In order to reduce court-file-clutter and confusion, where possible counsel for Cooper will reference prior filings in this case rather than submit duplicate documents.

[6] Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) and the California Fair Employment and Housing Act (Cal. Gov. Code § 12900 et seq.).

[7] Maplestone has filed numerous, nearly identical declarations in response to, or in support of, motions. Unless otherwise indicated, the references to his declaration will be to those filed in support of the Defendant's Motion for Partial Summary Judgment (Ct. Doc. 52-2).

*Request for Religious Exemption (COVID-19 Vaccination)*. Ct. Doc. 32-2, pp. 336-37. Together these contained six questions which were identical for all BART employees (Maplestone depo., 16:10-16).[8] Maplestone depo., 17:17-20.[9] The six questions were as follows:

1. My religion or belief system is (enter description)
2. I have held this belief(s) system, or practiced and observed this religion since (enter date or year)
3. My religion, belief system, or practice requires me to abstain from the COVID-19 vaccination because (describe the specific tenet, practice, or observation that conflicts with the COVID-19 vaccination requirement and/or explain how you follow it):
4. If your religion, belief system, or practice requires you to abstain from the COVID-19 vaccination, but not other types of vaccinations, please describe the specific tenet, practice, or observation that expressly conflicts with the COVID-19 vaccination (attach a separate sheet if needed).
5. If your request for a religious exemption to the District's COVID-19 vaccine mandate were to be granted, please indicate what you would request as a reasonable accommodation that would enable you to perform the essential functions of your job without posing a direct threat to the health and/or safety of others in the workplace.
6. Please provide a written statement, an affidavit or other documents from a religious leader, or other person describing my beliefs and practices, including information regarding when I embraced the belief or practice, as well as when, where, and how I have adhered to the belief, practice, observance.

Ct. Doc. 32-2, pp. 332-33. The request for religious exemption would be delivered to a subdivision of the Human Resources Dept. called Leave Management which would confirm that all necessary information was provided. Maplestone depo., 11:15-20. A three-person panel[10] would review requests for religious exemption. This panel would decide whether to grant or deny the request or meet with the employee to get additional information.

[8] This motion will refer to transcripts from the depositions of Gizelle Quinto Huynh (BART Supervisor of Leave Management), Rodney W. Maplestone (BART Manager of Leave Programs), and Veronica Rivera Badong Thomas (BART Human Resources Director). The transcripts have been marked and filed as exhibits to the declaration of Kevin Snider as follows: for Mrs. Huynh, Exhibit 1; for Mr. Maplestone, Exhibit 2; for Mrs. Thomas, Exhibit 3. Ct. Doc. 32-2, Exhs. 1-3.

[9] There were two versions of request forms used. The first version consisted of the request form and a supplemental form. The second version combined the two documents. Whatever version was used, they contained the identical questions. Maplestone depo., 14:9-24.

[10] The panelists included Gizelle Huynh, Rodney Maplestone, and Amelia Sandoval. Maplestone depo., 33:17-19.

Maplestone depo., 10:17 to 11:6. Though the same criteria was used for all employees making requests for religious exemption (Huynh depo., 10:11-25; Thomas depo., 21:18-22) each employee request was considered on a case-by-case basis. Huynh depo., 13:2-5, 70:16-23; Maplestone decl., ¶ 15. BART then created a document called *Standard Operating Procedure* for the purpose of *interviewing* employees requesting a religious exemption. Ct. Doc. 32-2, pp. 338-40; Huynh depo., 10:11-25; Thomas depo., 21:18-22. This form was used "[t]o lay out the process of how [BART] would evaluate the requests." Maplestone depo., 19:18-21; Thomas depo., Exh. 16, p. 3.

BART reviewers interviewed the religious objector employee using a standardized form entitled *Religious Exemption Request Review Form (COVID-19 Vaccination)*. Ct. Doc. 32-2, pp. 336-37. Next, the reviewers would fill out the form as they questioned the employee requesting a religious exemption. Maplestone depo., 21:23 to 22:4. Finally, BART drafted and used a document called *Religious Exemption Interviews* or "interview notes" which contained (1) four EEOC factors with boxes to be checked, (2) an introduction statement, and (3) five questions as follows:

1. Can you tell is briefly about your sincerely held belief?
2. Can you tell us in your own words why taking COVID-19 vaccine is contrary to your religious belief?
3. What do you think will happen to you if you take the COVID-19 vaccine?
4. Can you provide us other examples of how this religious belief is demonstrated in other aspects of your life?
5. You refuse to take the COVID-19 vaccine because of the alleged use of aborted fetal cells in the creation of the vaccine.  Research on this topic has revealed some cosmetic and over-the-counter medicines may use the same process the COVID vaccine? [*sic*]. Are you aware of this?  Tell me how else you demonstrate the same pre-cautions in your life.

Cooper-Plaintiffs' Opposition to Defendant's Cross-Motion for Summary Judgment

Ct. Doc. 32-2, p. 341. Together, these six documents described above contained the universe of documents used by BART to evaluate employee requests for religious exemption. Maplestone depo., 24:2-6.

The forms created by BART were the mechanism used for granting or denying an individualized religious exemption. Huynh depo., 70:11-15. Based on the system used, the reviewer had discretion on a case-by-case basis to determine whether to grant a religious exemption or accommodation for a given employee. Huynh depo., 70:16-20; Maplestone depo., 83:10-18.

For those granted a religious exemption, a letter would be sent to them regarding an accommodation. Religious-objector-employees were asked to submit proposed accommodations. Maplestone depo., 34:17 to 35:18. BART either did not propose any options for accommodation or proposed its own options which it would then reject. See the Plaintiffs' declarations filed in support of motion for summary judgment under the heading *Request for Religious Exemption & Accommodation*.[11] Of the seventy employees granted a religious exemption, not a single employee received an accommodation. "We did not grant a religious accommodation." Maplestone depo., 35:22 to 36:4.

Each religious objector employee who did not undergo vaccination was sent a letter giving the employee four options which were identical for all employees: (1) comply with the vaccination mandate; (2) retire if qualified; (3) resign; (4) do nothing and be terminated. The four options of this letter served as an ultimatum requiring employees to choose

---

[11] Jeramiah Cooper decl., ¶¶ 9-11; Ronald Freeman II decl., ¶¶ 9-11; Adrian Gilbert decl., ¶¶ 9-13; Silverio Gonzalez decl., ¶¶ 7-10; Laron Johnson decl., ¶ 6; Jim Lasovich decl., ¶ 7; Raymond Lockett decl., ¶¶ 11-13; Michael Manzano decl., ¶¶ 8-10; Teresa Owens decl., ¶¶ 8-11; Rosalind Parker decl., ¶ 11; Ryan Rivera decl., ¶¶ 8-12; Albert Roth decl., ¶ 12; Jim Scullion decl., ¶¶ 8-10; Darolyn Turner decl., ¶¶ 9-11. See also Chavez-Plaintiffs' declarations in opposition to BART's cross-motion for summary judgment: Castaneda decl., ¶ 5; Contreras decl., ¶ 5; Curry decl., ¶ 3; Griffis decl., ¶ 6; Kitzmiller decl., ¶ 4; Le decl., ¶ 6; Levi decl., ¶ 4; Monaco decl., ¶ 3.

between their jobs and their faith. Unless an employee was vaccinated, the employee was either forced into early retirement, constructively discharged by forced resignation, or simply terminated.

From the time of the vote in October 2021 until mid-December, unvaccinated employees were allowed to work on trains, stations, and other sites. After requests for religious exemptions and accommodations were denied, BART called numerous unvaccinated employees back to work for periods of time. See the declarations filed in support of the Cooper motion for partial summary judgment under the heading *Return to Work*.[12] BART allowed thousands of passengers—vaccinated or not—to ride the trains. Maplestone depo., 54:5-8. The Cooper-Plaintiff-employees rode trains for time periods that were similar or less in duration than the general public.[13]

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure allows for summary judgment in the absence of a dispute as to a material fact. In the present case, no facts of a material nature are in dispute and therefore this litigation can be decided on the respective motions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[12] Ronald Freeman II decl., ¶¶ 15-16; Adrian Gilbert decl., ¶ 17; Silverio Gonzalez decl., ¶¶ 15-16; Raymond Lockett decl., ¶ 18; Michael Manzano decl., ¶ 14; Teresa Owens decl., ¶¶ 14-15; Rosalind Parker decl., ¶ 17; Ryan Rivera decl., ¶ 17; Jim Scullion decl., ¶¶ 14-15; Darolyn Turner decl., ¶ 16.

[13] Jeremiah Cooper decl., ¶ 4; Ronald Freeman II decl., ¶¶ 3-4; Adrian Gilbert decl., ¶ 4; Silverio Gonzalez decl., ¶ 3; Sergii Grinchenko decl., ¶¶ 3-4; Laron Johnson decl., ¶ 3; Jim Lasovich decl., ¶¶ 3-4; Raymond Lockett decl., ¶¶ 5-6; Michael Manzano decl., ¶¶ 3-4; Teresa Owens decl., ¶ 3; Rosalind Parker decl., ¶¶ 3-5; Ryan Rivera decl., ¶ 4; Albert Roth decl., ¶¶ 4-5; Jim Scullion decl., ¶¶ 3-4; Szu Sun decl., ¶¶ 3-4; Nick Taylor decl., ¶ 3; Darolyn Turner decl., ¶¶ 3-4. *See also*, the Chavez-Plaintiffs declarations in opposition the BART's cross-motion: Chavez at ¶ 3; Doyle ¶ 3-4; Engler-Contreras; Gonzalez ¶ 2; Harrison at ¶ 3; Kitzmiller at ¶ 4; Wilson at ¶¶ 3-4.

# ARGUMENT

## I. BART'S PROTOCOL VIOLATED THE FREE EXERCISE OF THE PLAINTIFFS' RELIGION.

### A. BART's conduct interfered with the free exercise of religion.

The First Amendment reads in part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. This right applies to the States via the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

> **i. BART's process of review, which resulted in the denial of religious exemptions and accommodations, is subject to strict scrutiny because the process was not a generally applicable regulation.**

>> **a. BART's process utilized individualized assessments and exemptions.**

Generally applicable government procedures, regulations, and policies may not violate an individual's free exercise of religion if incidentally burdening religion. Under such circumstances, evaluation of these laws and activities come under rational basis review. *Emp't Div. v. Smith*, 494 U.S. 872, 878-82 (1990). But a law not neutral or generally applicable "must undergo the most rigorous of scrutiny." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).

BART instituted a system to make individualized exemptions to vaccination. The determination for both religious exemptions and accommodations were performed on a case-by-case basis and fell at the discretion of the BART reviewers in Leave Management. Huynh depo., 70:11-23; Maplestone depo., 82:18 to 83:18. When the government puts in place a regulatory process which includes a mechanism for individualized assessments, the process is not generally applicable. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). In other words, a law is not generally applicable, and comes under strict scrutiny review, if it "invite[s]" the government to consider the particular reasons for a person's conduct by providing "'a mechanism for individualized exemptions.'" *Employment Div., Dept. of Human Resources of Ore. v.*

*Smith*, 494 U.S. 872, 884 (1990)(quoting *Bowen v. Roy*, 476 U.S. 693, 708 (1986)(opinion of Burger, C. J., joined by Powell and Rehnquist, JJ.)).

The process used by BART's Leave Management comes under strict scrutiny review in that it set up a mechanism for individual review of each request for a religious exemption and accommodation. In deposition testimony, a BART examiner explicitly acknowledges such a mechanism:

> **Q.** So when considering whether a Request for Religious Exemption was granted, BART looked at the particular reasons for the employee's request; is that fair to say?
> **A.** Yes.
> **Q.** And the employee request forms and the request review forms, those were the mechanism created by . . . BART for granting or denying an individualized religious exemption?
> **A.** Yes, they're part of the process.
> **Q.** …And based on these individualized -- the system or this process, as you say, the reviewer had the discretion on a case-by-case basis to determine whether to grant a religious exemption for a given employee?
> **A.** Yes.

Huynh depo., 70:6-23.

A law contains individualized exemptions when it contains "systems that are designed to make case-by-case determinations." *Fulton*, 141 S. Ct. at 1877. The system put in place by BART to determine whether or not an employee would receive the benefit of a religious exemption and accommodation falls squarely under the holding in *Fulton*.

The cases of *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Smith* are informative. *Sherbert* involved the denial of unemployment benefits for "good cause." *Id.* at 401. The unemployment benefits law in *Sherbert* fell outside general applicability because the "good cause" standard permitted the government to grant exemptions based on the circumstances underlying each application. *See*, *Smith*, 494 U.S. at 884 (citing *Roy*, 476 U.S. at 708; *Sherbert*, 374 U.S. at 401, n. 4). BART's review process parallels this. The *Smith* Court explained that "where the State has in place a system of individual exemptions, it may not refuse to extend

that system to cases of 'religious hardship' without [a] compelling reason." *Smith*, 494 U.S. at 884 (quoting *Roy*, 476 U.S. at 708); *see also*, *Lukumi*, 508 U.S. at 537 (same).

BART's system of review suffers from the same problem. Leave Management employees reviewed the requests for religious exemptions and accommodations on a "case-by-case" basis. The process of review, which gave examiners in Leave Management discretion to approve or deny religious-employee requests, falls outside of a regulation of general applicability. Hence, the process is subject to the highest level of judicial review.

BART grasps at what it sees as a lifeline in *UnifySCC v. Cody*, No. 22-cv-01019-BLF, 2022 U.S. Dist. Lexis 116386 (N.D. Cal. June 30, 2022). That case involved a free exercise challenge to Santa Clara County's vaccination mandate for its employees. *UnifySCC* will not rescue BART. Unlike BART, the County did "not exercise any discretion in granting a religious exemption once it determined that the exemption was sought for a religious reason." *Id.* *20-21. In stark contrast to BART's individualized exemption procedure described above, the County merely looked to the face of its religious exemption request form "only to determine if the objection [was] in fact religious in nature." That "limited inquiry [was] permissible." *Id.* at *19. In view of that, Santa Clara County stayed away from the mechanism of individualized discretion that the Supreme Court outlined in *Fulton*, 141 S. Ct. at 1878. The extensive system of examination of requests for exemption and accommodation conducted by BART—including probing interrogatories and interviews—cause the protocol to fall outside of a generally applicable law.

Contrary to what BART did, the County created three tiers to assess potential accommodations for employees, in positions it deemed high, lower, and intermediate risks. *UnifySCC* at *5-6. Consistent with free exercise obligations, County employees in lower-risk positions were granted accommodations such as wearing surgical masks and testing weekly for COVID-19. *Id.* at *6. Exempted employees in intermediate-risk positions were allowed to

wear N-95 masks and get PCR testing twice a week rather than being vaccinated. *Id*. Even high-risk employees were not terminated outright or forced into early retirement; they were allowed to use leave time, and the County worked with them to explore reassignment or transfer. *Id*.

While the County offered fewer accommodations to the employees it deemed high-risk (e.g., those working in hospitals and jails) it granted dozens of accommodations to lower and intermediate risk employees more comparable to the plaintiffs in this case. All of the plaintiffs in *UnifySCC* worked in high-risk positions, *id*. at *8, and the named plaintiff who was a nurse working in a hospital refused to consider transfer to a lower or intermediate-risk position. *Id*. at *9. By the time of the Court's hearing in the late spring of 2022, the County had offered fifteen transfers and well over 100 of its high-risk employees were still on leave and had not been fired. *Id*. at *7-8.

At the same time Santa Clara County was treading cautiously, offering a variety of accommodations and avoiding mass firings, BART was rushing headlong toward the most severe, least accommodating, and most restrictive possible outcome. *UnifySCC* is accusatory, not affirming, of BART's abject failure to accommodate.[14]

BART fairs no better in wiggling off the general applicability hook under *Stormans v. Weisman*, 794 F.3d 1064 (9th Cir. 2015). The Ninth Circuit observed that "[t]he mere existence of an exemption that affords some minimal government discretion does not destroy a law's general applicability." *Id*. at 1082. In consideration of that, the *Stormans* Court found no individualized exemptions relevant to the corporate pharmacy that would deem them not generally applicable. The exemptions for not selling the drugs in question to a customer

---

[14] BART also cites to *George v. Grossmont Cuyamaca Comm. Col. Dist. Bd. of Governors*, Case No. 22-cv-0420, 2022 WL 16722357. *George* went before the district court on a motion for preliminary injunction. The facts in *George* support Cooper because the college employees and student plaintiffs were all accommodated in some fashion. Of course, BART accommodated no one.

involved inability to pay, suspicion of a fraudulent prescription, and lack of specialized equipment to produce a given drug. Based on these government interests, the panel noted that "the exemptions at issue are tied directly to limited, particularized, business-related, objective criteria, [and] they do not create a regime of unfettered discretion that would permit discriminatory treatment of religion or religiously-motivated conduct." *Id.* at 1082. This is consistent with the rule requiring a comparison of an exemption to the "asserted government interest" set out in *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Likewise, a district court in Washington found review of "standardized exemptions" to not constitute an individualized exemption because the review was merely to ensure that the requests were not "fraudulent or incomplete." *Pilz v. Inslee*, No. 3:21-cv-05735-BJR, 2022 U.S. Dist. LEXIS 95747, *13 (W.D. Wash. May 27, 2022). In contrast, BART's system of individualized exemptions triggers the rule in *Fulton.* Even under *Stormans* pre-*Fulton* opinion, such an approach brings BART's process under strict scrutiny.

As a free exercise decision, *Stormans* poses additional dilemmas for BART because it undermines BART's non-accommodation approach. For instance, the mandate at issue in Washington State was meant to ensure access to abortion-inducing prescriptions. But that state, mindful of the sensitive religious and conscientious conflicts presented by its regulation, provided accommodations for individual pharmacists even broader than those established by Title VII or the Free Exercise Clause. "Importantly, the parties agree that the foregoing rule does not require an individual pharmacist to dispense medication if the pharmacist has a religious, moral, philosophical, or personal objection to delivery." *Stormans*, 794 F.3d at 1072. No accommodation was provided, however, for corporate pharmacies, *id.* at 1072-73, triggering the suit.

BART's citation to *UnifySCC* and *We the Patriots* in support of its position must also be moderated by the fact that those two cases relied on language from *303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021). *See*, *We the Patriots v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021),

and *UnifySCC*, at *18. The life of *303 Creative* was short lived when the Supreme Court reversed the decision subsequent to *We the Patriots* and *UnifySCC* on free speech grounds. *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023). Since that time, *303 Creative* has disappeared from court opinions as propositional authority for any clause in the First Amendment.

    *Doe v. San Diego U.S.D.*, 19 F.4th 1073 (9th Cir. 2021), illustrates the importance of accommodations in the free exercise context. A public school district mandated COVID-19 vaccination for its students.[15] Unlike BART, the school offered accommodations to students seeking exemptions, in the form of online learning. As the panel majority explained, "The . . . policy prevents [Doe] only from attending school in person and from participating in school sports, not from receiving a public education, participating in private sports leagues, or fully practicing her religion." *Id.* at 1114 (Berzon and Bennett, concurring in denial of rehearing and rehearing en banc). Ironically, what the school district offered was strikingly similar to the accommodations sought by several of the present plaintiffs to work from home. Unlike the school, BART refused to even consider such alternatives. And unlike the present plaintiffs, the students and parents in Doe were unwilling to accept the at-home options offered.

    Procedurally it should be noted that BART omits crucial subsequent history that undermines what BART believes to be the opinion's usefulness here. Beginning with that history, the panel decision relied upon by BART, issued in late 2021, was later reconsidered and limited. On January 14, 2022, the Ninth Circuit denied rehearing and rehearing en banc over strong dissents penned or joined by 11 judges. *See*, *Doe v. San Diego U.S.D.*, 22 F.4th 1099 (9th Cir. 2022). In response to the dissents, the panel majority emphasized the unusually limited reach of its ruling, chiding the dissenters for ostensibly

---

[15] It turns out that such school mandates, adding an immunization for COVID-19 to the ten immunizations required under Cal. Health & Safety Code § 120335, are unlawful as they are preempted by state law. Because of this, such mandates have been struck down by the California Court of Appeal. *See*, *Let Them Choose v. San Diego Unified Sch. Dist.*, 85 Cal. App. 5th 693 (2022).

Cooper-Plaintiffs' Opposition to Defendant's Cross-Motion for Summary Judgment

reading too much into it as BART does here. To this end, Judges Berzon and Bennett

emphasized that the decision was not even binding on subsequent panels in the same case.

The majority wrote:

> The only question presented to the District Court and . . . the motions panel
> was whether Doe's request for an injunction pending appeal should be granted
> . . . [T]he motions panel's majority opinion is explicit that . . . its reasoning is
> not binding on the panel to which the preliminary injunction appeal is assigned.

*Id.* at 1110. This history—where no student was denied a public education or expelled from

school based on vaccination status—is a far cry from BART's approach of implementing an

unyielding mandate under which scores of civil servants lost their public employment.

### b. BART allowed similar secular conduct of the unvaccinated public which it prohibited for unvaccinated employees.

Besides the mechanism for individualized exceptions determined at the discretion of

BART's Leave Management, BART also permitted certain secular conduct while prohibiting

similar religious conduct. BART allowed passengers to ride trains and congregate at stations

who were unvaccinated. Yet BART would not allow unvaccinated employees to work at these

same venues. A law lacks general applicability if it prohibits religious conduct while

permitting secular conduct that undermines the government's asserted interests in a similar

way. *Lukumi*, 508 U.S. at 542-46. In that an unvaccinated passenger on a train or at a station

poses an identical health and safety risk as an unvaccinated employee, BART's policy based

on public health concerns is under inclusive.

When the government bases its restrictions on public health, as did BART, but fails to

impose the same restrictions on others for the same conduct, this under inclusiveness fails

strict scrutiny. For instance, in *Lukumi* a municipality adopted several ordinances prohibiting

animal sacrifice, a practice of the Santeria faith. *Id.* at 524-28. The City claimed that the

ordinances were necessary in part to protect public health, which was "threatened by the

disposal of animal carcasses in open public places." *Id.* at 544. But the ordinances did not

regulate hunters' disposal of their kills or improper garbage disposal by restaurants, both of which posed a similar hazard. *Id.* at 544-45. The Court concluded that this and other forms of under inclusiveness meant that the ordinances were not generally applicable. *Id.* at 545-46. Similarly, in that BART permitted the general public—vaccinated or not—to enter stations and board trains, while prohibiting its religious unvaccinated employees to work at its facilities, renders the vaccination mandate not generally applicable.

Relying on *Kane v. De Blasio*, 19 F.4th 152 (2nd Cir. 2021), BART further argues that the allowance of passengers, whether religious or not, to ride the trains is not comparable to employees. BART Op., p. 13. In other words, the general public cannot be a comparator for purposes of general applicability. BART is mistaken. In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the governor allowed the general public to congregate at stores and other venues whether the people were religious or not. The problem was that persons congregating at worship venues were disfavored. The same was true in *Tandon.* The Court compared the allowance of the general public to come together at a variety of venues with the prohibition against religious home gatherings. *Id.* at 1297.

### ii. To satisfy strict scrutiny review BART must demonstrate a compelling state interest.

Cooper concedes, for purposes of this opposition brief, that stemming the spread of COVID-19 comprises a compelling state interest. *Roman Catholic*, 141 S. Ct. at 67.

### a. Beyond a compelling state interest, BART was obligated to narrowly tailor its requirements.

The identification of a compelling state interest is not the end of the inquiry. If a rule is not generally applicable, then it is subject to strict scrutiny and must serve a compelling state interest. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022). "[H]istorically, strict scrutiny requires the State to further interests of the highest order." *Lukumi*, 508 U.S. at 546 (internal quotation marks omitted). To justify the burden on free exercise, the government

carries the obligation to demonstrate a compelling governmental interest that must be narrowly tailored to advance that interest. *Id.* at 531-32.

Permitting an unvaccinated member of the public to ride a train as a passenger is a comparable activity to working on a train network as an unvaccinated employee. The same risk is present for the unvaccinated public and unvaccinated BART employees. By failing to utilize the same health measures for both unvaccinated passengers as unvaccinated employees, BART's refusal to either exempt or accommodate its religious-employee-objectors to vaccination flunks the test for narrow tailoring.

BART must demonstrate that "the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Tandon*, 141 S. Ct. at 1297; *see also*, *Roman Catholic*, 141 S. Ct. at 69 (2020); *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 719 (2021)(J. Gorsuch statement). Narrow tailoring requires the State to show that "measures less restrictive of the First Amendment activity could not address its interest." *Tandon*, 141 S. Ct. at 1297.

BART claims, without evidence, that unvaccinated employees ride trains for prolonged periods, but passengers ride for only a few minutes. BART MSJ, pp. 13-14. A non-percipient-hygienist declarant tells the Court that the public takes short train trips of a few minutes in duration whereas BART employees ride for prolonged periods "spending many working hours in the sometimes high-risk environment of the transit system." McClellen decl., ¶¶ 16-18, 20. This statement lacks personal knowledge or a foundation.[16] The undisputed evidence by

---

[16] The testimony of a station-agent-declarant with personal knowledge is that public passenger travel can take considerably longer than what the hygienist states as only a few minutes. For example, traveling from Berryessa to the 12th St. Station can take as long as 54 minutes; traveling from Berryessa to the SF Embarcadero Station could be an hour and five minutes; traveling from Berryessa to the airport (SFO) may take an hour and a half. *Chavez v. BART* Richardson decl., ¶¶ 5-7.

Cooper-Plaintiffs' Opposition to Defendant's Cross-Motion for Summary Judgment

sworn testimony of the former employees shows that they rode no more—and often less—than public passengers. The hygienist statement sits as a factual assertion dressed up as a scientific opinion.[17] Because passengers stand as a proper comparator to employees, this allowance undermines BART's asserted interest in community health and safety.

To this end, it should be pointed out that BART sets forth two inconsistent factual bases as affirmative defenses. As just explained, BART has brought in experts to claim that a universal vaccination mandate was the sole means of achieving its goals. Lewnard decl., ¶ 19; McClellen decl., ¶¶ 21-22. In contrast with this position, BART has repeatedly stated that it reviewed accommodations on an individual "case-by-case" basis. "Each decision was individual to the employee . . . . There was no predetermined decision or instruction to deny accommodation." BART MSJ, p. 3. These posit two conflicting theories of BART's case, i.e., universal employee vaccination versus individual review. A party cannot create a self-inflicted dispute of material fact. *Van Asdale v. Int. Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)(citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991)). Thus, when viewing the Cooper motion for summary judgment and BART's cross motion, BART should not be able to benefit from its promotion of conflicting theories.

### b. Constitutional obligations require BART to use the least restrictive means available.

Government is not free to disregard the First Amendment in times of crisis. At a minimum, that Amendment prohibits government officials from treating religious exercise worse than comparable secular activities, unless pursuing a compelling interest that utilizes the least restrictive means available. *See*, *Lukumi*, 508 U.S. at 546 (1993); *Roman Catholic*, 141 S. Ct. at 69 (2020)(J. Gorsuch concur).

---

[17] See the evidentiary objections of lack of personal knowledge and foundation at the end of this brief.

Here, narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID-19. BART failed to use the least restrictive means as shown by the allowance of tens of thousands of passengers, whose vaccination status was unknown, to enter stations and ride trains covering five counties during the work week from 5 a.m. to midnight.[18] As a government employer, BART must show that "public health would be imperiled" by "employing less restrictive measures" than requiring a fully vaccinated workforce. *Tandon*, 141 S. Ct. at 1297 (quoting *Roman Catholic*, 141 S. Ct. at 68). This it cannot do.

What is more, BART could have required employees to undergo regular testing in lieu of vaccination as it did during the summer of 2021. During the autumn of 2021, OSHA issued an Emergency Temporary Standard for Vaccination. Though requiring vaccination, the Standard included weekly testing for unvaccinated workers.[19] As discussed below, this is what state and local government employers did for their employees, even those in sensitive facilities and medical venues. Further, testing was available for free statewide at this time[20] and was also covered by employee health benefits. Even if testing of employees was not foolproof, it served as greater protection than the allowance of the general public to ride trains with an unknown vaccination or infection status.

To get around this, BART attempts a sleight of hand by changing the *least restrictive means* requirement into the *most effective means*. The epidemiologist asserts that BART had no other less restrictive alternative than universal vaccination of employees. ("All other measures available were significantly inferior to vaccination with respect to achieving [BART's] goals").

[18] Weekend hours are 6 a.m. to midnight on Saturdays and 8 a.m. to midnight on Sundays. https://www.bart.gov/schedules.
[19] OSHA, *Emergency Temporary Standard Fact Sheet – Workers' Rights under the COVID-19 Vaccination and Testing ETS* (Nov. 2, 2021), https://www.osha.gov/sites/default/files/publications/OSHA4159.pdf.
[20] See CDPH announcement, "State Issues Recommendations to Local Health Departments and Providers to Accelerate Safe Vaccine Administration Statewide" (Jan. 7, 2021).

Lewnard decl., ¶¶ 18-19. Similarly, BART routinely used boilerplate language that stated that "vaccination is the most effective method to prevent transmission and limit COVID-19 hospitalizations and death." Maplestone depo., 47:12-16, 49:19-22, 50:2-10, 53:3-10; Snider decl., Exh. 5, ¶ 3 (Ct. Doc. 46-1). BART's expert misunderstands the legal meaning of *least restrictive means*. It is not synonymous with the *most effective means*. Quite the opposite.

Moreover, despite its misplaced *most effective means* analysis, it is undisputed that BART allowed the general public to ride trains, whether vaccinated or not. That allowance is conduct which undermines its stated goals. It is without cavil that dozens of persons traveling together in confined carriages present the greatest risk of contagion than any other working environment that employees encounter while working for BART. BART's experts do not say otherwise, nor could they. As BART's hygienist writes, "The concentration of viral aerosols in the air is directly associated by the concentration of people in a space. Public transportation is noted for its high occupant density, especially within the vehicles themselves." Ct. Doc. 52-4, 7:25-28. Dr. Harvey Risch further explains that "[i]n transit, the general ridership was not required to be vaccinated, thus contribution of BART employees to transmission in vehicles would on average have been small compared to the contribution of riders, and reductions in employee transmission generally would not have much changed transmission risks largely driven by the ridership." Risch decl., ¶ 11.

That allowance for public train travel is conduct which undercuts its stated goals. A law lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way. *Lukumi*, 508 U.S. at 542-46. Precautions that suffice for other activities suffice for religious exercise too." *Tandon*, 141 S. Ct. at 1297; *Roman Catholic*, 141 S. Ct. at 69; *South Bay United Pentecostal Church*, 141 S. Ct. at 719 (2021)(J. Gorsuch statement). BART cannot reconcile its allowance for unvaccinated passengers with the requirement of using the least restrictive means that the Free Exercise

Clause demands. "Where the government permits" thousands of unvaccinated passengers to ride the trains and congregate at stations "with precautions, it must show" that allowing unvaccinated religious employees at BART venues are "more dangerous" than the passengers. *Tandon*, 141 S. Ct. at 1297. BART cannot make that showing. In deposition testimony, BART's Assistant and General Manager for Administration was asked if he believed "that BART kept passengers safe from COVID-19 during 2021." His answer: *yes*. He testified this is true whether they were vaccinated or not. Alaric Degrafinried depo., 20:1-7.

In numerous memoranda to religious-objector-employees to vaccination describing why BART would not provide an accommodation, Leave Management points to the CDPH. Standard language given to employees by Leave Management provides, "According to the . . . CDPH, vaccination is the most effective method to prevent transmission and limit COVID-19 hospitalizations and death." Maplestone depo., 50:7-10. To be clear, the *least restrictive means* test is a constitutionally required exacting standard that stands far apart from an employer's desire to use the *most effective means*.

In the church COVID-19 closure cases, the Supreme Court was unmoved by unchallenged expert opinion, and held steadfast to the least restrictive means test rather than what was optimal. *See, Roman Catholic*, 141 S. Ct. at 69; *South Bay Pentecostal*, 141 S. Ct. at 718 (Gorsuch statement); *Tandon*, 141 S. Ct. at 1298 ("[S]trict scrutiny requires the State to further 'interests of the highest order' by means narrowly tailored in pursuit of those interests . . . That standard is not watered down. It really means what it says." *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021)(same)). In *Roman Catholic* the high court explained:

> Members of this Court are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area. But even in a pandemic, the Constitution cannot be put away and forgotten. The restrictions at issue here . . . strike at the very heart of the . . . guarantee of religious liberty.

*Roman Catholic*, 141 S. Ct. at 68. Like the State of New York in *Roman Catholic*, the *Tandon* dissenters made the same argument as BART relative to experts. "The district court found each of these facts based on the uncontested testimony of California's public-health experts." *Id.* at 1298 (J. Kagan dissenting). That did not carry the day then and should not now. When the First Amendment is at stake, the Supreme Court will no longer allow experts to dictate the analysis.

BART's reliance on the CDPH for its jab or job ultimatum actually undermines the burden of proving narrow tailoring that uses the least restrictive means to achieve a compelling governmental interest. As an employer, CDPH treated its religious-objector-employees to vaccination much differently than BART. A response to a request for public records[21] shows that between January 1, 2021, and December 31, 2022, 156 CDPH employees requested a religious accommodation to the COVID-19 vaccination. CDPH gave accommodations to all 156 employees. Snider decl., ¶ 6, Exh. 6. Since the state entity charged with setting public health policy for Californians can accommodate its employees, there is no reason that a five-county train district cannot accommodate its 188 employees seeking religious accommodations. [22]

Or consider the California Department of Industrial Relations, which includes OSHA. Though OSHA required employee vaccination, unvaccinated workers were simply required to undergo weekly testing of its employees. An exception occurred when employees regularly visited sensitive workplaces such as hospitals, skilled nursing facilities, jails/prisons, food processing facilities, or senior care facilities. For those unvaccinated employees, OSHA

---

[21] Records were requested pursuant to the California Public Records Act. Cal. Gov. Code § 7920 et. seq. See, Snider decl., ¶¶ 6-9.

[22] Although those working in public transportation were deemed essential workers, it does not follow that mandatory vaccination was even required. The Sacramento Regional Transit District, which includes a light rail train system, did not mandate vaccination. Snider decl., ¶ 9, Exh. 9.

required twice a week testing. *Id.* The question must be asked, if the state entity which monitors workplace health and safety managed COVID-19 through testing, why couldn't BART? Since testing was a viable option for OSHA, then BART's mass employee termination was surely not the least restrictive means to achieve a compelling state interest.

A review of some of the neighboring San Francisco Bay Area government entities is also informative. Contra Costa County is one of the five districts serviced by BART. Between January 1, 2021, and December 31, 2022, there were 971 employees which sought a religious exemption from COVID-19 vaccination. There were 959 accommodations granted. Snider decl., ¶ 7, Exh. 7. In Solano County twenty-three employees requested accommodation for which nineteen were granted. *Id.* In Santa Clara County, approximately 1,236 employees requested religious exemptions to the vaccine; that county accommodated 1,164 employees during that timeframe.

BART seeks to distance itself from neighboring governments, as well as flee from state agencies charged with public health and employee safety, by attempting to obfuscate this evidence by attacking a response from the City of San José. First, BART's discussion is off base because the San José response to a public record request was not included in **this case**.

The request for documents to the City of San José was for the number of employees seeking religious exemptions and the number of employees granted religious accommodations. The response from the Assistant to the City Manager was the following: "From January 1, 2021 through December 31, 2022, we received 379 religious exemption requests from employees and approved 331." Ct. Doc. 46-2, p. 403. BART's claim that the response demonstrates confusion on the part of the San José official is a strained reading of the text. It is transparent that BART's tactic is to muddy the record by claiming the municipality's answer was not clear. Both BART's extrapolation from the San José response and the projection of confusion on all other entities is too farfetched to be seriously

considered.[23] Simply put, BART attempts to call into question **all** responses to public records requests by **all** the other entities. But there is nothing in the responses from the two state agencies or three counties that lacks clarity. Thus, even if the San José official was confused—which is not likely—the evidence from the other government entities is left unchallenged.[24]

> **B. The declarations of BART's experts neither creates a dispute of material fact nor an affirmative defense.**

Based upon the conclusions found in the declarations of two science experts, BART claims that no religious accommodation was possible for any employee. Lewnard decl., ¶ 19; McClellan decl., ¶ 22. Cooper offers two reasons why BART's reliance on these conclusions fail to carry the day.

First, for purposes of summary judgment, the cornerstone laid for BART's defense lacks a foundation to rest on. There is no evidence or testimony of BART's reliance on the opinions at the time of the issuance of the mandate (October 2021). It is not that the experts' opinions are necessarily wrong. But assuming the validity of these opinions for purposes of this motion and BART's cross-motion, the opinions fail to assert that any BART decisionmaker read the papers or studies cited and relied on them. Likewise, the experts do not claim that they or any other person with this expertise consulted and advised BART pursuant to the information set forth in the declarations when the mandate was issued by its Board. Absent evidence that BART had this information, relied on it, and as a result based its

---

[23] Also of note, BART's experts do not attempt to explain why another rail system did not even require vaccination though it too was an essential service. See Snider Decl., ¶ 8, Exh. 8 (Sacramento Regional Transit District).

[24] BART levels an accusation of "cherry picking" data. Not so. The government entities relied upon by Plaintiffs "were the only ones which responded to . . . requests for public records under the California Public Records Act on this issue with something other than stating there were no responsive records." Snider decl., ¶ 10. *Chavez v. BART*, Ct. Doc. 46-1.

23

decision that no accommodations would be countenanced, then the assumed verity of the expert opinions lacks relevance.[25]

Second, testimony of BART's examiners show no reliance on the opinions found in the expert declarations. Indeed, deposition testimony of BART decisionmakers in Human Resources does not factually support the position that BART deemed unvaccinated employees as posing a danger. Gizelle Huynh, who served as the Supervisor of Leave Management, was asked, "**Q:** Do you know if it was BART's view that unvaccinated employees posed an immediate danger to anyone? **A:** I don't remember." Huynh depo., 13:25 to 14:3. The Director of BART's Human Resources, Veronica Thomas, was asked, "**Q:** Were you ever told by someone in BART management that unvaccinated employees would pose a danger of some kind? **A:** No." Thomas depo., 28:13-16.[26] Similarly, BART's Assistant and General Manager for Administration had never met either Dr. Lewnard or Mrs. McClellan. Alaric Degrafinried depo., 12:18-23. When asked if during the fall of 2021 did anyone from BART send him medical or scientific journals on vaccination, social distancing, testing, or masks, he testified they did not. *Id.* at 12:24 to 13:1-12.

Cooper is not claiming that disputes of material facts are present. Instead, the BART decisionmakers who are percipient witnesses simply do not corroborate that BART was aware of, or relied upon, those scientific claims. BART's experts' opinions merely reconstruct the public health history from the autumn and winter of 2021. For purposes of summary

---

[25] See the evidentiary objections of lack of personal knowledge and foundation at the end of this brief.

[26] As to BART's claims of reliance on the CDC, the primary decisionmaker for accommodations had no medical background and did not keep up with CDC statements. For example: "**Q:** Were you aware that in July of 2021, the CDC stated that, quote, 'Delta infection resulted in similarly high SARS COVID 2 viral loads in vaccinated and unvaccinated people'? **A:** No. I'm not – I don't know that level of detail. I'm not a medical professional. **Q:** And maybe I should ask. Do you have any medical background? **A:** No." Maplestone depo., 42:22 to 43:5.

judgment, the undisputed record of the testimony of BART's decisionmakers regarding the actual knowledge and conduct of BART cannot be reconciled with those opinions. Thus, those opinions, even if considered valid, do not provide an affirmative defense or create a material dispute of fact.

## CONCLUSION

In sum, BART's policy of purging its rolls of religious employees falls short of its constitutional obligations under strict scrutiny review for failure to employ narrow tailoring and use of the least restrictive means. Instead, BART used the most restrictive means.

In view of the above, BART's cross-motion for partial summary judgment should be denied and the Cooper motion granted.

Dated: February 27, 2024

/s/ Kevin T. Snider
Kevin T. Snider
Matthew B. McReynolds
Milton E. Matchak

*Attorneys for Plaintiffs*

## OBJECTIONS

**Declaration of Joseph Lewnard:** *Objection to* ¶¶ 3, 9-19: The declarant does not lay a foundation or assert personal knowledge that the scientific information was known, communicated or relied upon by BART at the time of the issuance of the vaccination mandate.   F.R.E. 602 and 901

**Declaration of Nancy McClellen:** *Objection to* ¶¶ 11-14; 16-19, 21, 22: The declarant does not lay a foundation or assert personal knowledge that the scientific information was known, communicated or relied upon by BART at the time of the issuance of the vaccination mandate.   F.R.E. 602 and 901.

*Objection to* ¶ 20: The declarant does not lay a foundation or assert personal knowledge regarding the length of time that BART employee-plaintiffs ride trains in comparison to the general public. F.R.E. 602 and 901.