1  GLYNN, FINLEY, MORTL,
   HANLON & FRIEDENBERG, LLP
2  JAMES M. HANLON, JR., Bar No. 214096
   VICTORIA R. NUETZEL, Bar No. 115124
3  DAWSON P. HONEY, Bar No. 347217
   One Walnut Creek Center
4  100 Pringle Avenue, Suite 500
   Walnut Creek, CA 94596
5  Telephone: (925) 210-2800
   Facsimile: (925) 945-1975
6
   SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
7  OFFICE OF THE GENERAL COUNSEL
   SAM N. DAWOOD, Bar No. 178862
8  2150 Webster Street, 10th Floor
   Oakland, CA 94612
9  Telephone: (510) 464-6015
   Facsimile: (510) 464-6049
10
   Attorneys for Defendant
11 San Francisco Bay Area Rapid Transit District

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15
                                    )   Case No. 3:22-cv-09193-WHA
16 JERAMIAH COOPER, RONALD          )
   FREEMEN II, ADRIAN GILBERT,      )
17 SILVERIO GONZALEZ, SERGII        )   **DEFENDANT BART'S**
   GRINCHENKO, LARON JOHNSON, JIM   )   **REPLY IN SUPPORT OF**
18 LASOVICH, RAYMOND LOCKETT,       )   **CROSS-MOTION FOR**
   MICHAEL MANZANO, TERESA          )   **PARTIAL SUMMARY JUDGMENT**
19 OWENS, ROSALIND PARKER, RYAN     )
   RIVERA, ALBERT ROTH, JIM         )
20 SCULLEN, SC SUN, NICK TAYLOR, and)   Date:    March 28, 2024
   DAROLYN TURNER,                  )   Time:    8:00 a.m.
21                                  )   Crtrm:   12
              Plaintiffs,           )   Judge:   Hon. William H. Alsup
22                                  )
       vs.                          )
23                                  )
   SAN FRANCISCO BAY AREA RAPID     )
24 TRANSIT DISTRICT, and DOES 1-100,)
                                    )
25            Defendants.           )
                                    )
26 _____ )

27

28

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .........................................................................................................2

A. BART's Religious Exemption Procedure Was Neutral and Generally Applicable, and Satisfies Rational Basis Review ......................................2

1. Plaintiffs Do Not Contest that BART's Vaccine Mandate Was Neutral ..........2

2. BART's Vaccine Mandate and Exemption Process Were Generally Applicable ....................................................................................3

a. BART's Consideration of Exemptions Required by Title VII and FEHA Does Not Mean that Its Vaccine Mandate and Exemption Process Were Not Generally Applicable ......................................3

b. BART Did Not Favor Comparable Secular Conduct Over Religiously Motivated Conduct ................................................6

3. BART's Vaccine Mandate Satisfies Rational Basis Review .........................10

B. BART's Vaccine Mandate Would Satisfy Strict Scrutiny Review, Were It Appropriate ...................................................................................10

1. Members of the Public Did Not Present the Same Risk to BART's Public Health and Operations Goals as Did Its Employees ...........................10

2. BART Has Submitted Unrebutted Expert Evidence that Regular Testing Was Not Adequate to Promote Its Interest in Slowing the Spread of COVID-19 and Protecting its Workers and the Public ...................11

3. Hearsay Evidence Concerning the Supposed Practices of Other Governmental Employers Does Not Create a Triable Issue of Fact ................12

C. Plaintiffs' Criticism of BART's Expert Declarations Is Without Merit ...............13

D. Responses to Evidentiary Objections ....................................................14

III. CONCLUSION ....................................................................................................15

CASES

*Beyene v. Coleman Security Services, Inc.*
854 F.2d 1179 (9th Cir. 1988) ........................................................................ 9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
508 U.S. 520 (1993).......................................................................................... 3

*Claar v. Burlington Northern Railroad*
29 F.3d 499 (9th Cir. 1994) ............................................................................. 8

*Doe v. San Diego Unified School District*
19 F.4th 1173 (9th Cir. 2021) .......................................................................... 5

*Doe v. San Diego Unified School District*
22 F.4th 1099 (9th Cir. 2022) .......................................................................... 5

*Does 1-6 v. Mills*
16 F.4th 20 (1st Cir. 2021)............................................................................... 3

*Dr. T. v. Alexander Scott*
579 F. Supp. 3d 271 (D.R.I. 2022)................................................................... 2

*Elantech Devices Corp. v. Synaptics, Inc.*
No. C 06-01839, 2008 WL 2008627 (N.D. Cal. Apr. 16, 2008) ...................... 8

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*
82 F.4th 664 (9th Cir. 2023) ............................................................................ 4

*Fulton v. City of Philadelphia*
141 S. Ct. 1868 (2021)............................................................................. 3, 4, 6

*George v. Gorssmont Cuyamaca Community College District Board of Governors*
No. 22-cv-0424-BAS-DDL, 2022 WL 16722357 (S.D. Cal., Nov. 4, 2022) .................... 4

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*
515 U.S. 557 (1995)........................................................................................ 14

*Hutchinson v. United States*
838 F.2d 390 (9th Cir. 1988) ........................................................................... 8

*Kane v. DeBlasio*
19 F.4th 152 (2d. Cir. 2021) ............................................................................ 9

*Kennedy v. Bremerton School District*
597 U.S. 507 (2022)........................................................................................ 10

*Orr v. Bank of America*
  285 F.3d 764 (9th Cir. 2002) .............................................................. 9, 11, 12

*Pilz v. Inslee*
  No. 3:21-cv-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022) ...................... 4

*Roman Catholic Diocese of Brooklyn v. Cuomo*
  592 U.S. 14 (2020) .......................................................................... 7, 9

*Sherbert v. Verner*
  374 U.S. 398 (1963) ............................................................................ 6

*Siebert v. Gene Security Network, Inc.*
  75 F. Supp. 3d 1108 (N.D. Cal. 2014) .............................................. 9, 11, 12, 13

*Snyder v. Phelps*
  562 U.S. 443 (2011) ........................................................................... 14

*Stormans, Inc. v. Wiseman*
  794 F.3d 1064 (9th Cir. 2015) .............................................................. 4, 5

*Surrell v. California Water Service Co.*
  518 F.3d 1097 (9th Cir. 2008) ..................................................... 9, 11, 12, 13

*Tandon v. Newsom*
  593 U.S. 61 (2021) ..................................................................... 6, 7, 9, 12

*Thunder Studios, Inc. v. Kazal*
  13 F.4th 736 (9th Cir. 2021) ................................................................. 14

*Tingley v. Ferguson*
  47 F.4th 1055 (9th Cir. 2022) .................................................................. 4

*UnifySCC v. Cody*
  No. 22-cv-01019, 2022 WL 2357068 (N.D. Cal. June 30, 2022) ...................... 4, 5, 6, 10

*Yates v. Ford Motor Company*
  No. 5:12-CV-752, 2015 WL 3448905 (E.D.N.C. May 29, 2015) .................................... 8

# TABLE OF AUTHORITIES
Continued

STATUTES

42 United States Code (U.S.C.)
    Section 1983.................................................................................................... 2, 15

RULES

Federal Rules of Evidence (F.R.E.)
    Rule 602............................................................................................................ 14, 15
    Rule 803(8) ....................................................................................................... 12

    Rule 901 ........................................................................................................... 14, 15

Federal Rules of Civil Procedure (Fed. R. Civ. P.)
    Rule 56(e)......................................................................................................... 9

## I. Introduction

As the Court noted in its recent Order Denying Plaintiffs' Motion for Class Certification, the gravamen of this case is whether BART can establish that permitting the Plaintiffs to work while unvaccinated against COVID-19 posed an undue burden. Order Denying Plaintiffs' Motion for Class Certification at 8, 3:22-cv-06119-WHA (N.D. Cal. Jan. 28, 2024) ("BART's undue hardship showing – likely to be the dispositive issue in this action – also rests on individual factual issues."). While some Plaintiffs must first establish that a sincerely held religious belief led to their non-vaccination, the undue burden question is central and requires different analyses among the Plaintiffs. That is the principal reason why BART did not move for summary judgment on Plaintiffs' Title VII and FEHA claims.

But this case does not present triable issues with respect to Plaintiffs' free exercise of religion claim. That claim focuses not on accommodation, but instead on BART's process for exemptions from its vaccine mandate and the goals underlying that mandate. BART has established as a matter of law that its mandate and exemption process were neutral and generally applicable. All employees were required to be vaccinated. The only secular exemption permitted was for medical necessity. Employees who received a medical exemption were placed on unpaid leave until they could be vaccinated; BART did not allow any employee to work while unvaccinated, for any reason. Plaintiffs may believe that the exemption and accommodation process was unduly strict, but that is a question for Title VII and FEHA. The undisputed facts clearly establish that BART's policy was neutral and generally applicable. It was applied to every employee in the same manner irrespective of religious or secular belief. Under the First Amendment, nothing more was required, so long as a policy can pass rational basis review, which Plaintiffs concede is satisfied.

Even were the vaccine mandate and exemption process not neutral and generally applicable, BART still would be entitled to summary judgment because its policy passes strict scrutiny review as well. The COVID-19 pandemic was the most serious public health crisis in the United States in at least the last 50 years. Plaintiffs concede that BART had a compelling interest in slowing the spread of COVID-19 among its employees and patrons, which was central

1  to ensuring that BART could maintain a workforce sufficient for its operations.  The only

2  question, then, is whether BART employed the least restrictive means available to achieve those

3  goals.  As discussed herein, BART has conclusively established that there were no less restrictive

4  means available to achieve its important public health and operational goals.  Its mandate and

5  exemption process satisfy even strict scrutiny review, were it applicable.

6  **II.    Argument**

7        **A.    BART's Religious Exemption Procedure Was Neutral and Generally
             Applicable, and Satisfies Rational Basis Review**
8

9        BART cross-moves for summary judgment of Plaintiffs' Second Cause of Action under

10  42 U.S.C. section 1983, which alleges that BART violated Plaintiffs' rights to free exercise of

11  religion under the First and Fourteenth Amendments.  The starting point for this constitutional

12  analysis is that vaccine mandates have been permitted in the face of free exercise challenges for

13  more than a century.  *Dr. T. v. Alexander Scott*, 579 F. Supp. 3d 271, 280 (D.R.I. 2022) (citing

14  cases); *see also* Dkt. 36 at 12-13.

15        On opposition, Plaintiffs make two primary arguments.  First, although Plaintiffs concede

16  that BART pursued a "uniform mechanism for review" of requests for religious accommodation,

17  Dkt. 40 at 8, they contend that BART's religious exemption process was not generally applicable

18  because it "utilized individualized assessments and exemptions," *id.* at 13.  Second, Plaintiffs

19  argue that BART's vaccine mandate was not generally applicable because it did not apply to

20  patrons.  *Id.* at 16-19.  As discussed here, neither argument creates a triable issue of fact

21  sufficient to defeat BART's cross-motion for partial summary judgment.

22        **1.    Plaintiffs Do Not Contest that BART's Vaccine Mandate Was Neutral**

23        BART established in its opening brief that its vaccine mandate was neutral because it

24  applied to all employees, with no one permitted to work while unvaccinated.  Dkt. 36 at 10-11.

25  Plaintiffs do not contend otherwise, implicitly conceding that the mandate was neutral under the

26  proper constitutional analysis.  *See* Dkt. 40.

27  ///

28  ///

## 2. BART's Vaccine Mandate and Exemption Process Were Generally Applicable

### a. BART's Consideration of Exemptions Required by Title VII and FEHA Does Not Mean that its Vaccine Mandate and Exemption Process Were Not Generally Applicable

As a matter of First Amendment law, BART was not required to offer religious exemption from its COVID-19 vaccine mandate at all. *E.g.*, *Does 1-6 v. Mills*, 16 F.4th 20, 30-32 (1st Cir. 2021); *see also* Dkt. 36 at 12-13. Rather, the First Amendment permits government action that impacts free exercise rights so long as that law can pass rational basis review and is "neutral and of general applicability." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993). As noted, BART's vaccine mandate applied to all its employees, and BART did not permit any employee to work while unvaccinated after the mandate went into effect and requests for exemption were fully processed. Declaration of Rodney Maplestone in Support of Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of Defendant's Cross-Motion for Partial Summary Judgment at ¶ 5, *Chavez v. BART*, No 3:22-cv-06119-WHA (N.D. Cal. Jan. 10, 2024), Dkt. 52-2 ("Maplestone Decl.").

Plaintiffs contend that BART's exemption process was not generally applicable because it "utilized individualized assessments and exemptions." Dkt. 40 at 13. Not so. Rather, BART complied with its statutory obligations under Title VII and FEHA, which required it to consider employee requests for religious exemption from the vaccine mandate through a two-step process. First, BART considered whether the employee's reason for non-vaccination was based on a religious belief, rather than a secular concern. Maplestone Decl. at 3. If that criterion was met, BART considered whether the employee could perform their job functions while unvaccinated without imposing an undue burden on BART. *Id.* at 4. To perform this analysis, BART consulted and followed EEOC guidance. *Id.* at 2, 3. Plaintiffs' position is that a government employer, like BART, cannot comply with its statutory obligations under Title VII and FEHA while acting in a neutral and generally applicable manner. That legal contention is wrong.

As discussed in BART's opening brief, the Supreme Court did not hold in *Fulton v. City of Philadelphia,* 141 S. Ct. 1868 (2021), that <u>any</u> individualized consideration renders an

exemption process not generally applicable. Dkt. 36 at 13-15. Addressing *Fulton* in another

COVID-19 vaccine mandate case, this Court has already recognized that "[t]he mere existence of

an exemption that affords some minimal government discretion does not destroy a law's 'general

applicability.'" *UnifySCC v. Cody*, No. 22-cv-01019, 2022 WL 2357068, at * 7 (N.D. Cal.

June 30, 2022) (quoting *Stormans, Inc. v. Wiseman*, 794 F.3d 1064, 1082 (9th Cir. 2015)). Other

district courts in this Circuit concur. *E.g.*, *George v. Gorssmont Cuyamaca Cmty. Coll. Dist. Bd.

of Governors*, No. 22-cv-0424-BAS-DDL, 2022 WL 16722357, at * 14 (S.D. Cal., Nov. 4, 2022)

("[A] rule that administers exemptions only to 'objectively defined categories of persons' is

generally applicable."); *Pilz v. Inslee*, No. 3:21-cv-05735-BJR, 2022 WL 1719172, at *5 (W.D.

Wash. May 27, 2022) ("Performing an 'individualized assessment,' presumably requiring

agencies to exercise a modicum of due diligence to confirm that exemption requests are not

fraudulent or incomplete, is not the same as giving government officials wide latitude to deny

exemptions for any reason."). These holdings are consistent with Ninth Circuit guidance, which

describes *Fulton* as holding that an exemption process is not generally applicable if "this

provision (1) was a formal mechanism, (2) creating a system of individual exceptions, (3) that

would be exercised at the discretion of a government official." *Tingley v. Ferguson*, 47 F.4th

1055, 1088 (9th Cir. 2022); *see also Fellowship of Christian Athletes v. San Jose Unified Sch.

Dist. Bd. of Educ.*, 82 F.4th 664, 687-88 (9th Cir. 2023) (stating *Fulton* prohibits exemptions

made "on an ad hoc basis" and finding non-discrimination policy not generally applicable where

school district did not "maintain any written list of such approved criteria" for granting an

exemption and instead relied on "officials' use of 'common sense' on a case-by-case basis").

BART's religious exemption process did not create individualized exceptions, and

BART's review panel effectively had no discretion in considering requests for exemption or

accommodation. Rather, BART was bound by, and applied, the governing legal standards under

Title VII and FEHA, complying with EEOC guidance on how to do so. Maplestone Decl. at 2, 3.

As this Court already found in a similar case, this is no more than "minimal government

discretion" that does not fall within the ambit of *Fulton*. *UnifySCC*, 2022 WL 2357068, at *7.

///

Because following a statutorily required exemption process is not per se impermissible, the Court must instead consider whether Plaintiffs can establish that BART permitted ad hoc decision-making that could be vulnerable to anti-religious bias. *See UnifySCC v. Cody*, 2022 WL 2357068, at *7. There is no such evidence.

The first step in BART's process was to assess whether an employee's proffered basis for refusing vaccination was religious in nature, rather than secular. Maplestone Decl. at 3. In *UnifySCC*, the Court held that this "limited inquiry" is permissible and does not render an exemption process not generally applicable. 2022 WL 2357068, at *7. Plaintiffs argue that BART's process was different, but that's not correct. *See* Dkt. 40 at 15. With respect to assessing religious objection to the vaccine mandate, BART followed the same process as did Santa Clara County in *UnifySCC*.[1] *See* Maplestone Decl. at 2-3.

The second step in BART's process was to consider whether an accommodation would permit the employee to work while unvaccinated without imposing an undue burden or hardship on BART. Maplestone Decl. at 4. BART was primarily concerned with the health of its employees and patrons, and ensuring that it had a sufficient available workforce to maintain its essential operations. *Id.* at 2, 4.

As discussed in BART's opening brief, the Ninth Circuit has said that this two-step process, required by Title VII and FEHA is "not a religious *exemption." Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021)[2]. By that phraseology, the Ninth Circuit meant that a religious exception and accommodation review under Title VII and FEHA is not

---

[1] Plaintiffs argue at length that Santa Clara County was more lenient than BART with respect to accommodation decisions. Dkt. 40 at 15-16. BART will defend its accommodation decisions at trial, but those issues concern Plaintiffs' Title VII and FEHA claims, not their free exercise claim. The same is true with respect to Plaintiffs' extended discussion of accommodations under an entirely different policy, unrelated to COVID-19 or vaccination, that was at issue in *Stormans, Inc. v. Wiseman*, 794 F.3d 1064 (9th Cir. 2015). *See* Dkt. 40 at 16-17.

[2] Plaintiffs suggest that "BART omits crucial subsequent history [of *Doe*] that undermines what BART believes to be the opinion's usefulness here." Dkt. 40 at 18. That is incorrect. Plaintiffs refer to an order denying *en banc* review of the decision. *Id. Doe* concerned a motion for an injunction pending appeal. 19 F.4th at 1175. In a concurrence to the order denying *en banc* review, two of the panel judges noted that the published order denying the motion is not binding on the panel that decides the appeal. *Doe v. San Diego Unified Sch. Dist.*, 22 F.4th 1099, 1110 (9th Cir. 2022). Unless and until the order is abrogated, however, it remains precedent for other Ninth Circuit motion panels and district courts. *See id.* at 1177, n.4.

discretionary as that term was used in *Fulton*. BART did not create its own religious exemption standards; rather, it followed a prescribed process necessary to comply with its statutory obligations, relying on EEOC guidance. That process did not give BART's panel discretion to grant an exemption or accommodation; to the contrary, the analysis was controlled by Title VII and FEHA, and cases construing those statutory requirements. These facts distinguish BART's religious exemption process from the "good cause" exceptions that were found problematic in *Sherbert v. Verner*, 374 U.S. 398, 401 (1963), and the "entirely discretionary" authority at issue in *Fulton*, 141 S. Ct. at 1875.

### b. BART Did Not Favor Comparable Secular Conduct Over Religiously Motivated Conduct

A government policy is not generally applicable if it forbids religious conduct, but permits comparable secular conduct. *UnifySCC*, 2022 WL 2357068, at *7; *see also Tandon v. Newsom*, 593 U.S. 61, 62 (2021) ("[G]overnmental regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." (emphasis in original)). Plaintiffs argue that BART violated this rule because it did not require members of the public to be vaccinated to use its transit services. Dkt. 40 at 18-19. This argument fails because BART has submitted unrebutted expert evidence that its patrons were not comparable to its employees with respect to its COVID-19 concerns.[3]

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 593 U.S. at 62. With its cross-motion, BART submitted evidence from an expert industrial hygienist, Nancy M. McClellan, that its employees and patrons did not present comparable risks with respect to transmission of COVID-19 and BART's ability to maintain its workforce. Declaration of Nancy M. McClellan in Opposition to Summary Judgment at 9-10, *Chavez v.*

---

[3] As BART explained in its opening brief, it is not clear that BART could have acted unilaterally to bar non-vaccinated members of the public from using its transit system. Dkt. 36 at 19, n.5. Plaintiffs' argument thus rests on a hypothetical and shaky legal premise. Plaintiffs fail to address this threshold issue in their opposition.

*BART*, No 3:22-cv-06119-WHA (N.D. Cal. Jan. 10, 2024), Dkt 51-4 ("McClellan Decl.").

Ms. McClellan opines that "the duration or time period of exposure of a passenger is relatively shorter than that of an employee and therefore a passenger does not pose the same risk or threat of transmissibility of the COVID-19 virus" and "[t]he risk level is much lower for customers and former employees spending minutes in the transit environment compared to current BART employees spending many working hours in the sometimes high-risk environment of the transit system due to the differing duration and resulting likelihood of exposure." *Id.*

Plaintiffs twist the rulings of *Tandon v. Newsome* and *Roman Catholic Diocese v. Cuomo*, attempting to convince the Court to ignore BART's uncontested expert testimony. Dkt. 40 at 25-26. Rather than substantively engage with BART's expert's testimony, Plaintiffs urge the Court to ignore it. That is a remarkable position, taken without any substantial basis. Plaintiffs rely on a quotation from *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020). By that decision, the Supreme Court granted injunctive relief to plaintiffs challenging state executive orders that prohibited more than 10 or 25 persons from gathering for religious service. *Id.* at 15-16. The opinion includes the sentences quoted by Plaintiffs: "Members of this Court are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area. But even in a pandemic, the Constitution cannot be put away and forgotten." *Id.* at 19-20. But immediately before, the Court noted that "the State has not claimed that attendance at the applicants' services has resulted in the spread of the disease" and "has not shown that public health would be imperiled in less restrictive means were imposed." *Id.* The Court in *Roman Catholic* thus did not ignore proffered expert testimony, it merely declined to defer to the judgment of state officials in the absence of expert testimony. The circumstances here are entirely different because BART's opposition is supported by admissible expert declarations. Neither *Tandon* nor *Roman Catholic* require the court to ignore uncontested facts.

Lacking contrary admissible expert evidence, Plaintiffs respond by miscasting Ms. McClellan's opinions and attempting to rebut them through lay witness declarations from the Plaintiffs. Dkt. 40 at 21-22. According to Plaintiffs, Ms. McClellan's opinions rest on an assumption "that unvaccinated employees ride trains for prolonged periods, but passengers ride

for only a few minutes." *Id.* at 21. Not so. Ms. McClellan actually opines that, from an industrial hygiene perspective, patrons present a "much lower" risk than "employees spending many hours working in the sometimes high-risk environment of the transit system." McClellan Decl. at 10. BART's transit system is not just its trains, but also encompasses its stations, offices, maintenance facilities, and other work locations. BART's employees do spend prolonged periods in those locations, so there is no false assumption underlying Ms. McClellan's opinion.

The question whether BART's patrons and employees are comparable with respect to its goals of preventing the spread of COVID-19 and ensuring a sufficient workforce is a scientific one, involving questions of industrial hygiene and public health that are beyond lay understanding. Such scientific questions must be addressed through expert witness testimony. *Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (granting summary judgment because plaintiff failed to proffer expert testimony necessary to adduce causation); *see also Yates v. Ford Motor Co.*, No. 5:12-CV-752, 2015 WL 3448905, at *9 (E.D.N.C. May 29, 2015) ("the fields of public health and industrial hygiene will employ scientific, technical, or other specialized knowledge and are therefore a proper subject for expert testimony").

If Plaintiffs sought to contest Ms. McClellen's expert testimony, they had to do so through admissible evidence, which here required a contrary expert opinion.[4] *E.g., Hutchinson v. United States*, 838 F.2d 390, 393 (9th Cir. 1988) (granting defense summary judgment because plaintiff failed to rebut proffered expert testimony on material factual dispute); *see also Elantech Devices Corp. v. Synaptics, Inc.*, No. C 06-01839, 2008 WL 2008627, at *6 (N.D. Cal. Apr. 16, 2008). Plaintiffs have defaulted on their burden to provide evidence to establish a triable issue of material fact.

Instead, Plaintiffs' seek to replace evidence with attorney argument: "Permitting an unvaccinated member of the public to ride a train as a passenger is a comparable activity to

---

[4] Plaintiffs included the expert report of Dr. Harvey Risch. Dkt. 40 at 24. This opposition report was disclosed long after the deadlines for designating experts and serving reports had passed. The Court has provisionally allowed this late expert report provided that Plaintiffs promptly make Dr. Risch available for deposition and cover the costs and fees of the deposition. At time of filing, Dr. Risch has not yet been deposed.

working on a train network as an unvaccinated employee.  The same risk is present for the
unvaccinated public and unvaccinated BART employees." Dkt. 40 at 21.  Attorney argument
that is unsupported by evidence (and here, the evidence would need to be expert testimony) may
not be considered on a motion for summary judgment, and cannot create a triable dispute of
material fact.  *Orr v. Bank of Am.*, 285 F.3d 764, 772 (9th Cir. 2002) ("A trial court can only
consider admissible evidence in ruling on a motion for summary judgment." (citing Fed. R. Civ.
P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)); *see also
Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) ("Conclusory statements
without factual support are insufficient to defeat a motion for summary judgment."); *Siebert v.
Gene Sec. Network, Inc.*, 75 F. Supp. 3d 1108, 1116 (N.D. Cal. 2014) (same).

Plaintiffs' evidentiary deficiency compels entry of summary judgment for BART, which
is the correct result as well.  As discussed in the opening brief, this case is much like *Kane v.
DeBlasio*, 19 F.4th 152 (2d. Cir. 2021), where school district employees argued that a vaccine
mandate was not generally applicable because members of the public were allowed to enter
schools while unvaccinated.  The Second Circuit found that these members of the public were
not similarly situated to the school district employees.  *Id.* at 166.  As here, the difference was
exposure; because district employees worked in a school environment, they had greater exposure
to potential COVID-19 infection.  *Id.*  BART has established through Ms. McClellen's expert
testimony that the same is true here; BART employees were at much greater risk of contracting
COVID-19 due to "spending many working hours in the sometimes high-risk environment of the
transit system due to the differing duration and likelihood of exposure."  McClellan Decl. at 10.
BART spent more than a page of its opening brief discussing *Kane*, Dkt. 36 at 18-19, but
Plaintiffs only briefly address it in their opposition. Dkt. 40 at 20.

Plaintiffs cannot distinguish *Kane*, so instead pivot to *Roman Catholic* and *Tandon*,
arguing that BART's vaccine mandate was similar because the governors in those cases allowed
the general public to congregate at stores, but not places of worship.  *Id.*  That comparison misses
the mark because both stores and churches involve gatherings by members of the general public.
By contrast, this case does not involve a comparison between members of the public, but rather

two groups with different roles and responsibilities. As the Court noted during a motion hearing on February 29, 2024, if a member of the general public becomes sick, BART can still operate, whereas if its employees become sick, BART's operations can be adversely impacted. This difference establishes that the riders of BART are not similarly situated with BART employees who operate and maintain this mass transit railroad.

### 3. BART's Vaccine Mandate Satisfies Rational Basis Review

BART established in its opening brief that its vaccine mandate satisfies rational basis review. Dkt. 36 at 19-20. Plaintiffs do not contend otherwise. *See* Dkt. 40.

## B. BART's Vaccine Mandate Would Satisfy Strict Scrutiny Review, Were It Appropriate

Because BART's vaccine mandate and religious exemption process were neutral and generally applicable, they are not subject to strict scrutiny review. But even did this more stringent standard apply, BART's policies still would satisfy it as a matter of law.

For BART's vaccine mandate to pass strict scrutiny, BART must establish that it was "justified by a compelling state interest" and "narrowly tailored in pursuit of that interest." *UnifySCC*, 2022 WL 2357068, at *8 (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022)). Plaintiffs concede that BART has a compelling interest in slowing the spread of COVID-19 among its employees and patrons, Dkt. 40 at 20, but argue that its vaccine mandate was not narrowly tailored, *id.* at 20-26. Plaintiffs argue that the mandate was not narrowly tailored because (1) BART permitted unvaccinated members of the public to use its public transit system, *id.* at 21, (2) "BART could have required employees to undergo regular testing in lieu of vaccination," *id.* at 23, and (3) other governmental employers supposedly offered accommodations that allowed their employees to work while unvaccinated, *id.* at 26-28. None of these suffices to establish a triable issue of material fact.

### 1. Members of the Public Did Not Present the Same Risk to BART's Public Health and Operations Goals as Did Its Employees

As discussed, *supra*, BART has submitted expert evidence that its employees presented greater risk of COVID-19 transmission than its patrons, due to "spending many working hours in

the sometimes high-risk environment of the transit system due to the differing duration and resulting likelihood of exposure." McClellan Decl. at 10. Additionally, illness among BART's employees, especially during peak infection periods of the pandemic (such as happened in January through March 2022, Dkt. 36 at 7), posed a risk to BART's essential continued operations, whereas illness in the general public did not.

Plaintiffs submit no evidence to rebut these showings, instead relying only on attorney argument and attempts at miscasting Ms. McClellan's opinions, as already discussed. They have not met their burden to establish any triable issue of fact. *Orr*, 285 F.3d at 772; *Surrell*, 518 F.3d at 1103; *Siebert*, 75 F. Supp. 3d at 1116.

> **2.** **BART Has Submitted Unrebutted Expert Evidence that Regular Testing Was Not Adequate to Promote Its Interest in Slowing the Spread of COVID-19 and Protecting its Workers and the Public**

Plaintiffs argue that "BART could have required employees to undergo regular testing in lieu of vaccination as it did during the summer of 2021." Dkt. 40 at 23. Plaintiffs again make a public health argument without citing any evidence whatsoever, much less expert testimony, which is compulsory on a scientific issue like the efficacy of COVID-19 testing in late 2021 and early 2022. *See id.*

BART supported its motion with expert opinion from Dr. Joseph A. Lewnard, a tenured Professor of Epidemiology at the University of California, Berkeley, on this very issue. Declaration of Joseph A. Lewnard, Ph.D. in Opposition to Motion for Summary Judgment at ¶¶ 10-12, *Chavez v. BART*, No 3:22-cv-06119-WHA (N.D. Cal. Jan. 10, 2024), Dkt 51-3 ("Lewnard Decl.") . Dr. Lewnard opines that testing available at the time was not sufficiently efficacious at preventing COVID-19 infections. *Id.* The reliability of testing "was well known at the time BART implemented its vaccination policy to be inferior relative to vaccination." *Id.* at ¶ 16. Even using PCR tests, the most sophisticated available, "only 58% (40% to 74%) of symptomatic cases could be identified before symptom onset." *Id.* at 16. "[R]outine testing at a weekly frequency was estimated to reduce transmission by only 24% within the general population." *Id.* at ¶ 17. In addition, "test turnaround times were often suboptimal." *Id.* at 16. "Rapid antigen-based tests, which offer lower sensitivity for detection of SARS-CoV-2 infection,

but enable faster identification of positive cases by delivering results within minutes, were not yet widely and readily available to the U.S. general public as of October 2021, with many having received Emergency Use Authorization only months earlier and demand greatly outstripping available supply or production capacity." *Id.* Dr. Lewnard concludes that "[b]road scientific awareness of these findings as of October 2021, and appreciation of the clear difference in the effectiveness of testing relative to vaccination, supported BART's policy of requiring vaccination among employees rather than accepting testing as an alternative." *Id.* at 17.

The Supreme Court held that "[N]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interests in reducing the spread of COVID." *Tandon*, 593 U.S. at 63. BART made that showing through admissible expert witness evidence submitted with this motion:

> Simply put, given the public health conditions and the state of scientific knowledge at the relevant time, October 2021 through January 2022, there were no less restrictive means than vaccination for BART to achieve its goals of mitigating the spread of COVID-19 among employees and the general public, and of preventing individuals from encountering avoidably (and thus unacceptably) elevated risk of severe disease or death as a result of exposures occurring on BART's premises. All other measures available were significantly inferior to vaccination with respect to achieving those goals.

Lewnard Decl. at 13; *see also* McClellan Decl. at 11 (). Plaintiffs offer no contrary admissible evidence, so their argument that BART could have sufficiently prevented the spread of COVID-19 by permitting employees to test regularly, but not be vaccinated, fails as a matter of law. *Orr*, 285 F.3d at 772; *Surrell*, 518 F.3d at 1103; *Siebert*, 75 F. Supp. 3d at 1116.

**3.** **Hearsay Evidence Concerning the Supposed Practices of Other Governmental Employers Does Not Create a Triable Issue of Fact**

Lastly, Plaintiffs rely on public records responses from a few other governmental employers to argue that because those employers permitted some of their employees to work while unvaccinated, BART should have been able to do the same. Dkt. 40 at 26-28. BART explained in a prior filing that this third-party evidence is hearsay, which should not be admitted under the public records exception (Federal Rule of Evidence 803(8)) because circumstances indicate a lack of trustworthiness. Dkt. 36 at 21-23. BART will not repeat the entire argument,

but the core problem is that at least one respondent, the City of San Jose, failed to distinguish between granting an employee an exemption to its vaccine mandate (*i.e.*, the first step under Title VII and FEHA) and accommodating that employee so that he or she could continue to work while unvaccinated (*i.e.*, the second step). *Id.* We thus cannot reliably interpret the data, and cannot be certain whether the reported numbers reflect exemptions or accommodations. *Id.* Plaintiffs only respond that BART was off base for noting the response of San Jose because that response "was not included in this case." *See* Dkt. 40 at 27. After intentionally omitting unfavorable evidence that was already in submitted in the related case, Plaintiffs claim that it is BART who is attempting to "muddy the record." *Id.* A reasonable person should be skeptical whether information requests penned by unnamed state officials can elucidate the nuanced Constitutional and Federal law at issues here. The Court should exclude the proffered evidence as inadmissible hearsay.

Even were the evidence admissible, it still would create no triable issue, particularly in light of the unrebutted scientific evidence submitted by BART. Plaintiffs have no details concerning the job responsibilities of any unvaccinated worker, the safety accommodations required, or the level of risk that the unvaccinated worker posed to other employees and the public. Such an assessment would require an expert industrial hygienist, but Plaintiffs have no evidence at all. That is, in part, because they did not depose any of the other governmental employers and are relying on just two basic numbers (exceptions requested, accommodations granted), to reach a broad conclusion that BART should have permitted its employees to work while unvaccinated because other governmental employers, with different responsibilities, operations, and facilities, made different decisions. That bald conjecture is insufficient to establish that testing or other means would have been sufficiently efficacious for BART to address its goals of lessening the spread of COVID-19 and maintaining a sufficient workforce during the pandemic. *Surrell*, 518 F.3d at 1103; *Siebert*, 75 F. Supp. 3d at 1116.

**C.  Plaintiffs' Criticism of BART's Expert Declarations Is Without Merit**

Plaintiffs argue that the Court should not consider BART's expert declarations because "the BART decisionmakers who are percipient witnesses simply do not corroborate that BART

was aware of, or relied on, those scientific claims." Dkt. 40 at 29. That assertion is factually incorrect and wrongheaded.

BART's cross-motion is supported by a declaration from Rodney Maplestone, its Manager of Leave Programs, who was responsible for administering BART's religious exemption process. Maplestone Decl. at 1-2. Mr. Maplestone explained that BART's accommodation analysis "relied on guidance from public health officials and agencies and reflected the critical need to maintain BART services and protect the public and employees." *Id.* at 4. There is thus record evidence, from the person with lead responsibility for the exemption process, that BART relied on public health guidance. BART's expert declarations describe what that guidance was during the relevant time period. Lewnard Decl.at 4-8; McClellan Decl. at 4-9.

Nor is it necessary that BART's decisionmakers relied on the specific sources or materials cited by the expert witnesses. In assessing whether BART's policies were constitutional, the Court conducts its own analysis based on the entirety of the evidentiary record. *E.g.*, *Snyder v. Phelps*, 562 U.S. 443, 453 (2011); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 567-68 (1995); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 742 (9th Cir. 2021).

BART's declarations are the type of expert evidence that a court expects to see on summary judgment in a case presenting questions of epidemiology, industrial hygiene, and public health. Plaintiffs' failure to support their opposition with such evidence does not mean that BART's evidence may be disregarded.

### D. Responses to Evidentiary Objections

<u>Declaration of Joseph A. Lewnard</u>: Objection to ¶¶ 3, 9-19: The declarant does not lay a foundation or assert personal knowledge that the scientific information was known, communicated or relied upon by BART at the time of the issuance of the vaccination mandate. F.R.E. 602 and 901.

Response: The objection is meritless. Rule 602 does not apply to an expert witness. Rule 901 is also inapplicable because no "item of evidence" is being identified or authenticated. As discussed, *supra*, BART relied on public health guidance. *See* Maplestone Decl. at 4.

1   Further, in applying constitutional review of action by a governmental employer, a court is not

2   restricted to only those materials considered by the employer.

3       Declaration of Nancy M. McClellan:  Objection to ¶¶ 11-14, 16-19, 21, 22:  The declarant

4   does not lay a foundation or assert personal knowledge that the scientific information was

5   known, communicated or relied upon by BART at the time of the issuance of the vaccination

6   mandate.  F.R.E. 602 and 901.

7       Response:  The objection is meritless.  Rule 602 does not apply to an expert witness.

8   Rule 901 is also inapplicable because no "item of evidence" is being identified or authenticated.

9   As discussed, *supra*, BART relied on public health guidance.  *See* Maplestone Decl. at 4.

10  Further, in applying constitutional review of action by a governmental employer, a court is not

11  restricted to only those materials considered by the employer.

12      Objection to ¶ 20:  The declarant does not lay a foundation or assert personal knowledge

13  regarding the length of time that BART employee-plaintiffs ride trains in comparison to the

14  general public.  F.R.E. 602 and 901.

15      Response:  The objection is meritless.  Rule 602 does not apply to an expert witness.

16  Rule 901 is also inapplicable because no "item of evidence" is being identified or authenticated.

17  In addition, Ms. McClellan's opinion is based on "BART employees spending many working

18  hours in the sometimes high-risk environment of the transit system," McClellan Decl. at 10,

19  which is not limited to BART's trains, but encompasses all its work locations, including stations,

20  offices, and maintenance facilities.

21  **III.    Conclusion**

22      For the reasons set forth herein, in BART's opening brief, and in the supporting

23  declarations, the Court should grant BART summary judgment of Plaintiffs' Second Cause of

24  Action under 42 U.S.C. section 1983.  As a matter of law, BART's COVID-19 employee

25  vaccination mandate did not violate Plaintiffs' rights to free exercise of religion under the First

26  and Fourteenth Amendments.

27  ///

28  ///

1  Dated: March 6, 2024

2                                              GLYNN, FINLEY, MORTL,
                                              HANLON & FRIEDENBERG, LLP
3                                              JAMES M. HANLON, JR.
                                              VICTORIA R. NUETZEL
4                                              DAWSON P. HONEY

5                                              By: /s/ James M. Hanlon, Jr.
                                                  Attorneys for Defendant San Francisco
6                                                  Bay Area Rapid Transit District

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28